No. 14-1561 (L)

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DEVIL'S ADVOCATE, LLC,

Plaintiff - Appellant

v.

GRYNBERG PETROLEUM COMPANY; JACK J. GRYNBERG,

Defendants - Appellees

On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria

# JOINT APPENDIX

John W. Toothman, Esq.
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660

Counsel for Plaintiff-Appellant

Brian V. Ebert, Esq.
10555 Main Street, Suite 650
Fairfax, Virginia 22030
(703) 281-9000

Counsel for Defendants-Appellees

Joint Appendix

Table of Contents

Appendix Page

District Court Docket Report
*Devil's Advocate LLC v. Grynberg Petroleum Co.*
Civil No. 1:13-cv-1454-CMH/IDD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Civil Complaint (Dkt. 1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A5
Exhibit A (DA Retention Terms, Proposal) . . . . . . . . . . . . . . . . . . . . . . . . A16
Exhibit B (DA Invoice 3/27/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A30
Exhibit C (DA Statement 6/8/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A31
Exhibit D (DA Statement 7/23/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A36
Exhibit E (DA Statement 8/21/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A41
Exhibit F (DA Statement 8/31/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A46
Civil Cover Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A50

Relevant Portions of Pleadings

Toothman Declaration Regarding Defendants' Claims for Legal Fees & Expenses (3/20/12, partial), filed *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293 (D. Wyo.) (Exhibit A to Dkt 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A51

Verified Complaint, *Devil's Advocate LLC v. Grynberg Petroleum Co., et al.* Civil No. 2013-7559 (Fairfax Cty Cir. Ct.; April 24, 2013) (Exhibits omitted) (Ex. 1 to Dkt 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A84

Amended Complaint, *Devil's Advocate LLC v. Grynberg Petroleum Co., et al.* Civil No. 2013-7559 (Fairfax Cty Cir. Ct.; Oct. 3, 2013) (Exhibits omitted) (Ex. 2 to Dkt 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A91

Second Amended Findings of Fact & Conclusions of Law of the Special Master (11/8/13), filed *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293 (D. Wyo.) (Ex. G to Dkt. 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A99

Joint Appendix

Table of Contents

Appendix Page

Aff. Of Service of Summonses on Defendants (3/6/14) (Dkt. 4 & 5) . . A195

Order, *Devil's Advocate LLC v. Grynberg Petroleum Co., et al.* Civil No. 2013-7559 (Fairfax Cty Cir. Ct.; Dec. 5, 2013) (Ex. 3 to Dkt. 8) . . . . . . . . . A199

Order Adopting Recommendations of Special Master ... (1/6/14), filed *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293 (D. Wyo.) (Ex. H to Dkt. 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A201

Declaration of John Toothman (in support of DA Motion for Partial Summary Judgment, 3/31/14) (Dkt. 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A210

Declaration of Roger Jatko (in opposition to Motion for Partial Summary Judgment, 4/14/14) (Ex. 1 to Dkt. 11) . . . . . . . . . . . . . . . . . . . . . . . . . . . A214

Declaration of John Toothman (in support of DA Opposition to Motion to Dismiss, 4/15/14) (Dkt. 12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A219

Supplemental Declaration of John Toothman (in support of DA Motion for Partial Summary Judgment, 4/21/14) (Dkt. 14) . . . . . . . . . . . . . . . . . . . . . . . . . A221

Emails to Toothman from Jatko, Orr and Porter (counsel for Grynberg), Exhibits I, J, K in support of DA Motion for Partial Summary Judgment, 4/21/14 (Dkt. 14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A224

Summary of DA Fees, Time, and Expenses, Exhibit 1 to DA's Motion for Attorney Fees, Time, and Costs (6/15/2014) (Dkt. 23) . . . . . . . . . . . . . . . . . . . . A227

Declaration of John Toothman (in support of DA's Reply in Support of Motion for Attorney Fees, Time, and Costs, with Exhibit 3, 7/7/14) (Dkt. 26) . . . A228

# Joint Appendix

## Table of Contents

Appendix Page

Judgment, Orders Appealed

Order (5/2/14) (granting motion, denying partial summary judgment, dismissing under Rule 12b3 without prejudice) (Dkt. 15) . . . . . . . . . . . . . . . . . . . . A234

Order (6/9/14) (granting motion to enter judgment without prejudice) (Dkt. 20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A236

Clerk's Judgment without prejudice (6/9/14) (Dkt. 21) . . . . . . . . . . . . A237

Order (7/11/14) (denying DA's motion for fees, time, and expenses) (Dkt 27) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A238

Notices of Appeal

Plaintiff's Notice of Appeal (5/31/14) (Dkt. 18) . . . . . . . . . . . . . . . . . . A239

Plaintiff's Amended Notice of Appeal (7/11/14) (Dkt. 28) . . . . . . . . . A241

Note: There were no oral arguments or other transcribed proceedings.

Defendants - Appellees did not make any designation in response to either of Plaintiff - Appellant's proposed appendix designations nor did they identify any items to include in the "Joint" Appendix.

APPEAL

# U.S. District Court
# Eastern District of Virginia - (Alexandria)
# CIVIL DOCKET FOR CASE #: 1:13-cv-01454-CMH-IDD

Devils's Advocate, LLC v. Grynberg Petroleum Company et al
Assigned to: District Judge Claude M. Hilton
Referred to: Magistrate Judge Ivan D. Davis
Demand: $1,300,000
Case in other court: 4th Circuit, 14-01561
4th Circuit, 14-01693
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 11/26/2013
Date Terminated: 05/02/2014
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Devil's Advocate, LLC** represented by **John W. Toothman**
Toothman Law Firm PC/DA
PO Box 8
Great Falls, VA 22066
(703) 739-2660
Email: jtoothman@devilsadvocate.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Grynberg Petroleum Company** represented by **Brian V. Ebert**
Brian V. Ebert PC
10555 Main St
Suite 650
Fairfax, VA 22030
(703) 281-9000
Fax: (703) 281-3083
Email: brian@elawfirm.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jack J. Grynberg** represented by **Brian V. Ebert**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/26/2013 | 1 | COMPLAINT against Jack J. Grynberg, Grynberg Petroleum Company (Filing fee $ 400, receipt number 14683040207) filed by Devil's Advocate, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet, # 8 Receipt)(jlan) (Entered: 11/27/2013) |

| | | |
|---|---|---|
| 11/26/2013 | 2 | Financial Interest Disclosure Statement (Local Rule 7.1) by Devil's Advocate, LLC. (jlan) (Entered: 11/27/2013) |
| 11/27/2013 | 3 | Summons Issued to be serviced by SPS as to Jack J. Grynberg, Grynberg Petroleum Company. (jlan) (Entered: 11/27/2013) |
| 03/24/2014 | 4 | SUMMONS Returned Executed Grynberg Petroleum Company served on 3/11/2014, answer due 4/1/2014 (jlan) (Entered: 03/24/2014) |
| 03/24/2014 | 5 | SUMMONS Returned Executed Jack J. Grynberg served on 3/11/2014, answer due 4/1/2014 (jlan) (Entered: 03/24/2014) |
| 03/31/2014 | 6 | MOTION for Partial Summary Judgment , *Notice of Motion, and Memorandum in Support of Motion* by Devils's Advocate, LLC. (Attachments: # 1 Proposed Order DA's Proposed Order, # 2 Affidavit Declaration of John Toothman, # 3 Exhibit DA Exhibit A, # 4 Exhibit DA Exhibit B, # 5 Exhibit DA Exhibit C, # 6 Exhibit DA Exhibit D, # 7 Exhibit DA Exhibit E, # 8 Exhibit DA Exhibit F, # 9 Exhibit DA Exhibit G, # 10 Exhibit DA Exhibit H)(Toothman, John) (Entered: 03/31/2014) |
| 04/01/2014 | | Set Deadlines as to 6 MOTION for Partial Summary Judgment , *Notice of Motion, and Memorandum in Support of Motion*. Motion Hearing set for 4/25/2014 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (clar, ) (Entered: 04/01/2014) |
| 04/01/2014 | 7 | MOTION to Dismiss by Jack J. Grynberg, Grynberg Petroleum Company. (Attachments: # 1 Proposed Order)(Ebert, Brian) (Entered: 04/01/2014) |
| 04/01/2014 | 8 | Memorandum in Support re 7 MOTION to Dismiss filed by Jack J. Grynberg, Grynberg Petroleum Company. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Ebert, Brian) (Entered: 04/01/2014) |
| 04/01/2014 | 9 | Notice of Hearing Date re 7 MOTION to Dismiss (Ebert, Brian) (Entered: 04/01/2014) |
| 04/01/2014 | 10 | Financial Interest Disclosure Statement (Local Rule 7.1) by Grynberg Petroleum Company. (Ebert, Brian) (Entered: 04/01/2014) |
| 04/02/2014 | | Set Deadlines as to 7 MOTION to Dismiss . Motion Hearing set for 4/25/2014 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (clar, ) (Entered: 04/02/2014) |
| 04/14/2014 | 11 | RESPONSE in Opposition re 6 MOTION for Partial Summary Judgment , *Notice of Motion, and Memorandum in Support of Motion* filed by Jack J. Grynberg, Grynberg Petroleum Company. (Attachments: # 1 Exhibit 1 - Declaration of Roger Jatko, # 2 Exhibit A to Jatko Declaration)(Ebert, Brian) (Entered: 04/14/2014) |
| 04/15/2014 | 12 | Memorandum in Opposition re 7 MOTION to Dismiss *including*, AFFIDAVIT in Opposition filed by Devil's Advocate, LLC. (Toothman, John) (Entered: 04/15/2014) |
| 04/21/2014 | 13 | REPLY to Response to Motion re 7 MOTION to Dismiss filed by Jack J. Grynberg, Grynberg Petroleum Company. (Ebert, Brian) (Entered: 04/21/2014) |
| 04/21/2014 | 14 | Rebuttal Brief re 6 MOTION for Partial Summary Judgment , *Notice of Motion, and Memorandum in Support of Motion Exhibits & Supplemental*, AFFIDAVIT in Support *Partial Summary Judgment* filed by Devil's Advocate, LLC. (Toothman, John) (Entered: 04/21/2014) |
| 04/24/2014 | | Per CMH chambers motions set for 4/25/14 on the papers (clar, ) (Entered: 04/24/2014) |

| | | |
|---|---|---|
| 05/02/2014 | 15 | ORDER denying 6 Motion for Partial Summary Judgment; granting 7 Motion to Dismiss (See order for details). Signed by District Judge Claude M. Hilton on 05/02/2014. (jlan) (Entered: 05/05/2014) |
| 05/20/2014 | 16 | MOTION to Alter Judgment *Enter Judgment by Separate Document (Rule 58), with Notice & Memorandum in Support* by Devil's Advocate, LLC. (Toothman, John) (Entered: 05/20/2014) |
| 05/28/2014 | 17 | Notice of Hearing Date *May 20 Motion for Entry* set for 6/6/2014 re 16 MOTION to Alter Judgment *Enter Judgment by Separate Document (Rule 58), with Notice & Memorandum in Support* (Toothman, John) (Entered: 05/28/2014) |
| 05/29/2014 | | Set Deadlines as to 16 MOTION to Alter Judgment *Enter Judgment by Separate Document (Rule 58), with Notice & Memorandum in Support*. Motion Hearing set for 6/6/2014 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (clar, ) (Entered: 05/29/2014) |
| 05/31/2014 | 18 | NOTICE OF APPEAL as to 15 Order on Motion for Partial Summary Judgment, Order on Motion to Dismiss by Devil's Advocate, LLC. Filing fee $ 505, receipt number 0422-3983117. (Toothman, John) (Entered: 05/31/2014) |
| 06/02/2014 | 19 | Transmission of Notice of Appeal to US Court of Appeals re 18 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov). (rban, ) (Entered: 06/02/2014) |
| 06/05/2014 | | Per CMH chambers motions set for 6/6/14 on the papers (clar, ) (Entered: 06/05/2014) |
| 06/09/2014 | 20 | ORDERED that Plaintiff's Motion is GRANTED, and the clerk shall enter Judgment dismissing this case without prejudice. Signed by District Judge Claude M. Hilton on 6/9/2014. (rban, ) (Entered: 06/09/2014) |
| 06/09/2014 | 21 | CLERK'S JUDGMENT.<br>Pursuant to the order of this Court entered on 5/2/2014 and in accordance with Federal Rules of Civil Procedure 58, JUDGMENT is hereby entered dismissing this case without prejudice.(rban, ) (Entered: 06/09/2014) |
| 06/11/2014 | 22 | USCA Case Number 14-1561 4th Circuit, Case Manager A. Carlheim for 18 Notice of Appeal filed by Devil's Advocate, LLC. (rban, ) (Entered: 06/11/2014) |
| 06/15/2014 | 23 | MOTION for Attorney Fees *and Time and*, MOTION for Costs *Pursuant to Rule 54d* by Devil's Advocate, LLC. (Toothman, John) (Entered: 06/15/2014) |
| 06/15/2014 | 24 | Notice of Hearing Date *Rule 54d Fees, Time, Expenses* set for 7/11/2014 re 23 MOTION for Attorney Fees *and Time and* MOTION for Costs *Pursuant to Rule 54d* (Toothman, John) (Entered: 06/15/2014) |
| 06/16/2014 | | Set Deadlines as to 23 MOTION for Attorney Fees *and Time and* MOTION for Costs *Pursuant to Rule 54d*. Motion Hearing set for 7/11/2014 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (clar, ) (Entered: 06/16/2014) |
| 06/30/2014 | 25 | RESPONSE in Opposition re 23 MOTION for Attorney Fees *and Time and* MOTION for Costs *Pursuant to Rule 54d* filed by Jack J. Grynberg, Grynberg Petroleum Company. (Ebert, Brian) (Entered: 06/30/2014) |
| 07/07/2014 | 26 | REPLY to Response to Motion re 23 MOTION for Attorney Fees *and Time and* MOTION for Costs *Pursuant to Rule 54d (with Ex. 2 & 3)* filed by Devil's Advocate, |

| | | |
|---|---|---|
| | | LLC. (Attachments: # 1 Affidavit Expert John Toothman (Exhibit 2), # 2 Exhibit Redacted DA Time Entries (Exhibit 3))(Toothman, John) (Entered: 07/07/2014) |
| 07/10/2014 | | Per CMH chambers motions set for 7/11/14 on the papers (clar, ) (Entered: 07/10/2014) |
| 07/11/2014 | 27 | ORDER denying 23 Motion for Attorney Fees; denying 23 Motion for Bill of Costs. Signed by District Judge Claude M. Hilton on 7/11/14. (gwalk, ) (Entered: 07/11/2014) |
| 07/11/2014 | 28 | Subsequent NOTICE OF APPEAL as to 27 Order on Motion for Attorney Fees, Order on Motion for Bill of Costs, 20 Order, 21 Clerk's Judgment, 15 Order on Motion for Partial Summary Judgment, Order on Motion to Dismiss by Devil's Advocate, LLC *Amended Notice of Appeal*. Filing fee $ 505, receipt number 0422-4034406. (Toothman, John) (Entered: 07/11/2014) |
| 07/12/2014 | 29 | Transmission of Notice of Appeal to US Court of Appeals re 28 Subsequent Notice of Appeal, (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (jlan) (Entered: 07/12/2014) |
| 07/14/2014 | 30 | USCA Case Number 14-1693 4th Circuit, Case Manager A. Carlheim for 28 Subsequent Notice of Appeal, filed by Devil's Advocate, LLC. (rban, ) (Entered: 07/14/2014) |
| 07/14/2014 | 31 | ORDER of USCA as to 18 Notice of Appeal filed by Devil's Advocate, LLC, 28 Subsequent Notice of Appeal, filed by Devil's Advocate, LLC. The court consolidates Case No. 14-1693 with Case No. 14-1561. Entry of appearance forms and disclosure statements filed by counsel and parties to the lead case are deemed filed in the secondary case. (rban, ) (Entered: 07/14/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/23/2014 13:23:55 | | | |
| **PACER Login:** | li0683 | **Client Code:** | Grynberg appeal |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cv-01454-CMH-IDD |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

FILED
2013 NOV 26 P 1:40
CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEVIL'S ADVOCATE, LLC,
PO Box 8,
Great Falls, VA 22066

Plaintiff,

v.

GRYNBERG PETROLEUM COMPANY and
JACK J. GRYNBERG,
3600 South Yosemite Street, Suite 900
Denver, CO 80237

Defendants.

Civil No. 1:13cv1454 CMH/IDD

COMPLAINT

Plaintiff Devil's Advocate, LLC, ("DA") demands judgment against Defendants Grynberg Petroleum Company and Jack J. Grynberg (collectively "Grynberg"), jointly and severally. Late in 2011, Grynberg retained DA to provide expert consulting services and testimony in a multidistrict collection of numerous federal false claims (qui tam) cases Grynberg had filed, years ago, against dozens of natural gas companies. The case went poorly for Grynberg, which not only lost on the merits, but was held liable several years ago for sanctions in the form of legal fees and expenses incurred by the qui tam defendant gas companies, the amounts of which were to be determined later. Over two years ago, the gas companies moved for more than $22.5 million in sanctions. DA provided evidence supporting Grynberg's position, which succeeded in substantially reducing Grynberg's liability. Grynberg failed to pay the balance due for DA's fees. DA claims breach of contract and fraud. DA seeks payment of its fees and other relief.

Jurisdiction & Venue

1. This Court has jurisdiction over the Defendants pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship. The amount in controversy exceeds $75,000.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391.

Parties

3. Plaintiff Devil's Advocate, LLC, ("DA") is a Virginia limited liability company providing, *inter alia*, consulting and other services, including expert witness testimony. DA is based in Fairfax County, Virginia.

4. Defendant Grynberg Petroleum Company ("Grynberg Petroleum") is an oil and gas developer owned and controlled by Defendant Jack J. Grynberg, its proprietor. Both Defendants are located at 3600 South Yosemite Street, Suite 900, Denver, CO 80237 and are citizens of Colorado.

Facts

5. Plaintiff DA was contacted by representatives of Defendant Grynberg Petroleum, including Defendant Grynberg Petroleum's president, Defendant Jack J. Grynberg, and their lawyer-agents acting within the scope of their authority, to provide consulting and expert witness services on behalf and for the benefit of Defendants. These services assisted and benefitted Defendants in federal qui tam litigation captioned *In Re: Natural Gas Royalties Qui Tam Litigation,* MDL 1293 (the "underlying litigation" in which Defendants here are the plaintiffs or real parties in interest), then and still pending in the US District Court for the District of Wyoming under the principal local caption number 1:99-md-01293-SWS.

Case 1:13-cv-01454-CMH-IDD Document 1 Filed 11/26/13 Page 3 of 11 PageID# 3

6. Issues in the underlying case then included the reasonableness of millions of dollars in legal fees and expenses billed by numerous law firms to the gas-company defendants in the underlying litigation. These underlying defendants had, as of the inception of DA's engagement, already obtained an order compelling Grynberg to pay sanctions, the amount of which was to be determined, at least in part, based on the fee and expense submissions made by these underlying defendants.

7. DA provided Grynberg's only substantive defense to the amount of these many millions of dollars worth of sanctions, which are still being litigated. DA's services included, *inter alia*, legal bill analysis and reviews of such submissions for purposes of objecting to, challenging, rebutting, or attempting to reduce the claims against Grynberg and create a substantial record for review and appeal. The gross amount of such underlying bills, including subsequent and overlapping submissions by the underlying gas company defendants, was in excess of $22.5 million.

8. Defendants, through their lawyer-agents, negotiated the terms of DA's retention agreement and agreed to DA's revised proposal to provide expert witness and consulting services. Exhibit A hereto. Defendants executed DA's written agreement, second page of Exhibit A ("Our Terms of Retention"). Defendant Jack Grynberg executed the Terms of Retention in Exhibit A personally and individually as well as on behalf of Defendant Grynberg Petroleum Company, of which he is the authorized proprietor. DA satisfactorily, substantially, and adequately performed the agreed services and is entitled to payment in full and other relief as provided by law.

9. DA undertook substantial and extraordinary efforts, under contentious and difficult circumstances, to assist Defendants. For example, DA prepared, and Defendants subsequently accepted, used, and filed with the underlying court, DA's valuable work product.

10. There were several elements to DA's compensation, including a percentage fee for some services, hourly fees for other services, and indemnification for DA's time and expenses, plus other related provisions for DA's relief in these circumstances.

11. DA's percentage fee quote in Exhibit A was based on the representations of Defendants that the fees and expenses submitted by Defendants' opponents in the underlying litigation totaled no less than $22.5 million, with DA's percentage portion of its fee set at 1.1% of whatever the bills or invoices submitted by underlying defendants actually totaled, so long as it was in excess of $22.5 million set as the minimum in the agreement. Exhibit A.

12. The gross amount of the fees and expenses originally submitted by the underlying gas company defendants was substantially in excess of $22.5 million, rendering Defendants' knowing misrepresentations of then-existing facts substantially and materially false for purposes of underpaying DA. In the alternative, Defendants intentionally, negligently, or constructively, concealed or omitted the true facts, which is equivalent to a knowing or constructive misrepresentation. Defendants knew or should have known that DA was reasonably acting and relying upon Defendants misrepresentation or omission, to DA's substantial detriment. In the alternative, Defendants are also liable, pursuant to Exhibit A, for any excess amounts submitted by underlying gas company defendants, including amounts submitted or re-submitted after the execution of Exhibit A.

13. The false and misleading material misrepresentations (or omissions) were made by Grynberg's lawyer-agents, including Roger Jatko, who was Defendants' in-house lawyer and agent, at or before the execution of Exhibit A, and by Defendant Grynberg, who signed Exhibit A, and were repeated thereafter. *See* Exhibit A. DA is therefore entitled to additional compensatory damages of at least 1.1% of these excess underlying legal fee and expense amounts. In the alternative, DA is entitled to additional compensatory damages up to the same amount, plus punitive or exemplary damages, because Defendants intentionally, negligently, or constructively misrepresented the total of these fees and expenses, at the inception of the engagement or thereafter, thereby intentionally, negligently, or constructively misleading and defrauding DA about this material fact, upon which DA reasonably relied to its detriment. By understating the amount to which the percentage fee applied, Defendants intended to avoid paying 1.1% of the difference between the higher, true total of fees and expenses (as submitted or re-submitted by underlying defendants) and the minimum quoted fee of $247,500, which was based on there being no less than $22.5 million in fees and expenses submitted by underlying gas company defendants.

14. In addition to the services provided by DA on a percentage fee basis, for which Defendant paid in part, DA performed further services to be paid by the hour pursuant to their agreement, Exhibit A, which services were requested and ordered by Defendants, including their lawyer-agents. *E.g.*, Exhibit B (Invoice 1070, note regarding "Additional work..."). These services are documented, *inter alia*, in Exhibits C, D, E, and F hereto, which are the itemized statements and invoices DA previously delivered for these additional hourly services to

Defendants. The additional hourly services for which DA seeks payment were performed beginning in April 2012 and ceased in August 2012.

15. Defendants requested and made use of DA's valuable services and work product and continued to request additional services to be performed by DA after receiving each of these invoices. DA inquired of Defendants about the delay in receiving payment for the invoices shortly after issuing Exhibits D and E. Defendants, through Mr. Jatko (Defendants' in-house lawyer and an agent of Defendants) represented as fact to DA that Defendants were then issuing payments for DA to be paid promptly in full, that the payments were being prepared for transmission to DA or were in the process of being paid, and the like. These statements were false representations of then-existing material facts, which Defendants had no intention of performing, but which they misrepresented to DA, to intentionally mislead and induce DA into performing additional services for which Defendants had the then-existing intention not to pay, and upon which DA reasonably relied to its detriment to provide those valuable services, as documented in Exhibits C through F. Defendants expressed no objection to the invoices or amounts billed, and Defendants continued to request even more such services from DA with repeated misrepresentations that DA would be paid immediately and in full. DA is entitled to payment in full for these services, the principal amount of which is at least $110,696.00 for hourly services and expenses, as itemized in Exhibits C through F hereto, and other relief.

16. Defendants have breached their obligations to DA. DA has regularly delivered itemized invoices and statements for the additional hourly services to Defendants, who received and acknowledged them, without objection. DA ceased performing any additional hourly

services in August 2012 because Defendants failed to make the represented payment(s). DA then issued Exhibit F for the remaining hourly service through cessation of services pending payment.

17. After DA delivered notice it would perform no further services until receiving payment, Defendants' lawyer-agents continued to acknowledge receipt of a subsequent invoice (for hourly work done before the cessation) and periodic billing statements (calculating interest on the hourly balance), without objection. Defendants also continued to ask DA to perform additional services in exchange for Defendants' reiterated assurances of payment, in full, but Defendants made no such payment.

18. Grynberg has thereby harmed and caused damage to DA. In addition to payment of the principal amount of the hourly fee invoices and the excess underlying fee and expense amounts for the percentage fee of 1.1% on submissions over $22.5 million, DA is entitled to pre- and post-judgment compound interest (1.5% monthly) from the date each amount was due, legal fees, and other costs and expenses, as provided in Exhibit A or by law. DA is also entitled to be held harmless, to receive full compensation for any harm or amount incurred, and to be indemnified at the agreed hourly rates for all time plus reimbursed for all other expenses, amount, or harm incurred in the course of any proceeding and any collateral dispute relating to or arising in any way from the engagement by Defendants or provision of services thereto, including this and prior litigation. DA is also entitled to punitive or exemplary damages on the fraud count for Defendants wilful, wanton, reckless, intentional, malicious fraud.

## Claims

### Count I: Breach of Contract

19. The allegations of this complaint are incorporated herein.

20.     Grynberg Defendants and DA entered into contractual agreement(s), express or implied, written or unwritten.  DA performed valuable services for which it is entitled to compensation.  Defendants have not paid DA in full.

21.     DA is entitled to the payment of the hourly fees billed in Exhibits C, D, E and F.

22.     DA is entitled to 1.1% of the excess legal fees and expenses involved in the underlying litigation.  Exhibit A.  The excess fees and expenses subject to the 1.1% DA fee include, without limitation, all amounts over $22.5 million, including subsequent fee and expense submissions by the underlying defendants, misrepresented amounts, and non-duplicate variations on underlying defendants' submissions in the Wyoming litigation.

23.     DA is entitled to full indemnification and to be held harmless, including without limitation its time (at the quoted hourly rates) and expenses in these proceedings, *e.g.*, including any amounts or relief relating to or arising from the engagement by Defendants or services provided to Defendants.  Exhibit A.

24.     DA is entitled to compensatory damages, specific performance, declaratory, equitable, and interlocutory relief to implement this right to avoid irreparable harm which has been or may be threatened or caused by Defendants.

25.     Defendants have materially breached their contractual obligations to DA. Defendants have also breached their implied duties of good faith and fair dealing.

26.     The terms of the parties' agreement, as reflected in Exhibit A, also include, *inter alia*, full indemnification, payment of pre- and post-judgment interest, and legal fees and expenses.

27. Defendants are jointly and severally liable to DA for compensatory damages, full indemnification, pre- and post-judgment interest, legal fees and expenses, and other amounts and relief as claimed herein and ordered by the Court.

Count II: Actual or Constructive Fraud and Misrepresentation

28. The allegations of this complaint are incorporated herein.

29. Defendants made false representations (or omissions) of material facts, including the amount of the legal fees and expenses submitted by the underlying defendants, which Defendants misrepresented to be the minimum threshold of $22.5 million, and upon which DA's 1.1% percentage fee was based, to avoid paying DA's full percentage fee. Defendants omitted to provide the accurate total underlying fees and expenses. The misrepresentations (or omissions) were intentionally and knowingly made by Mr. Jatko and Mr. Grynberg, at and before execution of Exhibit A, and thereafter. DA reasonably relied to its detriment on these misrepresentations of material fact, and was thereby damaged.

30. In the alternative, Defendants' fraudulent misrepresentations or omissions of the material fact(s) were negligent or constructive fraud.

31. Defendants also engaged in actual fraud or fraudulently induced DA to perform the hourly services reflected in Exhibits C, D, E, and F by intentionally misrepresenting (again through Mr. Jatko, on or about the dates he received Exhibits D and E, as well as later) that payment was then being made by Defendants or promising to make such payment when it had no then-present intention of making such payment, or both. Defendants' statements were intentional misrepresentations of material facts, for purposes of inducing DA to perform valuable services

without payment by Defendants, upon which DA relied to perform the services indicated in Exhibits C through F.

32. The false statement or statements of then-existing material fact, or material omissions, by Defendants and their agents, upon which DA reasonably relied to its detriment, were that the total or gross amount of all fees and expenses submitted by the underlying gas company defendants were $22.5 million. This misrepresented number was material to calculating DA's percentage fee, which was 1.1% of the total amount, with the minimum such amount set at no less than $22.5 million. Exhibit A.

33. Defendants have stated that it is their belief that DA's percentage fee is capped at 1.1% of $22.5 million, unless DA alleges "fraud or fraud in the inducement," which DA hereby alleges, in the alternative, at Defendants' insistence.

34. DA is also entitled to punitive or exemplary damages, up to the statutory limit, if any, for Defendants' misrepresentations of material fact which were malicious, willful, wanton, intentional, or recklessly disregarded DA's rights.

35. Defendants are jointly and severally liable to DA for compensatory damages, punitive or exemplary damages, and other amounts and relief as claimed herein and ordered by the Court.

Relief Requested

WHEREFORE, DA demands that judgment be entered on all counts against Defendants, jointly and severally, with relief as follows:

a. Compensatory damages of at least $600,000,

b. Punitive or exemplary damages of at least $700,000 or more as allowed by law ($350,000 per defendant or up to any higher limit as provided by law),

c. Indemnification, specific performance, and other relief to hold DA harmless, including compensation and reimbursement for all time (at DA's hourly rates) and amounts expended in these proceedings and elsewhere,

d. Permanent and interlocutory equitable relief, including a temporary injunction and other interlocutory relief,

e. Declaratory relief, including a declaratory judgment,

f. Pre- and Post-Judgment Interest at a rate of 1.5% per month (18% APR), compounded, or as allowed by law, whichever is greater, from the date each invoice, sum, or payment was incurred or due until paid in full,

g. Attorney fees and expenses pursuant to the contract, costs, expenses, and other amounts as allowed by agreement or law, and

h. Such further relief as the Court deems just, without limitation.

By:

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)

Dated: November 26, 2013

Counsel for Plaintiff Devil's Advocate, LLC

DEC-14-2011 15:59 P.01

Suite 900
3600 S. Yosemite St. Denver, CO 80237
Email: grynpetro@grynberg.com
Tel: 303.850.7490
Fax: 303.850.7498

**Grynberg Petroleum Company**

| | | | |
|---|---|---|---|
| **To:** | The Devil's Advocate<br>Attn: John Toothman | **From:** | Office of Grynberg Petroleum<br>**Mr. Jack J. Grynberg** |
| **Fax:** | (703) 759-2388 | **Pages:** | 2 (including cover page) |
| **Phone:** | | **Date:** | December 14, 2011 |
| **Re:** | Our Terms of Retention | **CC:** | |

☐ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

Please see the attached document regarding Our Terms of Retention.

Thank you,

**Merlia McKnight**

Exhibit A

DEC-14-2011 15:59 P.02

# The Devil's Advocate,

Legal Fee Management & Litigation Consulting

Devil's Advocate, LLC, a/k/a TLF Consulting
EIN 36-4622389
PO Box 8, Great Falls, VA 22066
(703) 684-6996 * (703) 759-2388 (fax)

## Our Terms of Retention

Devil's Advocate, LLC, will perform the agreed services in exchange for prompt payment of its fees and expenses as follows:

Flat/Percentage Fees: A negotiated lump sum for specified DA services, such as bill review, a second opinion, or a snapshot litigation audit is a flat fee. Flat fees can be combined with other fees, such as hourly, *e.g.*, by preparing a bill analysis for a flat fee, then testifying on an hourly basis. Percentage fees (a specified percentage of ongoing fees examined, for example) are quoted based upon the gross amount of all fees and expenses billed by the law firm or other entity, including those already paid or not contested by the client. Flat and percentage fee quotes do not include DA's own expenses, which are passed through for reimbursement at our cost. The balance of our flat or percentage fee is earned (1) upon substantial completion of our preliminary report or other project (though our work product may be held pending full payment) or (2) if our work is not completed at your request or due to settlement or circumstances beyond our control, or (3) if our name, resume, or retention is published or disclosed publicly or to a tribunal or an opponent.

**Our fee quote for this engagement is $ 247,500 , which is 1.1 Percent ( 1.1%) of the gross amount of all fees and expenses we review (estimated to be at least $ 22.5 million ), to prepare a preliminary written or oral report.**

Initial Fee Payment: Part of the fee (whether flat, percentage, or hourly) is due and paid in advance, as an initial fee payment regardless of the billing alternative, *e.g.*, to cover DA's expenses, availability, and investment of resources. Performance of services by DA is contingent on our prior receipt of the initial fee. The initial fee is earned once we are retained or begin work, upon use of our name, upon disclosure of our retention, or upon resolution of the dispute, whichever comes first. **The initial fee payable for this engagement is** ~~one-half the gross amount of our fee quoted above~~. 25% to begin work, 30% by Jan. 15, 2012.

Hourly Fees: DA charges hourly fees for open-ended or unpredictable tasks, especially work after the preliminary report. For the personnel most likely to bill time on this matter, current hourly rates are: John Toothman, Esq. ($400/hour), Jane Morrison, Esq. ($350/hour), paralegals and other services ($100-$250/hour). We charge half rates for travel time scheduled with our approval. Unless an alternative fee arrangement is agreed to in writing, DA will charge on an hourly basis. These hourly fees are also charged for work in addition to or beyond the scope of the initial flat/percentage fee engagement, such as time spent responding to subpoenas, discovery requests, testimony (including preparation), or any proceedings or collateral dispute relating to or arising in any way from or because of this engagement or services provided to Client.

Our Expenses: DA does not bill for routine office expenses nor do we mark up any expenses that are passed through to our clients. Internal copying, postage, phone charges, and telecopying expenses, if routine, are not charged to our clients. Extraordinary or large out-of-pocket expenses, such as travel, hotel accommodations, computerized legal research, delivery charges, and large copying projects will be passed through to our client at our cost. These expenses are in addition to and are not included in our fee estimates nor in our hourly, percentage, or flat fee quotes.

Other Terms: DA does not charge contingent fees. DA cannot guarantee completion dates without prior consultation, so clients should advise DA of deadlines and scheduling concerns before commiting us. Litigation is unpredictable and DA makes no guarantee of any specific result. Client cooperation is an important factor in meeting both fee and time estimates. While we welcome client input, we establish our opinions independently. Client agrees to indemnify and hold DA harmless for any proceedings or collateral dispute relating to or arising in any way from this engagement or services provided to Client. Our name, reputation, resume, and work product are valuable: You may not use or publish our name, resume, proposal, findings or opinions, or other work product without our advance written agreement and payment of our full fee. Our Terms of a Devil's Advocate Proposal are incorporated, too.

Unpaid balances are charged 1.5% compound interest per month (18% APR) plus DA's legal fees and expenses to collect. DA reserves the right to discontinue work until the balance of all our fees and expenses are paid in full. DA has attorneys admitted in the District of Columbia and elsewhere, but clients should obtain independent legal advice. All fee quotes expire in fourteen days unless accepted by the client in writing and/any initial fee paid. Clients should consult with their lawyer regarding the confidentiality of our work product and communications. This agreement is governed by Virginia law and all disputes shall be resolved in a Fairfax County, Virginia, court.

Seen & Agreed to by: X [signature] (for Client: Grynberg Petroleum Co)

Name: JACK J. GRYNBERG Address: 3600 S. YOSEMITE ST. #900

Phone: (303) 850-7490 City: DENVER State: CO Zip: 80237

Revised 12/8/11 by JWT

TOTAL P.02

**The Devil's Advocate®**
*Legal Fee Management & Litigation Consulting*

Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066

# CONFIDENTIAL
(Revised)

To: Roger A. Jatko, Esq.
Grynberg Petroleum Co.

By: John W. Toothman, Esq.

Re: Grynberg Natural Gas Royalties MDL Legal Bill Review (multiple firms)

Date: December 8, 2011

---

This is our revised[1] proposal for examining substantial legal bills submitted by multiple law firms in multi-district litigation for which the central matter caption is *In re Natural Gas Royalties Qui Tam Litigation*, 99-MD-1293 (MDL D. Wyo.), but there are dozens of related cases. The relator is Jack J. Grynberg, who would be our client. Many, but not all of the defendants have submitted claims for fees and expenses pursuant to an Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. § 3730(d)(4), entered July 22, 2011.

This is a large, complicated legal bill review project. There are essentially 34 packages of materials for the claim of each defendant seeking fees, with some firms overlapping several defendants, as well as a separate package for the joint committee. The firms have submitted anywhere from a few dozen pages to thousands of pages of bills and supporting documentation. The ten firms on the Joint Defense Committee have submitted claims for $9.7 million in fees plus $1.4 million in expenses. Including these joint committee amounts, plus claims for other (non-joint) fees and expenses of these firms, plus additional firms, the total sought is $21.3 million in fees plus $1.2 million in costs.[2] In addition to examining each fee claim package (concentrating on the joint committee), we should combine the entries to examine each firm across clients and all firms across the whole case. While some of the firms' claims are small, others are quite large, so the project is comparable to several dozen interrelated sub-projects.

---

[1] The difference is our fee proposal, noted below.

[2] We understand the $21.3 million includes the $9.7 million joint fees, but we are therefore unsure why the joint expenses exceed the total costs by $200K.

We suggest approaching this project on several levels. Each firm and set of bills will first be reviewed on its own, then combined with other entries by the same firm for other clients to highlight possible double-billing or other problems hidden by splitting the firm's bills across several clients. Once we have each firm combined and analyzed, we would then combine all the firms (starting with the joint committee firms) to highlight issues like duplication of effort and overstaffing.

The hourly rates appear high. Normally the rate depends on rates in the jurisdiction of the court, but with multi-district cases counsel are likely to claim there is a mythical "national" rate that only large firms charge, the same firms for whom every case is "complex." We can debunk some of this, plus use rates charged by some of the more efficient firms in this collection to undermine rates charged by the rest. We have no Wyoming lawyers and I know of no reliable published Wyoming rate data, you might need a lawyer practicing in the relevant field. (We have done work in other qui tam cases, however.)

This is a project where distilling lots of data into a few strong points, illustrated with charts and graphs, is going to be crucial to convincing the judge that the usual cosmetic deductions won't work – the firms have already included more than enough fat to make up for any minor adjustment. If we can get the judge to appreciate that there is a problem, the question will become how far does he need to go – a question we cannot answer yet. Usually the judge will arrive at numbers somewhere between the amount the firms seek and the amount we find to be reasonable – the objective is to move the judge in our direction as far as possible. The more time we have, the more we can do.

We understand our report would currently be due by February 27, 2012. For the reasons discussed below, we suggest that postponing the deadline might help us explore the bills more deeply, which we understand should be possible. We would also rearrange other scheduled items to accommodate this project.

We have no apparent conflict of interest. We have reviewed many of the law firms before, but that should not represent a conflict. I worked at Akin, Gump many years ago. My family used to receive small royalties paid for gas leases on some of our property in West Virginia.

*Sample*: We did a test of the sample bills you provided to see how much time and expense we'll incur to convert them into spreadsheets for further analysis. Many of the bills are in typical, usable formats. But there are some bills that will require special attention, including some of the larger bills. This includes format issues, some with handwriting, at least one large set (Beatty) with color coding that comes out grey and effectively makes the entries invisible for scanning, and redactions. Some of the bills do not have hourly rate data (either directly or

indirectly by calculation), but we assume this will pop-up somewhere in the other materials. *See, e.g.*, Skadden. (If there are redacted time or expense entries, we generally disallow the whole time entry because it's not possible to establish the time is reasonable without a complete entry. There is case law to deny the entire bill, even the unredacted entries, too.)

As the bills look now, some of the firms appear to be playing games with the format to impede review – whether by you or by the court. If possible, obtaining cleaner bills from some of the firms would expedite our work (and reduce our fee).

There are indications of many typical problems with the time entries in the samples we reviewed. Given the number of firms, we've concentrated on the joint committee bills for now. I cannot estimate the percentage of problem time we'll flag at this time, but it will be substantial.

*Background*: We have provided legal fee management services since 1993. We have reviewed well over a billion dollars in fees from hundreds of firms. Our clients have included many major businesses, insurance companies, government agencies, and even law firms. I have written over two dozen articles on subjects relevant to legal bill reviews and litigation, along with two books, including the leading text on the subject, *Legal Fees: Law & Management* (Carolina Acad. Press 2003) (with Professor William Ross). I am quoted regularly as an expert in the field in the general, business, and legal press, including such publications as the *New York Times, Washington Post, Wall Street Journal,* and *American Lawyer*. I have testified as an expert on legal fees and related subjects over fifty times in many state and federal courts, around the U.S., and in various arbitrations and other types of proceedings. I have tried over fifty cases around the country since I graduated from Harvard Law School, *cum laude*, in 1981. (I have a B.S. and M.S. in Chemical Engineering from the University of Virginia, too, so I understand your factual issues.) I served several terms as a bar association fee arbitrator in DC and Virginia. Before founding my own firm in 1993, I was a partner managing a satellite office, name partner in a Virginia firm, a trial attorney at the US Department of Justice, and an associate in two major firms. My resume is attached. More articles and other materials can be found on our website.

We strive to be neutral, fair, and consistent. We assume our work will be closely scrutinized and contested.

*Proposal*: Our preliminary assessment suggests our services should be cost-effective. Assuming we review at least $22.5 million in legal bills (fees and expenses), we are quoting a fee for your project of ~~1.2%~~ (revised to 1.1%) of the gross amount of the bills we would review and report upon. We propose to be paid 25% now to start, 30% shortly after the first of the year, say January 15 (which we understand is the important date for your concerns), and the balance when we deliver our report. We should begin work immediately to meet your deadlines. Additional work, such as rebutting an opposing expert or for deposition or trial testimony, plus

preparation therefor, would be billed by the hour, plus reasonable out of pocket expenses (if any, usually for travel). These amounts are likely to be small compared with the flat fee. Our Proposal Terms and Retention Terms are incorporated.

Our fee includes our electronic and manual line-by-line analysis of the bills, review of significant work product as provided by you (to give us background and inform our bill review), review of relevant correspondence, agreements, and billing guidelines (also as provided by you), other investigation of the cases and timekeepers that we do independently, and preparation of our report or other disclosures and exhibits. A valuable byproduct of our work will be spreadsheets with all the time entries that you can use to search for information with which to examine or cross-examine witnesses and add factual details to briefs.

We assume there would be no travel as part of preparing our report, but possibly to testify by deposition or at a hearing, if at all. Travel time outside the flat fee is billed at half our rate as long as we are consulted in advance about scheduling. Our own reasonable out of pocket expenses, which are most typically just for travel, are billed in addition to the fee. Our Retention Terms have more information.

*Limitations*: This proposal is not for publication and does not contain any opinions – we have not conducted a full review of available information. Some of our people are lawyers admitted in several jurisdictions (not necessarily yours), but we cannot provide you with legal advice – you should obtain legal advice from a lawyer licensed in the relevant jurisdiction. You should not publish our name or suggest we have been retained or have an opinion until we have been retained, paid, and rendered our opinions.

We should begin work as soon as possible. We also request that you consult with us on any proposed dates before scheduling events relevant to us.

Thank you for your consideration. Feel free to call or email any questions.

* * * * *

**The Devil's Advocate®**
*Legal Fee Management & Litigation Consulting*

Devil's Advocate, LLC
TLF Consulting
PO Box 8
Great Falls, VA 22066

## Legal Fee Management & Litigation Consulting Services

The Devil's Advocate has been providing legal fee management and litigation consulting services since 1993. Our clients have included many federal, state, and local government agencies, many major insurance companies, and hundreds of other corporations and individuals. We have reviewed fees and services performed by over one thousand law firms, totaling in excess of a billion dollars.

Devil's Advocate brings extensive litigation, trial, and legal management experience to support our clients. Many clients are primarily concerned with fees, but we consider fees in the context of staffing, performance, experience, and so on. From selection of counsel, through retention agreements (including alternative fees), monitoring, second opinions, budgeting, and fee management, to legal malpractice and fee disputes, we provide an independent evaluation of your situation and options. Our broad experience across many industries and types of matters gives you legal industry benchmarks and a fresh perspective on your issues.

Our methods and role are flexible, to provide clients with cost-effective, discrete assistance. We often work behind the scene, but we can also deal directly with law firms to resolve disputes before litigation or other ultimatums become necessary. Other services also include training, including legal bill review training, and expert testimony. We are frequently consulted by law firms, including firms we have reviewed in the past – we gain the firms' respect by being thorough, accurate, and reasonable.

As established and recognized experts in the field, our analyses and opinions are designed to persuade law firms or other opponents to be reasonable. Unlike many other "legal bill auditors," we use experienced lawyers and are retained both to support and challenge legal fees: Our objective is always to assess whether a fee is reasonable, in context, to promote a healthy relationship between lawyer and client.

In most situations, our first step is to perform a legal bill review, allowing us to understand where you stand and consider your options. Whether we are reviewing bills from one case or bills from many firms working on all sorts of matters, our objective is to understand what the firms are doing and whether their fees and expenses are reasonable. Besides making sure firms are working efficiently, we also look for signs that they appreciate your business or are taking you for granted.

Our founder is John Toothman, Esq., who has testified as an expert over 50 times in courts all over the United States. He has also tried over 50 major cases, served as an arbitrator, and spoken at dozens of conferences and seminars. He is the author of two books and over twenty-five articles on litigation, legal fees, and related issues.

More information is available on our website, by email, or by giving us a call.

© 2011, DA, LLC

(703) 684-6996 ▫ (202) 499-7011 (fax) ▫ WWW.DEVILSADVOCATE.COM

The Devil's Advocate®
Legal Fee Management & Litigation Consulting

PO Box 8
Great Falls, Virginia 22066

(703) 684-6996 * (703) 759-2388 (fax)
www.DevilsAdvocate.com

Confidential

# Terms of a Devil's Advocate Proposal

Before performing consulting and expert testimony services, The Devil's Advocate (Devil's Advocate LLC or TLF Consulting, "DA") usually sees a sample of the bills, billing agreement, and other materials to be reviewed, if available, discusses certain key facts with the potential client or its lawyer ("you"), and makes a confidential proposal, including a fee quote or estimate. In addition to Our Terms of Retention, these are the conditions under which the proposal is made, and we are engaged, retained, or employed. If these conditions are not acceptable, our proposal is void and withdrawn.

1. We employ lawyers admitted in several jurisdictions but probably not yours. We are not your law firm and we are not providing you legal advice. You should obtain legal advice from a locally-licensed lawyer. We are usually confidential consulting experts, unless otherwise agreed (and paid).
2. We are not retained until we make a proposal, our fee quote is unconditionally accepted by the client (or its attorney), our initial fee payment is made, and we receive the materials we have requested for the review. Even if the proposal is not accepted or we are not retained, you may incur liability for our fees and expenses as described below. Our proposals expire in fourteen days.
3. Until we have been retained, do not provide us with any confidential information. If we provide, or may provide, expert testimony, it is possible that anything you provide us may be at risk of disclosure. Please clearly identify any information you claim to be confidential. We will comply with any court orders or rules requiring disclosure. Our reports to you are confidential – it will be up to you to decide whether to publish them, on the advice of your lawyer. Unless you make a prompt request in writing, we may destroy all or part of our file – including any materials you provided to us – six or more months after you make final payment to us. (Do not send us your originals.)
4. Statements in our proposal and other preliminary communications and drafts are not our opinions, conclusions, or recommendations and are not for publication. We do not, for example, provide certificates or affidavits of merit for professional malpractice or negligence claims without express, prior, written agreement and advance payment of our fee in full. We arrive at our final, formal opinions, conclusions, and recommendations based on a full review and analysis of the information made available to us and which we believe to be credible and relevant. Even our "final" opinions, conclusions, and recommendations may be amended or supplemented if additional information becomes available or if it appears information provided to us was incomplete or inaccurate.
5. We welcome your input and comments, but we independently reach our own opinions, conclusions, and recommendations. You may not make representations to others concerning our opinions, conclusions, or recommendations without our prior written approval. Our opinions, conclusions, and recommendations are not subject to your approval, nor is our compensation in any way contingent upon the content of our opinions, conclusions, and recommendations or your satisfaction therewith.
6. We understand and expect that you will cooperate fully and promptly give us accurate, complete information as requested, respond promptly and fully to our inquiries, pay us promptly and in full, and consult with us before making any representations or commitments about us, the content of our work product, our conclusions and opinions, or our availability for scheduled events, such as depositions and trial. If these conditions are not met, we may terminate the engagement, charge additional fees, or both.
7. We expect our services to be cost-effective, but we cannot guarantee or promise any particular result. We make estimates, suggestions, and proposals based on our experience, opinions, and analysis of the situation, with which others may not agree.
8. Our name, reputation, and work product are valuable and cannot be used without express written authorization. If you disclose, identify, reveal, or publish (or otherwise link us to your matter) our name, our web-site address, the name of any DA personnel, the resume of any DA personnel, our proposal or any of its contents, any implication that you have retained or engaged us, or any supposed opinion, conclusion, or statement of DA or its personnel, whichever comes first, you are liable for the full amount of our quoted fee. This includes, for example, representations that DA may audit or review a firm's legal bills, that we have been or may be retained or engaged, or that we have agreed to or may provide expert testimony. You may not designate us as an expert without prior authorization, our approval of the contents and fact of our disclosure or designation, and payment of our full fee.
9. The Devil's Advocate is a federal trademark which may not be used without our express permission. Our name and the names of our personnel may not be used without prior, written approval. Our work product, books, articles, reports, and other expressions are copyrighted.

© DA, LLC 2011

# The Devil's Advocate

P.O. Box 8
Great Falls, VA 22066

(703) 684-6996
JTOOTHMAN@DEVILSADVOCATE.COM

## *RESUME OF JOHN W. TOOTHMAN*

*The Devil's Advocate* (1993-present): Founder of legal fee management and litigation consulting firm, also known as TLF Consulting. From 1993-2008, the predecessor law firm, The Toothman Law Firm, P.C., also engaged in civil litigation and trial practice in federal and state courts, including appeals.

*LitWatch, Inc.* (1999-present): Publisher and Editor-in-Chief of legal information service. Author and editor of continuing legal education course materials. Moderator and speaker for continuing legal education courses.

*Shulman, Rogers, Gandal, Pordy & Ecker, P.A.* (1989-1993): Partner in charge of the firm's Alexandria, Virginia office. Commercial litigation practice in federal and state, trial and appellate courts, including litigation against the United States. Represented the U.S. Small Business Administration in receivership proceedings.

*Grad, Toothman, Logan & Chabot, P.C.* (1986-1989): Associate, then partner in firm eventually known as Grad, Toothman, Logan & Chabot, P.C. Commercial and tort litigation and trial practice in state and federal court (trial and appellate), as well as litigation against the United States.

*U.S. Department of Justice, Civil Division, Federal Programs Branch* (1984-1986): Trial attorney with wide array of client agencies and issues, including constitutional, statutory, and administrative law, ERISA, FOIA, employment discrimination, boycott, and other substantive issues. Top Secret, SI, and SCI security clearances.

*Akin, Gump, Strauss, Hauer & Feld* (1983-1984): Associate attorney in antitrust litigation section.

*Howrey & Simon* (1981-1983): Associate attorney, primarily in antitrust and intellectual property. Representation of an industrial trade association.

*Education*

*Harvard Law School*, J.D., *cum laude* (1981)
Ames Moot Court Competition Semi-Finalist
Research Assistant supplementing H. Hart, H. Wechsler, P. Bator, P. Mishkin & D. Shapiro, THE FEDERAL COURTS & THE FEDERAL SYSTEM (2d ed. 1977)
Cambridge & Somerville Legal Services (clinical education)
"Complex Civil Litigation" (third-year paper)

*University of Virginia*, M.S., Chem. Eng. (1979); B.S., Chem. Eng., with honors (1977)
National Science Foundation Fellowship, Memminger Fellowship, Tau Beta Pi, Sigma Xi, Alpha Chi Sigma, AICHE Scholarship Award, Dean's List, Intermediate Honors

*Other Relevant Experience & Publications*

Arbitrator, Fee Arbitration Service Panel, DC Bar Attorney/Client Arbitration Board (1994-1998)

Arbitrator, Virginia State Bar, Fee Dispute Resolution Program, 18th Cir. Comm. (June 1995 to 2001)

Co-author, with Douglas Danner, TRIAL PRACTICE CHECKLISTS 2d (West Group 2001; 3 vols. supplemented annually)

Co-author, with William G. Ross, LEGAL FEES: LAW & MANAGEMENT (Carolina Academic Press 2003)

Author, THE CLIENT'S BILL OF RIGHTS (Kindle/ePub 2011)

Author, THE CIVILIAN'S GUIDE TO LAWYERS: HOW TO HIRE A LAWYER (Vol. 1; Kindle/ePub 2011)

Author, Chapters 11-13, *Fifth Annual Litigation Management Supercourse, Volume I* 575-594 (PLI March 1994)

Article, "For Trials, Get A Trial Attorney," 14(51) *National Law Journal* 17-18 (Aug. 24, 1992)

Article, "Ways To Counter The Down Side of Litigation," *Wash. Bus. Journal* 43 (Nov. 2, 1992), republished in *Newstrack* (Dec. 15, 1992)

Article, "10 Things Clients Can Do To Strengthen Later Suits," *Wash. Bus. Journal* 33 (Jan. 1, 1993)

Article, "Greasing the Wheels for Civil-Justice Reform," 15(34) *Legal Times* 43 (Jan. 18, 1993)

Article, "Justice May Justify Name Again," 15(30) *National Law Journal* 15-16 (March 29, 1993)

Article, "Attorney Fees: The Case for 'Value Billing,'" *Wash. Bus. Journal* 57 (June 18, 1993), republished in *Newstrack* (April 6, 1993)

Article, "Getting to the Heart of Excessive Attorney Fees," *Newstrack* (Aug. 3, 1993)

Article, "A No-Nonsense Approach to Monitoring Those Legal Bills," *Wash. Bus. Journal* 36 (Dec. 17, 1993)

Article, "Hire Trial Lawyers, Not Litigators, Say General Counsel," 4(27) *Corporate Legal Times* 39 (Feb. 1994)

Article, "Second Opinions May Trim Legal Bills," 16(27) *National Law Journal* 17 (Feb. 14, 1994)

Article, "Alternative Billing: Living With the Uncorked Genie," 7(3) *Accounting for Law Firms* 3-4 (March 1994)

Article, "Billing: Considering Alternatives That Work & Others That Don't," 7(4) *Accounting for Law Firms* 4-6 (April 1994)

Article, "In Litigation, It's Usually the Fall That Kills the Client," *Wash. Bus. Journal* 15 (May 13, 1994)

Article, "Ten Tips for Lawyers' Clients," *Nation's Business* 44 (Oct. 1994)

Article, "Legal Fees: You Can Keep Them In Check," 21(4) *Directorship* 8 (April 1995)

Article, "Creating a Retainer Agreement That's Fair to Both Sides," 8(7) *Accounting for Law Firms* 6-7 (July 1995)

Article, "Standard Hourly Litigation Retainer Agreement," 8(8) *Accounting for Law Firms* 5-8 (August 1995)

Article, "Real Reform," 81 *ABA Journal* 80 (September 1995)

Article, "Audit Your Firm's Bills Before Your Client Does," 9(11) *Accounting for Law Firms* 1, 6-7 (Nov. 1996)

Article, "Integrated Legal Management: A Checklist," *WMACCA Counselor* 4 (July 1997)

Article, "Estimating Legal Fees: A Primer for Law Firms," 10(11) *Accounting for Law Firms* 1-6 (Nov. 1997)

Article, "Surviving a Legal Bill Audit," 15(1) *The Compleat Lawyer* 45-50, 62 (ABA Winter 1998)

Article, "Cost-Conscious Clients," 114(86) *Los Angeles Daily Journal* 8 (May 4, 2001)

Article, "Accurate Accounting," 114(103) *Los Angeles Daily Journal* 8 (May 29, 2001)

Article, "Commentary: Three recent decisions can help limit blowout legal fees," *National Law Journal*, Law.com (Sept. 15, 2010)

---

Note, "Like It or Not, the Law is Now a Business," 16(3) *National Law Journal* 16 (Sept. 20, 1993)

Note, "We Three Kings of Corporate Law," 17(17) *National Law Journal* A21 (Dec. 26, 1994 - Jan. 2, 1995)

Note, "O Little Firm of Bethlehem (PA)," 18(17) *National Law Journal* A19 (Dec. 25, 1995 - Jan. 1, 1996)

Report, "Regarding Department of Energy Management of Contractor Litigation Expenses," U.S. House Subcommittee on Oversight & Investigations of the Committee on Energy & Commerce (July 13, 1994), and related reports for the U.S. General Accounting Office.

Report, "Managing Legal Services," 27(12) *MIS Report* (Dec. 1995) (International City/County Management Ass'n)

---

Guest Lecturer, Trial Advocacy, National Law Center at George Washington University (Spring 1988)

Lecture, Georgetown University CLE, "Receiverships" (May 1991)

Lecture, Alexandria Bar Ass'n CLE, "Witness Preparation" (June 1992)

Lecture, Alexandria Bar Ass'n CLE, "Beyond Rambo: Effective Civil Litigation Tactics" (March 1993)

Panel Member, Alexandria Bar Ass'n CLE, "Ethics for the Trial Attorney" (March 1993)

Lecture, Alexandria Bar Ass'n CLE, "What's All This Nonsense About TQM, Value Billing, And Legal Bill Audits?" (Oct. 1993)

Panel Member, "Law Firm Governance 1994," (BDA program; Feb. 1994)

Moderator, Alexandria Bar Ass'n CLE, "Practice Before the Virginia Court of Appeals" (April 1994)

Panel Member, ABA Section of Litigation, "Roundtable for In-House & Outside Counsel" (Oct. 1994)

Lecture, Alexandria Bar Ass'n CLE, "An Ounce of Prevention: Billing Problems That Drive Clients Crazy" (Jan. 1995)

Lecture, North Carolina Ass'n of CPAs, "Legal Cost Containment Trends" (Sept. 1995)

Lecture, Alexandria Bar Ass'n CLE, "Attorney Fees: Law & Practice in Virginia" (Jan. 1996)

Lecture, Fairfax Bar Ass'n CLE, "Billing & Collection Practices" (May 1996)

Lecture, Int'l Munic. Lawyers Ass'n, "Managing Litigation Costs" (April 1997)

Moderator, RIMS, "Managing Legal Fees" (May 1997)

Panel Member, ABA Health Law Section & Am. Ass'n of Health Plans, "In-House Counsel Workshop" (April 1998)

Moderator, RIMS, "Warning Signs" (April 1998)

Moderator, RIMS, "Legal Fee Audit Guidelines" (April 1999)

Panel Member, American Ass'n of Law Libraries, "Getting the Client to Value Legal Research" (July 1999)

Moderator, RIMS, "Legal Fee Management" (May 2000)

Panel Member, American Conference Institute, "Reasonableness of Defense Costs" (Dec. 2009)

Panel Member, ABA Litigation Section, "Legal Fee Insurance Coverage" (March 2010)

Panel Member, ABA Litigation Section, "To Get Paid, Get Reasonable" (March 2011)

Recipient, Ross Essay Award, American Bar Association (1995)

***Bar & Related Affiliations***

Admitted to practice law in the District of Columbia (1981), Maryland (1990) (inactive), and Virginia (1987).

Also admitted to practice before the U.S. District Courts for the Eastern District of Virginia (and Bankruptcy Court), District of Columbia (inactive), Colorado, and Maryland (inactive); U.S. Court of Federal Claims (Claims Court); U.S. Courts of Appeals for the Federal, District of Columbia, and Fourth Circuits; and, U.S. Supreme Court.

© JWT, 2011, All rights reserved

Devil's Advocate® is a registered trademark

# The Devil's Advocate®

*Legal Fee Management & Litigation Consulting*

Devil's Advocate, LLC, a/k/a TLF Consulting
EIN 36-4622389
PO Box 8, Great Falls, VA 22066
(703) 684-6996 * (703) 759-2388 (fax)

## Our Terms of Retention

Devil's Advocate, LLC, will perform the agreed services in exchange for prompt payment of its fees and expenses as follows:

Flat/Percentage Fees: A negotiated lump sum for specified DA services, such as bill review, a second opinion, or a snapshot litigation audit is a flat fee. Flat fees can be combined with other fees, such as hourly, *e.g.*, by preparing a bill analysis for a flat fee, then testifying on an hourly basis. Percentage fees (a specified percentage of ongoing fees examined, for example) are quoted based upon the gross amount of all fees and expenses billed by the law firm or other entity, including those already paid or not contested by the client. Flat and percentage fee quotes do not include DA's own expenses, which are passed through for reimbursement at our cost. The balance of our flat or percentage fee is earned (1) upon substantial completion of our preliminary report or other project (though our work product may be held pending full payment) or (2) if our work is not completed at your request or due to settlement or circumstances beyond our control, or (3) if our name, resume, or retention is published or disclosed publicly or to a tribunal or an opponent.

**Our fee quote for this engagement is $ 247,500, which is 1.1 Percent ( 1.1%) of the gross amount of all fees and expenses we review (estimated to be at least $ 22.5 million), to prepare a preliminary written or oral report.**

Initial Fee Payment: Part of the fee (whether flat, percentage, or hourly) is due and paid in advance, as an initial fee payment regardless of the billing alternative, *e.g.*, to cover DA's expenses, availability, and investment of resources. Performance of services by DA is contingent on our prior receipt of the initial fee. The initial fee is earned once we are retained or begin work, upon use of our name, upon disclosure of our retention, or upon resolution of the dispute, whichever comes first. **The initial fee payable for this engagement is ~~one-half the gross amount of our fee quoted above~~.** 25% to begin work, 30% by Jan. 15, 2012.

Hourly Fees: DA charges hourly fees for open-ended or unpredictable tasks, especially work after the preliminary report. For the personnel most likely to bill time on this matter, current hourly rates are: John Toothman, Esq. ($400/hour), Jane Morrison, Esq. ($350/hour), paralegals and other services ($100-$250/hour). We charge half rates for travel time scheduled with our approval. Unless an alternative fee arrangement is agreed to in writing, DA will charge on an hourly basis. These hourly fees are also charged for work in addition to or beyond the scope of the initial flat/percentage fee engagement, such as time spent responding to subpoenas, discovery requests, testimony (including preparation), or any proceedings or collateral dispute relating to or arising in any way from or because of this engagement or services provided to Client.

Our Expenses: DA does not bill for routine office expenses nor do we mark up any expenses that are passed through to our clients. Internal copying, postage, phone charges, and telecopying expenses, if routine, are not charged to our clients. Extraordinary or large out-of-pocket expenses, such as travel, hotel accommodations, computerized legal research, delivery charges, and large copying projects will be passed through to our client at our cost. These expenses are in addition to and are not included in our fee estimates nor in our hourly, percentage, or flat fee quotes.

Other Terms: DA does not charge contingent fees. DA cannot guarantee completion dates without prior consultation, so clients should advise DA of deadlines and scheduling concerns before committing us. Litigation is unpredictable and DA makes no guarantee of any specific result. Client cooperation is an important factor in meeting both fee and time estimates. While we welcome client input, we establish our opinions independently. Client agrees to indemnify and hold DA harmless for any proceedings or collateral dispute relating to or arising in any way from this engagement or services provided to Client. Our name, reputation, resume, and work product are valuable: You may not use or publish our name, resume, proposal, findings or opinions, or other work product without our advance written agreement and payment of our full fee. Our Terms of a Devil's Advocate Proposal are incorporated, too.

Unpaid balances are charged 1.5% compound interest per month (18% APR) plus DA's legal fees and expenses to collect. DA reserves the right to discontinue work until the balance of all our fees and expenses are paid in full. DA has attorneys admitted in the District of Columbia and elsewhere, but clients should obtain independent legal advice. All fee quotes expire in fourteen days unless accepted by the client in writing and any initial fee paid. Clients should consult with their lawyer regarding the confidentiality of our work product and communications. This agreement is governed by Virginia law and all disputes shall be resolved in a Fairfax County, Virginia, court.

Seen & Agreed to by:______________________ (for Client: Grynberg Petroleum Co)

Name: ______________________ Address: ______________________
Phone: ______________________ City:____________ State:________ Zip:______

Revised 12/8/11 by JWT

**The Devil's Advocate.**
Legal Fee Management & Litigation Consulting

PO Box 8
Great Falls, Virginia 22066

(703) 684-6996 • (703) 759-2388 (fax)
www.DevilsAdvocate.com

Confidential

# What is a Legal Bill Review?

The Devil's Advocate reviews hourly legal bills to determine whether the time, rates, and expenses billed are necessary and reasonable, applying whatever standard the relevant law should apply. We do not have any preconceived notions about whether bills are high or low – we are retained both by parties seeking to lower fees and by parties seeking to establish that a fee charged was reasonable. To conduct our review, we generally need our client's full cooperation, plus clean copies of the bills, any supporting documentation from the law firm, any billing agreement between client and law firm, correspondence between client and firm about the bills or management of the matter, and the significant work product that corresponds with the bill entries. If the bills are available in readable electronic form, that may save time in reviewing bills and allow us to conduct additional testing of the bills – it also lowers our fee quote. Paper bills may also be scanned into computer-readable form.

"Work product" that we seek to examine includes briefs or memoranda prepared by the firm presenting the bill and documents from their opponents or the court that relate to the firm's efforts. For example, if the bill shows time spent in reviewing an opponent's motion, it would be useful for us to see the opponent's motion as well as the firm's response.

Our reviews are designed to allow us to analyze the bills and express our opinion about the reasonableness of the legal fees and expenses reflected in those bills. To make our reviews cost-effective, we generally fit our analysis to each client's particular situation – one size does not fit all. Legal bill reviews are sometimes loosely referred to as "audits," but they are rarely equivalent to financial statement audits conducted in accordance with GAAS and GAAP. Indeed, we often modify our procedures to accommodate the unique aspects of each engagement. An accountant would typically call this a "review" or perhaps a "performance audit."

Before we even agree to be engaged, we usually review a sample of bills and other key materials to determine whether our services have the potential to be cost-effective and to quote our fee. If we are engaged, we usually start with a preliminary examination of all the bills and readily available information to determine whether issues worth pursuing further might exist. Often this initial review provides enough detail to resolve the client's concerns, thereby making further review by Devil's Advocate unnecessary. When cost-effective, necessary, and feasible, Devil's Advocate can, however, take the bill review further, *e.g.*, by going on-site to the law firm (depending, *e.g.*, on firm cooperation and discovery rules), checking raw data, verifying expense and time entries, interviewing persons with relevant information, and examining other available, relevant information. We can also research outside benchmarks to establish reasonableness, for example, with a survey of published hourly rates in a given jurisdiction, if reliable and readily available.

Assuming that our client already has the basic information we need to review on hand, our examination can be conducted confidentially, without the law firm's cooperation. (In litigation or bill disputes, we must go through counsel and it is rare for us to have the cooperation of opponents, so we work with what is available.) If lawyers cooperate, we can discuss preliminary findings with them and analyze their explanations. If the lawyers do not wish to cooperate, the client should at least notify them, in writing, that they are expected to preserve all billing and work product files. We generally provide an oral or written report on our initial findings and on each additional project we perform. Our reports should be kept confidential.

Although our firm has lawyers working on most engagements, adhering to individual ethical requirements, we are not a law firm and do not have lawyers admitted to practice law in every jurisdiction, so clients should look to their own lawyer for local legal advice. We are acting as expert consultants to your legal team. Our services supplement, not replace, competent, prompt legal advice on your options from a lawyer in your jurisdiction. Keep in mind that otherwise confidential or secret information may have to be disclosed when we are designated to provide expert testimony.

Clients should act promptly because there are deadlines for seeking relief in most situations. Our opinions and reports are confidential and clients should not publish them without first consulting with us and their legal counsel. We cannot guarantee how a billing dispute will ultimately be resolved, but we strive to be cost-effective in every engagement.

If you have any questions, please call John Toothman or Elizabeth McGee at (703) 684-6996.

© DA, LLC 11/1/10

Devil's Advocate, LLC

dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

# Invoice

| Date | Invoice # |
|---|---|
| 3/27/2012 | 1070 |

| Bill To |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Due Date |
|---|
| 3/27/2012 |

| Description | Amount |
|---|---|
| Third and Final Flat Fee for services performed per DA billing agreement, not including DA expenses. Third installment of 45% is due upon delivery of report (by declaration), as provided in the billing terms agreement. Additional work will be billed by the hour using rates in the agreement. | 111,375.00 |

Flat Fee balance per agreement

Balance due upon receipt. Unpaid balances accrue 18% APR compound interest. See our standard DA billing agreement for details. Devils Advocate LLC EIN is 36-4622389.

| Total | $111,375.00 |
|---|---|

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

Exhibit B

Case 1:13-cv-01454-CMH-IDD Document 1-3 Filed 11/26/13 Page 1 of 5 PageID# 27

# Statement

Devil's Advocate, LLC
dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

| Date |
|---|
| 6/8/2012 |

| To: |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Amount Due | Amount Enc. |
|---|---|
| $25,080.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 03/31/2012 | Balance forward | | 0.00 |
| 06/08/2012 | INV #1078. Due 06/08/2012. Post report work (hourly April 12 on) | 25,080.00 | 25,080.00 |
| | Due upon receipt. All unpaid balances accrue compound interest at 18% APR. Our EIN is 36-4622389. See our standard billing agreement for details. | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 25,080.00 | 0.00 | 0.00 | 0.00 | 0.00 | $25,080.00 |

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

Exhibit C

Case 1:13-cv-01454-CMH-IDD Document 1-3 Filed 11/26/13 Page 2 of 5 PageID# 28

Devil's Advocate, LLC

dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

# Invoice

| Date | Invoice # |
|---|---|
| 6/8/2012 | 1078 |

| Bill To |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Due Date |
|---|
| 6/8/2012 |

| Description | Amount |
|---|---|
| Jane K Morrison Esq. 50.9 hours worked at $350/hr. | 17,815.00 |
| John W Toothman, Esq.16.5 hours worked at $400/hr. | 6,600.00 |
| Susan Hope 3.5 hours worked at $190/hr. | 665.00 |

Additional work (billed at hourly rates)

Balance due upon receipt. Unpaid balances accrue 18% APR compound interest. See our standard DA billing agreement for details. Devils Advocate LLC EIN is 36-4622389.

**Total** $25,080.00

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

DA / Grynberg MDL Bill Review

Date 6/8/12

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee | $ Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1204001 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/16/12 | J Toothman | $ 400 | email to Grynberg team regarding fee forfeiture theory for challenging fees (0.4) | 0.4 | $ 160.00 | | 0.4 | $ 160.00 |
| 1204002 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/16/12 | J Morrison | $ 350 | Review all boxes/documents in order to determine an alternative/updated analysis of the work done by the law firms | 2.0 | $ 700.00 | | 2.0 | $ 700.00 |
| 1204003 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/17/12 | J Toothman | $ 400 | Emails with JKM regarding additional project to compile time and fees for joint committee members across all folders/bills (0.4) | 0.4 | $ 160.00 | | 0.4 | $ 160.00 |
| 1204004 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/17/12 | J Morrison | $ 350 | Formulate additional/alternative method for analyzing fees per Joint Committee work timekeepers who billed as members of the Committee and for a specific/identified client and run same by JWT | 1.0 | $ 350.00 | 0.2 | 0.8 | $ 280.00 |
| 1204005 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/19/12 | J Morrison | $ 350 | Review all hours and fees billed by those timekeepers identified (by Schultz Affidavit) as having primary/key responsibilities on the project and analyze same, pulling on-line and hard copy folders to calculate hours for same | 3.0 | $ 1,050.00 | | 3.0 | $ 1,050.00 |
| 1204006 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/20/12 | J Toothman | $ 400 | check in with JKM re status of Grynberg followup project (nc 0.1) | 0.1 | $ 40.00 | 0.1 | 0.0 | $ - |
| 1204007 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/20/12 | J Morrison | $ 350 | Continue to review all hours and fees billed by those timekeepers identified (by Schultz Affidavit) as having primary/key responsibilities on the project and analyze same, pulling on-line and hard copy folders to calculate hours for same | 5.6 | $ 1,960.00 | | 5.6 | $ 1,960.00 |
| 1204008 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/23/12 | J Morrison | $ 350 | Analyze Vinson & Elkins invoices for work done by Charles Tetrault (3.0); finalize Tetrault time entries for Folder # 6 in order to calculate Tetrault's hours and fees for the individual client (3.3) | 6.3 | $ 2,205.00 | | 6.3 | $ 2,205.00 |
| 1204009 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/24/12 | J Morrison | $ 350 | Begin to analyze all work done by Michael Beatty at various law firms, reviewing by hand various folders and calculating the hours billed by Beatty (where possible) | 4.5 | $ 1,575.00 | | 4.5 | $ 1,575.00 |
| 1204010 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/26/12 | J Morrison | $ 350 | Continue to analyze all work done by Michael Beatty at various law firms, reviewing by hand various folders and calculating the hours billed by Beatty (where possible) | 2.2 | $ 770.00 | | 2.2 | $ 770.00 |
| 1204011 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/27/12 | J Toothman | $ 400 | add Susan to Grynberg followup project and check status (nc 0.2); forward status report to Grynberg team on joint committee team analysis (0.2) | 0.4 | $ 160.00 | 0.2 | 0.2 | $ 80.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1204012 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/27/12 | J Morrison | $ 350 | Begin to analyze all work done by Akin & Gump and also Skadden & Arps, reviewing by hand and on-line the hours billed by these two law firms (where possible) and checking submissions for information as well; begin to journal timekeeper habits | 4.0 | $ 1,400.00 | | 4.0 | $ 1,400.00 |
| 1204013 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/28/12 | J Morrison | $ 350 | Continue to "journal" timekeeper habits for all lawyers identified on Committee, noting particular billing habits, lack of detail provided, disarray/status of bills and other information that might be noteworthy for analysis | 2.5 | $ 875.00 | | 2.5 | $ 875.00 |
| 1204014 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/30/12 | S Hope | $ 190 | Review & respond to JWT & JKM emails (nc .2); Download Online Files & email to JKM (nc .5); Review online file folders for timekeeper breakdowns/summaries (3.5) | 4.2 | $ 798.00 | 0.7 | 3.5 | $ 665.00 |
| 1204015 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 4/30/12 | J Morrison | $ 350 | Continue to analyze/journal the billing habits of Joint Committee members (particularly all Michael Beatty submissions) and work with Susan Hope to confirm findings--particularly the lack of timekeeper breakdowns in the submissions to the court | 3.5 | $ 1,225.00 | | 3.5 | $ 1,225.00 |
| 1204016 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/2/12 | J Toothman | $ 400 | update to Grynberg team on status of timekeeper project (0.1); email from Dauer re possible memo on this project (0.1) | 0.2 | $ 80.00 | | 0.2 | $ 80.00 |
| 1204017 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/2/12 | J Morrison | $ 350 | Complete journaling of all Grynberg timekeepers with their billing habits, Creating separate worksheets for each timekeeper in order to keep track of which Clients/folders they represented | 4.0 | $ 1,400.00 | | 4.0 | $ 1,400.00 |
| 1204018 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/4/12 | J Toothman | $ 400 | receive spreadsheets for joint committee timekeper summary and report from JKM and review them (2.1); begin drafting supplemental report for Grynberg MDL regarding fees and hours of jt comm. Members (4.6) | 6.7 | $ 2,680.00 | | 6.7 | $ 2,680.00 |
| 1204019 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/4/12 | J Morrison | $ 350 | Continue to assess the Michael Beatty client folders, creating worksheets For all time billed by MLB on the Grynberg matters over the course of 7 separate folders and update analysis accordingly (4.6); create worksheet with all timekeepers on the Committee and add all individual fees and expenses to same (1.0) | 5.6 | $ 1,960.00 | | 5.6 | $ 1,960.00 |
| 1204020 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/5/12 | J Morrison | $ 350 | Complete analysis of Michael Beatty time billed on Grynberg matter over the course of the litigation (3.7) Update Master Spreadsheet with all timekeepers and send same to JWT (2.0) | 5.7 | $ 1,995.00 | 0.2 | 5.5 | $ 1,925.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1204021 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/7/12 | J Toothman | $ 400 | review summary and joint committee timekeeper summaries from JKM for supplemental report (1.5) | 1.5 | $ 600.00 | | 1.5 | $ 600.00 |
| 1204022 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/8/12 | J Toothman | $ 400 | discuss summaries with JKM for supp report (0.2) | 0.2 | $ 80.00 | 0.2 | 0.0 | $ - |
| 1204023 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/10/12 | J Morrison | $ 350 | Per JWT perform additional work on timekeepers for client review, particularly identifying all companies/entities represented by various firms/timekeepers and tracking same to produce filing with the court regarding our figures for fees for same | 1.5 | $ 525.00 | 0.1 | 1.4 | $ 490.00 |
| 1204024 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/16/12 | J Toothman | $ 400 | review sample of defendants' various replies to Grynberg Opp to sanctions (3.6) | 3.6 | $ 1,440.00 | | 3.6 | $ 1,440.00 |
| 1204025 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/17/12 | J Toothman | $ 400 | prep for conf. call review reply brief by jt defendants (references to our report) (1.7); conf. call with Grynber team re options for response to defendants' many replies (.9) | 2.6 | $ 1,040.00 | | 2.6 | $ 1,040.00 |
| 1204026 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 5/30/12 | J Toothman | $ 400 | tc E Dauer re current status of Special Master and potential tasks for DA (0.2) | 0.2 | $ 80.00 | | 0.2 | $ 80.00 |
| 1204027 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/4/12 | J Toothman | $ 400 | review def's replies re legal fees and sanctions (0.5) | 0.5 | $ 200.00 | | 0.5 | $ 200.00 |
| 1204028 | 1078 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/7/12 | J Toothman | $ 400 | tc Dauer re projects to do (0.2); forward notes to JKM (nc 0.1) | 0.3 | $ 120.00 | 0.1 | 0.2 | $ 80.00 |
| | | | | | | | | Totals | 72.7 | $ 25,628.00 | 1.8 | 70.9 | $ 25,080.00 |

# Statement

Devil's Advocate, LLC
dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

| Date |
|---|
| 7/23/2012 |

| To: |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Amount Due | Amount Enc. |
|---|---|
| $51,570.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 09/30/2011 | Balance forward | | 0.00 |
| 12/08/2011 | INV #1063. Due 12/08/2011. Initial payment on percentage fee (25%) | 61,875.00 | 61,875.00 |
| 12/16/2011 | PMT #wire transfer. | -61,875.00 | 0.00 |
| 01/13/2012 | INV #1066. Due 01/13/2012. Second flat fee installment | 74,250.00 | 74,250.00 |
| 01/18/2012 | PMT | -74,250.00 | 0.00 |
| 03/27/2012 | INV #1070. Due 03/27/2012. Flat fee balance | 111,375.00 | 111,375.00 |
| 03/29/2012 | PMT | -111,375.00 | 0.00 |
| 06/08/2012 | INV #1078. Due 06/08/2012. Post report work (hourly April 12 on) | 25,080.00 | 25,080.00 |
| 07/23/2012 | INV #1081. Due 07/23/2012. Post report & post recusal work, ongoing | 26,490.00 | 51,570.00 |

Due upon receipt. All unpaid balances accrue compound interest at 18% APR. Our EIN is 36-4622389. See our standard billing agreement for details.

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 26,490.00 | 0.00 | 25,080.00 | 0.00 | 0.00 | $51,570.00 |

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

Exhibit D

Case 1:13-cv-01454-CMH-IDD Document 1-4 Filed 11/26/13 Page 2 of 5 PageID# 33

Devil's Advocate, LLC

dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

# Invoice

| Date | Invoice # |
|---|---|
| 7/23/2012 | 1081 |

| Bill To |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Due Date |
|---|
| 7/23/2012 |

| Description | Amount |
|---|---|
| Jane K Morrison Esq. 59 hours worked at $350/hr. | 20,650.00 |
| John W Toothman, Esq. 14.6 hours worked at $400/hr. | 5,840.00 |

Additional work (billed at hourly rates)

Balance due upon receipt. Unpaid balances accrue 18% APR compound interest. See our standard DA billing agreement for details. Devils Advocate LLC EIN is 36-4622389.

**Total** $26,490.00

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1207001 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/8/12 | J Morrison | $ 350 | Conference with JWT re additional/new projects requested by client, particularly representative samples from all 34 on-line folders (.3); | 0.3 | $ 105.00 | 0.3 | 0.0 | $ - |
| 1207002 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/8/12 | J Morrison | $ 350 | review files to date (on-line and hard copies) in order to determine how to approach this task and begin to cull documents for same (1.5) | 1.5 | $ 525.00 | | 1.5 | $ 525.00 |
| 1207003 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/11/12 | J Morrison | $ 350 | Beginning with Joint Defense fees (all in Folder # 1), begin to cull representative coded time/time entries per request of client for same | 3.0 | $ 1,050.00 | | 3.0 | $ 1,050.00 |
| 1207004 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/13/12 | J Morrison | $ 350 | Complete with Joint Defense fees (Folder #1), with representative samples and/or problem time for all 8 law firms who billed time in Joint Fees | 3.8 | $ 1,330.00 | | 3.8 | $ 1,330.00 |
| 1207005 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/14/12 | J Morrison | $ 350 | Continue with review of remaining 33 on-line folders to create separate worksheets for each law firm (more than one law firm per client in instances such as El Paso Defendants) and analyze time entries for representative samples (5-7 per firm) | 4.3 | $ 1,505.00 | | 4.3 | $ 1,505.00 |
| 1207006 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/15/12 | J Morrison | $ 350 | Continue with review of remaining 33 on-line folders to create separate worksheets for each law firm (more than one law firm per client in instances such as El Paso Defendants) and analyze time entries for representative samples (5-7 per firm) | 4.0 | $ 1,400.00 | | 4.0 | $ 1,400.00 |
| 1207007 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/18/12 | J Morrison | $ 350 | Continue with review of remaining 33 on-line folders to create separate worksheets for each law firm (more than one law firm per client in instances such as Questar Defendants) and locate representative samples (5-7 per firm) | 6.2 | $ 2,170.00 | | 6.2 | $ 2,170.00 |
| 1207008 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/19/12 | J Morrison | $ 350 | Continue with review of remaining 33 on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders 6 through 10 in their entirety | 7.0 | $ 2,450.00 | | 7.0 | $ 2,450.00 |
| 1207009 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/20/12 | J Morrison | $ 350 | Continue with review of remaining 18 on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per Firm, confirming fees billed with claims (hard copy documents for same) with folders | 5.0 | $ 1,750.00 | | 5.0 | $ 1,750.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1207010 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/21/12 | J Morrison | $ 350 | Continue with review of remaining 18 on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders | 3.5 | $ 1,225.00 | | 3.5 | $ 1,225.00 |
| 1207011 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/21/12 | J Toothman | $ 400 | conference call (Jatko, Dauer, et al.) re status of Special Master referral and potential tasks, including affidavit (0.6) | 0.6 | $ 240.00 | | 0.6 | $ 240.00 |
| 1207012 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/22/12 | J Morrison | $ 350 | Continue with review of remaining 16 on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders | 5.0 | $ 1,750.00 | | 5.0 | $ 1,750.00 |
| 1207013 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 6/25/12 | J Morrison | $ 350 | Grynberg Continue with review of remaining 16 on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders (completing 31 full folders to date) | 5.6 | $ 1,960.00 | | 5.6 | $ 1,960.00 |
| 1207014 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/11/12 | J Morrison | $ 350 | Continue with review of remaining on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders (completing 32 full folders to date) | 3.6 | $ 1,260.00 | | 3.6 | $ 1,260.00 |
| 1207015 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/11/12 | J Morrison | $ 350 | Continue with review of remaining on-line folders to create separate worksheets for each law firm (more than one law firm per client in some cases and locate representative samples (5-7 per firm) with spreadsheet prepared per firm, confirming fees billed with claims (hard copy documents for same) with folders (completing all 34 folders) (3.0) | 3.0 | $ 1,050.00 | | 3.0 | $ 1,050.00 |
| 1207016 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/12/12 | J Morrison | $ 350 | Begin review of work to ensure that all folders are completely represented (1.0) | 1.0 | $ 350.00 | | 1.0 | $ 350.00 |
| 1207017 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/12/12 | J Toothman | $ 400 | tc Porter & Barkley re documentation of requests and issues with def's fee production (0.2) | 0.2 | $ 80.00 | | 0.2 | $ 80.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1207018 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/13/12 | J Morrison | $ 350 | Review Spreadsheet with representative samples, updating samples where necessary, spell checking work and figures (for fees claimed) from Proposed Orders and/or Applications for Fees; finalize all work to send same to JWT before vacation | 2.5 | $ 875.00 | | 2.5 | $ 875.00 |
| 1207019 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/13/12 | J Toothman | $ 400 | start review of emails and notes for summary of document condition issues (1.2); email to J. Morrison re additional Grynberg questions and tasks (nc 0.2) | 1.4 | $ 560.00 | 0.2 | 1.2 | $ 480.00 |
| 1207020 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/15/12 | J Toothman | $ 400 | email from Morrison with examples of problems from non-committee fee claims (nc 0.2) | 0.2 | $ 80.00 | 0.2 | 0.0 | $ - |
| 1207021 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/16/12 | J Toothman | $ 400 | continue email review for discussion (3.4); email to Porter et al re call and review of emails (nc 0.2); conf. call Porter, Barkley, Dauer re document condition issues, etc. (0.3); email J. Morrison re additional notes needed for summary of problems with non-committee folder submissions on fees (nc 0.1) | 4.0 | $ 1,600.00 | 0.3 | 3.7 | $ 1,480.00 |
| 1207022 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/17/12 | J Toothman | $ 400 | continue email review and preparation of chronology of document issue communications (5.8); email to Porter, et al re the chronology (0.2); review and edit Morrison's spreadsheet with problem time examples (2.1) | 8.1 | $ 3,240.00 | | 8.1 | $ 3,240.00 |
| 1207023 | 1081 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/18/12 | J Toothman | $ 400 | continue review and edit Morrison summary spreadsheet with problem examples from def client fees (non-committee) (0.8) | 0.8 | $ 320.00 | | 0.8 | $ 320.00 |
| | 1081 Total | | | | | | | | 74.6 | $ 26,875.00 | 1.0 | 73.6 | $ 26,490.00 |

# Statement

Devil's Advocate, LLC
dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

| Date |
|---|
| 8/21/2012 |

| To: |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Amount Due | Amount Enc. |
|---|---|
| $91,164.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 01/01/2012 | Balance forward | | 0.00 |
| 01/13/2012 | INV #1066. Due 01/13/2012. Second flat fee installment | 74,250.00 | 74,250.00 |
| 01/18/2012 | PMT | -74,250.00 | 0.00 |
| 03/27/2012 | INV #1070. Due 03/27/2012. Flat fee balance | 111,375.00 | 111,375.00 |
| 03/29/2012 | PMT | -111,375.00 | 0.00 |
| 06/08/2012 | INV #1078. Due 06/08/2012. Post report work (hourly April 12 on) | 25,080.00 | 25,080.00 |
| 07/23/2012 | INV #1081. Due 07/23/2012. Post report & post recusal work, ongoing | 26,490.00 | 51,570.00 |
| 08/21/2012 | INV #1088. Due 08/21/2012. Additional work (master spreadsheet, etc.) | 39,594.00 | 91,164.00 |

Due upon receipt. All unpaid balances accrue compound interest at 18% APR. Our EIN is 36-4622389. See our standard billing agreement for details.

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 39,594.00 | 26,490.00 | 0.00 | 25,080.00 | 0.00 | $91,164.00 |

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

Exhibit E

Devil's Advocate, LLC

dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

# Invoice

| Date | Invoice # |
|---|---|
| 8/21/2012 | 1088 |

| Bill To |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Due Date |
|---|
| 8/21/2012 |

| Description | Amount |
|---|---|
| Jane K Morrison Esq. 56.9 hours worked at $350/hr. | 19,915.00 |
| John W Toothman, Esq.0.7 hours worked at $400/hr. | 280.00 |
| Susan Hope 102.1 hours worked at $190/hr. | 19,399.00 |

Additional work (billed at hourly rates)

Balance due upon receipt. Unpaid balances accrue 18% APR compound interest. See our standard DA billing agreement for details. Devils Advocate LLC EIN is 36-4622389.

| Total | $39,594.00 |
|---|---|

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1208001 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/13/12 | S Hope | $ 190 | Review & respond to JKM email re: cleaning, reconciling File Folder #16 (.2); Clean, reconcile File Folder #16 (4.0) | 4.2 | $ 798.00 | 0.2 | 4.0 | $ 760.00 |
| 1208002 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/14/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (4.0) | 4.0 | $ 760.00 | | 4.0 | $ 760.00 |
| 1208003 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/15/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (1.0) | 1.0 | $ 190.00 | | 1.0 | $ 190.00 |
| 1208004 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/16/12 | J Morrison | $ 350 | Review latest spreadsheet and ensure that all folders/worksheets are coded and then review earlier JKM work on Folder #16 (Enogex) and prep same for Susan Hope to continue project (3.5) | 3.5 | $ 1,225.00 | | 3.5 | $ 1,225.00 |
| 1208005 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/17/12 | J Morrison | $ 350 | Complete coding of representative samples of problem time per client request (all folders) (1.0); | 1.0 | $ 350.00 | | 1.0 | $ 350.00 |
| 1208006 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/17/12 | J Morrison | $ 350 | Supplement information on Status/state of various paper and electronic invoices per JWT request for same (1.5) | 1.5 | $ 525.00 | 1.5 | 0.0 | $ - |
| 1208007 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/23/12 | J Toothman | $ 400 | tc R. Jatko re status and potential projects for special master proceedings, timing/hold on projects pending Grynberg fee concerns (0.3) | 0.3 | $ 120.00 | | 0.3 | $ 120.00 |
| 1208008 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/23/12 | S Hope | $ 190 | Review & respond to JKM emails (.2); Clean, reconcile File Folder #16 (4.0) | 4.2 | $ 798.00 | 0.2 | 4.0 | $ 760.00 |
| 1208009 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/24/12 | J Toothman | $ 400 | respond to Dauer email re summary of fee claims by case no. (0.2) | 0.2 | $ 80.00 | | 0.2 | $ 80.00 |
| 1208010 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/24/12 | S Hope | $ 190 | Review & respond to JKM emails (.2); Clean, reconcile File Folder #16 (4.5) | 4.7 | $ 893.00 | 0.2 | 4.5 | $ 855.00 |
| 1208011 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/24/12 | J Morrison | $ 350 | Folder #5- clean/reconcile and code Schultz & Schultz fees as well as Schultz & Belcher fees; (1.0); | 1.0 | $ 350.00 | | 1.0 | $ 350.00 |
| 1208012 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/24/12 | J Morrison | $ 350 | Folder # 9 Prepare 73 pages of Charles Tetrault time for coding and reconciliation of fees (1.0) | 1.0 | $ 350.00 | | 1.0 | $ 350.00 |
| 1208013 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/24/12 | J Morrison | $ 350 | Folder # 9 Begin to insert internal breakdowns of 1675 lines of time entries (2.0) | 2.0 | $ 700.00 | | 2.0 | $ 700.00 |
| 1208014 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/25/12 | S Hope | $ 190 | Review & respond to JKM emails (.1); Clean, reconcile File Folder #16 (6.0) | 6.1 | $ 1,159.00 | 0.1 | 6.0 | $ 1,140.00 |
| 1208015 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/25/12 | J Morrison | $ 350 | Continue to create internal breakdowns (16.5 pages) for Folder #9 (Chas. Tetrault time entries) (24.5 pages done to date) | 4.3 | $ 1,505.00 | | 4.3 | $ 1,505.00 |
| 1208016 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/26/12 | J Toothman | $ 400 | respond to Dauer email re breakout of time for conference calls and other mass events (0.2); review and respond to second Dauer email on same project (nc 0.1) | 0.3 | $ 120.00 | 0.1 | 0.2 | $ 80.00 |
| 1208017 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/26/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (5.0) | 5.0 | $ 950.00 | | 5.0 | $ 950.00 |
| 1208018 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/26/12 | J Morrison | $ 350 | Continue to create internal breakdowns for Chas. Tetrault time in Folder # 9 (41.0 pages done to date) | 4.2 | $ 1,470.00 | | 4.2 | $ 1,470.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1208019 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/27/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (6.0) | 6.0 | $ 1,140.00 | | 6.0 | $ 1,140.00 |
| 1208020 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/28/12 | J Morrison | $ 350 | Continue to create internal breakdowns for Chas. Tetrault time in Folder # 9 (57.0 pages done to date) | 4.0 | $ 1,400.00 | | 4.0 | $ 1,400.00 |
| 1208021 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/29/12 | J Morrison | $ 350 | Complete internal breakdowns for Chas. Tetrault time in Folder # 9 (all 73 pages With internal breakdowns (4.1); | 4.1 | $ 1,435.00 | | 4.1 | $ 1,435.00 |
| 1208022 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/29/12 | J Morrison | $ 350 | Locate rates for various timekeepers from court documents and other sources and reconcile 2100+ hours Of billed time for all V&E timekeepers, including rate changes (1.5) | 1.5 | $ 525.00 | | 1.5 | $ 525.00 |
| 1208023 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/30/12 | S Hope | $ 190 | Review & respond to JWT email (.1); Review Pacer dockets and online file folders for Venice Energy Ex 1 (1.0); Clean, reconcile File Folder #16 (5.0). Time entry (.1). | 6.2 | $ 1,178.00 | 0.1 | 6.1 | $ 1,159.00 |
| 1208024 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/31/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (5.0) | 5.0 | $ 950.00 | | 5.0 | $ 950.00 |
| 1208025 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/31/12 | J Morrison | $ 350 | Reconcile Folder #9 expenses; complete reconcile of timekeeper hours and fees; (.7) | 0.7 | $ 245.00 | | 0.7 | $ 245.00 |
| 1208026 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 7/31/12 | J Morrison | $ 350 | Begin to code 932K in fees for Transwestern (Folder #9, Vinson & Elkins) | 2.3 | $ 805.00 | | 2.3 | $ 805.00 |
| 1208027 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/1/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (6.0). Time entry (.1). | 6.1 | $ 1,159.00 | 0.1 | 6.0 | $ 1,140.00 |
| 1208028 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/1/12 | J Morrison | $ 350 | Code 1500 (of 4970 lines) of Folder #9 (Vinson & Elkins) (1.5) | 1.5 | $ 525.00 | | 1.5 | $ 525.00 |
| 1208029 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/1/12 | J Morrison | $ 350 | Final review/clean of Folder #33 and begin to code same; complete coding and analysis of timekeepers on Folder # 33 (Fulbright & Jaworski) and review all time entries to confirm cut-off tim eentries which are all coded "qu" ; prepare problem codes worksheet for same and complete all work on this folder (152K in fees) (2.5) | 2.5 | $ 875.00 | | 2.5 | $ 875.00 |
| 1208030 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/2/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (6.0) | 6.0 | $ 1,140.00 | | 6.0 | $ 1,140.00 |
| 1208031 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/2/12 | J Morrison | $ 350 | Code an additional 1500 lines of Folder #9 (Vinson & Elkins) (total is 3500 lines Coded to date) and make any/call changes to masterspreadsheet to account for Errors in creating discrete time entries and begin to prepare filters worksheet for same | 3.8 | $ 1,330.00 | | 3.8 | $ 1,330.00 |
| 1208032 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/3/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (5.0) | 5.0 | $ 950.00 | | 5.0 | $ 950.00 |
| 1208033 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/3/12 | J Morrison | $ 350 | Complete coding all lines of Folder #9 (933K in fees); run 50+ filters on all time Entries and re-reconcile timekeeper hours and fees; complete analysis of Folder #9 | 3.3 | $ 1,155.00 | | 3.3 | $ 1,155.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1208034 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (8.0) | 8.0 | $ 1,520.00 | | 8.0 | $ 1,520.00 |
| 1208035 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | J Morrison | $ 350 | Create discrete Vinson & Elkins time entries for Folder #11 (14 pages, 64 K in fees) (3.4); | 3.4 | $ 1,190.00 | | 3.4 | $ 1,190.00 |
| 1208036 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | J Morrison | $ 350 | insert all rates and then code all 1000 lines of Folder #11 time entries (1.5) | 1.5 | $ 525.00 | | 1.5 | $ 525.00 |
| 1208037 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | J Morrison | $ 350 | Complete problem code analysis for Folder # 11 (.2) | 0.2 | $ 70.00 | | 0.2 | $ 70.00 |
| 1208038 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | J Morrison | $ 350 | Scan and review all expenses for Folder # 11;(.1) | 0.1 | $ 35.00 | | 0.1 | $ 35.00 |
| 1208039 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/6/12 | J Morrison | $ 350 | review work done to date and update Status Worksheet to account for all coded folders done to date (.3) | 0.3 | $ 105.00 | | 0.3 | $ 105.00 |
| 1208040 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/7/12 | S Hope | $ 190 | continue Clean, reconcile File Folder #16 (6.0) | 6.0 | $ 1,140.00 | | 6.0 | $ 1,140.00 |
| 1208041 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/7/12 | J Morrison | $ 350 | Folder # 10 Clean and reconcile $314,632.50 in V&E fees, inserting rates for all timekeepers (.7 error on Tetrault) & create month column for same (2.0) | 2.0 | $ 700.00 | | 2.0 | $ 700.00 |
| 1208042 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/7/12 | J Morrison | $ 350 | Folder #10 Review April 2102 work and begin to code 3600+ lines of time entries (3.5) | 3.5 | $ 1,225.00 | | 3.5 | $ 1,225.00 |
| 1208043 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/8/12 | S Hope | $ 190 | continue Clean, reconcile File Folder #16 (5.5) | 5.5 | $ 1,045.00 | | 5.5 | $ 1,045.00 |
| 1208044 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/8/12 | J Morrison | $ 350 | Complete coding & run filters on 70+ time descriptions/common words Folder #10 | 1.3 | $ 455.00 | | 1.3 | $ 455.00 |
| 1208045 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/8/12 | J Morrison | $ 350 | Folder #10 complete analysis of all problem time, ensuring code consistency and creating a Problem Time worksheet for 314K in fees (4.2) | 3.9 | $ 1,365.00 | | 3.9 | $ 1,365.00 |
| 1208046 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/9/12 | S Hope | $ 190 | continue Clean, reconcile File Folder #16 (6.0) | 6.0 | $ 1,140.00 | | 6.0 | $ 1,140.00 |
| 1208047 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/10/12 | S Hope | $ 190 | continue Clean, reconcile File Folder #16 (7.0) | 7.0 | $ 1,330.00 | | 7.0 | $ 1,330.00 |
| 1208048 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/11/12 | S Hope | $ 190 | continue Clean, reconcile File Folder #16 (4.0) | 4.0 | $ 760.00 | | 4.0 | $ 760.00 |
| 1208049 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/12/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (3.0). | 3.0 | $ 570.00 | | 3.0 | $ 570.00 |
| 1208050 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/17/12 | J Toothman | $ 400 | exchange emails with Dauer et al regarding status of dates project (nc 0.2) | 0.2 | $ 80.00 | 0.2 | 0.0 | $ - |
| 1208051 | 1088 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/20/12 | J Toothman | $ 400 | email to Dauer et al re status of projects and hold (nc 0.3) | 0.3 | $ 120.00 | 0.3 | 0.0 | $ - |
| | 1088 Total | | | | | | | | 162.7 | $ 40,530.00 | 3.0 | 159.7 | $ 39,594.00 |

# Statement

Devil's Advocate, LLC
dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

| Date |
|---|
| 8/31/2012 |

| To: |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Amount Due | Amount Enc. |
|---|---|
| $110,696.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 11/30/2011 | Balance forward | | 0.00 |
| 12/08/2011 | INV #1063. Due 12/08/2011. Initial payment on percentage fee (25%) | 61,875.00 | 61,875.00 |
| 12/16/2011 | PMT #wire transfer. | -61,875.00 | 0.00 |
| 01/13/2012 | INV #1066. Due 01/13/2012. Second flat fee installment | 74,250.00 | 74,250.00 |
| 01/18/2012 | PMT | -74,250.00 | 0.00 |
| 03/27/2012 | INV #1070. Due 03/27/2012. Flat fee balance | 111,375.00 | 111,375.00 |
| 03/29/2012 | PMT | -111,375.00 | 0.00 |
| 06/08/2012 | INV #1078. Due 06/08/2012. Post report work (hourly April 12 on) | 25,080.00 | 25,080.00 |
| 07/23/2012 | INV #1081. Due 07/23/2012. Post report & post recusal work, ongoing | 26,490.00 | 51,570.00 |
| 08/21/2012 | INV #1088. Due 08/21/2012. Additional work (master spreadsheet, etc.) | 39,594.00 | 91,164.00 |
| 08/31/2012 | INV #1090. Due 08/31/2012. Stop work | 19,532.00 | 110,696.00 |
| | Due upon receipt. All unpaid balances accrue compound interest at 18% APR. Our EIN is 36-4622389. See our standard billing agreement for details. | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 19,532.00 | 39,594.00 | 26,490.00 | 25,080.00 | 0.00 | $110,696.00 |

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

Exhibit F

Devil's Advocate, LLC

dba TLF Consulting &
The Devil's Advocate
PO Box 8
Great Falls, VA 22066

# Invoice

| Date | Invoice # |
|---|---|
| 8/31/2012 | 1090 |

| Bill To |
|---|
| Grynberg Petroleum Co.<br>Roger A Jatko, Esq.<br>3600 S. Yosemite St., Ste 900<br>Denver, CO 80237 |

| Due Date |
|---|
| 8/31/2012 |

| Description | Amount |
|---|---|
| Jane K Morrison Esq.43.7 hours worked at $350/hr. | 15,295.00 |
| Susan Hope 22.3 hours worked at $190/hr. | 4,237.00 |
| All further work has been suspended pending payment | |
| Additional work (billed at hourly rates) | |
| Balance due upon receipt. Unpaid balances accrue 18% APR compound interest. See our standard DA billing agreement for details. Devils Advocate LLC EIN is 36-4622389. | |

| Total | $19,532.00 |
|---|---|

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 703-684-6996 | 202-499-7011 | JToothman@DevilsAdvocate.com | www.DevilsAdvocate.com |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1208053 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/13/12 | J Morrison | $ 350 | Beatty Fees Folder #34 (Apache MDL, 206 pages) Begin Fee Reconcile of invoices for Years 2004 thru 2010, completing reconcile of all invoices for years of 2004 and 2005 | 6.2 | $ 2,170.00 | | 6.2 | $ 2,170.00 |
| 1208054 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/13/12 | S Hope | $ 190 | Review & respond to JWT email (.1); Clean, reconcile File Folder #16 (4.0) | 4.1 | $ 779.00 | 0.1 | 4.0 | 760.0 |
| 1208055 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/14/12 | J Morrison | $ 350 | Grynberg Continue to reconcile Folder #34 (Advisory/El Paso) for calendar year 2006 | 1.0 | $ 350.00 | | 1.0 | $ 350.00 |
| 1208056 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/14/12 | S Hope | $ 190 | Clean, reconcile File Folder #16 (4.0) | 4.0 | $ 760.00 | | 4.0 | 760.0 |
| 1208057 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/15/12 | J Morrison | $ 350 | Continue to reconcile Folder #34 ( Advisory/El Paso) for 2006 thru 2010, including reconciling fees by invoice # to cross-reference same for accuracy | 6.2 | $ 2,170.00 | | 6.2 | $ 2,170.00 |
| 1208058 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/15/12 | S Hope | $ 190 | Clean, reconcile File Folder #16, Conner & Winters, Enogex & OG&E (clean pdf to Excel transfer, set up data in Excel chart, enter rate for each timekeeper & calculate fees, clean/reconcile expenses, total each invoice (fees & expenses), edit/proofread each entry (2.7) | 2.7 | $ 513.00 | | 2.7 | 513.0 |
| 1208059 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/16/12 | J Morrison | $ 350 | Complete initial reconcile of Folder #34 and begin to combine all sets of invoices from 206 pages of documents (which appear to be submitted to the court in random, out of date order) (5.5) | 5.5 | $ 1,925.00 | | 5.5 | $ 1,925.00 |
| 1208060 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/16/12 | J Morrison | $ 350 | review Folder # 5 (86 pages of Holland & Hart invoices and begin to reconcile same (1.7) | 1.7 | $ 595.00 | | 1.7 | $ 595.00 |
| 1208061 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/16/12 | S Hope | $ 190 | Review & respond to JKM email (.2); Clean, reconcile File Folder #16, Conner & Winters, Enogex & OG&E (clean pdf to Excel transfer, set up data in Excel chart, enter rate for each timekeeper & calculate fees, clean/reconcile expenses, total each invoice (fees & expenses), edit/proofread each entry (2.9) | 3.1 | $ 589.00 | 0.2 | 2.9 | 551.0 |
| 1208062 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/17/12 | J Morrison | $ 350 | Complete reconcile of Holland & Hart invoices for Folder # 5 (86 pages) and begin to code same (fees before discounts total 580K) | 5.5 | $ 1,925.00 | | 5.5 | $ 1,925.00 |
| 1208063 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/17/12 | S Hope | $ 190 | Clean, reconcile File Folder #16, Conner & Winters, Enogex & OG&E (clean pdf to Excel transfer, set up data in Excel chart, enter rate for each timekeeper & calculate fees, clean/reconcile expenses, total each invoice (fees & expenses), edit/proofread each entry (3.4) | 3.4 | $ 646.00 | | 3.4 | 646.0 |
| 1208064 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/18/12 | J Morrison | $ 350 | Folder # 5 Complete preliminary coding of Holland & Hart invoices (580K in fees) (3.7) | 3.7 | $ 1,295.00 | | 3.7 | $ 1,295.00 |
| 1208065 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/18/12 | J Morrison | $ 350 | complete daily totals, timekeeper totals, long days and problem code analysis for Folder # 5 (2.6) | 2.6 | $ 910.00 | | 2.6 | $ 910.00 |
| 1208066 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/19/12 | J Morrison | $ 350 | Review folders completed to date and sent update to JWT with status and specifics on outstanding work (per request of client update on same) | 2.3 | $ 805.00 | 0.2 | 2.1 | $ 735.00 |
| 1208067 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/20/12 | J Morrison | $ 350 | Folder # 34 Continue to reconcile all remaining invoices in 206 page batch of invoices; & create Master of all fees claimed in Folder #34 (4.0) | 4.0 | $ 1,400.00 | | 4.0 | $ 1,400.00 |
| 1208068 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/20/12 | J Morrison | $ 350 | Folder # 23 clean, reconcile and then code (Agave) Vinson & Elkin fees totaling 42K (2.2) | 2.2 | $ 770.00 | | 2.2 | $ 770.00 |

| Seq # | Inv. # | Firm | Client | Matter | Date | Tkpr | Rate | Description | Time | Fee $ | Write off | Net Time | Net Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1208069 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/20/12 | S Hope | $ 190 | Clean, reconcile File Folder #16, Conner & Winters, Enogex & OG&E (clean pdf to Excel transfer, set up data in Excel chart, enter rate for each timekeeper & calculate fees, clean/reconcile expenses, total each invoice (fees & expenses), edit/proofread each entry (2.9) | 2.9 | $ 551.00 | | 2.9 | 551.0 |
| 1208070 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/21/12 | J Morrison | $ 350 | Folder # 34 Complete reconcile of all remaining invoices (206 pages total) and add same to Master of all fees claimed in Folder #34, cleaning up all stray time entries as necessary | 3.0 | $ 1,050.00 | | 3.0 | $ 1,050.00 |
| 1208071 | 1090 | DA | Grynberg Petroleum | MDL Sanctions (Post Report) | 8/21/12 | S Hope | $ 190 | Review & respond to JWT emails (.2); Clean, reconcile File Folder #16, Conner & Winters, Enogex & OG&E (edit/re-format columns prior to generating timekeeper breakdowns, generate totals for all Conner & Winters fees and expenses, generate table for timekeeper breakdowns, note timekeeper full names in addition to initials, generate timekeeper breakdown average rate, total timekeeper breakdown total hours and fees, add sequence # for charts, finalize Conner & Winters spreadsheet, finalize McKinney & Stringer spreadsheet, finalize Ryan Whaley spreadsheet, total all invoices (fees, expenses & hours), email to JKM, organize documents) (2.4) | 2.6 | $ 494.00 | 0.2 | 2.4 | 456.0 |
| | | | | | | | | Totals | 66.7 | $ 19,697.00 | 0.7 | 66.0 | $ 19,532.00 |

1:13cv1454
CMH/IDD

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

RECEIVED

**I. (a) PLAINTIFFS**
Devil's Advocate, LLC

(b) County of Residence of First Listed Plaintiff Fairfax
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
John Toothman
PO Box 8
Great Falls VA 22066 703-739-2660

**DEFENDANTS**
Grynberg Petroleum Co. & Jack J. Grynberg

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

2013 NOV 26 P 1:42
CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
diversity 28 USC 1332.
Brief description of cause:
Breach of expert consulting services contract and fraud

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $** 1,300,000.00
CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ____ DOCKET NUMBER ____

DATE
11/26/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

In re:

NATURAL GAS ROYALTIES *QUI TAM* LITIGATION

MDL Docket No. 1:99-MD-01293-SWS

Declaration of John W. Toothman, Esq.
Regarding Defendants' Claims for Legal Fees & Expenses

I, John W. Toothman, depose and state as follows:

1. I am an attorney admitted to practice in the District of Columbia and Virginia, as well as various federal and other courts. This declaration is based on my personal knowledge and information I find to be reliable. All my expert opinions are expressed to a reasonable degree of professional certainty. I am over the age of 21.

2. My firm was retained by the Relator ("Grynberg") to review legal fee and expense claims arising in *In re Natural Gas Royalties Qui Tam Litigation*, 99-MD-1293 (MDL D. Wyo.). This is my summary report on our analysis of approximately $26 million in legal fees and $2.1 million more in expenses submitted by 33 clusters of defendants (with related companies represented by the same or overlapping groups of firms), plus an additional combined submission on behalf of the "Joint Defense Committee."[1] (The combined Joint Committee submission

[1] The ten firms on the Joint Defense Committee have submitted claims for $9.7 million in fees plus $1.4 million in expenses. (The actual fee total is $9.8 million as submitted, Exhibit D.) The Joint Committee claim is for 48,180.20 hours. Ex. D. Including these joint committee amounts, plus claims for other (non-joint) fees and expenses of these firms, plus additional firms not on the joint committee, the total sought is said to be $21.3 million in fees plus $1.2 million in costs. We could not confirm that total from the defendants' actual submissions, which exceeded that by millions of dollars for unexplained reasons. The claims, as submitted, actually total $26,074,123.30 for fees and $2,134,162.38 in expenses as best we can tell.

(continued...)

Exhibit A

includes submissions by law firms that also made one or more submissions on behalf of individual defendants.) Many, but not all of the defendants have submitted claims for fees and expenses pursuant to an Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. § 3730(d)(4), entered July 22, 2011, which Relator opposes.

3. These fees and expenses are not sought pursuant to a typical fee-shifting situation. They are, instead, a predicate for setting an amount to be found by the Court as the sanction. This report addresses whether these predicate submissions and the fees and expenses they are designed to prove are reasonable or instead inappropriate, unnecessary, or excessive in one or more ways. There are limits on what constitute *reasonable* fees and expenses. To assess the reasonableness of legal fees and expenses, courts normally start with a lodestar analysis (considering the reasonableness of the time claimed to have been expended, multiplied by reasonable hourly rates). Other factors are typically considered as well, depending on the relevant standard and circumstances. This report provides expert analysis and information to assist the Court in making that assessment, but not in establishing the sanction, *i.e.*, our opinions do not indicate, for example, that an appropriate sanction would be whatever amount we believe to be the ceiling on reasonable fees and expenses.

---

[1](...continued)

It appears that some firms submitted bills for amounts in excess of the claims they made or made duplicate or partially duplicate claims for their fees. There are also excess amounts caused by submission of bills that were written off, discounted, or the like. Sometimes the firm submitted bills for an individual client claim, but expressed an overlapping claim to the joint defense fees and expenses. In that instance, there would be duplicative or excess claims by the joint defense firms who claimed they did the work for the committee and the other clients or firms apparently seeking to claim reimbursement for their prior payments to these joint defense firms. Payment of both amounts would therefore constitute a double payment, with quantities in the millions of dollars.

4. *Fee & Case Management*: To manage the Grynberg Qui Tam case, a committee of ten law firms, many of them large firms with offices in Denver or Washington, DC, for example, who billed for many timekeepers and millions of dollars, were appointed to coordinate the defense. That committee, in turn, appointed Holland & Hart as "coordinating counsel" and Mr. Schultz has served as that coordinating counsel, as well as defendants' liaison counsel. *Affidavit of Donald I. Schultz in Support of Defendants' Claims for Jointly-incurred Attorney's Fees and Expenses*, Para. 2 - 8 (Doc. No. 2200-1, Filed Oct. 7, 2011) ("Schultz Affidavit"). Mr. Schultz has managed, for example, "joint defense project work" and "supervised issued bills" to pay the various law firms assigned tasks by the committee. (I am not addressing the appropriateness of the allocation they made of work or payments among the defendants and law firms, just the net effect on fees and expenses.)

5. I found nothing to explain why so many firms billed so much for a case resolved on preliminary jurisdictional motions without extensive discovery, for example. While the deposition of Mr. Grynberg, for example, took many days and he would not consent to attending in any defense counsel's office – a common problem – the deposition was still just a deposition and defendants took it for weeks. This is one of a small number of anecdotes defendants have to explain their enormous fees and blame them on Grynberg, but they do not amount to a foundation for $22 million or more in fees and expenses.

6. Nor did we find any explanation why the joint committee billed $11 million in fees and expenses, yet the residual defendants are claiming an even larger number, including additional bills from the joint committee firms, who should already have been well-informed by the joint committee financed work. Paragraph 19 of the Schultz Affidavit talks about the Court's

efforts to have defendants coordinate filings and limit the number of lawyers billing for "oral arguments and scheduling conferences." This coordination apparently occurred at a cost of $11 million: Yet the bills show numerous firms (including joint committee members already involved in making assignments) still working on each project, reviewing the same documents, and billing enormous amounts of time for communications. Exhibit D. Exhibit C, which filtered for various terms in the coded bills shows that 44.8% of all entries (by percent of fees) have one or more references to "review." The intent of the Appointment Order was to make fees actually go down, which they did not, as comparing the substantive filings and activities in the case with the bills now submitted makes plain. You can burn a tank of gas driving a few hundred miles, or the same tank idling in the driveway – there was a massive amount of idling in this case.

7. And, if the joint defense committee fees were being checked as thoroughly as Mr. Schultz's affidavit claims at the time they were paid, defendants should have had no trouble submitting a coherent fee claim here. (We saw no telltale signs that the fees were being managed effectively, such as reductions in hourly rates, reductions in staff, substantial write-offs or write-downs.)[2] Nor are there any records demonstrating the fee management defendants claim.

8. Moreover, given Mr. Schultz's most recent requests to submit modified fees, including a submission he rendered unusable through his inability to generate complete entries

---

[2] Mr. Schultz, Affidavit at Para. 80 - 81 states that the Fulbright firm and the largest "brunt" of the write offs, followed by Holland & Hart and the Beatty firms. These do not appear to be true writeoffs but, especially with Fulbright, an attempt to collect hourly fees in excess of a fee cap (flat fee). The other two firms claim writeoffs over $100K each, but there is no apparent documentation. Mr. Schultz, Para. 89, further explains that Fulbright, "whose commitments to fee caps and fixed prices for some parts of the work caused it to take over $1.3 million in writeoffs while billing just over $4.2 million in fees." Getting paid what you agreed to be paid is not a basis for claiming a "write off" of other types of billing opportunities.

using Microsoft Excel (while refusing to produce the underlying spreadsheet to us), I cannot conclude that the management of joint fees or expenses occurred, let alone minimized the fees and expenses. These bills submitted suggest more of a feeding frenzy, first on each firm's client(s), and now on Relator.

9. Defendants' statements about the lack of in-fighting and harmony among competing law firms and defendants, and their objectives, Schultz Aff. Para. 23-24, belie the absence of effective fee management.[3] The lawyers were not making any objections because they were paid well for what little role they actually had – partly by doing less substantive work and billing for "review" and communications, so the return on their actual investment was low. *See* Exhibit D and C (filter terms). The description of some defendants being concerned about costs, while other defendants wanted a "vigorous defense" against Grynberg personally, is a concern because Mr. Schultz vouches that everyone wanted efficiency in the end and the joint committee reached an "acceptable balance." These goals (cost-effectiveness versus scorched earth litigation) are not equally valid when the issue is reasonable and *necessary* fees – reasonable fees are not a compromise between reasonable fees and excessive fees. It is the lack of necessity for

---

[3] From Paragraph 53, a description of how the work on the first motion to dismiss was distributed: "Douglas G. Robinson, a senior partner in the Washington, D.C. office of Skadden, Arps, Slate, Meagher & Flom LLP, was asked by his client to perform this work and, through the Committee, other defendants ***were offered the opportunity to join and share in the fees and expenses*** for what became an "all cases" joint motion." Noted in the next paragraph is that Mr. Robinson had worked on similar prior litigation by the Relator, indicating that most of the preparation could be recycled. This begs the question why the preparation of a basic motion to dismiss became such a major undertaking, though it certainly explains how it did. And then, in Paragraph 56, Mr. Schultz describes another round of coordination to select Mr. Beatty to present the *oral argument of the same motion, thereby duplicating much of the work done already*. Using two firms plus this entire process to turn the preparation of a basic paper motion, plus the oral argument thereof, into two major tasks demonstrates both why the fees are so excessive and why the fee management process itself exacerbated this problem.

these many layers of time spent to observe, review, and communicate about a small number of necessary projects that reveals their unreasonableness. As Exhibit D shows in detail, and Exhibit C summarizes, 45% of the time entries had time billed for "review," 33.5% working on briefs, 31% drafting, 25% each on conferences and motions, 18% on calls, and so on: 25% of these bills is over $6 million.

10. While the Schultz Affidavit describes in general terms a plan to manage fees, Para. 25-38, they proposed to do this through yet another committee, which acted on "proposals, ... fee budgets, fee caps," and followed the "direction and management of the work." We did not see these documents, especially the "caps," "budgets," and "proposals." Para. 27 & 28. Most especially, this description does not explain how the process, which led to filing several basic motions – like those filed routinely in such cases, with little novelty or real complexity – became a $22 million plus adventure. We did not, for example see bills indicating they were capped or fixed fee engagements that cost Fulbright, for example, over $1 million – we cannot confirm that these excess fees outside the scope of the engagement have not been folded back into this submission. *Id.*

11. While describing it as a management effort, Schultz Affidavit Paragraph 29's list of the steps taken for each project is a formula for unlimited, duplicative, and excessive work on every task.[4] We did not find evidence that firms made "adjustments" or their bills were "reviewed." Para. 30-33. Nor did we see the "pre-bills" shared with Mr. Schultz by some firms

---

[4] *See, e.g.*, Exhibits F3 and F4, which show instances where several firms worked on the same project and where one firm (in this example Beatty) had multiple people attending the same meetings or other events. Beyond one timekeeper, the firms need to justify these extra personnel because this sort of overkill is the primary cause of excessive hours.

– sharing pre-bills, which firms use to camouflage time entries, make write-offs, and the like would also be unusual activity more likely to involve massaging time entries to avoid management, not managing fees. Again, while defendants certainly expended great effort to provide the appearance of fee management, there are no byproducts of that process and, had this management been effective, their submission now should not have been so large nor so botched.

12. Starting at Paragraph 53, Mr. Schultz describes how work was shared among several firms, including assigning preparation of the first motion to dismiss and the oral argument thereof into two, duplicative, projects. There is also an elaborate description of a "Rule 11 Project," Para. 57, et seq., that evolved into this submission, but started as a two firm project to draft a Rule 11 demand letter template. In most instances, the description shows how the work was doled out, mostly among the Joint Defense Committee members, with no accounting for the cost of each project. Such projects included a motion for reconsideration of the original dismissal motion, the ultimately successful jurisdictional motions to dismiss and discovery related thereto,[5] and include this project (separate from the redundant Rule 11 project) (Para. 70). Altogether, Mr. Schultz lists just seven projects, including the appeal, a reconsideration of the initial dismissal denial (separate from that motion), and two iterations of sanctions (raising the

---

[5] Schultz Aff. Para; 62: "The *largest* amounts of joint fees were incurred for the *enormous investigation, discovery, research, and writing efforts* required for the successful jurisdictional motions to dismiss that have resulted in final judgments of dismissal for all defendants in all cases. This project work was performed for the Joint Defendants primarily by the partners, associates and paralegals in two firms, Fulbright & Jaworski and The Beatty Firm." Assigning two whole firms' worth of lawyers to a routine motion suggests excessive fees in and of itself. They even had meetings and communications just to decide who would ask questions at the handful of depositions taken.

question of duplication and "fees on fees."). That works out to about $3 million per project, even for the projects that duplicate one another in large part.[6]

13. This was the defense bar's version of the scramble for control and ultimately fees one sees among plaintiffs' class action lawyers, *e.g.*, in the Toyota Products Liability litigation and the BP Oil Spill litigation.

14. *Fee Claims*: This is a large, complicated, and disorganized legal bill submission. In microcosm these submissions illustrate why the fees and expenses they are supposed to support became so excessive due to inefficient and counter-productive case management. (While some of the lawyers have extensive resumes, the key skill to manage this sort of case is more likely to be possessed by a good court clerk or paralegal keeping track of the data – throwing timekeepers at these matters only increases the bills geometrically.) As discussed below, and in Exhibit B2, there were over 550 timekeeprs, few of whom were identified let alone a basis provided for their role or rate. There are essentially 34 packages of materials, no two alike, one for the claim of each defendant seeking fees, with some firms overlapping several defendants, as well as a separate package for the joint committee of ten firms, which firms also appear in the packages for some other defendants. There were over 300 nominal defendants, but many are gone or in clusters of related companies. The firms have submitted anywhere from a few dozen

[6] Some of the support for the assertion that "Joint Defense Fees [were] Low," beginning at paragraph 93 are to note that some lawyers "volunteered" to work with the committee, adding more billable hours to this claim, but they did not bill the Joint Committee for this – presumably because it defeats the purpose of centralized fee management if everyone can still join every project. While this may have lowered the joint committee claim – assuming it did not actually increase it as is likely because more participants means more review and communication time – it just added more fees for redundant personnel on the remaining defense bills, which exceed the joint defense bills, even though the joint defense was supposed to be handling the bulk of the defense.

pages to thousands of pages of time printouts and related documentation. Firms were still filing substantially altered claims earlier this month, presenting us with a "moving target" just to determine what constituted the definitive version of each claim.

15. As we have analyzed these claims, we encountered various issues. Many of the submissions were created for this sanctions litigation: They are not business records, *e.g.*, invoices as issued to and paid by the clients. Nor do we have verification that these amounts were paid in full or in part by the clients – inflating the claims beyond amounts actually billed and paid would be highly inappropriate. Some of the firms have submitted bills in excess of the amounts claimed, without identifying the entries for which they make claims. Others have made overlapping claims including a claim for reimbursement from the joint defense committee's claims – that is between them, but the effect, from our perspective, is that they have filed duplicate (or overlapping) claims for the same amounts.

16. *Claim Formats*: There were additional problems created by the formats of these submissions, which were submitted by defendants in adobe acrobat file formats, not their original electronic formats as created by the firms and from which they created these acrobat files for this submission. These submissions are therefore electronic images, not electronic data capable of transfer into and actual analysis by the standard excel spreadsheet program we use. It is clear most defendants had this electronic data available and that they intentionally converted it into adobe acrobat images for their submissions, then ignored our requests to provide the documentation underlying their summaries. Reasonable fee standards call for a reduction of the fee award if the documentation is inadequate. These submissions were not only incomplete, varying, and disorganized, but the defendants intentionally made them so to impede full review.

This alone is a sufficient ground for denying all or a substantial part of the fees and expenses claimed.

17. As is standard for such submissions, we were conducting an analysis of the bills (or portions thereof), plus analysis of other aspects using electronic tools in the spreadsheets. We understand that defendants declined to submit their actual electronic data or to remedy any of the many problems caused by the format of their submissions, even though defendants used the same data we sought to generate several more iterations of acrobat images to make late "supplements" to their original submissions (typically without identifying the items being changed or why), requiring us to review several of the largest bills multiple times, including submissions made within the last few weeks. Defendants' refusal to submit their original electronic data underlying their submissions significantly delayed and complicated our review.

18. The formats used by the firms included redactions, truncated entries, "highlighting" that effectively redacted time entries, and other anomalies which made it impossible for us to review all the entries line by line, nor could we therefore reconcile the total fees and expenses claimed by most firms with the amounts they stated. *See, e.g.*, Exhibit F5 (samples of these problems and other problems we coded for within entries.) Here are examples of problems exhibited by various firms' submissions:

a. Beatty: "highlighted" many of its entries in shades of grey (apparently the "original" has shades of green, which we never saw). This has the same effect as redacting the entries. (Redacted entries are disallowed and may result in disallowing all the bill.) It also slows down the process of converting the bills to electronic form.

    i. Many of the Beatty bills for which we have electronic data do not reconcile – the total shown on the invoice or an invoice summary does not equal the total of the individual time entries.

ii. We understand Grynberg asked Beatty, through channels, to provide clean copies of these bills. We received a second disk on January 19, 2012, but it only included a few more clean pages, jumbled at least as much as the original submission. These new pages do not reconcile arithmetically with the pages they are replacing.

b. Fulbright & Jaworski: Bills have some entries (frequent, but much less than a majority) which have the last line(s) truncated. This problem was also referred to liaison counsel, but we received no replacement pages. Many of the bills appear to be printed from microfiche.

c. Schulz & Belcher + Schultz & Schultz: Columns of data are not separated, causing adjacent data to merge into one column.

d. Miller & Chevalier: Underlined notes on hours billed, causing entries to require manual entry.

e. About $1.4 million in Beatty & Wozniak bills in folders 24 and 25 appear to be duplicates although the amounts, number of pages, and so forth do not reconcile.

f. Roughly $322K in Baker & Botts bills are missing timekeeper rate data so the invoices cannot be reconciled or the totals calculated.

g. Akin Gump: Invoices have been heavily redacted and time amounts were removed and changed.

These are not all the problems, just examples. *See* Exhibit F5. Where we were unable to review each submission line by line, we instead reviewed a sample, manually, and extrapolated results from the sample to the full bill. We have found that extrapolation leads to results within a percent or two of the final percentage. This method is still superior to anecdotal or qualitative analysis.

19. Even for the data we could convert into electronic formats, there were many additional problems that are not found in standard legal bills, including arithmetic and accounting errors, and apparently an evolution in the numbers in the bills from one version of the same invoice to another, so many invoices do not reconcile with the data therein or summaries thereof. That the computer-prepared invoices do not reconcile is usually indicative of accounting or clerical errors, missing pages, lack of supervision or the like, but it can also be a telltale sign that the invoices have been "massaged" or, in rare cases, that there has been billing fraud. We have no final conclusion based on these incomplete and inconsistent submissions.

20. Due to the size of the files involved in these changes (almost half of the total reviewed) and inadequate time available to respond, we have not been able to incorporate some

of these recent submissions into this report.[7] Our observations of the new submissions indicate, however, that they do not change our conclusions in any apparent way.

21. *Mixed/Block/Lumped Time Entries*: Some of the firms' submissions have task-based entries, with one task per entry per timekeeper (meaning that someone working several tasks in the same day might have two or more entries). This is standard for time records where counsel expect to shift or recover fees and there are cases in which block or lumped time entries are disallowed on that ground alone. These mixed entries, lumping together various tasks, obscure the cost per task and make calculation of an accurate total cost for each project impossible.

22. *Time Description Anomalies*: In addition to having cryptic or vague entries, some timekeepers, there are time entries with extremely wordy descriptions, often in the hundreds of words, most of which convey any indication of productive work. Examples are included in Exhibit D and F1. This type of behavior usually indicates an attempt to overwhelm or shortcircuit fee management, with another concern being that for many of the shorter entries, the actual time was spent primarily on creating the entry.

---

[7] In addition to recently giving defendants leave to make another round of substantial submissions just before the current deadline for this report, the Court set the due date for this report substantially earlier than the date requested to accommodate delays caused by earlier untimely submissions by the defendants, over Grynberg's objection. In picking a random date for this report to be due, the Court scheduled for a week after I had major surgery requiring several months of pre-operative steps and months of post-operative recuperation. There were complications in my surgery, so I was in the hospital longer than expected, including two days in the intensive care unit. I am currently under doctors' orders not to work for several weeks and to take pain medications. Because of this deadline, I have had to ignore those orders to complete this project by the Court's deadline.

23. *Segregation of Time:* The sanctions statute is a limited exception to the American Rule against fee shifting. Defendants have made submissions indicative of an attempt to shift all their fees and expenses, treating the sanctions statute as an unlimited waiver to the American Rule. Defendants apparently include in their time records most if not all time billed to the various matters (often substantially more than they claim now), regardless of whether it is causally linked to the allegedly sanctionable conduct identified in the sanction order. There are even amounts included for preparation of the sanction motions themselves (raising the issue of whether "fees on fees" are allowed), appellate activity fees, and issues upon which Grynberg prevailed, *e.g.*, on the CO2 claims. *See* Exhibit F2 for examples from many firms.

24. These are "kitchen sink" dumps, apparently in the expectation that Relator, without the benefit of complete electronic data, or the Court would meet defendants' burden for them. Splitting out this time is also complicated because of mixing or block entries, the large number of cryptic entries, whether vague to begin with or rendered so by redactions, "highlighting," and the like. Part of the firms' burden is to segregate irrelevant time, time spent on unsuccessful projects, and the like. Defendants and their firms have not eliminated this time.

25. *Problem Time Entries*: Starting with the Joint Committee fee claims, we conducted a line by line review of many, but not all, of the submissions, as time, the condition of the submission, and changes to the submissions by defendants allowed. To estimate problems with submissions we could not convert to spreadsheets (whether because they were recent or had flaws impeding electronic conversion), we used the averages calculated from the entries we did review. *See* Exhibit D hereto. The codes appear in one of the columns to the right. Examples taken directly from the submissions of several firms are contained in Exhibit F5.

26. On average, we found one or more problems with at least 49% of the entries in terms of fees for the bills we were able to review line by line.[8] Even before considering issues with the high hourly rates, overstaffing, duplication, and other factors, my opinion is that a reasonable fee cannot exceed 51% of the claimed fees because of these problems based on the content of the time entries. The coded problems are the types of problems that cause courts to eliminate time from the lodestar before reaching questions about staffing, duplication of effort, and whether the time spent was excessive and necessary.

| Problem Time by Sample | % Hours | % Fees |
|---|---|---|
| Internal Conf or Memo (ic, im) | 22.6% | 24.6% |
| Cryptic (qu) | 15.7% | 20.3% |
| Long Days (Hours > 8.0) | 4.5% | 5.7% |
| Clerical (cl) | 7.1% | 4.6% |
| Travel (tr) | 3.3% | 4.3% |
| Administrative (ao) | 0.7% | 0.4% |
| | | |
| Entries w 1 or more codes | 43.2% | 49.2% |
| Uncoded Time | 56.8% | 50.8% |
| Total Time | 100.0% | 100.0% |

Problem Time Estimate Summary

27. Some time entries exhibited two or more of these issues and have been coded for each, in full. (We do not attempt to speculate about the portion of undivided time entries attributable to tasks within time entries. If the timekeeper broke down the time entry, using task-based entries, we would segregate the problem-coded fees accordingly.) For this reason, the

[8] Of the $26 million in fees from all defendants, we used some samples to arrive at a figure of $10.9 million in coded or problem time. Exhibit B.

subtotal of each problem cannot be added with others – adding them causes double or triple counting of the entries with more than one problem.

28. *Internal Conference & Memorandum Entries*: Internal communications, whether orally (internal conferences, coded ic) or in writing (internal memoranda such as emails, coded im), are a major issue with these fees. Exhibit D. Overall we estimated that 24.6% in fees for one type or another of internal communications. This is just for communications within a given firm and does not include the many, many more such communications among firms. Samples can be found in Exhibits D and F5.

a. While some internal communication may be necessary, these amounts are unreasonable, caused by the large number of timekeepers (even though the people actually assigned the projects were supposed to be one or two, not dozens) and poor management of the staff. This is largely unproductive time, especially when there is so little productive effort about which to talk in a case eliminated on jurisdictional grounds. Some of this is undoubtedly caused by the dispersion of timekeepers from one end of the country to the other and across scores of firms. (The Schultz Affidavit refers to an online depository of documents and an email system of communication that should have been sufficient to get the word out, with documents, without the dozens or hundreds of communications about every little thing.)

b. Inefficient, inexperienced, or pressured timekeepers may, for example, procrastinate and waste the time of others with communications, including written memoranda, that serve the convenience (and financial interest) of the firm, but are

not productive professional services and have little real value to the client's interest.

c. Most clients (and alert firms) would disallow such time altogether, allow only one timekeeper to bill, or discount the entry. The firms should also be writing some of this off.

29. *Cryptic & Vague Time Entries*: Entries without sufficient detail undermine the ability to know what the firm was actually doing, probably the most important step to determining whether the fees were reasonable, plus allowing us to catch outright billing mistakes and duplication of effort. Overall we estimate cryptic (code qu) fees at 20.3%. Examples are in Exhibits D and F5.

a. Beyond identifying the timekeeper and giving the amount of time and the date, necessary details include the (1) subject and nature of the work, *e.g.*, communications regarding Mr. X's testimony schedule or research regarding XYZ issue for ABC brief, (2) identification of other participants, *e.g.*, in calls or conferences, and (3) the purpose for doing the work. In other words, they should provide the who, what, where, when, why, and how. Purposely making one's entries cryptic is a means to inflate or pad time entries, hide non-billable time, or worse.

b. Entries that were incomplete, redacted, not visible, or the like were considered cryptic, too.

30. *Travel Time*: One of the extra costs of using out of state lawyers is the rise in travel expenses and fees billed while traveling. We calculate the travel time entries at 4.3%, code

"tr"). *See, e.g.*, Exhibit D & E (expenses). There was substantial travel time identified as such. Travel time is typically managed closely (with travel expenses) and billed at reduced rates because it is not billed for productive professional services. Rather, it compensates the lawyer for necessary travel in service to the client that could have been billed to other clients or on productive work for this client. Very often, as here, the first question is why the firm had to travel at all, let alone this much. Choosing a law firm from out of the area of the court increases travel expenses, travel time, adds the cost of local counsel, plus triggers lots of additional research and other time to make up for lack of familiarity with the strange jurisdiction. (If, as here, the firm is from a locality with higher hourly rates, the remedy is often to lower them to rates for equivalent local lawyers.) The burden is on the law firm to explain why any of this is reasonable and necessary.

31. *Clerical Time*: Overall, we found approximately 4.6% of the entries were clerical time. Non-billable clerical time is concentrated in the time billed by non-attorneys, including paralegals. The items are coded "cl" and samples are in Exhibit D.

a. Legal fees for professional services already compensate law firms for the lawyer's or paralegal's salary, plus overhead and profit of the firm, including clerical services. Therefore a firm may not attempt to charge separately for overhead – let alone make a profit thereon. Overhead is included in the reasonable hourly rates of proper timekeepers doing professional, properly billable work.

b. The test is whether the entry indicates that professional services are being rendered, *i.e.*, services that would normally be performed by a lawyer. The point of allowing paralegal time to be billable is that, overall, the client should benefit

by receiving lower bills from delegating more routine professional services to personnel with lower hourly rates.

c. In the course of describing the management of the defense law firms, Mr. Schultz's Affidavit, Para. 44, provides a description of instances in which the defendants evidently billed for clerical services by "paralegals" and "document clerks."[9] He also describes a "small team" of two paralegals, two "project assistants," a secretary, and an office manager he used to handle administrative work, all of which is non-billable, clerical work. Para. 92 (for the three of these people he named, the total fees billed are over $75,000).

32. *Long Days*: Another symptom of runaway billing or lax management is billing for long days when there is no apparent emergency. We define the long day as over 8.0 hours, though there are cases drawing the line higher or lower. To bill that much time, one would have to be at work far longer because the unproductive or non-billable time must be eliminated. This

---

[9] None of the described services would be billable because they are clerical services, part of overhead: "Paralegals and document clerks working under my supervision worked diligently over the years these cases were pending to populate [upload or copy], label, organize and update this [extranet] site with the literally tens of thousands of pleadings, documents, research materials, discovery documents, discovery data bases, and work product drafts, associated with defense of these cases. The extranet site proved to be an extremely valuable tool that dramatically reduce hard copy management and retrieval costs and enhanced the efficiency of defense work." We did not discover any such impact in these bills.

Similarly, from Paragraph 45: "I also supervised paralegals and an IT technician to create, adapt and maintain over time a set of relational Access data bases we used to keep track of the hundreds of defendants, the cases they were associated with, their affiliate and parent relationships, their inside and outside contacts, the projects they participated in, and the committees they participated in. We periodically produced and published contact directories and committee directories from these data bases to the extranet site as a resource to all participants."

These are not professional legal services.

can be another symptom of billable hours pressure or inexperience. We estimate the time billed over 8.0 hours for a single person in a single day at 5.7% of the fees. This is unusual particularly because of the pace of the case (no emergency deadlines or trials) – tending to suggest this is due to lack of fee management and billing pressure.

33. *Hourly Rates*: The second factor used to calculate lodestar fees is the reasonable hourly rate for each timekeeper (not just lawyers). This rate is supposed to be based on several factors, sometimes expressed in slightly different ways, aimed at determining the prevailing *market rate* for *similar services* by lawyers of *reasonably comparable skill, experience, and reputation* in the relevant community, which would be no larger than Wyoming (the Court's jurisdiction), if not smaller. The experience should also be from similar litigation – the hourly rate should be less for lawyers working outside of the area of experience that justifies their fee. Prevailing market rate does not mean the highest local rate, but the common or typical rates.

34. One of the paradoxes of hourly rates is that lawyers who claim to be worth more per hour because of their experience and skill typically also travel in larger packs, requiring larger pyramids of comparatively expensive lawyers and others to support them. The higher hourly rate is supposed to be justified, in part, by the tendency of people who know what they are doing to spend less time doing it.

35. Just establishing the number of timekeepers has been complicated by the format and cryptic nature of the submissions. By our estimate, and attempting to exclude duplicate personnel who changed firms or firm names, there are 565 distinct timekeepers who billed time on this matter and now seek fees. Here is a breakdown by firm:

| Firm | Timekeepers |
|---|---|
| Fulbright & Jaworski | 138 |
| Holland & Hart | 78 |
| Beatty & Wozniak | 51 |
| Akin Gump | 47 |
| McKinney & Stringer | 42 |
| Vinson & Elkins | 30 |
| Holland & Knight | 30 |
| Skadden & Arps | 27 |
| Foley & Lardner | 24 |
| Brown Drew Massey | 12 |
| Baker Botts | 11 |
| Schiff Hardin | 10 |
| Greenberg Traurig | 9 |
| Locke Liddell & Sapp | 8 |
| Williams Porter Day & Neville | 8 |
| Zevnik Horton | 8 |
| Andrews & Kurth | 5 |
| Lemle & Kelleher | 5 |
| Dorsey & Whitney | 5 |
| Conner & Winters | 5 |
| Thompson & Knight | 4 |
| Locke Lord | 4 |
| Jenkins & Gilchrist | 3 |
| Miller Chevalier | 3 |
| Carrington Coleman | 3 |
| Rothberger Johnson & Lyons | 3 |
| Clanahan Tanner | 3 |
| Ryan Whaley & Coldiron | 3 |
| Schultz & Belcher | 2 |
| Schultz & Schultz | 2 |
| Everett & Wales | 2 |
| Holmes Roberts & Owen | 1 |
| Thompson Stout | 1 |
| Thompson Law Firm | 1 |
| Hugh V. Schaefer | 1 |
| Total | 589 |
| Approx total w/o duplicates | 565 |

Timekeepers by Firm

Exhibit B2 summarizes the timekeepers we found and provides average or estimated hourly rates if they were available. There are about twenty timekeepers who billed at or above $500 per hour, with several just under $700.

36. While defendants here generally provide some details of experience and standard hourly rates, these are generally for lawyers alone, not the other non-lawyer timekeepers, for

whom there is no support or even proof that they exist or are not simply clerical personnel billing for nonbillable overhead.

37. The rates quoted are, apparently, the suggested retail rates or so-called "standard" rates as set unilaterally by the firms and quoted to potential clients, not the "as paid" rates actually collected from clients. Suggested retail rates are routinely discounted by substantial amounts to obtain lucrative business, like this.

38. The Schultz Affidavit and support provided by the lawyers making each submission generally seem to accept that their rates are well above standard Wyoming rates, even for complex federal litigation.[10] This apparent admission by omission is consistent with my review of recent Wyoming cases, where the prevailing market rates for similar services are much lower.[11] (Other than conclusory assumptions, there is no evidence that local lawyers or lawyers

---

[10] Mr. Schultz's Affidavit, Para. 82, et seq., makes the novel and unprecedented argument that, because Relator sued some of the defendants in other litigation in Washington, DC, Washington DC rates (among the highest in the country) should prevail. That is not the standard. Schultz fails to address the threshold question of whether there are sufficient, skilled Wyoming lawyers at Wyoming fee rates. There are False Claims Act lawyers all over the country, nor is False Claims Act work particularly specialized. (I have worked on such claims and reviewed such bills.) The "bet the company" rubric, Schultz Aff. at Para. 83, does not ring true – the unpaid royalties were a fraction of income – and bet the company language is what law firms use to make small cases into huge ones by detaching clients' cost-effectiveness from reality. As the balance of the Schultz Affidavit makes plain, this was a case with modest discovery, several motions, and lots of bystanders billing by the hour.

[11] I have reviewed the 2007 and 2009 Bar Member Survey Results Summaries published by the Wyoming State Bar. These surveys tend to overstate rates, *e.g.*, by not segregating the rates by years or type of experience, let alone attorney skill or reputation. They also normally include the suggested retail rates, not "as paid" rates. Rates charged by defendants here were also charged further in the past, *i.e.*, due to inflation, the survey data would be inflated since the years when most of the work was done here. While this survey is somewhat crude, it is sufficiently detailed to indicate to me that the rates defendants' seek are far higher than local rates and, as noted below, even indicate that at least 22% of the Wyoming Bar concentrates its practices in

(continued...)

with relevant expertise but not located in expensive metropolitan areas were not available to handle this case at local or substantially lower rates.) The firms instead imply that their rates, again without expressly arguing that this is the relevant standard, are reasonable for the work they do in their home jurisdictions, which are several of the most expensive legal fee locations anywhere. They do not, generally, provide the normal support required to show that their fees are even reasonable by their home jurisdiction standards, considering factors like fees in similar or analogous matters, as well as each timekeeper's skill, experience, and reputation.

39. Based on the cases I observed, the Wyoming Bar surveys (which tend to be high), and considering the legal fee market when these activities where billed, I cannot find that defendants met their burden or provided any support for rates over $250 for partners and $150 for associates, with amounts under $100 for non-lawyer timekeepers performing professional services. If anything, using lawyers with more reasonable expectations might have save many layers of expensive duplication and wasted effort.

---

[11](...continued)
relevant areas and should have been capable of handling a case dismissed on subject matter jurisdictional grounds with minimal discovery after several motions.

In the 2007 survey, item #36 has percentages of lawyers charging rates in certain ranges, with the highest group billing at more than $250, which included 2.7% of the sample. Of those responding, over 50% were charging $150 or less. These are far above the defendants' claimed rates.

In the 2009 survey, item #16 had similar data for lawyers rates, which I would have similar concerns about. Lawyers charging over $300 per hour were 3.2% of the sample and over $200 were 14.4%. Of those giving rate data, approximately one-third of the lawyers were charging less than $150 and well over 50% were charging less than $200.

The 2009 survey also breaks down lawyers by the largest areas of their practice (Item #25). There are 5.3% who claim Oil & Gas as their primary practice, 8.9% in "litigation," and 8.4% for "government law." These statistics undermine any assumption or conclusory allegation that there were insufficient local lawyers available to handle this matter at the much lower hourly rates available in Wyoming.

40. *Case Activity & Complexity*: Although the case was handled using multi-district litigation procedures, has lasted for years, and the number of defendants is quite large, the actual level of substantive activity was surprisingly modest, confined to several substantive motions and some discovery disputes, and none of the questions were evidently novel or precedent-setting. Mr. Schultz's descriptions of the various "projects" identifies just one or two key workers in each task: Where all the extra work came from or why it was ever necessary is not explained. Schultz Aff. Para 53, et seq. The case never went to trial and was terminated on subject matter jurisdictions grounds, so most of the "activity" was caused by having multiple law firms duplicating one another's work (especially with endless internal review and communications about the same things or just to "keep up" whether anything happened or not).

41. We found the following events to be the most significant in the docket, which is not to say that these should have cost that much. The items include more events than Mr. Schultz's list of "projects."

a. Motions to Dismiss (lack of subject matter jurisdiction, etc.) (Grynberg prevailed)

b. Motion to Dismiss CO2 royalty claims based on first-to-file rule (Grynberg prevailed)

c. Discovery: Motions to compel production of documents

d. Discovery: Motion to compel sufficient interrogatory answers (Mixed result)

e. Discovery: Motion for protective order re: Relator's first set of interrogatories and document requests

f. Discovery: Motion to compel Grynberg to produce Aspen Conference Transcript

g. Discovery: Grynberg's Motion to serve remaining 3 proposed interrogatories and requests for production of documents

h. Discovery: Motion for disclosure pursuant to FRCP 37 (a) (Mixed result)

i. Discovery: Motion to compel Grynberg to produce missing documents (Moot)

j. Motion to dismiss based on public disclosure/original source bar of the False Claims Act (Moot)

k. Sanctions against Relator re: correspondence with counsel

l. Motion to dismiss based on disclosure and seal requirements of the FCA (Moot)

m. Discovery: Sanctions against Grynberg for failure to produce and destruction of documents (Moot)

n. Current Motions for Fees and Expenses (which raises the issue of seeking “fees on fees” through the sanctions statute).

Grynberg also settled with many defendants along the way.

42. By our count, the MDL docket contains 53 filings for substantive matters (including the original motions and any oppositions and replies), plus roughly another 100 items of some substance, out of a docket with over 2,200 entries. (As with most cases, but especially cases with this many lawyers, these other entries relate to court housekeeping matters.) In discovery, there were apparently five depositions. The parties exchanged one set of interrogatories for each side.

43. The divergence between the actual limited substantive complexity of this case, which is comparable to cases where the fees are more like $1 million, and the much higher amount now claimed is explained primarily by the heavy staffing, high rates, inefficient

supervision and communication, and excessive billing habits of the firms, *e.g.*, billing unlimited amounts for layers of unproductive "review" and internal communications. Even if these motions would reasonably entail between $25,000 (for discovery motions) or up to $100,000 (for the most complex, substantive motions), with a generous allowance (beyond reasonable or necessary) for the other productive activities, the fees should have been no more than $2 - $3 million.[12]

44. *Factors Beyond the Lodestar*: The time and expense analysis above, including elimination of unnecessary time and waste, such as duplicated effort and overstaffing, deals with "time and labor required." Regarding the remaining reasonable fee factors, many of which are subjective, I have the following observations: The questions presented were neither novel or difficult (indeed there seems to be a large body of precedent for this sort of litigation), the employment was spread out over years, not particularly intense, and could not have precluded other employment, the fees claimed are far beyond the high end for the locality or nationally, the amount involved was nominally large, the results obtained are positive from defendants' perspective, there were no significant time limitations, there is no material impact due to the

---

[12] A particularly concise example of how the fees became so excessive, despite the limited productive legal activity necessary can be found beginning at Paragraph 57 of the Schultz Affidavit, describing "The Rule 11 Project." For example, as the defendants were waiting for oral argument of the initial motion to dismiss, at the proposal of the Joint Committee, committed to by many defendants, the defendants began the process of seeking Rule 11 sanctions. Since they were seeking fee reimbursement, this project raises the question of whether these are therefore fees on fees, *i.e.*, fees charged to collect fees, not litigate the necessary merits of the case. The Joint Committee assigned dual leads to what is again a basic litigation task – including Skadden Arps, which had just prepared the papers for the first motion to dismiss. Together these teams of lawyers worked to create a "template" of a Rule 11 letter.

nature or length of any professional relationship, and the reputations of the lawyers appear to be exceptional (their number and rates are the question).

45. *Expenses:* The joint committee firms billed over $1.4 million in expenses, but the documentation is deficient or even absent on most of them ($829,481 for the joint with no description), with other inappropriate expenses including legal research like Lexis (an overhead item the firm pays a lump sum for), personal items like meals, overhead like clerical time, puzzling or mistaken expenses like a trademark search, personal fees to renew bar memberships, and something called "outside fees" at over $122K. Exhibit E has more expense information. Thus, over 75% of the expenses are either unsupported or improper.

46. For all the defense submissions, we found $2,134,162.38 for expenses. Exhibit B1.

47. Moreover, there are heavy travel expenses, some discovery expenses, but these expenses also reveal the lack of real litigation progress and the research expenses show lots of duplicated work but not the kind of research effort a novel case would trigger. And, despite the expenditures on modern document handling technology, there are still heavy charges for mail, FedEx, faxing, and postage.

48. Expenses must be passed through at actual cost, without profit to the firm. Personal or overhead items cannot be passed through as expenses.

49. *Expert Qualifications:* I am an attorney admitted to practice in several jurisdictions, starting with the District of Columbia (1981), as well as federal courts in several jurisdictions. A copy of my current resume is attached as Exhibit A.[13]

50. I graduated from Harvard Law School, cum laude, in 1981. Before that, I graduated with honors from the University of Virginia with a B.S. and M.S. in chemical engineering.

51. Initially, I practiced with two major, national law firms, handling many types of complex litigation around the United States, ranging from million dollar cases up to a case approaching $1 billion in potential value, plus appellate work and cases involving legal fee claims. I served as a trial attorney in the Federal Programs Branch of the US Department of Justice for several years, earning various commendations and awards, including litigation involving legal fee claims against the United States, and litigation involving organized crime, major constitutional issues, representing presidential appointees and law enforcement personnel, training attorneys and presidential appointees, and acting as lead trial counsel for so-called *Teamster* hearings arising from two government employment class actions. For example, I had high level security clearances and represented the NSA in the first case ever tried against it.

52. I returned to private practice in Alexandria, Virginia, eventually becoming a name partner in one firm and then opening a Virginia office for a regional law firm where I was also co-chair of the commercial litigation practice. I was active in the local bar, argued appellate cases in several federal and state appellate courts, and tried numerous cases in Maryland, DC,

[13] Note that I was an associate attorney at Akin, Gump, one of the firms seeking fees here. I have also been hired as an expert by one or more of the firms seeking fees. Over the years I have represented several petroleum companies. I have no conflict of interest.

and Virginia. For example, I was court-appointed counsel for the Small Business Administration in the largest receivership it ever brought.

53. I opened my own firm in 1993, in conjunction with my consulting practice described below. I continued to try cases in Maryland, DC, and Virginia, as well as argue appellate cases. For example, I was appointed as counsel to a receivership in Virginia. I also tried the longest civil trial in DC Superior Court history. I was active in various aspects of local and Virginia state bar activities. Altogether I have tried over sixty cases.

54. I have extensive experience, skill, training, education, and knowledge of the subjects of legal fees, litigation, and related ethical and professional standards. I am the author, with Professor William G. Ross, of *Legal Fees: Law & Management* (Carolina Academic Press 2003). I am also the author, with Douglas Danner, of *Trial Practice Checklists 2d* (West Group 2001). I have written over 25 articles on the subjects of legal fees, examinations of legal fees, legal fee management, legal ethics, litigation, and related subjects. I have spoken regularly on these subjects and regularly taught national, state, local, and private continuing legal education seminars on these subjects as well – examples of these are contained in my resume.

55. Founded in 1993, my firm, known as The Devil's Advocate and TLF Consulting, has examined over $1 billion in legal bills and consulted with hundreds of clients on the subjects, for example, of legal fees, litigation strategy and tactics, legal ethics, attorney performance, and work product quality. I am regularly consulted as an expert in these fields by, for example, business and professional publications as well as by law firms and clients.

56. I have testified as an expert witness as to legal fees, examinations of legal fees, legal fee management, litigation, and related subjects (both challenging and supporting petitions

for legal fees) in courts around the country, including the U.S. District Courts for the District of Columbia, Eastern District of Virginia, Eastern District of Pennsylvania, Middle District of Pennsylvania, Southern District of New York, Central District of California, Northern District of Ohio, Western District of Michigan, and the Northern District of Alabama; the U.S. Bankruptcy Courts for Delaware and Maryland; state or local courts in the District of Columbia, Maryland, California, Virginia, Illinois, Nevada, Florida, and Pennsylvania; and also arbitrations in various jurisdictions. Altogether I have testified and qualified as an expert on sixty or more occasions. I have testified as an expert retained by one or more of the defendants' law firms here.

57. I have served as an arbitrator of legal fee disputes for bar organizations in Virginia and the District of Columbia.

58. *Methods*: Our role is to review, to the extent practicable, the fee submissions made in a given case. When possible, we convert the invoices or billing information into spreadsheets by electronically scanning the time and expense entries and converting them to Excel spreadsheets. We reviewed and coded time entries according to various types of issues (or potential problems) as described above. This data is then sorted and filtered for my analysis using tools included in the spreadsheet program and techniques we have developed over the years. This data is presented in Exhibit D, organized in chronological order.

59. The various categories of problems with time entries for which we code are based on the rationale used by court decisions and other authorities to deny payment of legal fees in published cases. The general standard is whether the fees and expenses are necessary and reasonable, under the circumstances.

60. Where time or the submissions did not allow us to review every line of a submission, we used a sample to estimate the problems, then extrapolated them to the entire submission.

61. *Materials Reviewed*: We reviewed the following materials in conducting our bill review and preparing this report:

a. Electronic "folders" submitted by all the defendants seeking fees and expenses from Relator, including the joint committee. This included, in various forms, summaries of the fees and expenses, plus affidavits/declarations submitted by law firms seeking to substantiate their claims. As time permitted, we also reviewed various subsequent (more recent) submissions by some of the defendants.

b. Information regarding legal fee standards in Wyoming, particularly the US District Court and the Tenth Circuit. These do not vary from general standards in most other jurisdictions in any material way.

c. Information regarding hourly rates submitted by the firms and located through our research, including two published studies from the Wyoming Bar. These studies contained useful information setting the high end of Wyoming hourly rates, but without necessary information regarding experience, types of matters, and locale, they are incomplete.

d. We sampled work product from the case, plus reviewed the docket itself. We also reviewed relevant orders.

e. From the firms' websites, we gathered information for some timekeepers, usually from their firm biographies. These biographies are advertising materials which tend to be vague about actual experience, for example.

We have not had access to underlying documentation supporting the time entries, hourly rates, or expenses. As noted before, the firms have electronic data available, which they used to create submissions, but which were not made available to us.

62. *Burden*: The burden is always on the law firm to document its time and expenses and to demonstrate that the fees, hours and hourly rates, and expenses are reasonable both in terms of value and extent. In part this allocation of the burden of persuasion is pragmatic: Only the lawyer has the opportunity to promptly and fully document time and expenses and the factual justifications therefor. Hourly time entries, in particular, are ultimately an honor system. This is particularly appropriate where the firm has been on notice that there is a dispute regarding its fees and expenses.

63. *Audit Disclaimer*: We have not performed an audit comparable to a financial audit subject to GAAP following GAAS. Without full firm cooperation and more detailed, contemporaneous, underlying information, such an audit would be impossible. We cannot, for example, perform tests for fraud – hourly time entries, hourly rates, timekeeper identity, and even some of the expenses cannot be verified by us. Instead, we performed a legal bill review, closer to a review or an operational or performance audit.

64. *Supplements*: This report may be modified and supplemented if additional material information becomes available or if we have the opportunity to complete our review.

65. *Expert Compensation*: Our flat fee to prepare this report and provide related services has been $247,500, not including out of pocket expenses and any post-report work. My current hourly rate is $400.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE TO THE BEST OF MY KNOWLEDGE AND INFORMATION.

John W. Toothman, Esq.

Dated: March 20, 2012

FILED
CIVIL INTAKE
2013 APR 24 AM 10:45
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

DEVIL'S ADVOCATE, LLC,
PO Box 8
Great Falls, VA 22066

Plaintiff,

v.

GRYNBERG PETROLEUM COMPANY,
3600 South Yosemite Street, Suite 900
Denver, CO 80237

and

JACK J. GRYNBERG,
3600 South Yosemite Street, Suite 900
Denver, CO 80237

Defendants.

Civil No. 2013-07559

VERIFIED COMPLAINT

Plaintiff Devil's Advocate, LLC, (herein "DA") hereby demands judgment against Defendants Grynberg Petroleum Company and Jack J. Grynberg (collectively "Grynberg"), jointly and severally.

Jurisdiction & Venue

1. This Court has jurisdiction over the Defendants pursuant to Virginia Code Section 8.01-301.

2. Venue is appropriate in this Court pursuant to Virginia Code Section 8.01-262.

Parties

3. Plaintiff Devil's Advocate, LLC, ("DA") is a Virginia limited liability company providing, *inter alia*, consulting and other services, including expert witness testimony, performed and originated in Fairfax County, Virginia.

4. Defendant Grynberg Petroleum Company ("Grynberg Petroleum") is an oil and gas developer owned and controlled by Defendant Jack J. Grynberg, its proprietor.

Facts

5. Plaintiff DA was contacted by representatives of Defendant Grynberg Petroleum, including Defendant Grynberg Petroleum's president, Defendant Jack J. Grynberg, and their lawyer-agents acting within the scope of their authority, to provide consulting and expert witness services on behalf and for the benefit of Defendants. These services were intended to assist and benefit Defendants in federal qui tam litigation captioned *In Re: Natural Gas Royalties Qui Tam Litigation*, MDL 1293 (the "underlying litigation" in which Defendants here are plaintiffs or real parties in interest), then pending in the US District Court for the District of Wyoming under the principal local caption number 1:99-md-01293-SWS. Issues in the underlying case then included the reasonableness of millions of dollars in legal fees and expenses billed by numerous law firms to defendants in the underlying litigation, who had obtained an order compelling Grynberg to pay sanctions, the amount of which was to be determined, at least in part, based on the fee and expense submissions made by these underlying defendants. DA's services include, *inter alia*, legal bill reviews of such submissions for purposes of challenging or attempting to reduce the claims against Grynberg.

6. Defendants, through their lawyer-agents, agreed to DA's proposal to provide expert witness and consulting services and Defendants executed DA's written agreement, Exhibit A hereto ("Our Terms of Retention"). Defendant Jack Grynberg executed Exhibit A personally and individually as well as on behalf of Defendant Grynberg Petroleum Company, of which he is the authorized proprietor. (Exhibit A incorporates other terms by reference, which are marked as confidential and therefore omitted from Exhibit A.) DA satisfactorily, substantially, and adequately performed the agreed services.

7. DA undertook substantial efforts, under contentious and difficult circumstances, to assist Defendants. For example, DA prepared, and Defendants subsequently accepted, used, and filed with the underlying court, the DA's valuable work product. In addition to other services provided by DA on a percentage fee basis, for which Defendant paid, DA performed further services to be paid by the hour pursuant to their agreement as requested and ordered by Defendants. *E.g.*, Exhibit B (Invoice 1070, note regarding "Additional work..."). These services are documented, *inter alia*, in Exhibits C, D, E, and F hereto, which are the itemized statements and invoices DA previously delivered to Defendants. The additional hourly services for which DA seeks payment were performed beginning in April 2012 and ceased in August 2012.

8. Defendants made use of DA's valuable services and work product and continued to request additional services to be performed by DA after receiving each of these invoices. When DA inquired of Defendants about the delay in receiving payment for each invoice, Defendants assured DA it would be paid in full. Defendants expressed no objection to the invoices or amounts billed, and Defendants continued to request even more such services from DA with assurances that DA would be paid shortly, in full. DA is entitled to payment in full for

these services, the principal amount of which is at least $110,696.00, as itemized in Exhibits C through G hereto.

9. Defendants have breached their obligations to DA. DA has regularly delivered itemized invoices and statements to Defendants, who received and acknowledged them, without objection. On one or more occasions, Defendants' lawyer-agent(s) stated that the invoices would be paid in full, but no such payments have been made to date. After making its initial demands, receiving assurances by Defendants of payment in full (as well as requests for additional services), and performing some of these additional services (as reflected in the attached invoices), DA ceased performing the remaining additional services in August 2012 because Defendants failed to make the promised payment(s).

10. After DA delivered notice it would perform no further services without payment, Defendants' lawyer-agents continued to acknowledge receipt of a subsequent invoice (for work done before the cessation) and periodic billing statements (calculating interest on the balance), without objection. Defendants continued to ask DA to perform additional services in exchange for Defendants' reiterated promises of payment, in full, but Defendants made no such payment.

11. In addition to payment of the principal amount, DA is entitled to pre- and post-judgment interest from the date of each invoice, legal fees, and other costs and expenses, as provided in the parties' agreement or by law.

12. Exhibit G hereto is a current statement for $124,995.32 reflecting the principal amount plus pre-judgment interest through April 18, 2013.

## Claims

### Count I: Breach of Contract

13. The foregoing allegations are incorporated herein.

14. Grynberg Defendants and DA entered into contractual agreement(s), express or implied, written or unwritten. DA performed valuable services for which it is entitled to compensation. Defendants have been billed for these services, but Defendants have not paid. Defendants have breached their contractual obligations to DA.

15. The terms of the parties' agreement, as reflected in Exhibit A, also include, *inter alia*, payment of pre- and post-judgment interest and legal fees and expenses.

16. Defendants are liable to DA for compensatory damages, plus pre- and post-judgment interest, legal fees and expenses, and other amounts and relief as ordered by the Court.

### Count II: Unjust Enrichment

17. The foregoing allegations are incorporated herein.

18. Defendants have been unjustly enriched by requesting and using the valuable services, work product, name and reputation, and efforts of DA, thereby unjustly enriching and benefitting Defendants. DA conferred a valuable benefit on Defendants. Defendants knowingly requested that DA confer this benefit. Defendants inequitably accepted and retained the benefit, without payment.

19. DA is entitled to compensatory damages, pre- and post-judgment interest, and other relief, as described below.

Count III: Account Stated

20. The foregoing allegations are incorporated herein.

21. Exhibits C through G hereto are copies of invoices and statements issued by DA to Defendants, which set the amounts due to DA. Defendants received and acknowledged each item, without objection, and repeatedly promised and agreed to pay the amounts stated. On one or more occasions, and for purposes of inducing DA to perform more valuable services, Defendants stated they intended to pay the invoices in full and requested DA to perform additional such services.

22. DA is entitled to compensatory damages, pre- and post-judgment interest, legal fees and expenses, and other relief, as described below.

Count IV: Quantum Meruit

23. The foregoing allegations are incorporated herein.

24. At the request of Defendants, and for their benefit, DA performed various valuable services for Defendants. Defendants requested, received, and made use of these services. DA demanded payment for these services, which Defendants acknowledged and stated their intention to pay in full, but Defendants failed to make payment for these services. Defendants are liable to DA for the full value of these services.

25. The extent and value of DA's services is itemized in Exhibits C through G hereto.

26. DA is entitled to compensatory damages, pre- and post-judgment interest, legal fees and expenses, and other relief, as described below.

Jury Trial Demand

27. DA demands trial by jury of all claims that may be so tried.

## Relief Requested

WHEREFORE, DA demands judgment be entered on all counts against Defendants, jointly and severally, with relief as follows:

a. Compensatory damages of at least $110,696.00,

b. Equitable relief,

c. Declaratory relief, including a declaratory judgment,

d. Pre- and Post-Judgment Interest at a rate of 1.5% per month (18% APR), compounded, or as allowed by law, whichever is greater, from the date of each invoice,

e. Attorney fees and expenses pursuant to the contract,

f. Costs, expenses, and other amounts as allowed by agreement or law, and

g. Such further relief as the Court deems just, without limitation.

By:

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)

Dated: April 24, 2013

Counsel for Plaintiff Devil's Advocate, LLC

## Verification

I swear under penalty of perjury that the foregoing is true and correct.

John W. Toothman, Esq.

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC,<br>Plaintiff,<br>v.<br>GRYNBERG PETROLEUM COMPANY, et al.<br>Defendants. | ) | Civil No. 2013-07559 |

AMENDED COMPLAINT

Plaintiff Devil's Advocate, LLC, (herein "DA") hereby demands judgment against Defendants Grynberg Petroleum Company and Jack J. Grynberg (collectively "Grynberg"), jointly and severally.

Jurisdiction & Venue

1. This Court has jurisdiction over the Defendants pursuant to Virginia Code Section 8.01-301.

2. Venue is appropriate in this Court pursuant to Virginia Code Section 8.01-262.

Parties

3. Plaintiff Devil's Advocate, LLC, ("DA") is a Virginia limited liability company providing, *inter alia*, consulting and other services, including expert witness testimony, performed and originated in Fairfax County, Virginia.

4. Defendant Grynberg Petroleum Company ("Grynberg Petroleum") is an oil and gas developer owned and controlled by Defendant Jack J. Grynberg, its proprietor.

Facts

5. Plaintiff DA was contacted by representatives of Defendant Grynberg Petroleum, including Defendant Grynberg Petroleum's president, Defendant Jack J. Grynberg, and their lawyer-agents acting within the scope of their authority, to provide consulting and expert witness services on behalf and for the benefit of Defendants. These services were intended to assist and benefit Defendants in federal qui tam litigation captioned *In Re: Natural Gas Royalties Qui Tam Litigation,* MDL 1293 (the "underlying litigation" in which Defendants here are plaintiffs or real parties in interest), then pending in the US District Court for the District of Wyoming under the principal local caption number 1:99-md-01293-SWS. Issues in the underlying case then included the reasonableness of millions of dollars in legal fees and expenses billed by numerous law firms to defendants in the underlying litigation, who had obtained an order compelling Grynberg to pay sanctions, the amount of which was to be determined, at least in part, based on the fee and expense submissions made by these underlying defendants. DA's services included, *inter alia*, legal bill reviews of such submissions for purposes of challenging or attempting to reduce the claims against Grynberg.

6. Defendants, through their lawyer-agents, agreed to DA's proposal to provide expert witness and consulting services and Defendants executed DA's written agreement, Exhibit A hereto ("Our Terms of Retention"). Defendant Jack Grynberg executed Exhibit A personally and individually as well as on behalf of Defendant Grynberg Petroleum Company, of which he is the authorized proprietor. (Exhibit A incorporates other terms by reference, which are marked as confidential and therefore omitted from Exhibit A.) DA satisfactorily, substantially, and adequately performed the agreed services and is entitled to payment in full.

7. DA undertook substantial efforts, under contentious and difficult circumstances, to assist Defendants. For example, DA prepared, and Defendants subsequently accepted, used, and filed with the underlying court, DA's valuable work product. In addition to other services provided by DA on a percentage fee basis, for which Defendant paid in part, DA performed further services to be paid by the hour pursuant to their agreement and as requested and ordered by Defendants. *E.g.*, Exhibit B (Invoice 1070, note regarding "Additional work..."). These services are documented, *inter alia*, in Exhibits C, D, E, and F hereto, which are the itemized statements and invoices DA previously delivered to Defendants. The additional hourly services for which DA seeks payment were performed beginning in April 2012 and ceased in August 2012.

8. DA's percentage fee quote was based on the representations of Defendants that the fees and expenses claimed by Defendants' opponents in the underlying litigation would total no less than $22.5 million, with DA's percentage portion of its fee set at 1.1% of whatever the bills or invoices submitted actually totaled. Exhibit A. The gross amount of such underlying bills, including subsequent and overlapping submissions by underlying defendants, was substantially in excess of $22.5 million. DA is therefore entitled to additional compensatory damages of at least 1.1% of these excess underlying bill amounts.

9. Defendants made use of DA's valuable services and work product and continued to request additional services to be performed by DA after receiving each of these invoices. When DA inquired of Defendants about the delay in receiving payment for the invoices, Defendants assured DA it would be paid in full. Defendants expressed no objection to the invoices or amounts billed, and Defendants continued to request even more such services from

DA with assurances that DA would be paid shortly, in full. DA is entitled to payment in full for these hourly services, the principal amount of which is at least $110,696.00 for hourly services and expenses, as itemized in Exhibits C through F hereto.

10. Defendants have breached their obligations to DA. DA has regularly delivered itemized invoices and statements for the additional hourly services to Defendants, who received and acknowledged them, without objection. On one or more occasions, Defendants' lawyer-agent(s) stated that the invoices would be paid in full, but no such payments have been made to date. After making its initial demands, receiving assurances by Defendants of payment in full (as well as requests for additional services), and performing some of these additional services (as reflected in the attached invoices), DA ceased performing any remaining additional hourly services in August 2012 because Defendants failed to make the promised payment(s).

11. After DA delivered notice it would perform no further services without payment, Defendants' lawyer-agents continued to acknowledge receipt of a subsequent invoice (for hourly work done before the cessation) and periodic billing statements (calculating interest on the hourly balance), without objection. Defendants continued to ask DA to perform additional services in exchange for Defendants' reiterated assurances of payment, in full, but Defendants made no such payment.

12. In addition to payment of the principal amount of the hourly fee invoices and the excess amounts for the percentage fee of 1.1%, DA is entitled to pre- and post-judgment interest from the date each amount was due, legal fees, and other costs and expenses, as provided in the parties' agreement or by law. DA is also entitled to be held harmless, to receive full compensation for any harm or amount incurred, and to be indemnified at the agreed hourly rates

for all time plus reimbursed for all other expenses, amount, or harm incurred in the course of any proceeding and any collateral dispute relating to or arising in any way from the engagement by Defendants or provision of services thereto, including this action. Exhibit A.

13. DA is entitled to the invoiced amounts in the attached exhibits, its percentage fee for the excess legal bills, submissions, or invoices (at 1.1% of the excess), and to be held harmless and indemnified in accordance with Exhibit A for DA's time and expenses incurred in the course of these and any other proceedings at the agreed hourly rates. DA is also entitled, *inter alia*, to pre- and post-judgment interest, legal fees and expenses, costs, and additional relief as provided by law, Exhibit A, or otherwise.

Claims

Count I: Breach of Contract

14. The allegations of this complaint are incorporated herein.

15. Grynberg Defendants and DA entered into contractual agreement(s), express or implied, written or unwritten. DA performed valuable services for which it is entitled to compensation. Defendants have been billed for some of these services, but Defendants have not paid. In addition, DA is entitled to 1.1% of the excess legal fees and expenses involved in the underlying litigation. Defendants have breached their contractual obligations to DA.

16. DA is entitled to full indemnification and to be held harmless, including without limitation its time and expenses in these proceedings, *e.g.*, including any amounts or relief relating to or arising from the engagement by Defendants or services provided to Defendants. Exhibit A. Defendants have breached these obligations as well. DA is entitled to specific

performance, declaratory, equitable, and interlocutory relief to implement this right to avoid irreparable harm which has been or may be threatened or caused by Defendants.

17. The terms of the parties' agreement, as reflected in Exhibit A, also include, *inter alia*, full indemnification, payment of pre- and post-judgment interest, and legal fees and expenses.

18. Defendants are liable to DA for compensatory damages, full indemnification, pre- and post-judgment interest, legal fees and expenses, and other amounts and relief as claimed herein and ordered by the Court.

Count II: Unjust Enrichment

19. The allegations of this complaint are incorporated herein.

20. Defendants have been unjustly enriched by requesting and using the valuable services, work product, name and reputation, and efforts of DA, thereby unjustly enriching and benefitting Defendants. DA conferred a valuable benefit on Defendants. Defendants knowingly requested that DA confer this benefit. Defendants inequitably accepted and retained the benefit, without payment.

21. DA is entitled to compensatory damages, full indemnification, pre- and post-judgment interest, and other relief, as described below.

Count III: Account Stated

22. The allegations of this complaint are incorporated herein.

23. Exhibits C through F hereto are copies of invoices and statements issued by DA to Defendants, which set the amounts due to DA. Defendants received and acknowledged each item, without objection, and repeatedly promised and agreed to pay the amounts stated. On one

or more occasions, and for purposes of inducing DA to perform more valuable services, Defendants stated they intended to pay the invoices in full and requested DA to perform additional such services.

24. DA is entitled to compensatory damages, pre- and post-judgment interest, legal fees and expenses, and other relief, as described below.

Count IV: Quantum Meruit

25. The allegations of this complaint are incorporated herein.

26. At the request of Defendants, and for their benefit, DA performed various valuable services for Defendants. Defendants requested, received, and made use of these services. DA demanded payment for the additional hourly services, which Defendants acknowledged and stated their intention to pay in full, but Defendants failed to make payment for these services. In addition, DA is entitled to 1.1% of the excess legal fees and expenses involved in the underlying litigation. Defendants are liable to DA for the full value of these services.

27. The extent and value of DA's services is itemized in Exhibits C through F for the additional hourly fees, plus 1.1% of the excess underlying fees and expenses.

28. DA is entitled to compensatory damages, pre- and post-judgment interest, legal fees and expenses, and other relief, as described below.

Jury Trial Demand

29. DA demands trial by jury of all claims that may be so tried.

Relief Requested

WHEREFORE, DA demands that judgment be entered on all counts against Defendants, jointly and severally, with relief as follows:

a. Compensatory damages of at least $499,000,

b. Indemnification, specific performance, and other relief to hold it harmless, including for all time and amounts expended in these proceedings and elsewhere,

c. Permanent and interlocutory equitable relief, including a temporary injunction and other interlocutory relief,

d. Declaratory relief, including a declaratory judgment,

e. Pre- and Post-Judgment Interest at a rate of 1.5% per month (18% APR), compounded, or as allowed by law, whichever is greater, from the date each invoice, sum, or payment was incurred or due until paid in full,

f. Attorney fees and expenses pursuant to the contract, costs, expenses, and other amounts as allowed by agreement or law, and

g. Such further relief as the Court deems just, without limitation.

By:

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)

Counsel for Plaintiff Devil's Advocate, LLC

Dated: October 3, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

**In Re:**

**NATURAL GAS ROYALTIES**
***QUI TAM* LITIGATION**

**99-MD-1293-J**

## SECOND AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE SPECIAL MASTER

Jack Grynberg (Relator) filed in the U.S. District Court for the District of Columbia, United States ex rel. Grynberg v. Alaska Pipeline Co., et al., CV No. 95-725 (TFH) against 66 defendants. Multiple motions to dismiss were filed. Judge Hogan dismissed the complaint for lack of jurisdiction. Grynberg then proceeded to file 73 cases in seven jurisdictions against over 330 individual defendants. Grynberg sought to have the cases consolidated by the Multiple District Litigation panel of the United States District Courts. The multiple defendants filed individual pleading in the respective courts as well as responding to the MDL panel. Some of the defendants organized and participated in a joint defense committee to coordinate pleadings in the various courts. The MDL panel transferred the cases to the United States District Court for the District of Wyoming and the case became MDL docket 99-MD-1293. The individual cases were given separate MDL docket numbers. Of the 330 defendants, there were 66 lead counsel. (Doc. 2268-3). The defendants established a Coordinating Counsel Committee to determine core issues and coordinate the research and filing of pleadings on the core issues. There was established a Joint Defense Team to research core issues, prepare and file pleadings. The court approved as lead counsel, Donald I. Schultz of Holland & Hart LLP. Holland & Hart attorneys and staff established an extranet which was a repository for research, pleadings and briefs for the joint defense

DA Summ Jdgmt
Exhibit G

team as well as all defendants. Through Schultz and Holland & Hart, arrangements were made for coordinated depositions, Special Master hearings, and court hearings. The attorneys fees and expenses of the joint defense team were divided by the defendants participating in the joint defense efforts.

On October 20, 2006, the Court granted Defendants' motion to dismiss for lack of jurisdiction under 31 U.S.C §3730(e)(4). See, In re Natural Gas Royalties *Qui Tam* Litig., 467 F. Supp. 2d 1117 (D. Wyo. 2006). Grynberg filed a Notice of Appeal. On March 17, 2009, the Court of Appeals affirmed the dismissal except for seven cases involving CO2 claims. See, In re Natural Gas Royalties *Qui Tam* Litig., 562 F. 3d 1031 (2009).

On July 22, 2011, U.S. District Judge Downes entered an Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. §3730 (d)(4). U.S. District Judge Johnson on July 6, 2012, entered an Order of Appointment and Referral to Special Master. Relator filed a Motion for Leave to File an Oversize Motion and a Motion for Scheduling Conference, Hearing and Discovery. A hearing was held on October 4, 2012. The parties submitted briefs, exhibits and oral arguments.

Relator has raised the following issues:

1. Limited Discovery by the Relator to determine the reasonable market rates of the attorneys representing the defendants and the reasonable hours expended in defense of the litigation by each defendant making a claim for fees and costs.
2. A hearing after the discovery.
3. The awarding of fees and expenses should be awarded under the applicable standards as a sanction rather than under the standards of the fee shifting statutes.
4. The District Court does not have jurisdiction to award appellate fees and costs.
5. The defendants are not entitled to fees and expenses for their attempts to recover attorneys fees.

**DISCOVERY AND HEARING**

The Relator seeks limited discovery on factual disputes arising out of the claims and a subsequent hearing. Relator seeks contracts between defense of the clients, the reasonable hourly entry of fees, and reasonable hourly rates. It seeks discovery as to the differences in the payment of joint defense fees or the per-capita portions where a law firm represented multiple defendants. Relator disputes expenses of various defendants. Most of the issues are minimal compared to the total fees and expenses.

The law is well established that the determination of fees "should not result in a second major litigation." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). The Relator's motion indicated that 46 pleadings were filed from July 22, 2011 to May of 2012 by the defendants. He indicates over 14,000 pages of billing information had been filed by multiple defendants. The Special Master will verify that with affidavits, motions, billings and briefs that there are over 14,000 pages, up to 40 entries per page. There are close to 400 timekeepers over 13 years. Relator seeks the attorney-client contracts with defense

counsel. There were over 300 individual separate corporations as defendants. Both attorneys and their records are in different states and the District of Columbia. If discovery were permitted, Relator may also be subject to limited discovery as to his reasonable attorneys fees, number of legal staff involved in the litigation and reasonable hours entered for prosecuting or defending an issue. Robinson v. City of Edmond, 160 F. 3d 1275, 1284 (10th Cir. 1998). Based upon the history of the case, opening discovery would extend the case additional years.

Relator retained Mr. Toothman as an expert on attorneys fees. He has submitted a report after a four-month review of the records. He raises issues concerning duplicity by the multiple timekeepers, and the necessity of tasks such as review of documents and excessive billing. He makes general conclusions and gives percentage reductions. Neither Relator nor Toothman provided evidence or an affidavit on the market rate of attorneys fees for oil and gas attorneys practicing in Colorado and Wyoming. Relator has provided 14 pages of hourly attorneys fees billed by defense counsel and legal assistants that provide the Special Master with a summary of the fees of counsel specializing in oil and gas law in Colorado, Wyoming and other jurisdictions.

Relator claims substantial factual issues exist as to the tasks performed, by whom, their experience and billing arrangements with clients. Affidavits have been provided by most of the defendants setting forth the expertise and experience of lead counsel. Relator has not contested the affidavits. The expertise of other timekeepers is not required. After thirteen years of litigation, the other timekeepers became well versed in oil and gas litigation. The billing records reflect the task of the timekeeper and, if properly entered, the relevancy to the litigation.

As cited by Relator, a hearing is not necessary where the parties will be arguing issues already addressed by the briefs and pleadings. ClearOne Commc'ns, Inv. v. Biamp Sys., 653 F.3d 1163, 1187 (10th Cir. 2011). What is critical to the review of fees and costs is that the district court has the "ability to evaluate the propriety of the fee request based on the specific billing entries." Flitton v. Primary Residential Mortg., Inc., 614 F. 3d 1173, 1178 (10th Cir. 2010).

The request to permit limited discovery and a subsequent hearing is denied.

**FEE SHIFTING OR SANCTION STANDARD**

Relator argues that 31 U.S.C. §3730 (d)(4) is a sanction rather than fee-shifting statute. Relator argues that as a sanction statute, the Court should adopt the restrictions set forth in White v. General Motors Corporation, 908 F.2d 675 (10th Cir. 1990). Special Master is puzzled by the Relator seeking sanctions under Rule 11. In White, the court sanctioned the attorney as required by Rule 11. Judge Downes specifically left open the issue of sanctions pursuant to Rule 11. He held, "The Court's reasons set forth above, could also serve as a basis for awarding attorneys fees under Fed. R. Civ. P. 11. However, because the Court has already awarded attorneys fees under 31 U.S.C. §3730 (d)(4), the Court need not reach the issue." Relator argued against the Motions seeking Rule 11 sanctions. Multiple defendants devoted hours researching, briefing, filing motions and responding to Relator's objection to the Rule 11 motions. The Court found: "[C]ontrary to Relator's assertion, the Court has discerned no authority which holds that pleadings signed, filed and advocated in False Claims Act cases are relieved

from the dictates of Rule 11." Attorneys file pleadings, not the litigant, and are subject to sanctions pursuant to Rule 11 as in White. It is interesting that Plaintiff's attorneys are willing to subject themselves personally to liability.

Relator correctly cites in his brief U.S. Senate Judiciary Report which states: "This standard reflects that which is found in section 1988 of the Civil Rights Attorney Fee Awards Act of 1976." Senate Judiciary Report on P.L. 99-562, False Claims Amendment Act of 1986, Sen. Rep. 99-345 (July 28,1986). Relator failed to provide the following note: "The committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of the Act for illegitimate purposes. The Committee encourages courts to strictly apply the provision in frivolous or harassment suits as well as any applicable sanctions available under the Rule of Civil Procedure. (emphasis added) Cited in Borsjoly v. Morton Theokal, 706 F.Supp 795 (D. Utah 1988). Congress intended for the courts to award fees and expenses pursuant to the fee-shifting statute and to also consider sanctions against the client and attorneys pursuant to Rule 11.

The United States Supreme Court in Business Guides Inc. v. Chromatic Communications Enterprises Inc., 498 US 533, 553 (1991), distinguished fee shifting provisions from Rule 11. Rule 11 is a sanction that is not tied to the outcome of the litigation but to a specific filing. It shifts the cost of only a discrete portion of the litigation rather than the litigation as a whole. A fee-shifting statute relates to the outcome of the litigation.

In Hamilton v. Boise Cascade Exp., F.3d 519 1197 1206 (10th Cir. 2008), Appellant attorney Hammons was sanctioned pursuant to 28 U.S.C. §1927 for unreasonable multiplication of the proceedings. Plaintiff Appellee was awarded costs and attorneys fees incurred because of the conduct. Hammons argued that the court should have used the "least severe" standard of White v. General Motors Corp., 908 F.2d 675 (10th Cir. 1990). The Court held: "*White* dealt with sanctions under Rule 11, which is not a compensatory mechanism." Fox v. Vice, 131 S. Ct. at 1216 held that the defendant is entitled to costs incurred absent the frivolous litigation in a fee shifting statute in §1998.

The Special Master finds that §3730(d) (4) is a fee shifting statute. The Court has not denied the Rule 11 Motions but has elected to not enter an order pursuant to Rule 11. It remains an open issue until the final judgment.

**APPELLATE FEES AND COSTS**

Relator objects to the claim for attorneys fees and costs by defendants defending the appeal by the Relator. He relies on Hoyt v. Robson Companies, Inc., 11 F.3d 983 (10th Cir. 1993). Hoyt holds that the district court does not have jurisdiction to enter an order on appeal-related fees until the appellate court has authorized fees to be assessed to the successful party.

Subsequent to Hoyt, the 10th Circuit has remanded the determination of appellate fees to the district court. In Whittington v. Nordam Group Inc., 429 F.3d 986, 1002 (10th Cir. 2005), Whittington asked for attorneys fees for defending an appeal. The court remanded the issue of attorney fees to the district court to determine the reasonable fees. In Anchondo v. Anderson, Crenshaw & Associates, LLC.,

616 F.3d 1098, 1107 (10th Cir. 2010), the plaintiff asked for attorneys fees and costs for defending an appeal. The court held that the plaintiff was entitled to attorney fees and costs and remanded the case to the district court to determine the reasonable fees and costs. In both cases the parties requested appellate fees from the 10th Circuit, and it granted the request.

Defendants rely on Crumpacker v. Kan. Dep't of Human Res., 474 F.3d 747 (10th Cir. 2007). Crumpacker argued that she should be entitled to reimbursement for interlocutory appeal fees where she was successful on the interlocutory appeal and as the prevailing party at the subsequent trial. The court held she was entitled to the appeal-related fees for the interlocutory appeal when she was eventually the prevailing party. The Tenth Circuit did hold: "We, therefore, hold that appeal-related fees, including those incurred in an interlocutory appeal, must generally be awarded by us." *Id.* at 755-56. It held that there was a narrow exception. When the party was successful in an interlocutory appeal and becomes the prevailing party on trial on the merits, the party is "implicitly entitled to reasonable attorney's fees related to the interlocutory appeals." *Id.* at 756.

In Flitton v. Primary Residential Mortgage, Inc., 614 F.3d 1173 (10th Cir. 2010), Flitton was successful in an interlocutory appeal reversing a summary judgment on two claims and a judgment as a matter of law (JMOL) on another claim by the district court. The jury verdict was reinstated on JMOL and a second trial ordered on the other two claims. She was the prevailing party in the interlocutory appeal on the reinstatement of the judgment by a jury on one claim. She did not seek appeal-related fees from the 10th Circuit on that claim. Flitton obtained a jury verdict on the remaining two claims at the second trial. The district judge denied the request for appeal-related fees for the interlocutory appeal because it did not have jurisdiction to enter an award. Flitton appealed the decision. The majority clarified the ruling in Crumpacker and reaffirmed Hoyt v. Robson Cos., Inc., 11 F.3d 983, 965 (10th Cir. 1993). The Court held that Crumpacker "did not (and could not) eviscerate" the requirement of Hoyt. "Accordingly, as we stated in "Crumpacker, [I]t is the law of this circuit that 'absent an explicit statutory provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court.'" Crumpacker, 474 F.3d at 755 (quoting Hoyt, 11 F.3d at 985). Flitton at 1180. The dissent by Judge Gorsuch is not the law and as indicated by the majority, only the legislature can change the law from being jurisdictional to procedural.

The defendants were the prevailing parties both in the district court and Tenth Circuit. The defendants have not presented any evidence that they have sought an order granting appeal-related fees from the Tenth Circuit. The district court does not have jurisdiction to award appeal-related fees and costs. Some of the defendants and the joint defense team have identified appeal-related fees and costs as a part of the request for fees and costs. The Special Master has reviewed the billings and addressed them in my findings. Should the Court determine it has jurisdiction to grant appeal-related fees, a review of the reasonableness of the fees will not be required.

**INTERLOCUTORY FEES**

In 2002, the Court granted a Motion by the United States dismissing the *Qui Tam* case brought Harold Wright who alleged that certain defendants made wrongful "valuation" of the gas produced from the wells. Doc 587. Grynberg also raised the issue. Grynberg filed a notice of appeal to the Tenth Circuit.

Relator objects to entries by Holland & Hart and Vinson & Elkins that refer to the Wright decision and Grynberg's notice of appeal. The issue of the appeal was researched and reviewed by the Joint Defense Team as to whether it should join the government in defending the Court order.

The Special Master finds that the entries relate to the defense of the issues raised by Grynberg's *Qui Tam* action and are relevant to the defense of the litigation and not directly related to the appeal.

**FEES ON FEES**

The federal courts have generally permitted a prevailing party in fee-shifting cases reasonable attorneys fees and costs incurred establishing the entitlement and amount of fees. "This is because it would be inconsistent to delete a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." Southern California Sunbelt Developers, Inc., v. IBT International, Inc., 608 F.3d 456, 463 (9th Cir. 2010). This is consistent with the law in the Tenth Circuit. The court held in Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1205 (10th Cir. 1986) that "an award of reasonable attorneys fees may include compensation for work performed in preparing and presenting the fee application."

Relator relies on Glass v. Pfeffer, 849 F.2d 1261 (10th Cir. 1988). At p. 1266 n3 of Glass, the Tenth Circuit indicated that courts allow attorneys fees for time spent in establishing entitlement to fees incurred in fee-shifting cases.

The Special Master finds that defendants are entitled to reasonable fees and costs to establish fees on fees.

**SETTLED PARTIES**

Relator objects to fee requests for defendants who have settled and been dismissed from the litigation. During the appeal by Relator of 73 MDL cases, Grynberg, appellant, voluntarily dismissed 29 cases. The defendants settled or waived the right to pursue fees and costs. Relator relies on the provision of the order of dismissal of Exxon companies. The order provides that defendant waives attorneys fees and expenses. Grynberg indicates he settled with 36 defendants. At the hearing and in the brief, he claims that six law firms billed fees for defendants that settled. He did not identify the specific defendants but used Exxon and Mobile oil as examples. Neither has submitted a claim for fees and costs.

The Special Master has reviewed the briefs and the billing entries of all defendants claiming fees and expenses and does not find any claim by defendants who have settled with Grynberg, and Relator that does not provide evidence to support the claim.

**$CO_2$**

Relator's *Qui Tam* complaint alleges ten defendants underpaid royalties on the production of $CO_2$. Judge Downes' dismissed the $CO_2$ claims pursuant to §3730(b)(5) first-to-file bar rather than §3730(e)(4) original source. The $CO_2$ appeals were separately addressed by the Tenth Circuit in In re Natural Gas Royalties *Qui Tam* Litigation ($CO_2$), 566 F.3d 956 (10th Cir. 2009). The Court granted Grynberg's appeal and remanded the case for further proceedings. It held: "Mr. Grynberg's claims might have trouble surmounting §3730(e)(4)'s public disclosure bar, they are not barred by §3730(b)(5) first-to-file bar."

Relator objects to any appeal fee-related claims because the $CO_2$ defendants were not the prevailing party on appeal. Six of the defendants settled before the opinion of the Tenth Circuit. All but Shell and Kinder Morgan settled. No claims have been made for appeal-fees by Shell or Kinder Morgan (KN Energy).

The issue is moot since the Special Master has found that defendants are not entitled to appeal-fees until such time as the 10th Circuit authorizes the fees and expenses.

**LODESTAR**

The United States Supreme Court in Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1662 (10th Cir. 2010) clarified the mixed rulings as to the method of determining attorneys fees in fee-shifting cases. It found the lodestar method looks to "the prevailing market rates in the relevant community" therefore producing "...an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." It further found "[T]he lodestar calculation is 'objective', ... and thus cabins the discretion of trial judges, permits meaningful judicial review and produces reasonably predictable results." (citations omitted). A reasonable fee was one that did not create a "windfall" or "relief to improve the financial lots of attorneys." *Id.* at 1673. The lodestar takes into consideration the novelty and complexity of the case as well as the quality performance of counsel.

The lodestar method has been the law of the 10th Circuit. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098, 1102 (10th Cir. 2010); Case v. Unified School Dist. No. 233, Johnson County, 157 F. 3d 1243, 1249-50 (10th Cir. 1998).

In Fox v. Vice, 131 S. Ct. 2205 (2011) the Court discusses the difference between awarding fee-shifting attorneys fees for prevailing plaintiffs and prevailing defendants. A plaintiff is entitled to reasonable fees even if he or she does not prevail on all of the claims. A plaintiff acts as a "private attorney general" in carrying out a policy of Congress. *Id.* at 2213. Citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 419 (1978), a fee award to a prevailing defendant is "...under a different standard reflecting the 'quite different equitable considerations' at stake." *Id.* at 2213. On the other hand, a defendant is hired by a client at an agreed hourly rate, paid during the litigation both for expenses and fees, and is paid despite the eventual outcome of the litigation. The defendant attorney does not act as a "private attorney general." The Court established the following standard for a prevailing defendant on

a frivolous claims filed by the plaintiff: "Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim."

The Court identified three examples where a defendant may consider awarding higher fees outside the prevailing market rate. Two are applicable. The Court indicated "If a defendant could prove, for example, that a frivolous claim involved a specialized area that reasonably caused him to hire more expensive counsel for the entire case, then the court may reimburse the defendant for the increased marginal cost. As all these examples show, the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters." Because Relator filed the 73 separate cases in different jurisdictions, the companies retained counsel in the jurisdictions where the case was filed. The majority of the MDL defendants were required to retain attorneys and/or law firms that specialized in oil and gas as well as *Qui Tam* litigation. The additional cost of attorneys fees and costs would not have incurred but-for Relator filing 73 separate cases requiring the hiring of an attorney in a specialized area of law and in different jurisdictions.

A second example would be when a plaintiff has filed a state claim and a frivolous federal claim, causing removal to the federal court, which drives up litigation expenses. In that case, an award would be granted for defending both the frivolous and non-frivolous claim. This exception applies because defense counsel who defended the quit tam claims in nine different jurisdictions throughout the United States incurred additional costs by having to defend the case in Wyoming. An example would be litigation filed in the U.S. District Court for the Southern District of Texas. Attorneys at the Fulbright & Jaworski Texas office, which specialized in oil and gas law and whose clients were in Texas, were required to travel to Denver and Casper for discovery, Special Master and court hearings, retain local counsel, and coordinate the defense of its clients with the other MDL defendants and the joint defense team. The Relator, at the same time, no longer was required to pursue the litigation in the nine jurisdictions which he had selected. Realtor's team of attorneys practiced law in Denver. Discovery was in Colorado and Wyoming and all hearings were in Colorado and Wyoming. Attorneys fees and expenses increased for over three hundred defendants and were reduced substantially for the Relator. But-for the cases being moved to Wyoming as an MDL case, the defendants fees and expenses would have been less and the Relator's fees and expenses higher.

**REASONABLE HOURLY RATE**

Perdue, 130 S. Ct. at 1672 succinctly holds the hourly rate "looks to the prevailing market rates in the relevant community" ...." [T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." The lodestar method is primarily used to determine reasonable fees for a prevailing plaintiff. In the MDL litigation the defendants are the prevailing party. Unlike a plaintiff, defense attorneys have fee contracts with the individual corporations.

Even where the law firm represents multiple defendants, the hourly fee may be different for each client. Defense counsel bill and are paid by the client during the litigation for fees and costs. The law firms are paid whether the client is the prevailing or losing party.

As in Perdue, the Court may look at the hourly fees of the defense counsel in determining the reasonable prevailing market rate in the community. In Case, 157 F. 3d at 1257 the Court noted that the hourly rate of the losing party may be relevant in determining the hourly rate. It also held that the reasonable hourly market rate is based on the hourly rate of attorneys working in that type of litigation. The hourly fees in the MDL litigation cannot be measured by a general attorney practicing law in Wyoming. The hourly fees of Brown Drew and Massey of Casper ranged from $75 for a law clerk to $225 per hour for the attorney. The firm was a conduit for access to the U.S. District Court in Wyoming but did not perform any substantive tasks, nor did it require knowledge of oil and gas law or *Qui Tam* litigation. The defense was performed by the law firms who specialized in oil and gas law and *Qui Tam* litigation at a much higher hourly rate.

Relator has not provided any evidence of the prevailing hourly rate for attorneys practicing in oil and gas law in Colorado and Wyoming. Relator and his attorneys live and practice oil and gas law in Colorado and the Rocky Mountain area. As such, if he believed that the hourly fees submitted by defendants were excessive, he should have provided the court with appropriate affidavits or other evidence to support his argument.

The Special Master has considered both exceptions in Fox when reviewing and entering my findings using the lodestar method. Relator filed 73 *Qui Tam* separate actions in nine districts across the United States. The transfer by the MDL panel to Wyoming increased the following marginal costs: additional travel expenses for defense counsel, retention of counsel specializing in oil and gas litigation, additional expenses for discovery and depositions, maintaining track of litigation of over 300 defendants, coordinating pleadings and appearing for court appearances. Defendants were required to retain counsel specialized in *Qui Tam* oil and gas litigation with legal staff to support the volume of pleadings, research and communications between defendants and Relator. The additional expenses would not have been incurred except by Relator's filing 73 *Qui Tam* cases in 9 different courts against 330 defendants in the United States. It has been held that if the litigation "...is so unusual or requires such special skill that only an out-of-state lawyer possesses" the Court may consider the reasonable hourly rates of attorneys with comparable skill, experience and reputation. United Phos. Ltd. v. Midland Fum. Inc., 2205 F.3d 1219, 1234 (10th Cir. 2000). The Special Master has considered both exceptions in considering the reasonable fees and hours in defending the litigation.

Mr. Toothman in his expert report indicates that the issues were not novel or difficult. He is of the opinion that attorneys outside of Wyoming were not necessary. This is contrary to the statement of Relator's attorney, Mr. Jatko, to the Court on May 10, 2012, Doc. 2268-2 where he states: "So I cite that today as -- as more support for our contention the issues of "public disclosure" and particularly the issues of "original source" are extremely complex. They're only made more complex by the number of cases before you and the factual intensity of each one of these cases." Mr. Toothman only needed to confer with Jatko or read the 176 page Findings by Special Master Bruce Pringle, and he would have

found the litigation both novel and difficult. Attorneys specializing in *Qui Tam* oil and gas litigation out-of-state were reasonably necessary in defense of the litigation which justified fees exceeding attorneys in the normal practice of law in Wyoming and Colorado.

The Special Master has reviewed the affidavits of the multiple defendants as to hourly fees of attorneys and legal staff over the 13 years. Relator provided a 14-page summary of the principal timekeepers which provides me with of the prevailing hourly rate of attorneys specializing in the practice of oil and gas. The Special Master also considered the hourly rates of Beatty & Wozniak, LLP and Holland & Hart. The law firms have offices in Wyoming and practice oil and gas litigation in Colorado and Wyoming. With the exception of local counsel used for administrative tasks, the hourly fees of counsel specializing in oil and gas law are within a reasonable range of $250 per hour in 1998 up to $550 per hour in 2010. Because of the specialized oil and gas *Qui Tam* litigation with over 300 defendants throughout the United States, the Special Master finds a prevailing market rate of up to $550 in 2010 is reasonable. The hourly rates of paralegals and law clerks have also been determined by the lodestar. Missouri v. Jenkins, 491 U.S. 274, 285-89 (1989).

**REASONABLE HOURS**

The lodestar requires the court to apply the reasonable hourly rate to the "number of hours reasonably expended on the litigation." Anchondo, 616 F. 3d at 1102. (citing Perdue).

The Special Master has reviewed over 13,000 pages of billing records with each page containing from 10 to 20 entries. The initial review of the individual record over the months provided a greater view of the interaction between the joint defense team and between defendant attorneys. I, therefore, revisited most of the billing records of defendants to either approve or adjust what were reasonable billable tasks performed by the attorneys and their staff. Where counsel or law firms represented multiple defendants, billing records were again reviewed to eliminate duplicate billings for the same tasks performed for different defendants. The Special Master also compared the bills where law firms divided the billing for tasks between defendants.

During the thirteen years, there has been a turnover of attorneys, law firms and corporate changes and mergers. The court authorized a lead attorney and a joint defense team to reduce multiple pleadings on the same issues, streamline depositions and discovery by defendants, and procedurally limit the number of attorneys arguing motions before the court. An extranet was created to provide a central repository for research, motions, pleadings and communications to reduce the necessity of defense attorneys maintaining their own repository. Because of the complexity of the litigation, 73 separate cases, and over 300 defendants law firms and the joint defense team were required to maintain organization charts of the various corporate and attorney changes over the 13 years. Attorneys and staff were required to review the extranet and e-mails on a regular basis, thus increasing expenses.

The Special Master has considered the following law in reviewing the hourly entries in entering my findings and recommendations:

Reviewing hourly entries. The timekeepers are not required to detail each minute of a task but should identify the general subject matter of the task. Flitton, 614 F.3d at 1178. Because of nature of the case, where the entry is inadequate, but where it can be determined that the entry relates to the case based upon the other entries, the Special Master has not disallowed the entry or reduced it. The Special Master has taken into consideration the "overall sense" of the litigation in evaluating the entry. Fox, 131 S. Ct at 2216.

Entries with "review" and like entries. All defendants have entries from the staff and attorneys that have entries with "review" or "telephone conference" without identifying the subject matter. Examples are "reviewed e-mails", "reviewed documents" or "telephone conference". Time entries of this nature can be a method of padding hours or excessive billing. Jane L. v. Bangerter, 858 F. Supp. 1544, 1549 (D. Utah 1993). Mr. Toothman opines that 44.8% of the entries reference "review" and 20.3% for vague time entries including calls.

Case, 157 F.3d at 1252 discusses timekeeper's entries that are cryptic without identifying the subject matter or the necessity to the case. The court held: "The district court did not err in disallowing Ms. Heins's submitted time because her records were imprecise and because the billing records do not show that her assistance was necessary to the case." Flitton, 614 F.3d at 1178 held: "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." The court went on to indicate the primary concern is the "...district court's ability to evaluate the propriety of the fee request based upon specific billing entries." *Id.* at 1178.

The Special Master has reviewed every entry in billings submitted by defense counsel including the above entries. As the Special Master has previously found, the complexity of the litigation with 73 separate cases, 300 defendants and a joint defense team maintaining a central repository of documents including pleadings required review of communications by e-mail, mail, and telephone. Relator can hardly complain about the "review" or "telephone" entries. Where the timekeeper has entered cryptic entries, the Special Master has reviewed the entry as it relates to the other entries which identify subject matter and/or necessity to the case. All defendants were required to periodically check e-mail and documents. The Special Master therefore has not reduced or disallowed all entries that are cryptic. The Special Master has reduced the hourly fee by a percentage where the entries are excessive or where the entries do not appear to be reasonably related to the litigation. The Special Master has also disallowed all the requested hourly fees where the timekeeper did not identify tasks necessary to the litigation and are administrative in nature.

Conferences. Mr. Toothman estimates that 24.6% of the fees were related to internal communications and conferences. It is not inherently unreasonable for a law firm to have multiple attorneys and legal assistants providing entries relating to the litigation in a complex case. Anchondo v. Anderson, Crenshaw & Associates, 616 F.3d 1098, 1105 (10th Cir. 2010). Communication between in house legal staff as well as other defense counsel was essential in coordinating joint and individual defense of the litigation. The Special Master has reduced fees where the conferences were excessive and where the subject matter of

the conference is not identified as related to the defense of the case. *Id.* at 1105; Flitton, 614 F.3d at 1178.

Duplication of tasks. Duplication of time occurs when there are more than necessary attorneys present for a hearing or when multiple legal staff are doing the same task. Robinson v. City of Edmond, 160 F.3d 1275, 1286 fn.10 (10th Cir. 1998). In a complex case such as this litigation, it was common for multiple legal staff to do research and contribute to work product. As long as timekeepers were not unreasonably doing the same work and were distinctly contributing to an end result, the hours are compensable. Anchondo 616 F.3d at 1105. Where there are excessive time entries by multiple staff or by attorneys attending hearings or conferences, the Special Master has reduced the fee requests.

Findings have also applied my "overall sense" of the litigation in "calculating and allocating attorney's time." Fox, 131 S.Ct. at 2216.

**COSTS AND EXPENSES**

Costs are awarded by the court pursuant to Fed. R. Civ. P. Rule 54 (d). The costs include clerk fees, court reporters' fees, printing, witness fees, copying fees and certain docket fees. 28 U.S.C. §1920. The Rule 54 costs are nominal because the litigation did not go to trial.

Other out-of-pocket claims are awarded as a part of the attorneys fees under §1988. The expenses are awarded if "(1) the expenses are not absorbed as part of the law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable. Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995). Copying costs, long distance telephone calls, travel expenses, legal research, paralegals and law clerks are included in the expenses. Missouri v. Jenkins, 491 U.S. 274, 288-289 (1989); Case 154 F.3d at 1258-1259. The first requirement is "normally billed to the client." The present "normal" is to bill even one stamp in some law firms. The second step is whether the expenses are reasonable. Counsel has the burden to establish that the expenses relate to the litigation and are reasonable. *Id.* at 1258.

Some defendants have not submitted any expenses and others have submitted pages. The Special Master has disallowed local travel expenses, overtime for secretarial staff and working meals as overhead expenses. The Special Master has also reduced meals and hotel expenses that are excessive. Because the cases were transferred to Casper, Wyoming, by the MDL panel from seven different jurisdictions, travel and hotel expenses were the normal including Cheyenne, Wyoming counsel. The extensive pleadings by defendant counsel and the joint defense team led to high copying and delivery costs.

**JOUNT CLAIMS OF ATTORNEY FEES AND EXPENSES**

Seventy-seven separate *Qui Tam* lawsuits with over 300 defendants were filed across the United States by Jack J. Grynberg, Relator. The Multiple District Litigation Panel transferred the cases to the United States District Court for the District of Wyoming, MDL Docket No. 99-MDL-1293. Participating defendants established a Joint Defense Committee with primary mission to keep joint defense

attorney's fees and costs low by coordinating legal research, filing of pleadings and briefs that were common to the defendants and reducing the number of counsel needing to appear at court hearings. Donald I. Shultz, a partner at Holland & Hart, was selected and approved by the Court as lead counsel. A Coordinating Counsel Committee was established to determine core legal issues common to all defendants in the MDL *Qui Tam* litigation and sought firms to research and draft joint defense pleadings on the issues. Holland & Hart established an extranet where documents, cases, briefs and pleadings of the Relator and the multiple defendants were electronically stored. Defendants could input and obtain data in preparation of individual pleadings. The Court authorized the creation of the joint defense representation in order to reduce the pleadings filed with the court and the management of hearings before the court.

Participating defendants agreed to reimburse the Joint Defense Team for legal fees and costs. Costs included administrative costs of the joint defense team and the extranet. Donald I. Schultz, as lead counsel, and Thomas M. Malone, as Co-Chair of the Coordinating Counsel Committee, filed affidavits for Jointly-Incurred Attorney's Fees and Expenses. Malone was an unpaid member of the Coordinating Committee.

The Special Master has reviewed over 2,399 pages of billing records and affidavits provided by the Original and Supplemental Affidavit of Donald Schultz for the attorneys providing legal tasks for the Joint Defense Team. The Special Master has also considered the objections of the Relator and his expert, Toothman. The lodestar evaluation has been used to determine the presumptive reasonable fees and costs. Perdue v.Kenny *ex rel.* Winn, 130 S. Ct. 1662 (2010).

The following bills have been submitted:

| Firm | Attorneys Fees | Costs |
|---|---|---|
| Holland & Hart LLP | $2,697,123.00 | $1,103,175.29 |
| Schultz & Belcher LLP | $99,187.50 | $1,571.14 |
| Schultz & Schultz | $63,812.50 | $279.93 |
| Brown Drew & Massey LLP | $17,323.50 | $1,329.93 |
| Skadden, Arps *et al.* | $311,783.19 | $32,788.00 |
| Miller & Chevalier | $31,895.82 | $149.99 |
| Holland & Knight LLP | $34,746.00 | $8,812.87 |
| Akin & Gump | $150,550.60 | $20,825.34 |
| Beatty Law firms | $2,103,395.20 | $114,668.03 |
| Fulbright & Jaworski | $4,177,170.87 | $145,789.80 |

                    **Total Joint Fees and Expenses: $11,116,378.50**

**HOLLAND & HART LLP**

The task of Schultz and Holland & Hart was to establish a centralized electronic data base for all participating defendants and the Joint Defense Team (JDT). It received the pleadings, briefs, legal research, documents and court communications. It also provided staff support of the Coordinating Counsel Committee and the JDT. Staff scheduled the depositions and hearings, contracted for the location of the deposition, payment for rental fees, water and food during the depositions, lodging for the JDT participating attorneys, provided telephone and video access for attorneys not personally appearing, and provided electronic assistance to JDT orally appearing in Court and Special Master hearings. Sixty-three attorneys and staff provided tasks over 11 years. Dawne M. Davis managed and directed all of the staff. She attended all Coordinating Counsel Committee meetings and JDT meetings. Davis scheduled and arranged depositions and hearings. She personally attended depositions and hearings to supervise the tasks provided by Holland & Hart. Attorneys and the Court communicated directly with Davis.

The billing records do not separately identify attorneys, paralegals and staff, but the records establish the tasked performed and the relevance to the litigation.

A reasonable attorney fee is measured by the "reasonable hours that counsel reasonably spent on the litigation by a reasonable hourly rate." Law clerks and paralegals may be awarded separately as a part of the fee for legal services. Missouri v. Jenkins, 491 US 274,287-289 (1989); Case v. United School Dist. No. 233, Johnson County, 157 F. 3d 1243, 1249 (10th Cir. 1998); A litigant is entitled to fees and costs if the (1) expenses are not absorbed as a part of the law firm's overhead but are normally billed to the client, and (2) the expenses are reasonable.

In the modern age of electronics, attorneys make presentations by the use of computers and other electronic devices. In the U.S. District Court for Colorado, it is required. Attorneys or witnesses participate by phone or visually by Skype. In the MDL litigation, depositions and hearings with the Special Master were recorded by video and some attorneys participated by phone rather than attending personally. This reduced the necessity of a hundred attorneys being present, the costs of travel, lodging and other expenses. The use of the extranet eliminated the exchange of paper documents and duplication of research by defendant law firms.

In Kenny ex rel Winn v. Perdue, the plaintiff determined that the most cost-effective method of managing documents and making them available to counsel in New York and Atlanta was to create an electronic database. It retained an outside vendor to electronically copy documents. This permitted the attorneys for the plaintiff to input the documents into an electronic database available to counsel in New York and Atlanta. The defendant objected to the plaintiff seeking $315,253 as copying costs sought by the plaintiff. The District Judge held: "Based upon the evidence submitted by the plaintiffs, the Court finds that plaintiff's counsel exercised reasonable professional judgment in electing to set up an electronic data base to handle the voluminous documents in this case, and the costs incurred in doing so, although significant, were less than would have otherwise been reasonably required to maintain

these extensive documents in paper format." *** "The balance of the copying costs will be allowed as nontaxable expenses recoverable under 42 USC Sec. 1988." Kenny A. ex rel. Winn v. Perdue, 454 F. Supp 2d 1260, 1295 (N.D. GA 2006).

The Special Master finds that the administrative tasks of coordinating the Joint Defense Group, managing the extranet and coordinating discovery are compensable as reasonable and necessary expenses not normally absorbed as a part of the law firms overhead but are normally billed to the client.

**FEE REQUEST**

Timekeeper summaries and billings do not identify the timekeepers that are attorneys, paralegals or law clerks. The timekeepers billing the highest hourly rates were: Thomas L. Sansonetti $450 (25.5 hours); Kit LeVoy $367.61 (2.3 hours); Glenn Marcy $365 (.06 hrs); Betsy Phelan $359 (191 hours); John Shepherd $350 (241.9 hours); Dennis Jackson $350 (1 hr); G. Stephen Masciocchi $300 (3 hours); and William Murane $300 (.1 hours). Donald Schultz, as lead counsel, averaged $284.54 (3654 hours) and Mike Smith as the back-up counsel billed $218 (1995 hours). The hourly fees are reasonable rates for attorneys in Colorado and Wyoming.

Donald Schultz claims 3,654.55 hours for $1,039,869.58 in fees. The Special Master has reviewed the entries and finds that entries identify the task performed and the relevance to his coordination of Joint Defense Team and electronic coordination of documents, research and filing of pleadings. More than 50% of his tasks were phone conferences, meetings with Joint Defense teams, and being the lead attorney at hearings before the Special Master and the Court. The success of the Joint Defense was dependant on Schultz and his staff carrying out their assigned tasks. The Special Master finds that the hours billed by Schultz were reasonable and necessary for the litigation defense.

The following attorneys fees are not reasonably related to the defense of the litigation:

Sansonetti's billing and costs are for trips to Washington D.C. to meet with Assistant Secretary Watson, Deputy Assistant Secretary Calvert, BLM Director Clarke and Chief of Staff Sierra in 2004 and 2005. He billed 25.5 hours for $11,475.

Barry Bartel, John Shepherd and Jill Nickerson: 35.7 hours for $10,170 attending the BOC trial and pleadings.

Stephen Masciocci and John Shepherd: 21.3 hours for $7,345 on research on Special Master appointment and Code of Judicial Conduct.

John Shepherd and Mike Smith: 103 hours for $18,841 on research and conflict issues involving Grynberg hiring a staff person from Holland & Hart.

Dennis Jackson and William Murane: 1.1 hours for $398 for an audit.

Geraldine Brimmer: 77.2 hours for $20,844. The billings are review of the extranet and documents with limited conferences. There is no documentation that she produced any productive tasks in defense of the litigation.

Dayle Petrillo: 427 hours for $17,592. He performed the administrative duties of billing participating defendants, entered payments and reported defendants that were delinquent in payments. His duties are those normally a part of a law firm's costs. United Phos., LTD v. Midland Fum., Inc., 205 F.3d 1219, 1234 (10th Cir. 2000).

Billing issues: 158 hours for $20,382. Tasks performed by staff and attorneys other than Petrillo relating to billing disputes and collecting delinquent fees.

Appeal: The task entries by Phelan, Stevens, Schultz and support staff from July, 2007, to December, 2008, are devoted to the appeal including administrative arrangements for defendant counsel attending the argument. The total fees were $104,114 and are disallowed.

The total fee request disallowed: $211,161.

The fees relevant and necessary incurred by Holland & Hart on behalf of the Joint Defense Team are $2,485,962.00.

**COSTS REQUEST**

Holland & Hart seeks $1,103,175.29 in costs for the Joint Defense Team.

Costs are determined by whether or not costs are reasonably necessary for use in the case. Allison v. Bank One, 289 F.3d 1223 (10th Cir. 2002). Out-of-pocket expenses may be awarded under Section 1988 if (1) the expenses are not absorbed as a part of the law firm's overhead, but are normally billed to a private client, and (2) the expenses are reasonable. Jane L. v. Bangerter, 61 F.3d 15, 157 (10thCir. 1995). Meals and meeting expenses are common overhead expenses and are not recoverable under Sec. 1988. Waters v. Int'l Precious Metals Corp., 190 F. 3d 1291, 1299 (11th Cir. 1999). Likewise, clerical work and other expenses are not recoverable. As Chief Justice Rehnquist stated in his dissent in Missouri v. Jenkins, 491 US 274 (1989), "...[T]hat attorneys seeking fees under Sec. 1988 would have no basis for requesting separate compensation of such expenses [secretarial time, paper clips, electricity and other expenses] unless this were the prevailing practice in the local community. The safeguard against the billing at a profit of secretarial services and paper clips is the discipline of the market."

The Special Master has reviewed 358 pages of expenses and costs in the amount of $1,103,175.29 submitted by Holland & Hart. The Special Master has also compared the expenses with the fee request. The Special Master finds that the following expenses and costs are disallowed because they are not reasonable or necessary to the defense of the litigation, or not recoverable because the costs are those normally a part of law office expenses.

1999: $2,069.76 Joint Defense Team meeting including breakfast & lunch

$264.15 Undesignated invoices to Dawne Davis

$472.50 Secretary & clerical services

Total: $2,806.41 Net cost allowed: $18,546.55

2000: $555.00 Secretary & clerical services

$5,805.34 Banquet facilities and meals

$336.31 Meeting in Mike Beattys' office

Total: $6,696.65 Net: $77,038.61

2001: $150 Secretary & clerical service

$383.61 Meals

$6,230.50 JDT meetings

Total: $6764.11 Net: $51,483.72

2002: $150. Secretary & clerical service

Total: $150 Net: $107,102.56

2003: $240 Secretary & clerical service

$8,369.94 Joint Defense Team banquet lunches, beverages and refreshments.

Total: $8,609.94 Net: $356,222.78

2004: There are triple billings by Davis for Grynberg depositions for the following days:

12/2-13: $1,000, $654.25, $1,429.27; 12/9-15:$700, $1,301.49 and $338;

12/16-19: $800, $2,079.01, $1,619.25; 1/07: $976.98, $814, $376.75, $750 and $750; 1/8: $906, $329.50 and $650; 1/13: $942.55, $494.95 and $550;

2/3: $906.48, $331.50 and $550; 10/22: $986.37, $1,750 and $1800;

11/6: $420.56, $1,200 (catering); $350 (catering) and $1,095.50 (catering);

11/17: $3,748.25 (lodging), $1,354.60 (luncheons, beverages) and $1,649.75 (phone lines and high speed expenses).

The entries are for "Grynberg Deposition and Hearing," "Conference Room and Accommodations for Conference Room and Catering expenses."

Holland & Hart seeks $8,676.49 for meals, $15,763 for lodging and $24,652 for Grynberg depositions. Interspersed from pages 166 to 227 are billings for 2004 that create the different entries above. The billings noted as meals and lodging do not add up to the amounts claimed. The luncheons and catering for the depositions are not separated out as meals, but included in the Grynberg deposition expenses. The same problem exists for lodging. The 11/17 billing is for "conference room and lodging." It does not identify what portion is lodging or for whom the lodging is billed.

Based upon invoices of conference room expenses from 2003 and 2005, Holland & Hart is entitled to $950 per day for deposition conference rooms of $9,199.85. It is entitled to the cost of the phone lines and high speed expenses for the depositions in the amount of $5,299 for a total of $19,797.95. The deposition expense is reduced by $4,854.66.

Lodging expenses that are as tasks related to defense of the litigation are $2,022.14. The lodging request is reduced by $13,741.72.

Holland & Hart is entitled to $403.80 for meals in traveling to Washington DC. The remaining meals costs are expenses absorbed by the Joint Defense Team. Meal expense of $8,272.69 is disallowed.

The following expenses are disallowed:

Grynberg deposition costs: $4, 854.66

Lodging: $13,741.72

Meals: $8,272.69

Total: $26,869.07 Net: $250,451.74

2005: $180 Secretary and clerical

$8,115.34 Meals for the Joint Defense Team

$3,256.42 for T.L. Sansonetti expenses for meetings with officials of BLM and Assistant Secretaries Watson/Calvert. The task and costs are not established as relevant or necessary for the defense of the litigation.

Total: $11,551.76 Net: $64,440.86

2006: $1,688.53 Meals for Joint Defense Team meetings

Total: $1,688.53 Net: $26,773.70

2007: $1,086.48 Meals for JDT meetings

$30.63 Expenses for the case history of Denver and Adams County District. The expense is not relevant to the litigation.

Total: $1,117.11 Net: $44,309.60

2008: $541.04 Meal expenses for multiple unidentified parties.

Total: $541.04 Net: $17,564.58

2009: No change Net: $22,445.97

Total reasonable and necessary expenses: **$1,036,380.67**

**SCHULTZ & BELCHER LLP**

Donald I. Schultz left the firm of Holland & Hart LLP and entered into the partnership of Schultz & Belcher LLP. He has submitted billings for 2009 and 2010 which involve communications concerning the United States Supreme Court denying Relator's appeal of the 10th Circuit ruling, and negotiations concerning settlement of outstanding cases with Relator's attorney.

**FEE REQUEST**

The request is for $99,187.50 in fees and $1,571.14 costs.

Donald I. Schultz's hourly fee was $375 per hour. The Special Master has reviewed 59 pages of invoices which are detailed as to the task performed and the necessity of the tasks for the Joint Defense team to the litigation. The Special Master disallows 7.2 hours and $2,700 as administrative tasks devoted to billings of defendants for the services of the Joint Defense Team.

The Special Master disallows as excessive a billing for $718 on October 17, 2008. The billing is at the Hotel Monaco for two nights, which includes breakfast of $94.70, lunch $59 and dinner at $85.27. Hotel Monaco is a four star hotel, and the expense is unreasonable.

The total reasonable and necessary expenses are: $96,487.50 in fees and $853.14 in costs for a total of $97,340.64.

**SCHULTZ & SCHULTZ LLP**

In 2011, Donald I. Schultz was in the firm of Schultz & Schultz LLP. He continued to carry out the assignment as lead counsel for the Joint Defense Team. The primary tasks involved the allocation of a deposit by Grynberg for a Special Master fee as ordered by the Court; obtaining fees and costs from the Joint Defense Team for the submission of attorney fees and costs to the Court, and "continue analyzing fee and expense data and drafting affidavit for joint fees and expenses."

**FEE REQUEST**

The request is for $63,812.50 fees and $279.93 in costs.

Donald I. Schultz's hourly fee was $375 and Ursula P. Schultz's hourly fee was $125 as a paralegal rather than as an attorney. Donald Schultz billed 156.6 hours using block billing. An example would be 9.10 hours on September 20, 2011, which commences with "Continue analyzing fee and expense data and drafting affidavit for joint fees and expenses." The remaining half page of tasks is devoted to communications with multiple parties, Plaintiff's counsel, and court staff concerning the payment by Grynberg for Special Master fees and distribution of payments. The September 8, 2011, billing of 8.30 hours commences with the same phrase but three-fourths of the page is communication with multiple parties, plaintiff's counsel, the court staff concerning Grynberg's failure to comply with the court order, consideration of contempt pleading and discussion of e-service. There are 17 entries that commence: "Continue analyzing fee and expense data and drafting affidavit for joint fees and expenses."

The Special Master finds that 26 hours of tasks relate to the payment of Special Master fees and allocation of those fees which are not related to the "analyzing fee and expense data and drafting an affidavit for joint fees and expenses," and are not related to defense of the litigation. It also includes tasks of updating the e-service.

The remaining tasks involve obtaining information and documentation from Joint Defense Team members in order to file a Motion for Fees with affidavits to support the fees and costs of the Joint Defense Team. The defendants are entitled to recover reasonable fees and costs incurred to present their claim for attorney fees and costs in defending the litigation. Camacho v. Bridgeport Fin. Inc, 523 F.3d 973, 981 (9th Cir. 2008); Mares v. Credit Bureau of Raton, 801 F.2d 1197, 120 (10th Cir. 1986).

Ursula Schultz billed 40.7 hours at $125 per hour. The tasks consisted of legal research on fees and entering data on the spread sheet.

Schultz and Schultz LLP has submitted reasonable and necessary fees of $54,062.50 and expenses of $279.93 for a total of $54,342.43.

**BROWN DREW & MASSEY LLP**

The first recorded task sets forth the purpose of retaining the law firm of Brown Drew & Massey LLP. It states: "Drafted response to Don Schultz and conferred with attorney, Tom Reese, regarding providing services of Casper court filings to Holland & Hart for efficient website updates." The firm is located in Casper, Wyoming. Tom Reese was the attorney at $250 per hour. Gigi Davis and Carol Mariegard were administrative staff or law clerks in the law firm. The invoices do not designate their titles. They billed at $75 per hour. The fees are reasonable and less than other attorneys, paralegals or law clerks of other law firms. The law firm provided similar services for Fulbright & Jaworski, LLP and Beatty & Wozniak.

**FEES REQUESTED**

Gigi Davis billed 14.57 hours for the task of obtaining records and documents from the United States District Court in Casper, Wyoming and providing them to Holland & Hart. She also filed documents on behalf of Holland and Hart. The tasks were administrative and did not require any legal skills. 15.57 hours and a fee of $1,082.50 are disallowed. Carol Mariegard apparently replaced Davis, and 1 hour at $75 is disallowed as administrative.

Tom Reese billed 64.25 hours for $16,062.50 in fees. His task entries fail to identify the task, the applicability to the case and the work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1994); Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). He did appear at hearings and assisted counsel at the hearings. The Special Master has reduced the fees by 50% because the entries fail to comply with billing standards of Case.

Pam Brondos, Rin Karns and Randall Carnahan have a total of .90 hours and a total fee of $103.50. The fee is disallowed for the same reason as Reese.

The firm had $1,329.93 in mailing and Federal Express costs. As indicated, the firm was retained to provide pleading and documents to Holland & Hart LLP for entry into the extranet. The costs are reasonable and necessary for the litigation.

The Special Master finds that $9,361.18 in fees and costs are reasonably related to the defense of the case.

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP (SKADDEN ARPS)**

Skadden Arps was retained by the El Paso Corporation in January, 1999. It commenced research and preparation of a template memorandum of points and authorities to dismiss under Fed. R. Civ. P. Rule 9 (B) and Rule 12 (B) (1),(6) and (12). It also prepared the reply brief in support of the Motion to Dismiss. In March and April, 2001, the firm researched and drafted a Rule 11 motion as a part of the Joint Defense Team Rule 11 Committee. The tasks performed by Skadden Arps were performed between January, 1999, and April, 2001.

**FEE REQUEST**

Skadden Arps' portion of the joint defense fees and expenses are: $321,633.00 fees and $32,788.00 expenses less $32,650.11 paid by the firm's client.

Legal staff timekeepers billed as follows:

Douglas G. Robinson, partner - $480 per hour; Associates between $146 per hour to $290 per hour. Robinson billed 362.5 hours and $142,322. The associates billed 662.55 for $70,447.65. Denise Buffingon, Client Specialist, performed paralegal tasks of 19.25 hours for $1,582.35. They charged $9,987.70 for legal assistants. The invoices do not record the tasks of the legal assistants. The hourly fees are reasonable rates for attorneys practicing oil and gas law within Wyoming and Colorado.

The billings set forth the tasks performed by the attorneys and that the tasks were reasonably performed for the defense of the litigation. Relator objects to the number of hours devoted to the research, preparation and filing of the Motion to Dismiss. Relator has not provided evidence establishing the hours are excessive other than conjecture. The Rule 9 and 12 Motions to Dismiss by the Joint Defense Team and used by other Defendants in individual Motions to Dismiss eventually led to dismissal of the Relator's claims.

The Special Master disallows $9,987.70 of legal assistant fees because the invoices fail to identify the tasks performed.

The costs of $32,788.00 requested are minimal and justified as reasonably incurred for the research and filing of the pleadings.

The Special Master finds that the fees relevant and necessary for the defense of the litigation by Skadden Arps on behalf of the Joint Defense Team are $278,995.19 fees and $32,788.00 expenses for a total of $311,783.19.

**MILLER & CHEVALIER, CHARTERED**

Miller & Chavalier, attorneys for Exxon Mobil Corporation, commenced research and drafting of a generic Fed. R. Civ. P. Rule 11 motion. It participated in conferences of the Joint Defense Team Rule 11 Committee and cooperated with Skadden Arps counsel researching and drafting a generic Rule 11 motion and brief. Research and multiple drafts were exchanged and discussed in March and April, 2000 with a final draft the end of April.

**FEE REQUEST**

Miller & Chevalier fees and expenses for the Joint Defense Team were $37,545.00 fees and $149.99 expenses.

D. Craven, lead counsel, evaluated different proposed Rule 11 motions and participated in the Rule 11 Committee discussions to approve a final draft. She billed 51.25 hours at $400 per hour for $20,500.00.

J.P. Tuite provided coordination with the Motion Committee, revisions between various drafts and research by the associate attorney. He billed 31.5 hours at $350 per hour for $11,025.00.

M. Godfrey provided legal research and drafts of a generic Rule 11 motion. He charged $140 per hour.

The fees are within the reasonable presumptive fees for attorneys practicing oil and gas law in Wyoming and Colorado.

The timekeepers identified the task and relevancy to the defense of the litigation. The expenses of $149.99 are minimal and necessary. The Special Master finds that the fees and expenses of Miller &

Chevalier on behalf of the Joint Defense Team of $37,545 in fees (less $5,799.17 paid by Exxon) and $149.99 in expenses for a total of $31,895.82 were reasonable and necessary to the joint defense.

**HOLLAND & KNIGHT LLP**

On behalf of the Joint Defense Steering Committee, Holland & Knight LLP researched the original source/public disclosure defense by gathering facts, material and expert reports. It drafted a recommended memorandum on public disclosure and original sources issues, as well as an outline regarding a Motion to Dismiss.

**FEES**

Colley as a partner billed 3.2 hours at $330 per hour for a total of $1,056.00. Ittig as an associate billed 81.6 hours at $215 per hour for a total of $17,544.00. Southard as an associate billed 62.1 hours at $260 per hour for a total of $16,146.00. The hourly fees are within the reasonable presumptive fees for attorneys practicing oil and gas law in Wyoming and Colorado.

The timekeepers identified the task and relevancy to the defense of the litigation. The original source defense was primary to the dismissal of the *Qui Tam* litigation.

The expenses of $8,812.87 were relevant and necessary to the defense of the case.

The Special Master finds that the billing of Holland & Knight LLP of $34,746.00 fees and $8,812.87 for a total of $43,558.87 were reasonable and necessary to the joint defense.

**AKIN & GUMP**

Jerry Rothrock and Robert Salcido on behalf of the Joint Defense Team in 2001 did research and prepared a Memorandum and Motion for Interlocutory appeal of a Rule 9(b) Motion to Dismiss. Akin & Gump commenced research, briefing and drafting a motion for attorneys fees from January-April, 2007, and participated in the oral argument of the motion before Judge Downes on behalf of the Joint Defense Team.

**FEES**

Rothrock billed 11.7 hours at $425 per hour for a total of $4,972.50; R. Salcido billed 10.1 hours at $450 per hour in preparing a motion for interlocutory appeal in 2001 for a total of $4,545. In 2006/2007, Salcido and S. Yohai researched and drafted a Motion for Attorney Fees on behalf of the Joint Defense Team. Salcido billed $550/$575 per hour for 139.50 hours for a total of $78,287.50. S. Yohai billed $240/$315 per hour for 215.60 hours with a total of $62,019.00. The hourly fees in 2001 are within the presumptive range of attorneys practicing oil and gas law with Wyoming and Colorado. The fees in 2006/2007 do not require a specialty in oil and gas law, but whether fees are entitled in *Qui Tam* litigation. Although the fee of Salcido is high, the Special Master has no evidence that it is excessive.

The research and drafting of the Motion for Attorney Fees involved the Joint Team Committee members commenting and suggesting revisions of the multiple drafts during a four-month period. The

Relator objects to hours spent on seeking fees. The Special Master has previously held that reasonable fees can be assessed. The hours expended on the Motion for Fees resulted in the motion being granted.

The expenses submitted are double billed on each day on most of the entries. Eliminating the double entries, the expenses are $11,166.29. Akin & Gump also billed $531.51 in secretary overtime which is an office expense, $12.15 in meals, and $50 for court renewal fee and membership for a total of $593.66 disallowed. The total expenses are $10,572.63.

The Special Master finds that the billing of Akin & Gump of $149,824.00 in attorney fees and $10,572.61 in expenses for a total of $160,396.63 were reasonable and necessary to the joint defense.

The joint fees and expenses by law firms providing joint defense tasks have been paid by defendants participating in the services provided by the joint defense team. They are not separate legal fees and expenses passed on to Grynberg. The individual defendants were assessed and paid joint defense fees and expenses based upon $11,093,418.21. The Special Master has found that the reasonable fees and expenses of the joint defense team are $8,283,220.90 or 25% less than assessed to the defendants. The defendants were assessed and paid more than the reasonable amount. Grynberg is only required to pay the reasonable fees and expenses incurred for defense of the frivolous claims. Fox, 131 S.Ct. at 2216. The Special Master has reduced the claims for payments of joint defense fees and expenses by 25%.

**BEATTY LAW FIRMS**

The Beatty law firms n/k/a Beatty & Wozniak LLP represented multiple oil and gas companies as well as provided assistance to the Joint Defense Team. Because it was providing legal services for multiple defendants as well as the Joint Defense Team, the firm had a separate accounting system where hourly billings were divided between the tasks for the specific client, tasks provided for multiple clients, tasks that also involved El Paso gas and tasks applicable to the Joint Defense Team. How and who divided the tasks into separate accounts cannot be determined from the billing record. Because of the multiple representations, there are entries for over 23 timekeepers during the years proving legal services for the Joint Defense team.

Tasks performed for the Joint Defense team initially involve the gathering of factual information, research, depositions, drafting a joint motion to dismiss, briefs supporting the motion, multiple conferences on the motion, court hearings and subsequent pleadings responding to the court orders on the original source project. Like Holland & Hart, the firm established an electronic repository for all evidence, depositions and legal research that related to the original source defense. Timekeepers billed between $45 and $90 per hour devoting their time coding original source information and entering the information into the repository. The Beatty firm worked closely with Fulbright & Jaworksi LLP on the original source doctrine.

Because of the multiple defendant representation, I have compared the Joint Defense Team billings against the billings to KN Energy and CMS Energy. There was minimal possible duplicate billings.

**FEE REQUEST**

Joint Team funds paid to the Beatty firm were $2,103,395.20 in fees and $114,668.03 in expenses for a total of $2,218,063.23.

The hourly fees of the attorneys and legal staff were: Michael Beatty, $450 per hour; Rebecca Noecker, $395 per hour; M.Heydt, $275 per hour; T. Collier, $175 per hour; K. MacIntyre, $140 per hour; G. Graham (PL), $120 per hour; D. Winters (PL), $110 per hour; T. Jacobs (IT), $120 per hour and C. Bailey (DC), $45 per hour. I find the hourly fees of the attorneys and legal staff are reasonable and within the presumptive range for attorneys and legal assistance for attorneys practicing in oil and gas law within Wyoming and Colorado.

Relator's expert objects to the entries of more than one attorney attending conferences, hearings and depositions by non-attorney staff. Beatty and Noecker attended conferences and hearings involving the original source doctrine on behalf of the Joint Defense Team as well as their individual defendants. Because information was stored electronically, technical staff helped prepare the presentations as well to assist counsel in making the presentations. It was reasonable and necessary to have the legal team present including the paralegal shepherding the case (Graham) and the digital technician (Jacobs). I find that the timekeeper hours and expenses incurred with more than one attorney and with the supporting legal staff were reasonable and necessary unless otherwise noted.

The following hours are disallowed:

Motion for sanctions. 468 hours and $114,978.50 were tasked to research, motion and briefing a Rule 37 motion for sanctions. One billing indicated 17.10 hours for $2,565 was not billable, but the invoice includes the amount. The motion for sanctions and the award of any fees are not relevant or necessary to the defense of the litigation. Only the Judge can rule on the motion and determine the appropriate sanction which may include attorney fees and costs. John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). I note that Special Master Pringle in his order of August 9, 2004, held: "The special Master also has substantial concerns regarding the amount and allocation of legal resources devoted to the Motion. Defendant Application for Attorney fees discloses that five attorneys (Noecker, MacIntyre, Shultz, Smith and Micheli) billed a total of over 40 hours to this matter. Another individual whose status is unknown devoted approximately 25 additional hours to legal research and drafting memoranda. The Special Master finds and concludes that issues raised by the instant motion did not require this magnitude of effort and manpower." I concur. I disallow 468 hours and $114,978.50 as not reasonably necessary for the defense and an issue to be determined by the District Judge.

Congressman Tancredo. 6.90 hours for $1,653.00 were devoted in meeting with Congressman Tancredo. The billings indicate that the Joint Defense team and other defendants billed tasks that relate to the U.S. Senate and Congress investigating the possibility of amending legislation to the False Claims Act. I find that the hours are not necessary to the defense of this litigation, and $1,653.00 is disallowed.

June 30, 2005. The June 30, 2005 invoice has redacted billings. Relator objects to the billing because he cannot evaluate the tasks performed for the hours billed. I also cannot identify the tasks. The tasks identified are 7.3 hours and fees of $26,013.50 which are disallowed.

Non-billable hours. There are twelve invoices that have the abbreviation NC (No charge) which are not billed to the Joint Defense Team but are submitted as reimbursable fees. The total non-billable charges of $91,208.00 are disallowed.

Beatty/Noecker. Beatty and Noecker attended and billed hours for the following meetings or depositions:

Original source meeting in June 2002 both attended with two other staff members. Beatty billed $4,800 and Noecker $5,600. The fees of the other two attorneys were marked NC. $4,800 is disallowed as duplicative. A deposition was taken December, 2002, with both present. Beatty billed 10 hours for $4,800 and Noecker for 10 hours for $3,675. $3,675 is disallowed as duplicative.

March 2005: In March 2005, Beatty and Noecker prepared for the presentation of the Joint Defense motions to dismiss on the b-2 and b-4 claims before Special Master Pringle. On March 15 there was a working session with Beatty, Noecker and Noone. Graham, PL and Jacobs (IT) attended for $8,515 in fees. Jacobs prepared the electronic presentation and Graham the documents and exhibits. On March 16, the Joint Defense team met to coordinate and comment on the presentation. Beatty and Noecker adjusted the presentation based upon the comments and Jacobs updated the electronic presentation and set up the arrangement of the presentation in the courtroom. He also assisted in the presentations by the Fulbright attorneys. Beatty, Noecker and Noone attended the oral argument along with the assisting staff. The staff were an integral part of the presentation. Relator objects to the multiple use of attorneys and staff. I have again reviewed the hours for March and find that the $2,145 in clerk fees are administrative. I also find that the 40 billing hours and $11,082.50 in fees of Michael Noone are duplicative and not necessary to the defense of the case. The tasks do not show any productive legal work and consist of attending meetings and the oral arguments where Beatty and Noecker were present. $13,516.50 in fees are disallowed for March, 2005.

Coding/Inserting documents. Relator objects as administrative the hour and fees of $105,000 in timekeeper billings for coding and inserting coded documents into the electronic repository. The coding was to identify documents and information related to the original source defense and other motions filed by the joint defense team. Entries from November, 2003, to February, 2004, were documents and exhibits obtain from the deposition of Grynberg. Over 90% of the entries are billed at $45 to $80 per hour. The remaining billings are by attorneys or paralegals. As in the findings for Holland & Hart, the electronic recording of documents benefits the Relator by eliminating 300 defendants maintaining the files, therefore reducing attorney fees and costs of the individual defendants. The fees for coding and inserting coded documents are relevant and necessary for the defense of the litigation.

**COSTS**

Beatty requests $114,668.03 in costs of services performed for the Joint Defense Team. I have reviewed the costs and they are necessary and reasonable with the following exception. Beatty attorneys and staff billed for working meals, meals for group meetings and tips in the amount of $4,719.37 which are disallowed as not necessary for the defense of the litigation.

I find that Beatty & Wozniak incurred reasonable and necessary fees and costs on behalf of the Joint Defense Team as follows: $1,847,839.70 attorney fees and $109,948.66 in costs for a total of $1,957,788.36.

**FULBRIGHT & JAWORSKI LLP**

In January, 2002, Nancy Pell and L. Poe Leggette of Fulbright & Jaworski met in Denver with the Beatty law firm. On behalf of Fulbright & Jaworski, they entered into a "Joint Original Source Measurement Project Agreement" with the Joint Defense Committee. It would provide legal research and pleadings on behalf of the JDT. The Agreement limited fee billings to no more than $50,000 per month. When it exceeded the amount, it was required to "write off" fees to stay within the contract. Fulbright averaged $49,143 in billings per month during 84 months after writing off fees. Forty-six timekeeper's billed for tasks during that time period. The billings do not identify the timekeeper's position in the firm unlike billings by Fulbright & Jaworski for other defendants. The number of timekeepers is more than double that of Beatty & Wozniak, which was a part of the "Joint Original Source" team and maintained a repository of research and cases, which was used by Fulbright & Jaworski.

**FEE REQUEST**

Fulbright & Jaworski was paid $4,177,170.87 in fees and costs of $145,789.80 by the defendants participating in the Joint Team expenses.

The attorney fees of the significant timekeepers from 2002 to 2010 are:

S. Canfield: retainer for six months for $52,770.

P. Leggette: 2002 - $410 per hour; 2009 - $700 per hour for a 41% increase

N. Pell: 2002 - $340 per hour; 2009 - $560 per hour for a 39% increase

L. Morton: 2002 - $305 per hour; 2009 - $560 per hour for a 45.5% increase

In 2002, the lowest hourly fee for a timekeeper was $120 per hour; in 2009, there is only one timekeeper at $180 per hour. 80% of the timekeepers billed at $435 to $700 per hour. I have compared the hourly billing of Fulbright & Jaworski billings in Coral Energy, Pan Energy, Acadian and Shell cases. William Woods and Daniel McClure had similar percentage increases and billed in 2008/2009, $620 to $690 p/hour. The difference in the representation of the other defendants by Fulbright & Jaworski was that the majority of timekeeper billings were by personnel with hourly fees between $80 per hour to

$240 per hour with half the number of timekeepers. The hourly fees are considerably higher and research was done by the partners rather than lower hourly fee staff.

I find hourly fees below $550 per hour for lead counsel are within the presumptive attorney fees for attorneys practicing oil and gas law within Wyoming and Colorado. Because the other timekeepers are not identified by their position within the firm, I cannot determine the reasonableness of the hourly fees. I find the billings to be excessive. There are multiple billings daily by timekeepers including the partners.

The following are examples of the excessive hourly billings and fees:

**2009**: The 10th Circuit entered its final opinion on March 19, 2009. Leggette commenced the task of preparing a petition opposing Grynberg's petition for *certiorari* to the United States Supreme Court. The following timekeepers billed after the opinion: J. Cadena (law clerk?) $180 per hour; B. Vetter $340 per hour; Morton $425 per hour; Breckenridge, $460 per hour; Pell, $560 per hour; Franklin, $670 per hour; and Leggette, $700 per hour. Franklin, Breckenridge and Vetter are new timekeepers. Franklin's entries review tasks performed by others. Breckenridge also reviews tasks of others and does some research which can be performed by a law clerk or paralegal. Vetter reviewed cases on the substantiality test and essential elements. Leggette devoted 80 hours over two weeks producing three drafts and a final pleading opposing the petition for $56,000. $107,682.50 in fees was billed in three and a half weeks by timekeepers at $340 to $700 per hour. (Ex. 13 to Schultz affidavit)

**2007-2008**: In January 2007, Fulbright & Jaworski commenced research and drafting a response brief to the 10th Circuit Court of Appeals for the Joint Defense Team. Between January, 2007, and November 21, 2007, there are multiple timekeeper billings per day "drafting appellees" brief," "editing appellees" brief', and revise original source brief'. There are thirteen days with Morton, Pell and Leggette billing on the appellant brief. Leggette billed 347 hours at $660 per hour for $229,515. Morton billed 305 hours at $560 per hour for $210,162. Pell billed 104 hours at $560 per hour for $54,600. The other timekeeper was paralegal Caine who billed at $180 per hour for $37,620. The total preparation of the brief for the primary timekeepers without the legal staff was $531,189. During the briefing, Morton's hourly fee increased to $560 per hour. After the briefing, it returned to $425 per hour.

After filing the brief, the hourly fees of Leggette increased to $700 per hour and Pell to $560 per hour. Morton returned to $425 per hour. Commencing in February, Leggette, Pell and Morton commenced entries "preparing for oral argument." Leggette billed 414 hours of preparation for the oral argument for $209,812. Morton and Pell also billed $150,608. Morton and Pell traveled in August 2008 to a Joint Defense conference for a total of 62 hours and $43,631 in fees. Morton traveled again in September for a similar conference for $14,768 in fees. All three attorneys traveled to Denver for a moot court presentation of the oral argument for $70,479.

**2005**: Preparation/oral argument. An oral argument was held before the District Judge on Motions to Dismiss. Leggette was limited to 30 minutes on the Rule 9 (e)(4) argument and Beatty 30 minutes on the Rule 9 (b)(2) argument. The Beatty law firm commenced its preparation for the oral argument in October, 2005. Beatty billed $450 per hour, Noecker, $395 per hour and the paralegal $120

per hour. The firm billed a total of 200 hours and $65,000 in attorney fees. It adjusted the fee by $5,448 for a total of $49,954.

Fulbright & Jaworski billed 592 hours and $182,042 in attorney fees with three partners billing for "preparing for oral argument'. All three attorneys and Bevan (PL) traveled to the hearing. Other examples of multiple billings by Leggette, Pell, Morton and Bevan on the same day are as follows: 12/1 – 30 hours, $10,938; 12/7-46 hours for $16,050 and 12/8-51.75 hours for $18,685. There are five entries in November of 2005 where four or five timekeepers billed on the preparation for oral argument in the same day and four entries of three timekeepers billing on the same day.

Public Disclosure Reply. Between October 30, 2004, and December 13, 2004, except for a one week period, Leggette billed daily on the public disclosure reply brief. Her entries were "work on reply brief". She billed 266 hours at $480 per hour with an attorney fee of $126,610. She was assisted periodically by Pell and other legal staff with similar entries. Morton's task of preparing a reply to the original source portion of the reply brief commenced on November 22 with 99 hours for $32,175. Other staff members also billed hours for the reply brief.

Facts and Conclusions of Law. (FF&CL) Commencing in February, 2004 to June 6, 2005, Leggette and Morton billed daily with the notation FF&CL. Morton billed 208 hours and Leggette 60 hours for a total of $112,098. There are continued notations of the FF&CL modification through November, 2004. The entries do not identify what document or documents the FF&CL the entry applies.

Motion to adopt report with modifications. From May 10, 2005 to June 6, 2005, Leggette billed daily for 227.75 hours and $95,985 on a motion to adopt a report of Special Master Pringle with modifications which was submitted to the Joint Defense committee. Morton and Pell devoted another 9.5 hours for an additional $8,050 in fees in revising the report for submission.

Other examples of excessive billings: In 2005, the following days have multiple timekeepers' billings and fees: January 15 - 5 timekeepers with the low hourly rate of $234 per hour and the high of $480 per hour for $11,477; January 21 - 8 timekeepers for $21,119; February 25- 10 timekeepers for $13,134 and March 14 - 7 timekeepers for $20,718 (preparation of oral argument). These are only examples of a practice of billing.

An example of associate counsel billing is Russell at $235 hours. In April 2004 he billed daily 7 hours to 11.5 hours for 119 hours total on the task of "Review public disclosure documents and classify them by allegations." In March 2004 he billed 6.5 to 9.75 hours for 60 hours on the same task. In February 2004 he billed 25 hours on researching the standards for answering interrogatories under the Federal Rules of Civil Procedure. The records do reflect that Fulbright wrote off some of Russell fees because of the $50,000 limitation per month.

Pell and Morton also provided legal work for Shell Oil. Pell from June 20 to June 24, 2005, researched and prepared Shell's specific objections to the Special Master's Recommendations. She billed 29 hours and $10,600 to Shell. On June 24, she billed Shell for additional review of the pleadings and billed the Joint Defense 3 hours and $1,305 for reviewing client-specific briefs with consistency with

the coordinated motion to adopt. Leggette, on June 24, billed 8.75 hours and $5,118 for revising the Motion to Adopt and reviewing other draft briefs for consistency with the group position.

Morton on November 30, 2007, filed the Joint Defense Appellate Brief. On November 28, 2007, she commenced research for Shell on filing an appeal brief. She devoted December 4, 2007, to January 11, 2008, researching, drafting and reviewing the draft of the appeal brief for Shell and billed Shell 1152 hour and $48,620. On January 9 and 10, Pell billed the Joint Defense for reviewing the individual defendant briefs which would include Shell's for $5,600.

Multiple partners traveling. From the commencement of Fulbright & Jaworski's retention by the Joint Defense Team, multiple partners traveled to the same meetings or hearings. The following are examples: February 2-4, 2002, Morton and Leggette met with Beatty in Denver for 28 hours and $10,629 including travel time. January 7-9, 2003- Morton and Leggette attended a deposition in Denver for 75 hours and $15,674 including travel. February 21-22, 2005- Leggette and Pell came to Denver for JDT meeting for 33 hours and $14,954 including travel time. March 15-19, 2005-Morton, Leggette and Bevan to Denver for an oral argument by Leggette for 103 hours and $37,248 including travel time. August 11-14, 2008-Pell and Morton came to Denver for a small group meeting for 36 hours and $25,350 fees and travel time.

October, 2009, billing. The Court of Appeals opinion was in March 2009. In October 2009, a final excessive hourly billing in a 3 week period resulted in a $107,682.50 to the Joint Defense Team with Leggette billing $700 per hour with three new attorneys billing at over $500 per hour.

Congressman Tancredo. 81 hours were billed for preparing and meeting with Congressman Tancredo on legislation to amend the FCA for $13,537.75, which does not relate to the defense of the case.

There is no evidence that Canfield provided any legal services. His retainer fee of $52,770 is disallowed.

**COST REQUEST**

I have reviewed the costs submitted by Fulbright & Jaworski of $145,789.80. The following costs are disallowed because they are normally administrative expenses of the law firm:

| | |
|---|---|
| Meals (including working lunches): | $3,331.54 |
| Other (costs defined as "other): | $17,463.67 |
| Local Travel: | $2,122.99 |
| Secretarial overtime (administrative): | $2,702 |
| Total costs disallowed: | $25,620.20 |

I have found that there were multiple attorneys traveling and attending meetings and hearings. I am making an adjustment of the total fees and costs, and therefore, I am not making an additional reduction of costs. The total cost is $120,149.60.

Exhibit 13 of the affidavit of Schultz summarizes the total hours, fees and costs billed by Fulbright & Jaworski. It entered into an Agreement that limited the fees to no more than $50,000 per month. It incurred $5,496,278 fees on 17,680 billing hours of all of the timekeepers. In accordance with the Agreement, it wrote off $1,319,107.13 in fees in order to comply with the agreement and received from the Joint Defense Team $4,177,170.87 in fees and $145,769.80 in costs for a total of $4,322,940.67 which averaging just less than $50,000 in monthly fees. I have reduced the fees by $66,307.75 for a balance of $4,177,170.87. $1,160,845 of the fees were incurred for the appeal.

Fulbright & Jaworski was retained to research, prepare pleadings and defend the pleading on the original source doctrine as was Beatty and Wozniak and other Joint Team attorneys. Holland & Hart had the greater task of over-all supervision and administration for the Joint Defense Team as well as pleadings. Even after reducing its fees, Fulbright & Jaworski billed nearly 45% of the joint defense fees.

I find that the billed hours and fees of Fulbright & Jaworski were excessive as well as the number of timekeepers. I find that the fee request should be reduced by $1,000,000 thereby bringing the fees in line with the other law firms providing legal services to the Joint Defense Team and to the other MDL defendants.

I find that Fulbright & Jaworski is entitled to $3,177,170.87 in attorney fees and $120,149.60 in costs on behalf of the joint defense team.

**TOTAL APPROVED FEES AND COSTS OF THE JOINT DEFENSE TEAM**

| | FEES | COSTS |
|---|---|---|
| Holland & Hart LLP | $2,485,962.00 | $1,036,380.67 |
| Schultz & Belcher LLP | $96,487.50 | $853.14 |
| Schultz & Schultz LLP | $54,062.50 | $279.93 |
| Brown, Drew & Massey LLP | $8,031.25 | $1,329.93 |
| Skadden Arps, Slate,Meagher & Flom LLP | $278,995.19 | $32,778.00 |
| Miller & Chevalier | $31,745.83 | $149.99 |
| Holland & Knight | $34,746.00 | $8,812.87 |
| Akin & Gump | $150,550.60 | $10,572.63 |
| Beatty & Wozniak LLP | $1,847,839.70 | $109,948.66 |

| | | |
|---|---|---|
| Fulbright & Jaworski LLP | $3,177,170.87 | $120,149.60 |
| **Subtotal:** | $8,165,591.44 | $1,321,255.42 |
| **TOTAL APPROVED FEES & COSTS:** | **$9,486,846.86** | |

Supplement to Ex. 2 of the third affidavit of Shultz allocates $917,776.93 for appellate fees and costs of the Joint Defense. The amount is not accurate. Shultz, Stevens and Phelan of Holland & Hart were involved extensively in the coordination with of defense counsel filing appellate briefs including the joint brief by Fulbright & Jaworski. It dealt with the 10th Circuit scheduling of the oral argument and counsel who would be presenting oral arguments. $43,013 in joint defense fees can be identified. Fulbright & Jaworski billed $1,160,845 in appellate fees for a total of $1,203,858. I have held that the defendants are not entitled to their appellate fees and costs. The fees and costs which should be assessed to the MDL participating defendants is $8,255,725. I therefore find that the Joint Defense fees and costs should be reduced by 25% of which 13% is allocated to appellate fees.

**A. ACADIAN GAS L.L.C. a/k/a ENTERPRISE GROUP 99-MD-1626**

The Enterprise Group consists of the following companies: Acadian Gas Corp.; Evangeline Gas Pipeline Company, L.P.; Tejas-Magnolia Energy, LLC and Louisiana Industrial Gas Systems. It retained William D. Wood of Fulbright & Jaworski, L.L.P., with which it had a long-standing relationship. Fulbright claims that the Enterprise Group obtained discounts of hourly rates normally billed to other clients and discounts where the client found the work unproductive. The timekeeper fees were adjusted yearly during the 13 years of litigation.

The primary timekeepers providing billing hours are as follows:

William Woods, Lead Partner: 2001 - $375 per hour; 2006 - $550 per hour; 2007 - $605 per hour; 2011 - $745 per hour.

| | |
|---|---|
| Craig Alvarez, Partner: | 2002 - $275; 2008 - $495 |
| Raymond Albrecht, Counsel: | 2003 - $325 per hour; 2006 - $400 per hour |
| Angela Craig, Sr. Paralegal: | 2001 - $120 per hour; 2008 - $225 per hour |

Fulbright & Jaworski list 19 timekeepers over the 10-year period of representation. William Wood was the lead attorney and supervising partner for Coral Energy. Angela Craig, Senior Paralegal, George Murr, Senior Associate and Craig Alvarez, Partner also were timekeepers for Coral Energy and Acadian Gas.

Based on the attorneys fees of counsel billing in the MDL action from Wyoming and Colorado, the Special Master finds that the reasonable market rate for counsel practicing oil and gas is $550 per hour or less, per hour. William Wood's billing rates after 2006 exceed the rate that the Special Master finds to be the reasonable market rate.

The attorneys for Enterprise Group must review the hours actually expended and "winnow" out the hours not reasonably expended to defend the case. Case v. Unified School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). Enterprise Group seeks $307,478.56 in fees and $10,622.91 for expenses in defending the lawsuit; $18,331.43 fees and $128.62 for expenses on appeal; and $12,987.62 fees to establish liability for fees and $205.41 for expenses.

**REQUESTED FEES AND EXPENSES**

Acadian Gas LLC requests the following separately incurred fees and expenses:

Separately incurred fees and expenses: $338,797.61 attorney fees; $10,957.05 expenses.

It allocates $18,331.43 attorneys fees and $128.73 expenses for defending the appeal.

It allocates $12,987.62 attorneys fees and $205.41 expenses for liability of fees.

The Special Master has reviewed the 30 pages of billings to determine the hours reasonably expended for the litigation. The Special Master finds that Enterprise has failed to exclude hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424,434 (1983); Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

The Special Master disallows the following hours and fees:

Fulbright duplicated the billings that it also billed to Coral Energy. William Wood and Fulbright represented Coral Energy, Inc. from 1998 to March 2002. Coral Energy affiliated with Shell Oil and its affiliates in March, 2002. Subsequent billings for Coral are included in the Shell billings. Shell Oil is represented by Daniel McClure of Fulbright & Jaworski. The exact same billings with different index numbers are billed to Enterprise up to February 28, 2002, when Coral became affiliated with Shell. The duplicate billings of $16,749.28 are disallowed. Fulbright requests this paragraph be stricken because it split the hourly billing between Coral and Acadia commencing in May 2001. The affidavits filed in the Coral and Enterprise claims did not identify that the billings were being divided. I have reviewed the pattern of hourly billing in Coral before and after May, 2001, and the pattern does not change. The same entries by timekeepers were the same before and after. The tasks entries do not change and are identical. The burden is on the defendant to establish the reasonable fees. Without additional affidavit and documentation, the request is denied.

I have reviewed the billings in Coral and Acadia and agree that there is $4,142.50 in billing during the period time that is not reflected in the Coral billings. The amount disallowed is reduced to $12,606.78.

Fulbright & Jaworski claimed fees in response to standard publicly-traded client auditor requests. The audit does not relate to the defense of this case. Orellana billed 17.2 hours; Nakfoor and Valencino billed $3,741. Wood and Doublesin billed $808.25 on the audit for a total of $4549.25 which is disallowed as not relevant to the defense of the litigation and administrative expense.

Wood in 2008 billed 2.5 hours at $675 per hour and Alvarez .50 hours at $495 per hour for a total of $1,597.50 to prepare a budget which is administrative and not relevant to the litigation. It is disallowed.

Three employees entered billing hours for the following: "Attention to file maintenance and organization," "Work on close out and storage," "Organize and index the main file in preparation of closing the file" and "Review email, prepare for inclusion" Ferrel, General Clerk, billed 63.75 hours for $3,406; Ybarra, Project Assistant 43.75 hours for $3,218.62, and Craig, Sr. Paralegal, billed 58 hours for $8,912. Craig did perform legal work for various attorneys which were billable hours. I disallow $15,536 for administrative costs of the law firm.

Wood, as the supervising partner, seeks $98,729 for 216 hours of billings. Over 80% of these entries are for "review emails" or "review a document" and consist of .15, .50, .75 billing hours. The billings do not reflect any action on the review. He also participates in multiple joint defense calls without identifying the nature of the call or any task resulting from the call. Hourly billings seem insignificant except when added up at a high billing rate. In 2002, he billed 12.25 hours at $375; 2003 - 47.50 hours at $415; 2004 - 13 hours at $440; 2005 - 19 hours at $470; In 2006 - 12.75 at $550; 2007 - 24.75 at $605; 2008 - 2.75 hours at $675; 2009 - 6 hours at $690 and 2011 - .50 at $740. The total fee adds up to $72,000 for email and paper reviews or a .15 conference with another attorney without any substantive or procedural action. The Special Master has not included the conferences with other counsel or outside counsel which reflects the nature of the meeting and exceed one hour. During the 10 years, there is no indication of any substantive pleading or brief prepared by Wood. He did participate in depositions and conferences with other defense counsel after they were prepared by another attorney. In Chase, 157 F.3d at 1250, the court discusses entries such as "memo for .3 hours" and "research for one hour" as being less detailed than required for work product or for an award of fees. The party seeking fees must establish reasonableness of each dollar and hour claimed. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). As the supervising attorney, it was necessary for Wood to review communications and pleadings, but his failure to identify the task of reviewing or conferences to the defense of the case does not meet the requirements of maintaining proper records. The Special Master cannot, nor can the Relator, determine whether the task relates to the defense of the case. The Special Master has, with other defendants, adjusted the fees. $72,000 of the $98,729 sought by Wood is reduced by 40% which is $28,800. The fee request for Wood is $69,929.00.

Claimed fees and expenses for defending the appeal are $18,331.45 and $128.73. The billings consist of review of documents by all billers including Wood. Wood was billing at $605 per hour to review emails and other documents. The billings do not reflect any preparation of a brief, filing with the 10th Circuit or participation in any hearing. The Special Master has found that all defendants are not entitled to attorney fees and expenses for defense of the appeal. The Special Master denies the request for appeal fees and expenses.

The claim for fees paid to establish fee liability has the same defect as the claims for appeal fees and expenses. There are 21 billings by Wood that are "received and review e-mails" and review other documents. The preparation of billings and pleadings before the court are missing. His hourly fee starts

at $550 and ends with an hourly fee in 2011 of $745 per hour for review of e-mails and documents. In the entries submitted, I found only one entry referring to attorney fees by Alvarez. The entry was: "review e-mails regarding Rule 11 briefing and attorneys' fees issues." Fulbright & Jaworski did not appear at any hearings, and there are no entries that any pleadings were filed. The Special Master denies the request for fees to establish fee liability of $12,987.62 in fees and $205.41 in expenses.

The total attorneys fees and expenses disallowed are $82,135.96.

**REQUESTED COSTS**

Acadian Gas LLC requests $10,957.05 in expenses.

The Special Master previously disallowed the expenses for appeal and establishing liability for fees of $334.14.The billing for expenses includes $89.75 for other, $272.80 local travel and $396.47 for meals. I cannot identify from the billing entries how they relate to the litigation.The billings are disallowed as being administrative expenses of the law firm.

The total expenses disallowed are $1,093.16.

Acadia Gas LLC also requests an award for Enterprise Group's share of jointly-incurred fees. The affidavit provided to the Special Master, Doc.2200-3, Ex.2, does not identify any joint fees and expenses allocated to Acadia Gas LLC a/k/a Enterprise Group and the defendant has not provided documentation that it has paid such fees and costs.

The Special Master finds that Acadia Gas LLC a/k/a Enterprise Group is entitled to $240,246.26 in separate defense fees and $9,863.89 in expenses for a total of $256,995.79

**B. AGAVE ENERGY COMPANY 99-MD-1635**

Agave Energy Company (Agave) was named as a defendant in a False Claims Act filed in the United States District Court for the District of New Mexico in July 1997. The case became 99-MD-1635 in the MDL 99-MD-1293-SWS. Transwestern Pipline Company, LLC was initially one of the named defendants in the Grynberg False Claim Act filed in the United States District Court for the District of Columbia in 1995 and dismissed in 1998. Transwestern was represented by Charles D. Tetrault of Vinson & Elkins, L.L.P. Transwestern was renamed as a defendant in the Enron FCA case in Texas which became 99-MD-1608 in the Wyoming MDL. Transwestern was billed for legal services provided to Agave between 1998 and 2001. From May 13, 2002, through June 30, 2011, Agave was billed directly.

Tetrault represented multiple parties in different cases in the MDL case. The Special Master has explained that representation and allocation of fees and expenses in my findings in Equitable Resources Inc.'s application for fees and expenses. He has divided the hours billed for common tasks among the defendants. Specific tasks for Agave are billed to Agave.

The primary timekeeper is as follows:

Charles Tetrault: $475 per hour.

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.* Winn, 130 S.Ct. 1662, 1663 (2011).

The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

**REQUESTED FEES AND COSTS**

Agave requests the following fees and expenses:

| | |
|---|---|
| Fees: | $42,090 |
| Joint defense fees: | $197,707.81 and $29,242.16 for a total $231,949.97. |

Agave has waived any fees from 1998 through 2002. Agave has allocated $1,045 attorney fees for appellate defense and $827.50 for establishing liability for fees. The Special Master finds the individual fees were reasonable and necessary for defense of the case.

Agave Energy Company requests reimbursement for the joint fees and expenses. The Special Master has determined that the joint fees and costs should be reduced by 25%. The Special Master finds that Agave Energy is entitled to joint defense fees and expenses of $179,848.35.

The Special Master finds that Agave Energy Company is entitled to $215,007.48 attorney fees and expenses.

**C. APACHE CORPORATION 04-MD-1684**

Grynberg filed a FCA action against Apache Corporation in 2004. Apache retained Beatty & Wozniak. A motion was filed with the MDL Panel to have the case transferred to 99-MDL-1293 as a "tag along" case. The case was transferred and given the Case No. 04-MD-1684. The fee agreement with Apache was the same as with other MDL defendants represented by the firm. Apache would pay its proportional share of common tasks performed for the multiple defendants and all of the fees for tasks performed directly for Apache.

Apache requests the following attorney's fee and costs:

| | |
|---|---|
| Direct Bills: | $79,130.50 fees and $1,170.56 costs |
| Split Bills: | $12,317.96 fees and $1,256.90 costs |
| Shared Bills: | $69,689.95 fees and $2,680.45 costs |
| Motion for Fees: | $13,664.26 fees and $333.56 costs |
| Application: | $6,647.94 fees and $78.49 costs |

Total: $186,970.57

The primary timekeepers are as follows:

M. Beatty: $450 per hour

R. Noecker: $395 per hour

G. Graham, Paralegal: $120 per hour

The Special Master has reviewed 236 pages of billings, the affidavits and CVs.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel* Winn., 130 S.Ct. 1662, 1673 (2011).

The hourly fees were within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed in detail the records of Beatty & Wozniak and compared them to common billings during the time period of another defendant represented by the firm. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and necessary for defense of the case. There is a large expense from March 22 to March 24, 2007. Beatty, Noecker and two other timekeepers were involved in the preparation, travel, housing, meals, joint defense meeting and oral argument in Casper before Judge Downes. Because the firm represents multiple defendants, the need for multiple attorneys and the expenses was reasonable and necessary. Apache paid 11% of the fees and costs.

Relator and Apache Corporation agree that the appellate fees and costs were $71,549.56 which is disallowed.

The defendants request an enhancement of the fees for the obstructive and delaying actions by Grynberg. Enhancement of fees should only be awarded in "rare" and "exceptional" circumstances. The increased fees and costs because of the Grynberg's obstructive actions have been taken into consideration in awarding fees and costs under the lodestar method. Perdue at 1673.

Relator and Apache Corporation agree and I find that Apache Corporation is entitled to $115,421.01 in fees and costs.

**D. ATMOS ENERGY CORPORATION 99-MD-1607**

Atmos Energy Corporation ("Atmos") retained Carrington, Coleman, Sloman & Blumenthal, L.L.P. (CCSB) in 1998. Grynberg filed a *Qui Tam* complaint in the United States District Court for the District of Colorado against Atmos Energy Corporation. The firm represented Atmos from September, 1998, until May, 1999. Atmos retained Vinson & Elkins LLP when the litigation was transferred to Wyoming and became 99-MD-1607. Atmos did not bill for paralegals or law clerks.

The primary timekeepers are as follows:

William Dawson: 1998 - $310 per hour

Karen L. Hirschman: 1998 - $240 per hour; 2003 - $410 per hour

Wally Owens: 1998 - $250 per hour

Vinson & Elkins: Stuart Tonkinson: 1999 - $250 per hour; 2006 - $450 per hour; 2009 - $535 per hour.

**REQUESTD FEES AND EXPENSES**

Atmos requests attorney fees and expenses as follows:

Separate Incurred attorney fees and expenses: $298,881.25 attorney fees and $4,578.57 expenses.

It allocates $33,454.75 to appellate fees and costs and $8,648.75 to fee on fees.

Joint defense fees and costs: $240,204.04

The Special Master has reviewed the Application for Attorney Fees and Expenses, Affidavit in Support of the Application, Reply in Support of the Application and 23 pages of billings.

The lodestar has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel.* Winn., 157 F.3d 1662, 1673 (2011).

The fees of Carrington, Sloman & Blumenthal L.L.P. and Vinson & Elkins are within the prevailing market rates for attorneys practicing in the area of oil and gas law in Colorado and Wyoming.

The billings of records of CSB meet the requirements of identifying the timekeeper, the specific tasks and how it was applicable to the case. Case v. United School District No. 233, 157 F. 3d 1243, 1253 (10th Cir. 1998). The hours and fees are reasonably related to the initial defense of the case in the amount of $13,312.50.

The hourly billings by the attorneys for Vinson & Elkins LLP up to mid-2001 are cryptic but are relative to the defense of the case. After June of 2001, entries are by Tonkinson. The entries commence with "review" or "study" without identifying the document or the applicability to the case. From 2000 Tonkinson has 372 tasks commencing with "review" with 90% being less than one hour. The task entries for telephone conferences have entries such as "telephone conference with John Holloway" or "JDT conference call." He was involved in the deposition of Grynberg. Pleading tasks were performed by other counsel.

Grynberg's expert, Toothman, noted the tasks failed to identify the review or the applicability to defense of the litigation. Tonkinson's explanation for the lack of detailed entries is as follows: "[F]irst, as established by Atmos's fee application, Atmos, through its in-house counsel, was well aware of the activities in this litigation, directly involved in the intensive fact-finding and discovery processes, and present at the key events in the litigation, including attending hearings and depositions; second, most of

the handful of items Toothman specifically codes as "cryptic" involve telephone calls or communications with Atmos' in-house counsel or staff, who were aware of the nature of the calls; and third, Atmos contemporaneously paid the bills for which recovery is sought without any guarantee that it would be able to recover such amounts from Grynberg."

The Special Master must determine whether attorneys' hours are reasonably expended on defending the litigation. To recover attorney fees, a party must prove and establish the reasonableness of each dollar, each hour above zero. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). The law requires the attorney for the prevailing party to exclude hours that are excessive, redundant, or otherwise unnecessary. Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994). Where the hourly entries are for "review" or conferences without establishing how they are necessary for the case, the hours may be reduced or disallowed. Case, 157 F.3d at 1253. In Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1178 (10th Cir. 2010), the court clarified what is required by the party seeking fees. Counsel is not required to record in great detail but at least identify the general subject of the task. The primary concern is the "district court's ability to evaluate the propriety of the fee request based on the specific billing entries." As noted, because of the multiple documents by multiple parties, it is reasonable and necessary that there be a review periodically of the documents and research of the other parties. On the other hand, the entries of reviewing correspondence, telephone conferences and filings do not permit the party opposing the fee request to evaluate the reasonableness of the fees. There are 372 entries without identification of the task. It is also difficult to believe that a 15-minute or 45 minute review without some other action would be reasonable. The fee of Vinson & Elkin will be reduced by 25% to $212,170.31. The Special Master has reviewed expenses and costs of $4,576.57 which are travel costs for attending hearings or depositions. The costs are reasonable. The total fees and expenses are $216,746.88.

Atmos allocates $33,454.75 to appellate fees which are disallowed.

Atmos requests reimbursement for the joint fees and expenses of $240,204.04. The Special Master has determined that the joint fees and costs should be reduced by 25%. The joint fees and expenses are reduced to $180,153.06

The Special Master finds that Atmos Energy is entitled to the following attorney fees and expenses of $363,449.19.

**E. BLUE DOLPHIN PIPE LINE COMPANY 99-MD-1650**

Jack Grynberg filed in the U.S. District Court for the District of Columbia United States ex rel. Grynberg v. Alaska Pipeline Co., et al., CV. No. 95-725(TFH) against 66 defendants including Blue Dolphin Pipe Line Company. Blue Dolphin retained the firm of Freedman, Levy, Kroll & Simonds of Washington, D.C. Lawrence G. McBride, at that time, was representing Blue Dolphin in matters involving the "Buccaneer Field" offshore from Texas. Marc B. Dorfman was retained as trial attorney. McBride is now Of Counsel at Foley & Lardner, LLP in Washington, D.C. Blue Dolphin filed a Motion to Dismiss on jurisdictional grounds that it did not measure the volume and quality of gas entering its pipeline. The court dismissed the case on jurisdictional grounds. Grynberg then filed an individual claim in United

States ex rel. Blue Dolphin Pipeline Co., Civ. No. 4:97-2490 (S.D. Tex). He also filed in various jurisdictions 70-plus cases naming 300-plus defendants. Grynberg filed a motion to have the cases consolidated under the procedures for Multi-District Litigation (MDL). Blue Dolphin objected to its case being consolidated, which was denied. The Texas case was transferred and became case 99-MD-1650 within MDL docket 99-MD-1293 in the United States District for the District of Wyoming.

A consolidated Rule 9(b) Motion to Dismiss was filed by all defendants. In November, 1999, Blue Dolphin filed a separate Rule 9(b) and 12(b)(6) Motion to Dismiss on the grounds that the fraud claim did not apply to Blue Dolphin because it did not measure gas into the pipeline. Blue Dolphin also gave Grynberg a "safe harbor" letter pursuant to Rule 11 FRCP and filed a Motion for Rule 11 sanctions. On May 18, 2001, the Court denied the Motion to Dismiss but indicated the issue would be addressed when the issue was presented in an "adequately briefed and supported motion for summary judgment." Dkt. No. 388. Blue Dolphin researched and prepared drafts of a motion for summary judgment. A tactical decision was made to not file the summary judgment.

Primary timekeepers were as follows:

M. Dorfman: Partner: 1999 - $250; 2005 - $475 per hour; 2007 - $475 per hour

L. Mc Bride: Partner: 2000 - $225 per hour; 2007 - $400 per hour

Blue Dolphins' request for fees and expenses:

Separate fees and expenses: $1,259,462 fees and $23,598.58 expenses. ($106,747.15 paid to Holland & Hart for joint technology and support services).

Allocated for appellate fees and expenses: $92,910.50 fees and $1,448.77 expenses.

Allocated for liability of fees: $123,000.

Joint defense: $106,747.15 expenses.

The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 66 F.3d 108, 112 (2010) citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar is favored in determining a presumptive reasonable fee. Perdue v. Kenny A. ex rel Winn, 130 S.Ct. 1662, 1673 (2010). The Special Master finds the hourly rates are reasonable for attorneys practicing in oil and gas law in Wyoming and Colorado.

The next step is to determine whether attorneys' number of hours are reasonably expended on the litigation. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The attorney must "winnow" out the hours actually expended down to the hours reasonably expended. *Id.* at *1250.* McBride in Exhibit 1 of his affidavit for fees seeks $1,259,462. The exhibit is 86 pages. In a 16-page Exhibit 2, he seeks $130,345.73 for costs and expenses.

McBride billed 2,736 hours from 1999 to 2009 for a total of $1,094,640. Dorfman billed 478 hours for $119,572. The remaining hours are by associates. The billing does not include fees paid to the Joint Defense Team and Holland and Hart. McBride billed 75 days in 2000, 70 days in 2001, 84 days in 202, 199 days in 2003, 148 days in 2004, 124 days in 2005, 76 days in 2006, 100 days in 2007, 56 days in 2008 and 23 days in 2009. Blue Dolphin had a simple defense to the allegation by Grynberg, which was "it did not measure the volume and quality of gas entering its pipeline." Blue Dolphin filed a Rule 9(b) Motion to Dismiss in November, 1999. Counsel also served a "safe harbor" letter to Grynberg and filed a Rule 11 Motion for Sanctions. Judge Downes denied the consolidated Motion to Dismiss and Blue Dolphins' Motion with the following direction to defense counsel: "a determination that the facts asserted are not in dispute, so the issues should be deferred until they are presented to the Court in an adequately briefed and supported motion for summary judgment." (McBride Affidavit, p.10). The law firm researched and drafted a motion for summary judgment which was not filed.

McBride's task entries describe the task and the applicability to the litigation. Blue Dolphin filed a separate Rule 11 and dispositive motions. It also filed a separate appellate brief and other briefs with the district court. It did not participate in all of the depositions but concentrated on issues directly related to the Blue Dolphin defense. At the same time, McBride was actively coordinating with the joint defense team and commenting on proposed consolidated pleadings.

Dorfman billed 478 hours of which of which 209 hours are described as review and conferences with LGM (McBride). Hours billed in conferences are recoverable if they are a reasonable number and the conference related to defense of the case. Case, 157 F.3d at 1253. As senior counsel, Dorfman attended court proceedings, depositions and joint defense conferences. This required coordination with McBride over the ten years of litigation, and the hours are not excessive.

Blue Dolphin is entitled to its reasonable costs and expenses incurred in defending the case. Case, 157 F.3d at 1257-58. It submitted 16 pages of detailed expenses. The Special Master has reviewed the expenses and also compared travel expenses to the task billings. The Defendant has the burden of establishing that the costs and expenses are reasonably incurred and related to the litigation. *Id.* at 1259. According to the affidavit of McBride, the billing for costs and expenses were prepared by the Managing Partners and the Office Manager of Freedman, Levy, Kroll & Simonds. "Most of the expense charges incurred by staff of the firm (rather than by "timekeepers"...). Doc. 2193. Blue Dolphin contracted with Holland & Hart to use extranet and technical services. $106,747.45 of the $130,345.73 claimed for expenses are payments to Holland & Hart. The Holland & Hart technical services provided McBride access to the repository of pleadings and briefs of the other MDL defendants and filing of Blue Dolphin pleadings and briefs, thereby reducing the need for a large staff of attorneys and paralegals. $23,598.58 in expenses were incurred over 10 years for copying, long distance calls, and travel. There is $982.32 in expenses indentified as local transportation, postage, miscellaneous and overtime which are disallowed as normal administrative expenses. There are also two travel expenses that are not identified with tasks performed by McBride: travel expenses on December 31, 1999, for $2,202.66 and March 31, 2000, for $285.84. The Special Master is disallowing $2,488.50 in travel expenses.

I disallow the fees and expenses allocated as appellate fees and costs of $92,359.27.

I have also reduced the joint defense fees and expenses by 25% to $80,060.34

I find that Blue Dolphin Pipe Line Company is entitled to $1,265,290.85 in attorney fees and expenses.

**F. BURLINGTON DEFENDANTS 99-MD-1656; 99-MD-1657**

Craig L. Stahl commenced representing the Burlington defendants in 1999 while an attorney with Bracewell & Patterson LLP. In 2000, he became a shareholder of Jenkens & Gilchrist, P.C. In April, 2003, he became a partner in Andrews Kurth LLP. Stahl was retained to represent Burlington Resources Inc., Burlington Resources and Oil Company, LP, and Burlington Trading Inc. in 99-MD-1656. He was also retained to represent affiliated companies, Louisiana Land and Exploration Company, Inexco Oil Company and Inexco Gas Transmission Company in case 99-MD-1657.

The primary timekeepers are:

C. Stahl: 2003 - $350 per hour; 2008 - $445 per hour

J. Kuehnle: 2003 - $250 per hour; 2008 - $330 per hour

**REQUESTED FEES AND EXPENSES**

Burlington seeks separately incurred fees and expenses as follows:

Jenkens & Gilchrist, P.C.: $157,940.30 fees and $4,689.80 expenses.

Andrews Kurth, L.L.P.: $688,634.50 fees and $10,676.44 expenses.

Andrews Kurth, L.L.P. allocates the fees and expenses as follows: $26,918.50 fees to defend Relator's appeal, $30,146 establishing liability for fees, $789,510.30 fees for defense activities for a total of $846,574.80. It seeks $52.50 expense establishing liability for fees and $15,314.19 other expenses to defend the case. The total is $846,574.80 in fees and $15,366.24 in expenses.

Jointly-incurred attorney fees and expenses assessed in MDL 99-MD-1293-NDF as follows:

99-MD-1656: $190,573.05 fees and $28,186.89 expenses.

99-MD-1657: $160,381.78 fees and $23,721.42 expenses.

The total requested is $1,264,804.19.

The Special Master has reviewed 186 pages of billings at Jenkens & Gilchrist, P.C. and 382 pages of billings at Andrews Kurth, L.L.P.

The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 66 F.3d 108, 112 (10th Cir. 2010). The Special Master finds that that the hourly rates are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming.

The Special Master must determine whether attorney hours are reasonably expended on defending the litigation. To recover attorney fees, a party must "prove and establish the reasonableness of each dollar, each hour, above zero." Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). It is the attorney's responsibility to "winnow" out the hours actually expended down to the hours reasonably expended. Case v. United School Dist. No. 233, 1243 (10th Cir. 1998).

Counsel, while at Jenkins & Gilbert, established a practice of billing that was continued at Andrews Kurth. Kuehnle commenced weekly and sometimes daily billings that consisted of "reviewing" pleadings, e-mails correspondence and conferences. He billed 62 hours in 2000 and 139 hours in 2001. Stahl also commenced a similar pattern. Stahl billed four days the first week of April, 2003, with entries like the following: "Review of D. Schultz's Motion to Compel Grynberg's production of documents; Review of Motion to Compel Interrogatory Answers; and Review of D Schultz letters."

At Andrews Kurth, the pattern continued. Kuehnle billed 20 days in May, 2003, and 129 days for the year. In 2004, he billed 149 days. Most entries are "Review" or "conferences" without any legal tasks based upon the review. Stahl had 19 daily entries in June, 2004, and 78 daily entries between June and December, 2004. The billings in 2006 and 2007 continue to be review of pleadings and communications.

Burlington seeks $26,918 to defend the Relator's appeal. A review of the billings in 2007 does not reflect any legal research or the filing of any pleadings. Kuehnle and Stahl reviewed the appellate issues, the appellate appendix, and briefs filed by other defendants. The fees to defend the appeal are disallowed. It also seeks $30,146 to establish liability for fees. Stahl attended the hearing for fees, but there is no record of research, motions or briefing for fees. The fees to establish Relator's liability for fees is disallowed.

Stahl, on behalf of Burlington, was an armchair quarterback who watched the legal defense of the joint defense group and other defendants. He participated in conferences and communicated with attorneys active in the defense of the MDL litigation. He did not do unnecessary research or file pleadings where the defense team competently represented Burlington's interest. As such, he saved unnecessary costs for Burlington. On the other hand, the law requires the attorney for the prevailing party to exclude hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994). Where the hourly entries are for "review" or "conferences" without establishing how they are necessary for the case, the hours may be reduced or disallowed. Case, 157 F.3d at 1253. The shifting fee statute is not intended to be an "economic relief to improve the financial lot" of the attorney. Perdue v. Kenny A. ex rel. Winn, 130 S.Ct.1662, 1673 (2011). The fees for defending the case are reduced by 40% to $473,706 and expenses of $15,366.24.

The Special Master has reduced the joint fees and expenses by 25%. Burlington is entitled to the following joint fees and expenses: 99-MD-1656 - $164,069.95 fees and expenses; 99-MD-1657 $138,077.40 for a total of $302,147.35.

The Special Master finds that Burlington Resources Inc., Burlington Resources Oil & Gas Company L.P. and Burlington Resources Trading Inc., defendants in Case No. 99-MD-1656 and the

Louisiana Land and Exploration company, Inexco Oil Company, and Inexco Gas Transmission Company, defendants in case No. 99-MD-1657, are entitled to attorneys fees and expenses of $791,220.84.

**G. CenterPoint Defendants Case No. 99-MD-1644**

In 1999, Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. were retained to represent the following defendants in Case. No. 99-MD-1644: Arkansas Louisiana Gas Company; Arkla (n/k/a CenterPoint Energy Arkla); Reliant Energy Resources Company, Entex, Inc. (n/k/a CenterPoint Energy Entex, Inc); Minnegasco (n/k/a CenterPoint Energy Minnegasco); Mississippi River Transmission Corporation (n/k/a CenterPoint Mississippi River Transmission Corporation); Noram (USA) Inc.; Noram Energy Corp.; Noram Energy Services, Inc. (CenterPoint Energy Gas Transmission Company); Noram Gas Transmission Company (n/k/a CenterPoint Energy Gas Transmission Company); and Noram Field Services Corp. (n/k/a CenterPoint Energy Field Services). CenterPoint Gas Transmission Company LLC also retained Kay Cowden Medlin of Bradley Murchison Kelly and Shea LLC. Beatty & Wozniak, P.C. also represented or provided legal services for other defendants in the following cases: 99-MD-1603, 1609, 1610, 1625, 1626, 1628, 1664, 1669, and 1684. Beatty & Wozniak billed multiple defendants as follows: (1) Split bills: common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants to which the task applied, the billings were split among the remaining defendants to which the task applied and given another account number; (3) Direct Bills: Tasks incurred specifically for a client were given another account number; (4) Rule 11: A Rule 11 Motion was filled for certain defendants and given another account number; and (5) Request for attorneys fees and costs was given a different account number. To assist in reviewing the billing, Beatty & Wozniak have submitted the billings for review broken out in five sub-accounting entries.

The primary timekeepers are as follows:

M. Beatty: 2000 - $350 per hour; 2011 - $550 per hour.

R. Noecker: 2000 - $350 per hour; 2011 - $425 per hour.

K. Medlin: $225 per hour.

The defendants request the following attorney fee and costs:

Split Bills: $75,778.00 fees and $6,540.64 expenses.

Shared Bills: $175,086.10 fees and $15,290.16 expenses.

Direct Bills: $82,269.76 fees and $3,048.53 expenses.

Motion for Fees: $13,997.80 fees and $333.56 expenses.

Rule 11: $5,826.49 fees and $104.22 expenses.

Kay Medlin Esq.: $128,146.66 fees and $1,260.40 expenses.

Joint Defense: $166,426.66 fees and $24,615.50 expenses.

Application: $6,928.94 fees and $92.89 expenses.

The Special Master has reviewed 696 pages of billing records, pleading and affidavits, and has also compared the billings of Medlin with the direct bills of Beatty & Wozniak.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel.* Winn., 130 S.Ct. 1662, 1673 (2011).

Beatty's hourly fees started at $350 per hour in 1999, and increased to $550 per hour in 2011. Noeckers' hourly fees started at $350 per hour in 2000 and increased to $425 per hour in 2010. Medlin's hourly fees started at $200 per hour in 1999 and went to $275 in 2010. The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed in detail the records of Beatty & Wozniak. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

The Special Master has reviewed the records of Medlin and compared them to the Beatty billings. The tasks consist of reviewing multiple documents, e-mails, and e-mails with J. Liu and R. Noecker. The Beatty law firm was actively involved in filing pleadings, briefs, hearings and arguments for the CenterPoint defendants. On one occasion, Medlin listened to an oral argument and in another attended a deposition by live notes. She participated in multiple phone conferences without defining the task and identifying the conference participants. Her tasks consisted of reviewing documents, pleadings and keeping the corporation informed. Where the tasks are more as a consultant, the fees may be adjusted or disallowed. Case v. United School District. No. 233, 157 F.3d 1243, 1253 (10th Cir. 1998). Because her tasks were not totally passive, fees of Medlin are reduce by 50% to $64,073.33 rather than disallowing the fees.

The Special Master has reduced the joint defense fees and expenses by 12% for a total of $168,117.10.

CenterPoint allocates $40,776.68 for appellate fees which are disallowed.

The defendants request an enhancement of the fees for the obstructive and delaying actions by Grynberg. As the Special Master found on the previous fee request by Beatty & Wozniak, enhancement should only be awarded in "rare" and "exceptional" circumstances. Grynberg's obstructive actions increased the attorneys' fees and costs using the lodestar method. *Perdue* at 1673.

The Special Master finds CenterPoint defendants are entitled to $577,971.27 in fees and expenses.

**H. CMS GAS CO. 00-MD-1633/ CONTINENTAL NATURAL GAS, INC. 00-MD-1638**

Case 1:13-cv-01954-CMH-IDD Document 6-9 Filed 01/31/14 Page 46 of 96 PageID# 149

In 1999, Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. were retained to represent the following defendants: Case No. 00-MD-1633: CMS Gas Co., CMS Gas Marketing (n/k/a CMS Energy Management), CMS Gas Transmission and Storage Company, CMS Enterprises Company, CMS Natural Gas Gathering, LLC (f/n/a Continental Natural Gas Gathering, LLC), CMS Nomeco Oil & Gas Co. (n/k/a LCX Energy, LLC), Consumers Energy, Consumers Power, Michigan Gas Storage Co., Terra Energy Ltd.; Case No. 00-MD-1638: Continental Natural Gas Gathering, LLC, Continental Gas Processing, LLC, Continental Natural Gas, Inc. The law firm also represented or provided legal services for other defendants in the following cases: 99-MD-1603; 99-MD-1609; 99-MD-1610; 99-MD-1625; 99-MD-1626; 99-MD-1628; 99-MD-1664; 99-MD-1669; and 04-MD-1684. The following defendants shared the hourly fees and expenses for tasks performed by Beatty & Wozniak: El Paso Natural Gas, Kinder Morgan, Inc, NiSource Corporate Services Company, CMS Texas LLC, CenterPoint Energy, Panhandle Eastern Pipeline, LLC, Apache Corporation, TransMontaigne, Inc. and SourceGas LLC. The firm billed the various defendants as follows: (1) Split Bills: common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants to which the task applied and given another account number; (3) Direct Bills: Tasks incurred specifically for a client was given another account number; (4) Rule 11: A Rule 11 Motion was filed for certain defendants and given different account numbers; and (5) Request for attorney's fees and costs was given a different account number.

The primary timekeepers are:

| | |
|---|---|
| Michael Beatty: | 1999 - $350 per hour; 2011 - $550 per hour |
| Rebecca Noecker: | 2000 - $350 per hour; 2011 - $425 per hour |

The Defendants request the following attorney fees and costs:

| | |
|---|---|
| Split Bills: | $94,195.25 fees and $10,146.47 expenses |
| Shared Bills: | $125,081.12 fees and $9,906.15 expenses |
| Direct Bills: | $82,269.76 fees and $3,048.51 expenses |
| Application: | $6,647.94 fees and $78.49 expenses |
| Joint Defense: | $272,348.54 fees and $40,281.97 |
| Total: | $663,932.73 |

The Special Master has reviewed 449 pages of pleadings, affidavits and billing records.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the billing records of Beatty & Wozniak. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

Defendants in their Application for Fees request the Court enhance the fee award for the obstructive discovery actions by Grynberg that affected the defense of the case. An example is the loss or destruction of 150 boxes of documents and the delivery of over 3,300 documents the day before his deposition. Grynberg was sanctioned several times by the Special Master, and the report of the Special Master details the combative and uncooperative actions by Grynberg's counsel. The increased cost and fees to the defendants are taken into consideration in applying the lodestar method. As indicated in Perdue *at* 1673, the complexity of the case is included in the increased billable hours considered by the lodestar method. Enhancement should be awarded only in "rare" and "exceptional" circumstances. Grynberg's obstructive actions increased the attorney fees and costs to be awarded under the lodestar method.

Relator and CMS Gas stipulate that it paid $41.587.68 to Beatty &Wozniak for the appeal which will be deducted from the fees and costs.

The Special Master has reduced the joint defense and expenses by 12% to $275,114.85.

The Special Master finds that the CMS Gas Co., its subsidiaries and affiliates and Continental as, Inc., its subsidiaries and affiliates are entitled jointly to $584,834.39 in attorney fees and expenses.

**K. CNG PRODUCING COMPANY 99-MD-1627**

CNG Producing Company (CNG) retained Donald I. Schultz of Holland & Hart to represent it as one of the defendants in 99-MD-1627. Dominion Oklahoma Texas Exploration Company is the successor in interest of CNG. The Special Master has reviewed the Claim for Attorney's Fees and Expenses, Affidavit of Donald I. Schultz and 84 pages of billings by Holland & Hart.

CNG requests the following fees and expenses:

| | |
|---|---|
| Separate attorney fees and expenses: | $9,471 fees and $324.73 expenses |
| Joint defense fees and costs: | $193,124.02 fees and $28,564.19 expenses |

It does not seek fees or expenses for defending the appeal or establishing liability for fees

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel.* Winn, 130 S.Ct. 1662, 1673 (2011).

Donald Schultz billed at $375 per hour and the other counsel of Holland & Hart at a lesser amount. The hourly rate of Mr. Schultz and other counsel are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the billing records which clearly set forth the task by the timekeeper, the relevancy and necessity of the expended time in defense of the litigation. The expenses billed are recoverable as necessary to the defense of the case.

The joint defense fees and expenses have been reduced by 25% to $166,266.15.

The Special Master finds that Dominion Oklahoma Texas Exploration Company is entitled to $176,061.89 in attorney fees and expenses.

**J. COLUMBIA ENERGY SERVICES CORP. 99- MD-1628**

Columbia Energy Services Corp. consists of thirteen corporations named as defendants in Case No. 99-MD-1628. They retained Michael Beatty and Rebecca Noecker of Beatty & Wozniak, P.C. The law firm also represented or provided legal services for other defendants in the following cases: 99-MD-1603; 99–MD-1609; 99-MD-1610; 99-MD-1625; 99-MD-26; 00-MD-1633; 99-MD-1664; 99-MD-1669 and 04-MD-1684. The firm billed the various defendants as follows: (1) Split Bills: common services provided to Beatty & Wozniak clients were divided between the clients. The billings were given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining clients and given a shared account number; (3) Direct Bills: Tasks incurred specifically for Columbia are billed to a separate account reserved for Columbia; (4) Rule 11: A Rule 11 Motion on behalf of Columbia was filed to establish attorney's fees and costs. Other Rule 11 motions for other defendants were billed to their accounts; (5) Request for Attorney Fees and Costs: The motion for attorneys fees and costs was shared by the defendants.

Columbia also retained Matthew J. Fischer of Schiff Hardin LLP to provide client-specific services for Columbia defendants and coordinate with in-house legal counsel and Beatty & Wozniak. Akin Gump law firm had been retained earlier to provide the same service rendered by Fischer. No affidavit or billing records have been provided for Akin Gump because the billings cannot be located, and there is not a member of Akin Gump to provide an affidavit.

Primary timekeepers are as follows:

Schiff Hardin LLP:

| | |
|---|---|
| M. Fisher: | 2001 - $260 per hour; 2010 - $510 per hour |
| C. Pryrosky: | $385 per hour |
| Coleman: | $210 per hour |

Beatty & Wozniak LLP:

| | |
|---|---|
| M. Beatty: | 1999 - $295; 2010 - $500 per hour |
| R. Noecker: | $2001 - $350 per hour; 2010 - $425 per hour |

Request for attorneys fees and expenses:

| | |
|---|---|
| Split Bills: | $172,817.64 fees and $15,289.96 in expenses |
| Shared Bills: | $82,269.78 fees and $3,048.54 in expenses |
| Direct Bills: | $134,091.75 fees and $13,253.01 in expenses |
| Rule 11: | $5,826.49 fees and $ 104.22 in expenses |
| Fees on Fees: | $13,664.25 fees and $333.56 in expenses |
| Application for Fees: | $6,827.94 fees and $95.44 expenses |
| Schiff Hardin LLP: | $274,649.75 fees |
| Akin Gump: | $108,613.47 |
| Joint Defense: | $161,868.97 fees and $23,941.39 expenses |
| **Total:** | $1,016,696.16 |

The Special Master has reviewed 786 pages of pleadings, affidavits and billing records.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the billing records of Beatty & Wozniak in detail. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case. Shiff Hardin did not bill for services of paralegals or clerks. It did not bill for any expenses. The records detail the task performed and the necessity of the task to the defense of the case.

No records have been provided for Akin Gump. Although Columbia defendants paid $108,613.47, it is the burden of the party seeking attorney fees to provide the records establishing the fees and expenses. Case v. Unified School Dist., No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The request for fees of Akin Gump will be disallowed.

The joint defense fees and costs have been reduced by 12%. Joint defense fees and expenses are $163,513.12.

Relator and Columbia defendants agree the Columbia paid $44,144.10 in appellate fees and expenses which is disallowed.

The Special Master finds that the Columbia defendants are entitled to $841,644.67 in attorney fees and expenses.

**K. CONOCOPHILLIPS COMPANY 99-MD-1666-NDF, Civil Act. NO. 97-CV-237, Wyoming United States District Court**

Grynberg filed a False Claims Act against Conoco, Inc., Louisiana Gas Systems, Inc, and Oryx Energy Company on October 6, 1997 as Civil Action No. 97-CV-237 in the U.S. District Court on April 14, 1999. It was transferred to case 99-MDL-1293-NDF as case No. 99-MD-1666. Frank Neville of Williams Porter Day & Neville of Casper, Wyoming, was retained as local counsel by the firm of McGuire Woods Battle & Boothe of Virginia in 1997. Conoco, Inc. merged with Phillips Petroleum Company and became ConocoPhillips Company (COP).

In January, 2003, Locke Lord was retained by COP, Amerada Hess Corporation (Hess), Pacific Interstate Offshore Company, Pacific Offshore Pipeline Corporation and Southern California Gas Company (collectively known as the "Sempra Energy Entities") to represent the parties in MDL 1293. Locke Lord was already representing Phillips Petroleum Company in United States *ex rel.* Wright v. AGIP Petroleum Co., Inc., *et al.*, No. 2:00-MD-1675 and Comstock Resources in United States *ex rel.* Kennard and Wright v. Comstock Resources, Inc., No. 2:01-MD-1679 which were transferred to MDL 1293.

The primary timekeepers are as follows:

Williams, Porter, Day and Neville, PC:

| | |
|---|---|
| Frank Neville, Partner: | 1999 - $150 per hour; 2006 - $175 per hour |
| Anne Rochelle: | 1999 - $110 per hour |
| Kevin Huber: | 2004 - $125 per hour |

Locke Lord Bissell & Liddell LLP:

| | |
|---|---|
| J.R. Beatty, Partner: | 2003 - $320 per hour; 2009 - $475 per hour |
| W.S. Hastings, Partner: | 2003 - $186 per hour; 2009 - $381 per hour |
| A.R. Terry, Partner: | 2003 - $216 per hour; 2004 - $240 per hour |

**REQUESTED FEES AND EXPENSES**

Locke Lord:

Separate Fees and Expenses: $178,640.02 attorney fees and $10,110.06 expenses

It allocates $35,763.25 attorney fees and $2,806.83 expenses for appeal.

It allocates $13,860.80 and $1,422.36 for fees for establishing liability for an amount of fees.

Joint defense fees and expenses: $213,962.22 fees and $25,212.89 for expenses

Williams, Porter: $23,828.12 fees and $1,384.77 expenses

The Special Master has reviewed over 250 pages of billings and expenses submitted by Locke Lord Bissell & Liddell and Williams Porter Day & Neville.

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.* Winn, 130 S.Ct. 1662, 1250 ((2010).

The hourly fees charged by the attorneys, paralegals and staff of Locke Lord are reasonable for attorneys practicing in the specialized oil and gas area of law. The fees were lower because of special rates provided to separate parties. The hourly fees charged by Williams Porter Day & Neville were reduced fees as local counsel and are reasonable fees for attorneys acting as local counsel.

The records of Lord Locke are an example of how records should be maintained. The records reflect the attorney or paralegal for whom the fees are requested, the specific task and how it is applicable to the defense of the case. Case v. United School Dist. No. 233., 157 F.3d 1243,1250 (1998); Cadena v. Pacesetter Corp., 224 F. 3d 1203,1215 (10th Cir. 2000). The fees and expenses are broken down as follows: ConocoPhillips is entitled to $154,660.26 fees after deduction for the appeal.

Williams, Porter, Day & Neville, PC were retained as local counsel in Casper, Wyoming. The tasks performed by Neville in 1999 did include preparing a motion and attending the pretrial conference. He also attended a scheduling conference in 2002. All other tasks consist of reviewing pleadings and documents prepared by multiple defendants. He periodically had conference calls with various attorneys as to the status of the case. His entries for reviewing documents and pleading are less than 1 hour and do not reflect any legal assistance to Conoco. Between August 1999 and April 2000, Neville, Rochelle and Skavdahl had tasks that involved preparing pleading, comment of drafts and attending a pretrial conference. The firm billed $14,434.50 for the tasks. From April 2000 the tasks consisted of review and participation in conference calls and do not reflect any additional legal tasks that are necessary to the litigation in the amount of $10,778.39. The $9,393.62 is reduced by 50% for failure to identify the nature of the task and as administrative tasks to $4,696.81. The total amount of fees approved is $19,131.31. The requested expenses consist of long distance phone calls, Fed Ex, copies and mailing costs which are reasonable and necessary to the litigation in the amount of $1,384.02. ConocoPhillips is entitled to $20,516.08 for work performed by Williams, Porter, Day & Neville, PC.

The fees and expenses allocated for defending the appeal are disallowed in the amount of $38,570 for a remaining balance of $175,392.34.

Conoco requests reimbursement for joint fees and expenses. The Special Master has reduced the joint fees and expenses by 25%. The joint fees and expenses are reduced to $163,941.21.

I find that ConocoPhillips Company is entitled to the following fees and expenses: $334,636.54

**L. CORAL ENERGY L.P. 99-MD-1626**

Coral Energy, L.P. is a defendant in Case No. 99-MD-1626 and was named as a defendant in a *Qui Tam* civil suit by Grynberg in a U.S. District Court for the Eastern District of Louisiana. Coral retained William D. Wood of Fulbright & Jaworski L.L.P. in September, 1998, with whom they had a long standing relationship. William D. Wood represented Coral from September 1998 until March 2002, when Coral became affiliated with Shell Oil Co. and its affiliates. The timekeeper entries are from the defense of the litigation in Louisiana, MDL panel litigation and participation in the joint defense group established during the MDL proceedings. It does not separately claim any appeal fees or legal fee litigation.

**REQUESTED ATTORNEYS FEES**

Coral Energy claims the following separately incurred attorney fees and expenses: $97.801.53 attorney fees and $6,404.03 expenses.

The Special Master has reviewed the 20-page summary of billings and applied the lodestar evaluation.

The timekeepers providing the primary services are as follows:

| | |
|---|---|
| William Woods, Partner: | 1998 - $300 per hour; 2002 - $390.00 per hour. |
| Jennifer Price, Sr. Counsel: | 1999 - $395 per hour. |
| George Murr, Sr. Associate: | 2000 - $235 per hour; 2002 - $270 per hour. |
| John Bowman, Partner: | 1999 - $335 per hour. |
| Angelina Craig, Sr. Paralegal - | 100 per hour. |

There were 15 timekeepers listed, but only six had billings that exceeded $1,000 with Woods, Price, Murr and Craig performing 97% of the entries. The timekeeper hours were incurred during the litigation in Louisiana and the MDL panel review. Jennifer Price and George Murr were the litigation counsel. Reasonable presumptive hourly fees in Colorado and Wyoming are not applicable. The Special Master does not have any evidence concerning the reasonable fees in Louisiana and the Relator has not objected to the reasonableness of the fees. William Woods, as the supervising partner, participated in joint defense meetings as well as multiple conferences with the client. In 2001, he also became the supervising counsel in the defense of Acadia Gas and the Enterprise group.

The Special Master has reviewed the 20 pages of the summary billings and expenses by the timekeepers for Coral Energy. The timekeeper entries from June 29, 2001, through February 28, 2002, are identical billings submitted by Fulbright & Jaworski for Acadia Gas LLC. The billings differ only in the hourly billing. The hourly billings to Coral are higher for all of the timekeepers. Wood bills $20 an hour higher, Murr $15 an hour higher, Palmer $10 an hour higher and Craig $5 per hour higher. The Special Master assumed that the client agreement with Coral called for higher hourly fees than for Acadia Gas. The Special Master has disallowed the duplicative entries from the fees and expenses requested by Acadia Gas.

The records maintained are detailed and were necessary for the defense of the litigation with the following exceptions:

Research on U.S. District Judge Dubal of 8.75 hours for $838.75.

Billing for publicly-traded audit of 14.75 hours for $2,048.25.

Base upon the subsequent request that I reviewed the billings for Coral and the Enterprise group, I have also reviewed William Woods involvement in the joint defense group. Woods involvement in the Joint Defense Team and counsel representing other defendants was compensated by his clients rather than the Joint Defense Team. The involvement required multiple phone calls and conferences. Coral is entitled to reimbursement for his hourly billings without deduction. The fees are reduced by the research on Judge Dubal, and the audit in the amount of $2,887.00.

**REQUESTED EXPENSES**

Coral requests $6,404.03 in expenses. The expenses are reasonable and related to the litigation.

I find that Coral Energy LP is entitled to $85,777.53 in attorney fees and expenses.

**M. DYNEGY INC. 99-MD-1631**

Grynberg filed a claim against Dynegy, Inc. on January, 1999, in Civil Action No. 99-CV-0028-SRD, United States of America ex rel. Jack J. Grynberg v. Dynegy Inc. and Venice Energy Services Company, L.L.C., in the U.S. District Court for the Eastern District of Louisiana. The case was transferred to MDL. No. 99-MD-1293-NDF and became Case No. 99-MD-1631-NDF. Venice Energy Services Company, L.L.C. (VESCO) was an affiliate of Dynegy. Both companies were represented by Akin Gump until December 2006. Venice retained John B. Hall of Locke Lord in December 2006. VESCO submitted a separate billing after December, 2006. The billing records reflect that research, settlement negotiations and pleadings done by Dynegy after 2006 benefitted VESCO. There were continuing conferences and communications with Hall regarding the status of the defense and settlement discussions with Akin Gump attorneys.

While defending this case, Akin Gump was also involved in closely related class actions in Kansas (Quinque case) and the Eastern District of Kansas (Wright case). It also filed a Freedom of Information Act to obtain documents from the U.S. Government. In the summary of fees and expenses, Akin Gump has deducted fees and expenses it believes are related to the other cases. The billing records do not reflect the deductions as to the hourly billings, fees or expenses.

The primary timekeepers are as follows:

J.E. Rothrock, Partner:   1999 - $300 per hour; 2008 - $550 per hour.

C. Spillman, Partner:   1999 - $325 per hour; 2007 - $500 per hour.

L.E. Tanenbaum:   2003 - $400 per hour.

**REQUESTED FEES AND EXPENSES**

Separate fees and expenses: $476,423.60 fees and $38,360.94 expenses to a total of $514,784.54.

Appeal allocation: $31,993.20 fees and expenses.

Joint defense fees and expenses: $139,889.94.

The Special Master has reviewed the Dynegy, Inc. Motion for Fees, affidavits, 319 pages of billing records and 6 pages of its summary of fees and expenses.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., ex rel. Winn., 130 S.Ct.1662, 1673 (2011).

The lead counsel, J. Rothrock, commenced billing in the year 2000 at $325 per hour. His billing rate in 2008 was $550. The billing rates of the other counsel and paralegals are less and comparable to other law firms representing other MDL defendants. The Special Master finds that the attorney fees are within the prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

The Special Master must determine whether the hours billed are reasonably expended on defending the litigation. Case v. United School Dist. No. 233, 157 F. 3d 1243, 1250 (10th Cir. 1998). The party seeking fees and expenses must, by the billing records, identify the specific task, the applicability to the case, and work product actually necessary to the defense of the case. *Id.* at 1255. Dynegy attorneys were involved in serious settlement negotiations in 2002 and again in 2007. Drafts of proposed settlements were exchanged. In 2007, Dynegy explored filing a civil suit to enforce a settlement agreement. Dynegy has taken a 10% discount of its fees as an adjustment for hours that might be duplicative or not related to the defense of the case. It requests $428,781.24 in attorneys fees. Rothrock was active both in the defense of Dynegy and Venice Energy and also participated in the joint defenses committee *pro bono*. In 2007-2008, he negotiated with Relator's attorneys concerning a settlement including drafting a settlement agreement. Grynberg did not sign the agreement, and there was research done on how to enforce it. He has tasks for "review" and identifies what he is reviewing and, further tasks which are documented, that reflect some action.

In order to determine the expenses, I reviewed every billing and the tasks. The Special Master finds that $38,360.94 in expenses is reasonable and necessary.

The Special Master has found that the joint defense fees and expenses should be reduced by 25% to $104,917.45.

Dynegy allocates $31,993.94 for defending the appeal. $31,993.94 is disallowed.

The Special Master finds that Dynegy is entitled to $469,991.99 fees and expenses.

**N. DELHI GAS PIPELINE COMPANY (99-MD-1645)**

Delphi Gas Pipeline Company was a defendant in Case No. 99-MD-1645 with Marathon Oil Company. Marathon Oil provided a defense to the MDL litigation. Delphi relied on in-house counsel to monitor the litigation and pleadings filed by the Joint Defense Team and Marathon. It did agree to participate in the reimbursement of the joint defense attorney fees and expenses. It paid $119,775.65 in fees and $17,715.83 in expenses to Holland & Hart for joint fees and expenses.

Delphi claims: $137,493.38 in joint fees and expenses.

The Special Master has reduced the joint fees and expenses by 25%, which reduces the claim to $103,120.03.

The Special Master finds that Delphi Gas Pipeline Company is entitled to $103,120.03 in joint fees and expenses.

**O. EL PASO DEFENDANTS: 99-MD-1605, 1609, 1625, 1632**

Grynberg brought six False Claims Acts against El Paso Natural Gas Company d/b/a El Paso Energy Corporation and its affiliates known as the El Paso family. They are as follows:

U.S. District Court, District of Colorado Case No. 97-D-1417 (Wyo. 99-MD-1605) (10 defendants)

U.S. District Court, District of Colorado Case No. 97-D-1422 (Wyo. 99-MD-1609) (9 defendants)

U.S. District Court, E. D. of Louisiana Case No. 97-D-2087 (Wyo. 99-MD-1625) (6 Defendants)

U.S. District Court, E.D. Michigan S.D. Case No. 40259 (Wyo. 99-MD-1632) (6 Defendants)

U.S. District Court, W.D. Texas (Wyo. 99-MD-1622) (5 Defendants)

U.S. District Court, S.D. Texas (Wyo. 99-MD-1649) (3 Defendants)

The Texas cases were dismissed while Grynberg's appeal was pending and all fees and costs were waived.

<u>Case: No. 99-MD-1605</u>

In Case 99-MD-1605, the El Paso defendants retained Michael Beatty of Beatty & Wozniak. Michael Beatty has served previously as General Counsel for Colorado Interstate Gas Company and the Coastal Corporation. Beatty and Wozniak also performed legal work that was a benefit to other defendants with similar defenses in MDL 99-MD-1293. El Paso paid for case specific tasks performed by the Beatty firm and its respective share of tasks that were common to multiple defendants. El Paso retained local counsel in Wyoming for advice and logistical support. It initially retained Hugh Schaefer and then Brown, Drew & Massey. Brown Drew & Massey acted as local counsel for Duke and Kinder Morgan. The Brown firm divided the hourly billings by a third. The hourly billing records submitted for review are for the years 2001 to 2006. EL Paso did not submit billings for defending the appeal by Grynberg or for tasks establishing its entitlement for legal fees and costs.

The primary timekeepers are as follows:

Beatty & Wozniak PC: The attorneys fees have consistently been found to be reasonable.

| | |
|---|---|
| Hugh Schaefer: | $150 per hour. |
| Brown Drew & Massey: | Thomas Reese, $225 per hour and law clerks at $75 per hour. |

Request for attorneys fees and expenses for Case No. 99-MD-1605:

| | |
|---|---|
| Beatty & Wozniak: | $237,433.18 |
| Brown, Drew & Massey: | $38,171.83 |
| Hugh V. Schaefer: | $22,625.51 |
| Joint fees and expenses: | $145,098.72 |
| Total fees and expenses: | $443,329.24 |

The hourly fees of the timekeepers are within the presumptive reasonable rates for attorneys practicing oil and gas law in Wyoming and Colorado.

The Special Master has reviewed 224 pages of billing records of Beatty & Wozniak, PC and find that they set forth in detail the task performed and the relationship of the tasks to the defenses of El Paso.

The Special Master has reviewed 15 pages of billing records for Schaefer. Schaefer's task entries were "Review, updates to extranet." He participated in two phone calls. A party seeking fees and expenses, must by the billing records, identify the specific task, the applicability to the case and work product actually needed for the case. Case v. United School Dist. No. 233, 157 F. 3d 952, 956 (10th Cir. 1998). Other than reviewing documents, attending some conferences and telephone conferences, Schaefer produced no work product. Half of the fees billed were in 2000. The entries for that period have not been submitted for review. I disallow the fee of $22,625.51 for failure to provide adequate billing records and failing to establish how the tasks were relevant to the litigation defense.

The Special Master has reviewed 134 pages of billings of Brown Drew & Massey. Thomas Reese was retained as local counsel in Casper in December, 2000. From January to July 2001, his tasks included filing a pleading with the court and attending hearings. After August, 2001, the tasks involved reviewing emails, pleadings and participating in conference phone calls. He does not identify the tasks or the applicability to the case. The clerks reviewed, downloaded and distributed recently received e-mails from the Joint Defense Team. The clerks also contacted the court and electronically filed documents. Tasks recorded do not identify the documents or e-mails received by the firm. The billing records of Beatty & Wozniak do not identify the use of Reese. The Special Master has reviewed the expenses, which are minimal, but necessary, for the defense of the case. The fees will be reduced by 50% as being administrative by the law clerk. The review entries by Reese did not meet the requirements of Flitton v.

Primary Residential Mortgage Inc., 614 F.3d 1173, 1178 (10th Cir. 2010). The Special Master finds that El Paso is entitled to $19,085.92.

The Special Master finds that El Paso defendants are entitled the following fees and expenses:

| | |
|---|---|
| Beatty & Wozniak: | $237,433.18 |
| Brown, Drew & Massey: | $19,085.59 |
| H. Schaefer: | $0 |

The Special Master finds that the joint defense fees should be reduced by 25% to $108,824.04.

The Special Master finds that El Paso is entitled to $365,342.81 in attorneys fees and expenses for Case 99-MD-1605.

Case No. 99-MD-1609

In 1998, El Paso defendants retained David Palmer of Zevnik, Horton, Guibord, McGovern, Palmer & Fogani (Zevnik Horton) who had represented El Paso in previous legal matters. In 2001, David Palmer became partner in Greenberg Traurig and continued the representation of defendants. El Paso retained as Wyoming local counsel the firm of Rothgerber Johnson & Lyons. It served in that capacity from 1998 to 2001. The firm of Zevnik Horton was representing El Paso in a Kansas class action complaint, known as the Quinque case. Grynberg was not the named Relator. The case was transferred by the MDL panel to Wyoming. After motions to remand, Judge Downes remanded the case to the state court in Kansas. Quinque is not a case in MDL 99-MD-1293.

The primary timekeepers are:

Zevnik Horton:

Palmer: $330 per hour; Shure - $295 per hour; Beer - $225 per hour.

Greenberg Traurig:

Palmer: $330 per hour; B. Pringle: $330 per hour; Beer: $250 per hour.

Rothgerber Johnson & Lyons: Lyons: $375 per hour; Minier: $220 per hour.

The hourly fees are within the presumptive hourly fee for attorneys practicing oil and gas law within Wyoming and Colorado.

Request for fees and expenses:

| | |
|---|---|
| Zevnik Horton: | $164,584.64 |
| Rothgerber Johnson and Lyons: | $31,610.33 |

| | |
|---|---|
| Greenberg Traurig: | $350,553.85 |
| Joint fees and expenses: | $226,901.27 |

The Special Master has reviewed 69 pages of billings by Zevik Horton, 37 pages of billings by Rothergerber Johnson and Lyons and 151 pages of billings by Greenber Traurig. Zevnik Horton commenced representation in 1998. It was defending the Qunique class action in Kansas and 99-MD-1609 when Qunique was transferred by the MDL panel to Wyoming case 99-MD-1293. The tasks relate to the defense of El Paso in 99-MD-1293 and the pleading to remand the case to the Kansas state court. The firm has not billed for the Quinque case after the remand. The billings reflect the tasks and the relevancy of the tasks to the defense of El Paso.

Rothgerber billings also reference the Kansas litigation. Most of its records indicate review of documents and e-mails without identifying the whether it relates to the MDL or Kansas case. Tasks by Lyons concern "legislation." The defense tasks are performed by Minear. The billing tasks relate to the defense of El Paso during the period that Quinque was a part of the Wyoming MDL. Lyons participated in some meetings with the Joint Defense Committee. The Rothgerber firm reviewed documents but did not produce any pleadings or briefs in the MDL litigation.

Greenberg Traurig until also billed for the Kansas case until July, 2001. Greenberg Traurig submitted a billing for $37,507 in July, 2001 which included invoices from April through July, 2001 for both the Kansas and MDL litigation. The billing tasks related to the defense of El Paso during the period the Kansas case was a part of the MDL. El Paso has submitted an affidavit of G. Graham, Paralegal, identifying billings she believes were related to the defense of the Quinque case as $13,192.50. I have again reviewed the billings of Greenberg Traurig and the affidavit clarifying the billings. El Paso is entitled to $337,361.35 in fees and expenses for the representation by Greenberg Traurig.

The joint defense fees and expenses have been reduced by 25% to $170,176.09

Grynberg is not the Relator in the Quinque litigation. Although there are allegations are that he was the instigator of the Kansas case and through his counsel provided the pleadings, he is not the Relator. Judge Downes returned the case to Kansas and awarded attorneys fees. Because the allegations were the same as the Grynberg *Qui Tam* cases, counsel did participate with the Joint Defense Team and pleadings in the MDL. The attorney fees relating to Quinque case must be addressed by the Kansas court and are disallowed.

El Paso is entitled to fees and costs of $507,537.44 in case 99-MD-1609.

Case No. 99-MD-1625

In Case No. 99-MD-1625, El Paso retained Douglas Robinson of Skadden, Arps, Slate, Meagher and Flom (Skadden Arps) in New York. Robinson represented Southern National Gas Company in *U.S. ex*

*rel.*Grynberg v. Alaska Pipeline Co., *et al.*, Case No. CIV-95-725, U.S. District Court for the District of Columbia. The Special Master has reviewed 262 pages of billings submitted by Skadden Arps.

The timekeepers are:

Robinson: $582 per hour.

Runyon: designated as an associate, and performed most of the tasks. The billings do not indicate the specific hourly fee, but it is less than Robinson.

The hourly fee is within the presumptive hourly fee for attorneys practicing in the field of oil and gas law in Wyoming and Colorado.

Request for fees and expenses in case 99-MD-1625:

El Paso requests separate attorney fees and expenses of $586,318.

Joint defense fees and expenses: $140,474.33.

The Special Master has reviewed the invoices, and they set forth the task of the timekeeper and relate it to the defense of the El Paso affiliates in case 99-MD-1625.

The joint defense fees and expenses have been reduced by 25% to $105,355.74

The Special Master finds that El Paso is entitled to attorney fees and expenses of $691,673.74.

Case No. 99-MD-1632

El Paso does not seek attorney fees and expenses incurred by in-house attorneys. It seeks joint defense fees and expenses of $139,866.90, which are reduced by 25% to $104,900.17.

Conclusion:

The Special Master finds that El Paso Defendants are entitled to $1,669,454.10 in attorney fees and expenses.

**P. ENOGEX (ENOGEX INC., ENOGEX SERVICES CORPORATION, TRANSOK, INC.) AND OKLAHOMA GAS & ELECTRIC CO. (OG&E) CASES: 99-MD-1626, 1640, 1641**

The Enogex Inc., Enogex Services Corp., and Transock, Inc. (Enogex) defendants retained Robin Fields to represent them in U.S. ex rel. Grynberg v. Alaska Pipeline Co., et al., Case No. CIV-95-725, U.S. District Court for the District of Columbia. Enogex filed a Motion to Dismiss. The case was dismissed. Grynberg then filed False Claims Act claims in the following litigation, which included Enogex companies and Oklahoma Gas & Electric Co. (OG&E): Case No. CIV-97-1009 (W.D. Okla.)(99-MD-1640); Case No. CIV-97-1010(W.D. Okla)(99-MD-1641) and Case No. CIV-97-2089 (E.D.La.)(99-MD-1626). Robin Fields has continued to represent Enogex/OG&E. She also was lead counsel for the Cross Timbers companies, which consisted of Cross Timbers Oil Company, Cross Timbers Operating Co., Cross Timbers Energy

Services, Inc., Timberland Gathering and Processing, Inc., and Ringwood Gathering Co. Where her legal tasks were common to all defendants, the billing hours were divided between the defendants. Where the task was specific to a defendant, the defendant was billed the full hourly fee. Cross Timbers is not filing a claim for attorney fees or costs.

Fields and the law firm were active in the Joint Defense Team defense of the case. There was continual contact by phone, e-mail and documents. The records reflect research and material being provided for the joint defense effort. This was particularly noted in the billings for 2004, 2005 and 2008. The hourly tasks performed on behalf of the joint defense were paid by Enogex/OG&E and the other defendants because the joint pleadings and briefs also applied to the defense of their cases.

Primary timekeepers are as follows:

Robin Fields: 1998 - $175 per hour; 2009 - $400 per hour.

Steven Jantzen: 2001 - $180 per hour; 2005 - $225 per hour.

Corey Neller: 2002 - 120 per hour; 2007 - $180 per hour.

Melissa Keplinger, Paralegal: 1999 - $55; 2007 - $115.

Misty Dalke, legal assistant: $50 per hour.

Requested fees and expenses:

Separate attorney fees: $1,115,215.07. It allocates $196,115.34 as appeal-related fees.

Joint Defense fees and costs: Fees: $197,749.99 and costs of $28,952.60

The lodestar test has been used to determine the presumptive fees. Perdue v. Kenney A. *ex rel.*Win, 130 S. Ct. 1662, 1673 (2011); Anchondo v. Anderson Crenshaw and Associates, 616 F.3d 1098 (10th Cir. 2010).

The attorney fees and paralegal fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Enogex/OG&E did not submit $44,285.66 in fees and expenses where they had inadequate invoices, or where they used staff in defense of the case who were not a part of the defense team. It also waived a request for cost and expenses incurred in the defense of the case in the amount of $87,935.48. I reviewed the expenses in reviewing the billing records, and the expenses would have been compensable.

The Special Master has reviewed 1426 pages of billing and affidavit records. Thirteen attorneys and five paralegals were timekeepers. The Special Master has reviewed in detail all of the billing records with additional review of the billing records in 2003, 2004 and 2008 because $580,000 of the fee requests occurred within those three years. Multiple staff members were billing daily. The use of multiple attorneys and paralegals in a complex case is not inherently unreasonable as long as the work is

not duplicative. Anchondo, 616 F.3d at 1105. The timekeepers identified the tasks that each was performing. There were separate issues that required research, briefing, pleadings and documentation. The records meet the requirements that party seeking fees and expenses identify the task, the applicability to the case and work product necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 1243, 1252 (10th Cir. 1998).

$93,304 in fees incurred from November, 1998 until January, 2000. The fees relate to the defense of the litigation in Oklahoma and the issue of the Oklahoma cases being transferred by the MDL panel.

There are certain billings that are reduced or disallowed. Keith Klein, a partner, billed 158 hours from 1999 to 2004. The tasks are for review and conferences. I could not find any entries that involved research, pleadings or input to the defense of the case. He has billed $13,190 in fees which will be disallowed. Patrick Pearce billed 516 hours of which 161 hours were in 2003. In 2003, his task was "Review file produced by Grynberg on public disclosure and original source." It is the same task for the year 2003 without any evidence regarding how the review was used in the litigation. $28,512 in fees is disallowed. Misty Dalke, legal assistant, had daily entrees during certain months of 2003, 2004 and 2005 which consisted of "work on joint defense communications" or "acquisition of documents." Ms. Dalke's tasks for a 6-year period were administrative. She billed 949 hours for $43,346, which is disallowed. Robin Fields has over 60 phone calls with various individuals which do not identify how the call relates to the litigation. The entries do not meet the standard in Case; the entries are brief and no reduction will be applied.

Enogex has allocated $196,115.34 to appeal-related fees and costs. The fees and costs are disallowed.

The joint defense attorney fees and expenses have been reduced by 25% for a total of $170,026.94.

The Special Master finds that Enogex, Inc., Enogex Services Corporation, Transok, Inc., and Oklahoma Gas and Electric Co. are entitled to $815,216.70 in attorney fees and joint defense attorney fees and costs of $170,026.94 for a total of $985,243.64.

**Q. EQUITABLE RESOURCES, INC. 99-MD-1630 and 99-MD-1644**

Charles D. Tetrault of Vinson & Elkins L.L.P. represents multiple defendants in separate MDL cases. He represents Equitable Resources, Inc. and its subsidiary companies, Equitrans LP, Equitable Storage, Inc. and Louisiana Intrastate Gas Company LLC in Case Nos. 99-MD-1630 and 99-MD-1644. He also represents the following corporations: Agave Energy Company in case 99-MD-1635; Florida Gas Transmission Company LLC; Northern Natural Gas Company and Transwestern Pipeline Company, LLC. Each has filed a separate application for attorney fees and expenses. He also represented dismissed defendants in Case Nos. 1602, 1608, 1622 and 1640.

The multiple defendants retained Vinson & Elkins,L.L.P. in order to reduce expenses on common claims by sharing counsel. Tetrault split the common hours and billings between all of the defendants. An example would be reviewing documents, conferences, research and pleadings. When the work or task related to a specific defendant, the defendant was billed for hours and expenses. Because of his expertise and the number of defendants he represented, Tetrault was the only outside, non-paid attorney to the five-member Coordinating Counsel Committee of the Joint Defense Team. The Coordinating Counsel Committee determined overall strategy and tactics, structuring and editing of major joint defense pleadings and briefs and preparation of arguments in the district and appellate courts. He was a non-paid member. The position required him to review pleadings, review and comment on joint defense pleadings and strategy, and attend hearings and meetings of the committee. The hourly tasks performed for the Joint Defense Team were divided equally between his clients. The individual defendants benefited by his involvement in the research, strategy, pleadings and decisions on the Coordinating Counsel. The time records of timekeepers for the Joint Defense Team and other defendants reflect that he was actively involved in making decisions and recommendations from 1999 through 2011.

The primary timekeepers for Equitable Resources Inc. and Equitrans LP are:

Charles Tetrault: 1998 - $300 per hour; 2003 - 2011 - $460 per hour. Tetrault performed 95% of the billings.

John Faust: 2001 - $280 per hour; 2003 - $375 per hour.

Virginia Brooks: 1999 - $210 per hour.

The Special Master has reviewed 106 pages of the Application of for Attorneys' Fees and Expenses, Declaration in Support of Attorneys' Fees and Expenses, Reply Brief and Billings. The Special Master has compared the billings in the other cases represented by Vinson & Elkins, LLP for duplications of billings. The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel.* Winn, 130 S.Ct. 1662, 1673 (2011).

**REQUEST FOR FEES AND EXPENSES**

Equitable Resources Inc. requests the following fees and expenses:

Equitrans LP: $9,039 fees and $380.57 expenses.

Equitable Resources: $637,598 fees and $12,663.32 expenses.

Equitable allocates a portion of the fees and expenses as follows:

Appellate fees: $31,266 fees and $366.42 expenses.

Liability for fees: $7,396 fees and $50 expenses.

Joint defense: $207,726.50 fees and $30,726.20 expenses. It seeks an additional $5,000 for preparation of the Joint Defense Reply Brief for a total of $243,496.79.

Total: $854,378.44 fees and $43,770.29 expenses.

The lead counsel, Tetrault's fees and the other timekeepers are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Equitable Resources, Inc. and the Relator have reached a stipulation for fees and expenses (Document 2312) as follows: "Equitable and the Relator stipulate that the Special Master's recommended award for Equitable should be $624,324.78."

Pursuant to the stipulation, I recommend that Equitable Resources. Inc. is entitled to $624,324.78.

**R. FLORIDA GAS TRANSMISSION COMPANY, LLC 99-MD-1608; 99-MD-1625**

Florida Gas Transmission Company, LLC (FGT) was named as a defendant in the False Claims Act by Grynberg in the U.S District Court for the District of Colorado in 1998 with nine other defendants including Transwestern Pipeline Company, LLC. FTG is affiliated with Transwestern. It retained Charles D. Tetrault of Vinson & Elkins LLP. The case became 99-MD-1608 in MDL-22-MD-1293. Along with Transwestern, FTG was named in a FCA case filled by Grynberg in the U.S. District Court for the Eastern District of Louisiana. This case became 99-MD-1625 in the MDL case. All billings by Vinson & Elkins for FTG from 1998 to 2001 were made to Transwestern, which divided the fees and costs with FTG. Vinson & Elkins billed FTG and Transwestern after 2001.

While representing multiple defendants including FTG, Tetrault divided hours and billings from common tasks among the multiple defendants. Where the task was specific to FTG, it was billed the full amount of the task. As I found in the application by Equitable Resources, Inc., Tetrault was a non-paid member of a five-member Coordinating Counsel Committee of the Joint Defense Team. FGT benefitted by the hours he billed for work also on the committee. Tetrault divided the hours between the multiple defendants including FTG.

**Request for fees and expenses**

Florida Gas Transmission Company requests the following fees and expenses:

Separate attorney fees and expenses: $62,557.50 attorney fees; $537.03 expenses.

Of the total fees and expenses, FTG allocates the following:

Appellate defense: $25,555 fees and $366.43 expenses.

Liability for fees: $4,797.50 fees and $50 expenses.

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.* Winn, 130 S.Ct. 1662, 1663 (2011).

Charles Tetrault is the only timekeeper. He billed $460 per hour. The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

FTG waived submitting fees and expenses incurred between 1998 through 2001 for Cases 99-MD-1608 and 1625. The Special Master has reviewed the Affidavit for Attorney Fees and Expenses, Declaration of Tetrault, billings and other documents. The Special Master finds the billing records meet the requirements pursuant to Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The records establish that the hours and expenses were necessary and reasonable for defense of the litigation.

Florida Gas Transmission Company allocates $25,555 in fees and $366.43 in costs to defending the appeal. The fees and costs are disallowed.

The Special Master finds that Florida Gas Transmission Company is entitled to $36,636.07.

**S. GPM GAS CORPORATION n/k/a DCP Midstream LP 99-MD-1682**

In January, 1999, Jack Grynberg filed a Federal Claims Act against GPM Gas Corporation (GPM) in the United States District Court for the Southern District of Texas. It retained Daniel M. McClure of Fulbright & Jaworski L.L.P (Fulbright). McClure had represented GPM in other matters. Other defendants chose to retain individual counsel within Fulbright. Gerard G. Pecht of Fulbright's Houston office had been retained previously by PanEnergy Corp. affiliated companies (10 companies) in a Federal Claims Act filed in the United States District Court for the Southern District of Texas in 1998. GPM was represented by McClure from 1999 until 2004. GPM became affiliated with the Pan Energy Defendants in Case No. 1610. GPM's current successor is DCP Midstream LP. Billings for GPM after 2004 are included in the Pan Energy billings. Fulbright timekeepers billing in the GPM claim for fees and costs also billed in other cases represented by Fulbright.

A Dispositive Motion was filed in the USDC Southern District of Texas. Summary Judgment was entered in favor of GPM. On appeal by Grynberg, the United States Court of Appeals for the Fifth Circuit in summary opinion reversed the judgment and remanded the case back to the District Court. United States of America, ex re., Jack J. Grynberg v GPM Gas Corporation, 277 F. 3d 1373 (5th Cir. 2001). GPM filed a Petition for *Writ of Certiorari* which was denied. GPM Gas Corp et al. United States ex rel. Grynberg, 535 US 107 (2002).

GPM was involved in motions, research, pleadings and conferences with other defendants concerning Grynberg's MDL motion. GPM was also named in a class action in Kansas. The Texas case became 99-MD-1682.

**REQUESTED FEES AND EXPENSES**

| | |
|---|---|
| Separately incurred fees and costs: | $149,522.50 attorney fees and $12,767.32 |
| Joint Defense fees and costs: | $164,492.03 |

The primary timekeepers providing billing hours are as follows:

| | |
|---|---|
| Daniel McClure, Lead Partner: | 1999 - $355 per hour; 2004 - $455 per hour |
| Richard Carrell, of Counsel: | 1999 - $380 per hour |
| William Boyce, Partner: | 1999 - $330 per hour |
| Warren Huang, Partner: | 1999 - $270 per hour |
| Dean Moesser, Counsel: | 1999 - $225 per hour |

The law firm has listed 24 timekeepers.

The lodestar test is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 108,112 (10th Cir. 2010). The lodestar is favored in determining a presumptive reasonable fee. Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010).

The hourly fees of all counsel are within the reasonable prevailing market rates for counsel representing oil and gas clients in the Colorado/Wyoming area. The majority of the fees were incurred defending and appealing and MDL panel issues prior to the case being transferred to Wyoming from Texas.

The attorneys for GPM must review the hours actually expended and "winnow" out the hours reasonably expended to defend the case. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The Special Master has reviewed the 21 pages of billings. The various attorneys and staff had clearly assigned issues without duplication. The hours were reasonable and not excessive.

The following billings are disallowed:

GPM was successful in obtaining summary judgment in the United States District Court for the Southern District of Texas. The summary judgment was reversed and remanded to the District Court. Petition for *Writ of Certiorari* with the United States Supreme Court was denied. GPM is not entitled to recover attorneys fees where it was not the successful party on appeal of the summary judgment in the United States District Court for the Southern District of Texas. Crumpacker v. Kansas, Dep't of Human Resources, 474F.3d 747, 755 (10th Cir. 2007). William Boyce and Warren Huang devoted their research, pleadings and conferences to defending the Summary Judgment on appeal to the 5th Circuit and filing a Petition for *Writ of Certiorari*. Boyce billed 33.70 hours at $355 per hour and Huang billed 43.50 hours at $270 per hour. McClure billed 34 hours on the appeals at $355 per hour. The total time expended on the failed appeals is 111.20 with fees of $38,891 which are deducted from the fee request.

Richard Carell, of Counsel, billed 34.30 hours at $380 per hour for a total of $13,011. His hours billed are for reviewing correspondence, conferring with McClure, and an occasional letter reporting to the client. The entries do not identify the subject of the reviews and conferences or how each related to the defense of the case. There is no evidence that he prepared or participated in the preparing of any

pleadings. The billing of Carell is denied as unnecessary to the defense of the litigation in accordance with Case, 157 F.3d at 1252.

Darryl Anderson had 17.60 hours for $2,900 in fees for research on an ethical issue concerning whether there was a conflict of interest by defending GPM when another client of Fulbright was a putative defendant. The issue is an internal issue not relevant to the defense of the Grynberg litigation.

The total fees disallowed: $54,802.

Costs and expenses: The costs and expenses submitted are reasonable and recoverable with the exception of local travel and "other" for a total of $74.52.

It is stipulated that GPM is entitled to $124,966.52 in Joint defense fees and expenses

The Relator and GPM have stipulated that PGM be awarded fees and costs of $232,380.

Pursuant to the stipulation set forth in Document 2312, I recommend that GPM n/k/a DCP Midstream LP is entitled to $232,380.00 attorney fees and expenses.

**T. KN ENERGY n/k/a KINDER MORGAN Case: 99-MD-1603, 99-MD-1668. 99-MD-1626**

KN Energy and its affiliates retained Mark D. Colley of Holland & Knight LLP in 1997 when Greenberg filed a False Claims Act against the following defendants: KN Energy, Inc n/k/a Kinder Morgan, Inc., KN Interstate Gas Transmission Co, KN Natural Gas, Inc, Northern Gas Company, Rocky Mountain Natural Gas Company, TCP Gathering Co., Westar Transmission Company and Wildhorse Energy Partners, LLC. Michael Beatty and Associates were retained in December 1999 when the case became part of the Wyoming MDL case. It was filed as Case 99-MD-1603. The Beatty firm was also retained by KM to represent TransColorado Gas Transmission Company (99-MD-1609); Gulf Energy Pipeline Company, LLC; Tejas Gas Corporation, Tejas Natural Gas Company (99-MD-1626); and Midcon Corp., Midcon Gas Services Corp., Midcon Marketing Corp., Midcon Texas Pipeline Operator, Inc., and Natural Gas Pipeline Co. of America (99-MD-1668).

According to the affidavits of Noecker and Colley, the Department of Justice (DOJ) commenced an investigation of KN's measurement and valuation practices as a test to determine whether the DOJ should join Grynberg as a litigant in the MDL cases. Grynberg suggested to the DOJ that KN should be the test case.

Colley's expertise is in government contracts, audits and investigations, not oil and gas law. As set forth in Colley's affidavit, his publications and presentations as an expert in government law commenced in 2007 through 2011. Holland & Knight's representation included presentations to Congress on possible legislation. The Holland & Knight's representation of KM ended in September, 2001.

Beatty & Wozniak represented multiple defendants in the MDL case. Tasks performed specifically for KM were designated Kinder Morgan/*Qui Tam*. Tasks performed on behalf of all

defendants were equally divided in two accounts as follows: Advisory & El Paso and Advisory where El Paso was not a participating defendant. It separated out MDL/Rule 11 Motions, MDL/Motion for Fees and Application for Fees.

Primary timekeepers are as follows:

| | |
|---|---|
| Colley: | 1998 - $265 per hour |
| Duvall: | 1998 - $310 per hour |
| M. Beatty: | 2000 - $375 per hour; 2011 - $550 per hour |
| R. Noecker: | 2002 - $350 per hour; 2011 - $450 per hour |
| G. Graham, Paralegal: | 2002 - $100; 2011 - $140 per hour |

Request for fees and expenses

| | |
|---|---|
| KM/*Qui Tam*: | $629,304.50 fees and $59,676.25 costs |
| Advisory & El Paso: | $121,693.16 fees and $9,611.26 costs |
| Advisory: | $82,581.87 fees and $3,052.50 costs |
| MDL/Rule 11: | $5,353.19 fees and $104.22 costs |
| MDL/Motion for Fees: | $13,665.23 fees and $333.75 costs |
| Application: | $8,654.44 fees and $122.14 costs |
| Joint Defense: 99-MD-1603: | $152,065.27 fees and $22,491.36 costs |
| Joint Defense: 99-MD-1626: | $146,400.60 fees and $21,653.52 costs |
| Joint Defense: 99-MD-1668: | $6,345.05 fees and $938.47 costs. |

The lodestar evaluation has been used to determine the presumptive reasonable fees and costs. Perdue v. Kenny A. ex rel.Winn, 130 S. Ct. 1662, 1673 (2010). I find the fees are within the presumptive range of fees of attorneys practicing oil and gas law for Wyoming and Colorado.

The Special Master has reviewed 974 pages of billings in detail as well as the Application for Fees, Affidavits of Noecker and Colley and CVs. The Special Master has also compared some of the Beatty billings with others submitted for other defendants.

Beatty & Wozniak represented KM and its affiliates in four separate lawsuits filed by Grynberg. Tasks were increased by the investigation of the Department of Justice. The Special Master has reviewed the *Qui Tam* hourly billings and costs. The billings set forth the task performed and the relation of the task to defense of the lawsuits. With exception of some minimal billings for "working lunches," the costs

relate to the defense of the cases. When Holland & Knight transferred its files to Beatty in 2001, 73 hours and $19,456 in fees were devoted to reviewing the documents, coding documents and integrating them into Beatty files. The hourly billing and fees were related to the transition of counsel, are redundant and administrative. As such, they should not be passed on to Grynberg. Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206-07 (10th Cir. 1986). The *Qui Tam* fee is reduced to $609,848.50.

KM billings for KM/Advisory & El Paso have the following notations: "Total Non-billable Hours". Behind each hourly billing is the notation "NC". KM was not billed for the hours. The request for $121,693.16 fees and a total of $9,611.26 costs is disallowed.

KM argues that it is entitled to the non-billable hours which were not paid by it. It cites Centennial Archaeology, Inc. v. Aecom, Inc., 688 F.3d 673 (10th Cir. 2012). Centennial had a fixed fee agreement with its attorneys. The Wyoming Magistrate Judge and District Judge sanctioned Aecom because of a "pattern of obstructive discovery behavior had been pervasive and persistent throughout the entire course of written discovery and detrimental to the function of the judicial process" and "evinced a cavalier disregard for rights, the Rules of civil Procedure governing discovery, and Orders of this Court seeking to enforce those rules." *Id* at 677. The 10th Circuit held: "The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate." *Id.* at 680. Rule 37 is a sanction that compensates a party for costs incurred on only a discrete portion of the litigation and not whether the litigant is the prevailing party. Hamilton v. Boise Cascade Exp., 519 F.3d at 553. Fox v. Vice, 131 S. Ct. at 2214-2215 (2011) discusses the equitable difference between reasonable fees to a prevailing plaintiff compared a defendant that prevails on a portion of the claims of the plaintiff. Section 1988 permits KM is entitled to be reimbursed by the plaintiff for fees and costs it incurred but for the frivolous claim. The Supreme Court stated: "In this situation, we explained, a court could properly award fees to both parties-to the plaintiff to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he paid in defending against the frivolous one." (Emphasis added) *** "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." (Emphasis added). As stated KM was not billed nor did it pay for the non-billed hours and therefore should not be reimbursed. I have reviewed the billings and compared the billings to the El Paso. The records do not reflect why there were non-billable hours, but KM did not incur any payment for the hours and is not entitled to be reimbursed.

KM billings for KM/Advisory have similar notations of "NC" until February, 2006. In February, 2006, Beatty starts billing multiple defendants. KM is assessed 13% of the fees and costs for a total of $35,857.98 in fees. The Special Master has reduced the costs requested to $1,200. The tasks performed were for defense of the appeal. The cost was divided between defendants represented by Beatty & Wozniak. Appellate fees and costs have been disallowed.

KM billings for KM/Rule 11 Motion have the same notation of Non-billable and "NC." The request of $5,353.19 of fees and a total of $104.22 costs is disallowed.

KM billings for MDL/Motion for Fees are also puzzling. In April, 2007, and the first week of May 2007, Beatty billed 359.10 hours for $88,365.25. The billings all relate to the preparation of a motion for attorneys fees argued on April 24, 2007 before Judge Downes. By the billings, an electronic presentation was made to the court as well as the briefs. This required the assistance of the technical staff and the defendants for the presentation. Both Beatty and Noecker prepared for the oral argument and attended the hearing, as well as the paralegal and technician. They traveled to Casper on April 22, 2007. Costs include $900.91 for three rooms, meals and travel expense; car rental, meals and gas for $483.77 and separate meal costs of $310. The costs were shared by the multiple defendants with KM's share being 11%. 11% of the fees and costs would be $9,934.65. The actual bill to KM is $216. The KM/*Qui Tam* hourly bills for April, 2007, do not show any billing for the Motion for Fees to KM. $216.00 is approved for fees and costs.

Under the designation Application, KM requests $8,654.44 for fees and $122.14 in costs. The billing hours and fees submitted to the Special Master are 136.10 hours and $13,896.00 fees for the multiple defendants. Beatty billed KM its portion of the advisory fees and costs at 13% for $1,785.45. Beatty separately billed KM $2,006.50 and costs of $42.65. The total billed is $3,835.60 for the application for fee. $3,835.60 in fees and costs are approved.

To summarize the fees and expenses, Beatty & Wozniak billed KM $671,241.08 in fees and $105,063.78 in expenses for a total of $776,277.86. KM allocates $93,991.11 in fees and $840.54 costs for the defense of the appeal. The appellate fees and costs are disallowed for remaining fees and costs of $681,445.95.

KM seeks joint defense attorney fees as follows: Case 1603: $152,065.27 fees and $22,491.36 costs; Case 1626: $146,400.60 fees and $21,653.52 costs; and Case 1668: $6,345.05 and $938.47 in costs. Joint defense fees and costs have been adjusted by 12%. The fees and costs are adjusted as follows: Case 1603 - $153,609.83 fees and costs; Case 1626: $147,887.63 fees and costs and Case 1668: $6,409.49 fees and costs. KM is entitled to $307,906.95 joint defense fees and costs.

Holland & Knight was retained in 1997 by KN because of Colley's expertise in government law. The firm also entered an appearance in the *Qui Tam* lawsuit on behalf of KN in case 99-MD-1603. As set forth by Colley's affidavit and reflected in the billing records, extensive hours were spent in studying industry gas measuring practices and procedures and translating them "into understandable form and analysis of implications relative to the False Claim Act." It included historical studies, meetings with engineers and ground personnel in field, attending, meeting and reviewing industry associations such as American Gas Association, Gas Processors Association, American Petroleum Institute and U.S. Department of Interior and Mineral Management Service. Multiple meetings were held with DOJ officials including the Assistant United States Attorney for Colorado. The firm responded to DOJ administrative subpoenas and made multiple FOIA requests for government records. Colley and firm members met with and participated in meetings of the MDL Joint Defense Team and Beatty. Colley produced a "White Paper" to the DOJ defending the gas measurement practices and procedures of KN and the oil and gas industry. The DOJ did not pursue a FCA claim against KM and its affiliates or any of the defendants in the MDL proceedings.

The Special Master has reviewed in detail the billings of Holland & Knight. Upon being retained, it established a "War Room." There were multiple meetings with attorneys billing for the planning meetings during 1997 and 1998. The first issue is whether tasks of responding to the DOJ are related to the defense of the Grynberg *Qui Tam* cases against KM and its affiliates. The DOJ would not have submitted the administrative subpoenas absent the MDL cases brought by Grynberg. His claims against KN involved leases on federal and Indian lands which were under the jurisdiction of the U.S. Department of Interior's Mineral Management Service in Denver, Colorado. The policies and practices of the oil and gas industry were important in establishing KN's gas measuring policies and procedures. The "White Paper" and the documents supporting it were used by the Joint Defense Team as well as individual defendants in the MDL cases. The Special Master finds that the fees and costs of Holland and Knight are recoverable by Kinder Morgan with the following exceptions:

Computer and JFS training of $11,142 as administrative fees and costs.

Congressional oversight hearing, history study of the 105th Congress, history of the Federal Claims Act, history of the Natural Gas Policy Act, research on duplicative lawsuits, duties and authority of the Mineral Management Service, research of the judges and case loads of the U.S. District Court in Colorado and 10th Circuit Court of Appeals, research of FCA cases in all Federal Circuits and contact with Senate Committee concerning Solicitor nomination and review of Kansas class action for a total of 734 hours and fees of $14,153. The hours involved informational tasks that are not reasonably related to the defense of the case and also involve political issues. Mares v. Credit Bureau of Raton, 801 F. 2d 1197, 1204 (10th Cir. 1986); Case v. Unified School Dist. 233, Johnson County, 157 F.3rd 123, 1252 (10 Cir. (1998).

In September and October, 2001, the firm closed the "War Room" and billed for closing, boxing records and conveying appropriate documents to the Beatty firm in the amount of $8,697.25. The hours involve administrative tasks not related to the defense of the case and the transfer of litigation to the Beatty firm.

The travel costs were high because of the intensive investigation of the policy and practices of the oil and gas industry as well as meetings with DOJ counsel. The billings reflect "working" while traveling and will not be adjusted. There are minor costs that cannot be identified as reasonably necessary for the defense of the case: Purchase of encyclopedia and reference material in the amount of $1,198, unidentified travel expenses of $1,621 and $401 in luncheons. The remaining costs reasonably relate to defense of the case.

The total attorney fees and costs is $1,848,613.40. less appellate fees and costs of $94,831.65 for a total of $1,753,781.80.

Kinder Morgan seeks enhancement of the fees by the court for the obstructive and delaying actions by Grynberg. Enhancement should only be awarded in "rare and exceptional circumstances." Grynberg's obstructive actions increased the attorney fees and costs awarded under the loadstar method. Perdue, 130 S.Ct. at 1673.

I find that Kinder Morgan is entitled to attorney fees and expenses of $1,753,781.80.

**U. MARATHON OIL COMPANY 99-MD-1645**

Marathon Oil Company retained the firm of Baker Botts L.L.P. of Houston, Texas with J. Gregory Copeland as lead counsel. The case is 99-MD-1645. The Special Master has reviewed the Motion and Affidavits for Attorney's Fees and Expenses and 386 pages of hourly billings from 1999-2010. Marathon Oil Company did not participate in the Joint Defense Team.

The primary timekeepers are as follows:

| | |
|---|---|
| C. Copeland, Partner: | 1999 - $340 per hour; 2005 - $546.25 per hour; 2007 - $607 per hour; 2009 - $688 per hour |
| T. Gehl: | 2001 - $279 per hour; 2003 - $313 per hour |
| K. Silver: | 2004 - $261 per hour; 2007 - $365 per hour |
| C.W. Cominsky, Paralegal: | 2000 - $80 per hour; 2004 - $128 per hour; 2007 - $200 p/hour |

The lodestar test has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly fees charged by the attorneys, paralegals and staff of Baker Botts are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming. Copeland's fees from 2007 to 2011 exceed the $550 reasonable fees.

Requested fees and expenses:

Marathon Oil Company requests $440,084.36 in attorneys fees and expenses which includes $108,335.00 joint defense fees and costs.

The Special Master must determine whether the hours billed are reasonably expended on defending the litigation. Case v. United School Dist. No.233, 157 F.3d 1243, 1250 (10th Cir. 1998).The time records are inadequate and fail to meet the standards by failing to identifying how the task related to the defense of the litigation.

Gehl's hourly records in 2002 and 2003 start with "review" of multiple documents and pleadings. He prepared pleadings and deposed Grynberg. The multiple reviews of documents were necessary for carrying out his tasks in defending the litigation and are not excessive.

Silver became actively involved with the litigation from 2003 to 2006. She has entries of 10 minutes to 30 minutes that consist of "review e-mails" without identifying how the task related to the defense of the case. The tasks add up to 45 hours for $14,562 in billings. I will disallow $14,562.

The paralegal Cominsky billed over $86,000 or 20% of the fees. 60% of the entries are for "print and review joint defense documents" and "print and review recent correspondence." She maintained a

notebook of the documents. The billings do not generally reflect any review or substantive action by attorneys from the entries by Cominsky. She also performed tasks for legal research, drafted pleadings and filed the pleadings. Although the tasks do not identify each document, Cominsky provided the firm with updated information at a reasonable hourly rate for less than an attorney. The tasks are reasonable and necessary for defense of the litigation. As the Special Master has previously found, it was necessary and reasonable to assign the task of gathering and maintaining the pleadings and correspondence of the 70 separate cases and hundreds of defendants. The general entries by Cominsky were necessary and reasonable.

Copeland, as the senior partner, attended hearings and joint defense conferences. He prepared a motion to stay in 1999, a reply to Relator's response in 2004, and was involved in settlement negotiations with Relator in 2005.

The Relator and Marathon Oil have stipulated that $27,083.89 be disallowed from the joint defense attorney fees and expenses. They also stipulate the amount allocated to appellate fees and expenses was $42,145.18. They stipulate the award should be $356,293.29.

I find in accordance with the stipulation, Marathon Oil Company is entitled to $356,293.29 for attorney fees and expenses.

**V. NORTHERN NATURAL GAS COMPANY 99-MD-1608**

Northern Natural Gas Company LLC (Northern Natural) is one of 10 defendants in a False Claims Act filed in the U.S. District Court for the District of Colorado in June 1997. The case was filed against ten Enron companies which included six pipelines. Transwestern Pipeline Company LLC, Northern Natural Gas Company LLC, and Florida Gas Transmission Company LLC are three of the six pipelines. Charles D. Tetrault of Vinson & Elkins L.L.P. was retained to represent the 10 defendants. This became Case 99-MD-1608 in MDL 99-MD-1293 in the U. S. District Court for the District of Wyoming. Grynberg also filed a False Claims Act against Enron and three companies including Florida Gas Transmission Company in the U.S. District Court for the Eastern District of Louisiana. This became Case 99-MD-1925. Enron took bankruptcy in 2001. Tetrault continued to represent the remaining defendants along with other defendants in the MDL case.

While representing multiple defendants, Tetrault divided hour and billing from common tasks among the multiple defendants. Where the task was specific to Northern Natural, Northern Natural was billed for the task. As I found in the application by Equitable Resources, Inc., Tetrault was also selected as a non-paid member of the five-member Coordinating Counsel Committee of the Joint Defense Team. Northern Natural benefitted by that position, and like the other multiple defendants, was billed a proportional fee for his work on the committee. The Special Master has provided more detailed tasks and benefits in my findings in Equitable Resources Inc.

The primary timekeepers for Northern Natural Gas Company are:

| | |
|---|---|
| Charles Tetrault: | 2002 - $450 per hour; 2003 - $475 per hour. All but $2,000 are billed by Tetrault. |
| Judith Mikusky: | 2006-$220 per hour. |

**Requested fees and expenses**

Northern Natural requests the following fees and expenses:

| | |
|---|---|
| Attorney Fees: | $314,623.50 and Expenses of $2,719.92 |

Included in the fees and expenses it allocates the following:

| | |
|---|---|
| Appellate: | $31,698.75 fees and $366.43 expenses. |
| Liability for fees: | $7,256.50 fees and $50.00 expenses. |

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.* Winn, 130 S.Ct. 1662, 1663 (2011).

The attorney fee of $475 per hour is within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Northern Natural waived submitting fees and expenses incurred between 1998 and 2001 for Case 99-MD-1608. The Special Master has reviewed 106 pages of the Application for Attorney Fees, Declaration by Tetrault, Reply Brief on Attorney Fees, billings records, and other documents. The Special Master has compared the records with other defendants represented by Tetrault. The Special Master finds the billing tasks meet the standard established in Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). As I found in Equitable Resources Inc., the records establish the hours and expenses were necessary and reasonable for the defense of the litigation.

Northern Natural allocates $31,698.75 fees and $366.43 costs for defending the appeal. The fees and cost are disallowed.

**W. Pacific Gas & Electric Company 99-MD-1602**

Pacific Gas and Electric Company (PG&E) retained Craig A. Haynes of Thompson & Knight LLP in February, 2002. It has previously been represented by Charles D. Tetrault of Vinson & Elkins LLP. PG&E seeks the separate fees and expenses in defending the litigation from February 2002 to 2011. In 2004, Haynes also represented other defendants acquired by Devon Energy Corporation or its affiliates 99-MD-1659(Snyder defendants). He divided in half the fees to each client for common tasks. His Motion for Recovery of Fees and Expenses in Case No. 99-MD-1659 indicates fees being divided by one third, but does not identify the defendants.

The primary timekeepers are as follows:

C. Haynes: 2002 - $345 per hour; 2004 - $400 per hour; 2009 - $615 per hour; 2011 - $650 per hour

S. Leahy: 2003: $450 per hour

Ritter, paralegal: $155 per hour to $175 per hour

Request for Separate fees and Expenses:

Separate Fees and expenses: $82,129.00 fees and $1,457.97 expenses.

Joint fees and expenses: $58,682.33

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel. Winn,* 130 S. Ct 1662, 1673 (2011).

Haynes' billings increased from 2002 through 2011. The billings reached $450 until 2009. The hourly billing increased to $615 per hour and in 2011 to $650 per hour. The 2009 – 2011 hourly rates are higher than the presumptive hourly rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado. There were limited billings during that period at the above rates with excessive cost of less than $500. The billing hours prior to 2009 are within the presumptive reasonable hourly rates.

The Special Master has reviewed the billing in Case No. 99-MD-1659 and 1602. I do not find any timekeepers' billings that relate to defending the appeal or to establishing the liability for fees.

An attorney seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1994). The party must prove every dollar and each hour above zero. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). As lead counsel, Haynes was required to check the status of the litigation. He checked the e-mails and pleadings from two to six times a week except when he was actively involved in depositions, hearings or conferences. The Special Master finds the tasks of review are reasonable and necessary.

The joint fees and expenses are reduced by 25% to $37,409.98.

The Special Master finds that Pacific Gas & Electric Company is entitled to the following:

Separate attorney fees and expenses: $83,586.97

Joint fees and expenses: $37,409.98

Total: $120,996.95

**X. PANENERGY CORP. and affiliates a/k/a Spectra Energy Corp. Cases: 99-MD-1605, 99-MD-1610, 99-MD-1627 and 99-MD-1682.**

In 1998, Fulbright & Jaworski LLP represented Duke Energy upon the filing of the *Qui Tam* complaint against PanEnergy Corp. and its entities. Duke Energy purchased PanEnergy in 1997. Duke Energy sold its gas operations to Spectra Energy Corp. in 2007 and Spectra Energy is entitled to the reimbursement of attorney fees and expenses in defense of the *Qui Tam* complaints filed by Relator. The PanEnergy complaint became 99-MD-1610 in 99-MD-1293-NDF. The PanEnergy case consists of the following corporations: PanEnergy Corp., Centana Energy Corporation, PanEnergy Field Services, Inc., PanEnergy Natural Gas Corporation, PanEnergy Services, Inc., Texas Eastern Transmission Corporation, and Westana Gathering Company. Fulbright & Jaworski LLP also jointly represented PanEnergy-affiliated companies who were named in other *Qui Tam* complaints which are: Main Pass Gas Gathering Company (Main Pass) in Case No. 99-MD-1627; Dauphin Island Gathering Partners (Dauphin Island) in Case No. 99-MD-1605; Overland Trail Transmission Co. (Overland Trail) in Case No. 99-MD-1653; and GPM Gas Corporation (GPM) in Case No. 99-MD-1682. Spectra Energy has a separate claim in Case No. 99-MD-1682. The lead counsel was Gerard Pecht, Partner, of Fulbright & Jaworski. PanEnergy participated in the Joint Defense Team and incurred billings for fees and expenses.

Overland Trail settled with Grynberg in Case No. 99-MD-1653 and waived attorneys fees and expenses. PanEnergy has reduced its claim by 9.1% to reflect the Overland Trail settlement.

Fulbright and Jaworski LLP separately retained by the Joint Defense Team to provide research and pleadings as jointly incurred fees. Brown Drew & Massey LLP of Casper, Wyoming, was retained as local counsel. Brown Drew divided the billings between three defendants with some exceptions.

The primary timekeepers providing billing hours for Fulbright & Jaworski are as follows:

Gerald Pecht, Partner: 1998 - $325 per hour; 2005 - $500 per hour

Marsha Gerber, Partner: 2003 - $325 per hour; 2006 - $480 per hour

Jennifer Price, Sr. Counsel: 1998 - $250 per hour; 2001 - $300 per hour

Daniel McClure, Partner: 2004 - $455 per hour; 2006 - $495 per hour
2007 - $590 per hour; 2009 - $660 per hour

Julie Teperow, Sr. Associate

Farmer, Sr. Paralegal: 2007 - $150; Morgan, Sr. Paralegal: 1998-$100 per hour;
2007 - $130 per hour

Fulbright & Jaworski had 24 timekeepers. 60% are by Gerber, Pecht, Price and Paralegal, Morgan.

The primary timekeepers providing billing hours for Brown Drew & Massey, LLP are as follows:

Thomas Reese: 2002 - $200 per hour; 2005 - $225 per hour

Randall Carahan: 2003 - $125 per hour; 2005 - $150 per hour

Legal Assistant:                    $75 per hour

The Special Master finds that the hourly billing for the attorneys and paralegals are within the presumptive reasonable hourly fees for attorneys and paralegals practicing oil and gas law in Colorado and Wyoming except the hours for McClure in 2009.

Requested fees and expenses

Fulbright & Jaworski, LLP

Separately incurred fees: $705,842.41 fees and $28,821.66 expenses after a 9.1% deduction.

It allocates $15,740.61 for defending the appeal.

It allocates $10,180 to prove liability for fees.

Joint defense fees and expenses: $207,057 fees and$30,624.96 expenses.

Brown Drew & Massey LLP: $28,745.82 fees.

The Special Master has reviewed the 87 pages of billing summaries of Fulbright & Jaworski and 108 pages of billings by Brown Drew. PanEnergy is required to exclude hours that are excessive, redundant or otherwise unnecessary. Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

In 1998, Jennifer Price was assigned various tasks. She was the primary contact with other defendants and the joint defense committees. She attended meetings of the MDL Committee, Dispositive Motion Committee, Original Source Committee and meeting of the Coordinating Committee. She summarized the meetings with administrators of Duke as well as with Pecht. She participated in drafting pleadings for the joint defense as well as for PanEnergy. She devoted over 70 hours to establishing the discovery program and assignment of personnel. In 2003, Marsha Gerber became the primary attorney tasked with pleadings, contact with the joint defense team and the appeal.

The following are reduced or disallowed:

Gerard Pecht was the lead counsel. As noted in the other Fulbright & Jaworski cases, Gerard Pecht's tasks were devoted to reviewing documents, e-mails, pleadings and attending conferences by phone or in person. He identified the general nature of the documents or conferences but no active follow-up on the information. He reported on a regular basis to the corporation the status of the case. There are 356 hours of entries that are 1 hour or less with the majority being between .25 to .75 minutes, or 59% of the entries.  As lead counsel, he was the contact with the corporation. There were multiple corporations and four MDL cases which Pecht reported to Duke Energy. The parties stipulate that Pecht's total fees were $231,098.19. The hours will be adjusted by 25% as excessive. The billing will be adjusted to $173,323.64..

Ann Morgan, Senior Paralegal, has over 100 hours of tasks consisting of one hour or less. The tasks consist of entries such as "attend research of recent events", "research list" or "assist" a person.

The tasks do not meet the requirements of Case. It is stipulated Morgan's fees were $43,023.79. Her fees billed are adjusted by 30% to $30,116.65.

Daniel McClure's hourly billings that exceed $550 are reduced by $1,000 for a total fee of $34,174.93.

Relator and Pan Energy stipulate that the reduction is $71,681.69 and the fee request is reduced to $634,160.72.

PanEnergy requests $28,821.66 for separately incurred expenses. The following expenses are disallowed: Lobby-meals and expenses-$210; meals-$644.61; local travel-$130.50; and secretary overtime-$42 for a total $1,027.11. They are expenses normally assumed by the law firm. The parties stipulate the correct expense request is $28,821.66 and that with the deduction the net expense is $27,794.55.

REQUESTED FEES AND EXPENSES FOR BROWN, DREW & MASSEY LLP

Separately incurred fees: $28,745.82 after deduction of 9.1%.

Brown Drew & Massey LLP of Casper, Wyoming was retained as local counsel by Kinder Morgan (Beatty law firm); El Paso Gas (Beatty law firm) and Duke Energy (Fulbright & Jaworski) in 2002. The billing tasks were divided by 1/3 to each defendant until El Paso no longer participated, at which time the billings were divided between Kinder Morgan and two Duke Energy companies. The Special Master has reviewed the 106 page of billings and compared the entries to the PanEnergy billings.

Thomas Reese, attorney, tasks consisted of the following entries: "Review and file pleadings"; "Prepare and participate in conference calls" or "hearings"; "Review material"; and "participate in hearing, assisted counsel with materials." He does not identify the material reviewed, the legal issues discussed in conferences or the tasks performed in hearings before the court. Randall Carahan's tasks were to "receive correspondence and forward for filing." He also calendared events. His position with the firm is not identified. There are no entries that he performed legal tasks. During the period that the firm was retained, there were three personnel in different years paid $75 per hour. There is a reference to "legal assistant" by Carahan. The tasks performed were administrative such as keeping the calendar, maintaining the files, arranging phone calls and communicating with court staff. As in the billings to El Paso Gas, the fees are reduced by 50% as being administrative, not reasonably necessary and for failure to identify tasks performed when reviewing communications and conferences. The Special Master finds that PanEnergy is entitled to $14,372.91 in fees of Brown Drew & Massey.

Joint fees and expenses

The Special Master has reduced the joint fees and expenses allowed by 25%. The adjusted joint fees and expenses are as follows: Joint fees: $155,292.75; Joint expenses: $22,968.72. Total: $178,261.47.

I concur with the parties that with the adjustment for Joint fees and expenses, the Spectra Energy Corp is entitled to $838,849.04 in attorney fees and expenses. It is recommended that Spectra Energy Corp. is entitled to $838,849.04 attorney fees and expenses.

**Y. PANHANDLE EASTERN PIPE LINE COMPANY and ROBIN PIPELINE COMPANY 99-MD-1610, 99-MD-1625**

Panhandle Eastern Pipe Line Company LP f/k/a CMS Panhandle Eastern Pipeline Company; Trunkline Gas Company; Pan Gas Storage Co. n/k/a Pan Gas Storage, LLC (Case 99-MD-1610) and Sea Robin Pipeline Company, LLC (Case 99-MD-1625) retained Beatty & Wozniak, P.C. for the purpose of Application for attorney fees and expenses. The record of the hours identical to the of the Application for Attorney Fees on behalf of Kinder Morgan, Inc., NiSource Corporate Services Company, CMS Texas LLC, CenterPoint Energy, Apache Corporation, Transmontaigne, Inc. and SourceGas LLC with the exception of fees and expenses designated Panhandle/Qui Tam. Panhandle was assessed 13% of the joint fees and expenses billed by Beatty & Wozniak.

The primary time keepers are:

| | |
|---|---|
| Rebecca Noecker: | 2011-$450 per hour |
| Gabrielle Graham, Paralegal: | 2011- $140 per hour |

The Defendants request the following attorney fees and costs:

| | |
|---|---|
| Direct Bills: | $32,191.25 fees and $1,959.70 costs |
| Split Bills: | $110,878.13 fees and $8,330.30 costs |
| Shared Bill: | $70,401.69 fees and $2,694.09 |
| Application for fees: | $13,664.26 fees and $333.56 costs |
| Application: | $6,647.94 fees and $78.49 costs |
| Total fees and costs: | $247,179.41 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel.* Winn, 130 S.Ct. 1662, 1673 (2011). The hourly rates are within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

I have reviewed the billings records of Beatty & Wozniak and compared them to the billings CMS Texas, CenterPoint Energy and Apache Corporation. The records set forth in detail the task performed and necessity of the task to the defense of the case. The expenses are reasonable and relate to the defense of the case.

Relator and the defendants have stipulated that $40,776.68 of the fees and expenses are allocated as appellate fees and expenses which I disallow.

Defendants in their Application for Fees request the Court enhance the fee award for the obstructive discovery actions by Grynberg that affected the defense of case. Special Master Pringle sanctioned Grynberg during the discovery stage therefore the sanction requests were appropriately resolved. As stated in Perdue at1673, the complexity of the case is included in the increased billable hours considered by the lodestar method. Enhancement should only be awarded in "rare" and "exceptional" circumstances. The request for enhancement is denied.

I find that Panhandle defendants and Sea Robin Pipeline Company are entitled to $206,402.73 in fees and expenses.

**Z. PUBLIC SERVICE COMPANY OF COLORADO 99-MD-1612**

Grynberg filed in the United States District Court for the District of Columbia a False Claims Act against 66 defendants including Public Service Company of Colorado. (PSCO) The case was dismissed for lack of jurisdiction. Grynberg his claims against PSCO in the United States District Court for the District of Colorado, Case 97-D-1425. PSCO retained the law firm of Hogan & Hartson L.L.P. which had offices in Denver, Colorado. Kevin D. Evans was lead counsel. The case was transferred to MDL 99-MD-1293-NDF, United States District Court for the District of Wyoming and became case 99-MD-1612. Evans In April, 2003, Evans left Hogan & Hartson and established his practice at Steese & Evans, P.C. He continued to represent PSCO in case 99-MD-1612.

The Special Master has reviewed the Amended Application for Fees, Reply for its Application for Fees, Affidavit of Kevin Evans , Affidavit of Larry M. Cowger and a total of 623 pages of billing records.

The primary timekeeper hourly rates are:

| | |
|---|---|
| P. Walsh: | 2000 - $160 per hour; 2004 - $305 per hour |
| K. Evans: | 2000 - $300 per hour; 2004 - $385 per hour |

Request for fees and expenses:

PSCO separate request: $389,968.86 fees and $8,479.84 costs for a total of $398,448.70.

| | |
|---|---|
| Appellate allocation: | $60,078.25 fees and $630.24 expenses |
| Joint fees and expenses: | $239,429.11 |

The lodestar test has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1673 (2011).

The hourly fees of the attorneys in the case are within the prevailing market rate for attorneys practicing in the area of oil and gas in Colorado and Wyoming.

The billing records meet the requirements of identifying the timekeeper, the specific task and how it was applicable to the case. Case v. United School District. No. 233, 157 F. 3d 1243, 1253 (10th Cir. 1998). Unlike other MDL defendants, the records do not include time records for paralegals or other

staff which assisted in the case. The expenses requested are limited expenses and travel costs, and have not included other expenses to which the firm may be entitled. PSCO does request attorneys fees for the Squire Sanders & Dempsey L.L.P. law firm of $1,667.50. Mr. Albright was the Assistant General Counsel at PSCO who reviewed the work of the private counsel. He left PSCO and continued to review the case for two months until the new in-house counsel became familiar with the case. The claim with be disallowed as administrative costs rather than defense of the litigation.

After Evans established his own firm, Walsh became the only timekeeper for Hogan & Hartson. His tasks in 2003 were for 33.4 hours of "Review correspondence and pleadings." He did attend a conference and communicated with Evans. The review of the pleadings is necessary. The hours are not excessive and are actually minimal compared to other defendants.

Public Service has allocated $60,708.49 for attorney fees and costs in defending the appeal. The request is disallowed.

The Special Master has adjusted the joint fees and expenses by 25%. The joint fee and expense is reduced to $179,571.83.

The Special Master finds the Public Service Company of Colorado is entitled to following reasonable attorney fees and costs of $498,684.86.

**AA. QUESTAR PIPELINE COMPANY 99-MDL-1604**

Questar Pipeline Company and its affiliate companies retained Donald I. Schultz of Holland & Hart to to represent it in Case No. 99-MD-1604. Questar retained two experts to assist in defending against the technical claims by Grynberg. Don Stinson, P.E. attended depositions of Grynberg experts and assisted counsel in preparing and taking depositions. Zeebco & Company provided tests of Questar pipelines that were at issue. Grynberg has not objected to the billing of experts.

The primary timekeepers are:

| | |
|---|---|
| Don Schultz, Partner: | 1998 - $210 per hour; 2007 - $405 per hour |
| Mike Smith, Partner: | 2002 - $210 per hour; 2005 - $240 per hour |
| Betsy Phelan, Partner: | 2006 - $375 per hour |
| Dawne Davis, Paralegal: | 1999 - $100 per hour; 2007 - $145 per hour |
| Robert Salcido, Partner: | 2004 - $450 per hour; 2007 - $525 per hour |

Request for Attorneys fees and expenses:

Questar requests the following fees and expenses:

Akin Gump, Separate attorneys fees and expenses: $15,523.50 fees and $705.50 expenses.

Holland & Hart LLP, Separate attorneys fees and expenses: $534,784.40 fees and $22,269.17 expenses.

| | |
|---|---|
| Schultz & Belcher, LLP, | $9,375.00 |
| Schultz & Schultz, LLP, | $22,244.00 |
| Consultant Don Stinson, P.E.: | $87,417.41 |
| Consultant Zeebco & Company: | $26,227.41 |
| Total Separate Fees and Expenses: | $581,926.90 fees and $112,644.41 expenses |

It allocates the following fees and costs of the request:

| | |
|---|---|
| Appeal fees and expenses: | $120,475.53 fees and $2,428.34 expenses |
| Liability for fees: | $38,662.84 fees and $635.35 |
| Proof of fees: | $22,244 |
| Total separate fees and expenses: | $718,545.98 |
| Joint fees and expenses: | $207,741.44 fees and $30,727.20 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel.* Winn, 130 S.Ct. 1662,1673 (2011).

The attorney fees of Schultz, Holland & Hart LLP and Akin Gump are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

The Special Master has reviewed the affidavits of Donald I. Schultz, 1357 billing pages, and other documents submitted by Questar. The billing records are detailed as to the tasks performed by the timekeepers and are relevant to the defense of the litigation.

The Special Master disallows the fees and expenses allocated for defending the appeal. The tasks and billings of Holland & Hart LLP have been allocated to defending the appeal in the amount of $120,475.53, attorney fees and $2,428.34 in expenses for a total of $122,903.87. The tasks and billings of Schultz & Belcher, LLP are related to defending the appeal in the amount of $9,375,000. The Special Master finds that the total reasonable fees are $451,856.20.

Questar has submitted the expenses paid to Holland & Hart LLP. The expenses from pages 4 through 9 do not identify the reason for the expense. An example is as follows: 3/5/2003 - Ground travel, Lodging and Meals. Rather than denying the expenses, The Special Master has compared the expenses to the hourly tasks. The expenses relate to tasks performed. $2,428.34 of expenses are disallowed, reducing the expenses to $19,841.17. The total reasonable expenses are $134,191.07.

The joint fees and expenses are reduced by 25% to $178,851.48.

The Special Master finds that Questar Pipeline Company is entitled to $764,898.75 attorney fees and expenses.

**BB. ROCKY MOUNTAIN NATURAL GAS COMPANY/ NORTHERN GAS CO. n/k/a SOURCE GAS LLC. 99-MD-1603**

Rocky Mountain Natural Gas Company n/k/a Source Gas LLC retained Beatty & Wozniak, PC in 2007 in Case No. 99-MD-1603. Beatty & Wozniak represented Source in the appeal to the 10th Circuit, motion for attorney fees and costs and application for fees. The firm represented multiple defendants in MDL Docket No. 1293. It divided the fees and costs among the multiple defendants for common tasks performed by the firm. It billed Source Gas LLC for tasks performed for it.

Source Gas requests the following fees and costs:

| | |
|---|---|
| Split Bills: | $42,532.95 fees and $658.47 costs |
| Direct Bills: | $20,683 fees and zero costs |
| MDL/Motion for fees: | $10,034.01 fees and zero costs |
| Application for fees: | $7,709.94 fees and $90.79 costs. |
| Total: | $82,709.16 |

The Special Master has reviewed the 85 pages of billings, affidavits and proposed judgment. I compared the billing during the time period with a defendant that was dividing fees and costs, and they are the same.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenny A. *ex rel* Winn, 130 S. Ct. 1662, 1673 (2011).

Noecker billed at $395 per hour in 2007 and $450 per hour in 2011. The paralegal assisting Attorney Noecker was G. Graham at $140.00 per hour. The Special Master finds that the hourly rates are within the presumptive hourly rates for attorneys practicing oil and gas law in Wyoming and Colorado.

The hourly billings clearly set for the task performed and the necessity of the task to defend the lawsuit. The costs claimed are minimal and reasonable.

Relator and SourceGas Defendants stipulate that SourceGas allocates $60,508.64 of the fees and expenses to appellate fees and costs. $60,508.64 is disallowed.

I recommend that Source Gas LLC is entitled to $22,200.52 in attorney fees and costs.

**CC. SHELL OIL DEFENDANTS – 99-MD-1629**

Shell Oil Company, Shell Land & Energy Company, Shell Offshore, Inc., Shell Pipeline Corporation and Shell Western E&P, Inc. (Shell) retained Daniel McClure of Fulbright & Jaworski L.L.P. in September 29, 1999 in a *Qui Tam* action filed in the United States District Court in Louisiana. (99-MD-1629) Shell had a long-standing relationship with McClure and the law firm.

In January 1999, Richard Carell, of Counsel, for Fulbright & Jaworski L.L.P. requested Daniel McClure to represent GPM Gas Corporation (99-MD-1682) in a *Qui Tam* case filed in the United States District Court for the Southern District of Texas. McClure represented both defendants, with different attorneys, paralegals and staff assigned each case. In March, 2004, GPM merged with Spectra Energy, which was an affiliate, with PanEnergy litigation. Gerard Pecht of Fulbright & Jaworski represented the ten PanEnergy companies and affiliates (99-MD-1682, 1605, 1610 and 1627) and represented GPM after March 2002.

The Special Master has compared the billings of McClure and the timekeepers in each case and finds no duplication of billings. McClure maintained separate billing records for each case. Where he attended conferences, joint defense meetings, court hearings and depositions, they were billed to only one client.

The Special Master has reviewed the 69 pages of billings for Shell, and applying the lodestar evaluation find as follows:

There were 22 timekeepers. The five timekeepers that billed 80% of the fees were as follows:

| | |
|---|---|
| Daniel McClure, Partner: | 1999 - $355 per hour and 2008 - 10, $620 per hour |
| Laura Morton, Partner: | 2004 - $460 per hour |
| Julie Teperow, Partner: | 2004 - $245 per hour |
| Nancy Pell, Partner: | 2004 - $400 per hour |
| Erin Farmer, Sr. Paralegal: | 1999 - $95 and 2008 - $110 per hour |

The hourly billings of McClure rose to $590 per hour in 2007 and increased to $620 per hour 2008 which exceeds the $550 presumptive rate. The Special Master finds the other hourly fees are within the reasonable market rate for attorneys and paralegals practicing in the oil and gas industry within the Colorado/Wyoming market.

**Requested fees and expenses**

Separately Incurred Fees and Costs: $505,562.02 fees; $18,334.51 expenses

Shell allocates $99,366.93 fees and costs to the appeal.

Jointly Incurred fees and Expenses: $209,951.02 fees, $31,053.11 expenses

The records must meet the requirements set forth in Hensley v. Eckert, 461 U.S. 424, 434 (1983) and Case v. Unified School Dist. No. 233, 157 F. 3d 1243, 1250 (10th Cir. 1998) that the hours and fees are reasonable and necessary for the litigation.

The Special Master has reviewed the 69 pages of billing records. McClure divides the billings between five clients. His task as the lead attorney was to review e-mails, phone calls, documents prepared by others, attend conferences by phone or personally, and communicate the status of the case to his several clients. The entries meet the requirements of Flitton v. Primary Residential Mortgage Com., 614 F.3d 1173, 1178 (10th Cir. 2010).

The substantive legal tasks were performed by Teperow, who prepared for and attended depositions, prepared motions and participated in joint defense team conferences. Farmer, as the paralegal, provided McClure with documents, reviewed e-mails and performed administrative tasks. Morton and Pell provided the preparation of appellate tasks for Shell. Morton and Pell were retained by the Joint Defense Team to file the response to the Gynsberg appeal. They prepared the response for Shell during the period of time they were also billing for the joint defense team.

The Special Master disallows the following fees:

Tasks performed by Anderson, Carrell, Clerk, Greenfield, and Valenzuela in the amount of $2,683 were administrative and should be absorbed in the law firm overhead.

Shell's allocated of $99,366.93 for fees and costs in defending the appeal.

The Special Master finds the following fees and expenses were reasonable and necessary for the defense of Shell:

Separately incurred attorney fees and expenses: $423,724.76.

Jointly incurred fees and expenses are reduced by 25% to $180,753.09.

Relator and Shell Oil Company stipulate and I recommend that Shell is entitled to $602,599.69 attorney fees and expenses.

**DD. SNYDER OIL CORPORATION k/n/a/ DEVON ENERGY CORPORATION 99-MD-1659**

Snyder Oil Corporation, Snyder Gas Marketing, and SOCO Offshore, Inc (Snyder) retained Craig A. Haynes of Thompson & Knight LLP in 2004. Mitchell Energy and Seagull groups also retained Haynes. Devon Energy Corporation (Devon) has now acquired the Snyder group. The Snyder case is 99-MD-1659. Thompson & Knight LLP divided the fee in half with Pacific Gas & Electric Company, where the task was common between Snyder and PG&E. It then divided the Snyder fee equally between the three defendant groups. Devon has not submitted a request for fees for defending the appeal by Grynberg or to prove the liability for fees. The Special Master has reviewed the billing records and there are no hourly billings identified for the appeal or liability for fees.

The primary timekeepers billing are as follows:

| | |
|---|---|
| C. Hayes: | 2004 - $400 per hour; 2007 - $510 per hour; |
| | 2007 - $615 per hour; 2011 - $650 per hour |
| Akens: | Associate: 2007 - $225 per hour |
| Ritter: Paralegal: | 2004 - $155 per hour |

**Requested Fees and Expenses:**

Devon requests the following separate attorney fees and expenses:

| | |
|---|---|
| Separate Fees: | $13,117.91 |
| Joint defense attorney fees and expenses: | $236,828.51 |

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A., *ex rel.* Winn, 130 S. Ct 1662, 1673 (2013).

The billings of Haynes increased from 2004 to 2011. Hourly billings commenced at $400 in 2004 and increased to $650 per hour in 2011. The 2009 - 2011 hourly rates are higher than the presumptive hourly rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado, but the total hours that exceed the $550 per hour is 3.5 hours and is minimal. And will be reduced to $550 per hour.

The Special Master has reviewed 156 pages of billings in Case No. 99-MD-1659.

An attorney seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir 1998). The party must prove every dollar and each hour above zero. Cadena v. Pacesetter Corp., 22 F.3d 20, 1215 (10th Cir. 2000). Many of the Snyder records do not meet the requirements. Unlike other defendants the review of records occurs only 1 to 4 times per month. The records have notations such as "review e-mails or documents" without identifying the specific task. As lead counsel, Haynes would be expected to periodically review the status of the case, and the entries are minimal. Anchondo v. Anderson, Crensshaw & Associates, 616 F.3d 1098, 1106 (10th Cir. 2010).

The joint defense fees and expenses are reduced by 25% to $177,621.38.

Relator and Snyder a/k/a Devon Energy stipulate that Devon had $500 in appellate fees which is disallowed.

The Relator and Snyder stipulate the award should be changed to $190,238.39. I find that Devon Energy Corporation is entitled to $190,238.39 in attorney fees and expenses.

**EE. SOUTHERN STAR CENTRAL GAS PIPELINE, INC. CASE 99-MD-1614**

Southern Star Central Gas Pipeline, Inc., (Southern Star) was previously known as Williams Natural Gas Co. and represented by other counsel. Matthew J. Rita of Holme Roberts & Owen LLP (HRO) was retained to represent Southern Star in Case No. 99-MD-1614 in November, 2003. In 2009, Rita became a partner in Ford & Harrison LLP and continued to represent Southern Star until 2011. The hourly fee of Rita commenced at $275 per hour in 2003 and increased to $425 in 2011. Southern Star does not seek any fees or expenses for defending the appeal of Grynberg or proving the liability of Grynberg. It does not claim any joint defense attorney fees and expenses. As stated in the affidavit, Southern Star decided to keep its fees and expenses to a minimum. The hourly billings consist of reviewing pleadings filed by the Joint Defense Team and others to as they affected Southern Star. Williams

The primary timekeeper was Matthew J. Rita of Holme Roberts & Owen LLP. His fees were: 2003 - $275 per hour; 2011 - $425 per hour.

Requested attorney fees and expenses: $155,726.53 fees and $21.78 in expenses. Southern Star and Relator have stipulated that $36,549.75 of the requested attorneys fees are allocated to the appeal.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v.Kenney A. *ex rel* Winn, 130 S.Ct. 1662, 1673 (2011).

The hourly rate of Rita is within the presumptive hourly rates for attorneys in the practice of oil and gas law in Wyoming and Colorado.

The Special Master has reviewed the 294 pages of billings, the Motion for Attorney Fees and Affidavit. The billing records indicate that Matthew Rita's task was to review the pleadings, research and communications of the Joint Defense Team and other defendants. He reported the status to the in-house counsel. He participated in a hearing by phone and attended the 10th Circuit hearing as an observer. Ninety percent of the billings are far less than a minute, indicating there was not an in-depth review.

In Fox v. Vice, 131 S. Ct. 2205, 2216 (2011), the court established the "but-for" test. But-for the frivolous claim, the attorney fees and costs would not have occurred. The Court stated " [T}he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters."

A party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually needed for the case. Case v. United School Dist. No. 233, 157 F.3d 952, 956 (10th Cir. 1998). As in Case and Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206 (10th Cir. (1986), where an attorney or consultant is helpful to the party but does not actually assist in the defense of the case, attorneys fees and costs may be reduced or not awarded. As the billing records reflect, Mr. Rita produced no pleading or documents or copied any of the documents he was reviewing. He did participate by phone at a court hearing and talk to joint defense counsel. He did not produce any documents for the appeal, but attended as an observer at the 10th Circuit hearing.

The appellate fees of $36,549.75 are disallowed leaving a balance of $119,176.78 in requested fees. The parties requested that review my opinion based upon the stipulation. After reviewing the affidavit and billings and the standard of Fox v. Vice "but-for" test, I am of the opinion that Southern Star fees would not have occurred absent the claims of the Relator. It was necessary that Southern Star have counsel review the defenses raised by the Joint Defense Team to insure that Southern Star's defenses were considered and protected. Rita did not have excessive entries monthly. He generally reviewed the case weekly and more where there were increased filings or when there were hearings. He reported to his client during stages of the litigation in short conferences. The "bare bones" defense reduced the attorney fee claims against the Relator. The reduction of 50% was in error in light of Fox v Vice.

The Special Master finds that Southern Star Central Gas Pipeline, Inc. is entitled to $119,198.56 attorney fees and costs.

**FF. SOUTHWESTERN ENERGY COMPANY 99-MD-1670**

Southwestern Energy Company retained L. Poe Leggette of the firm of Fulbright and Jaworski, LLP in November, 1998 after Grynberg named the company in a False Claim Act. Nancy Pell was the primary attorney handling the case. Fulbright and Jaworski filed pleadings including a Motion to Transfer the case to 99 MDL 1293. The MDL panel transferred the case, and it became Case No. 99-MD-1670. Leggette represented Southwestern until December 31, 2002. On December 27, 2002, Southwestern retained Lee Thompson of the law firm of Thompson, Stout & Goering LLC of Wichita, Kansas. On July 1, 2004, Lee Thompson established his own law firm and continued to represent Southwestern. Thompson retained the Everett Law Firm for an expert opinion in February, 2004.

The primary timekeepers are:

Fulbright & Jaworski:

| | |
|---|---|
| Leggette, Partner: | 1998 - $320 per hour; 2002- $410 per hour |
| Pell, Partner: | 1998 - $225 per hour; 2002 - $295 per hour |
| L. Morton, Partner: | 2003 - $245 per hour |
| Thompson: | 2002 - $200 per hour; 2011 - $300 per hour |

Request for attorneys fees and expenses:

| | |
|---|---|
| Fulbright & Jaworski LLP: | $144,268.31 |
| Thompson, Stout & Goering, Inc.: | $95,347.97 |
| Thompson Law Firm, LLC: | $35,346.00 |
| Everett Law Firm: | $1,690.00 |
| Joint Defense: | $232,594.36 |

Total: $ 509,246.64

The Special Master has reviewed 332 pages of billings of all counsel representing Southwestern.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel* Winn, 130 S. Ct. 1662, 1673 (2011) The hourly fees were within the presumptive hourly rates for attorneys in the practice of oil and gas in Wyoming and Colorado.

The Special Master has reviewed in detail the billings of all counsel. All counsel identified the task and its necessity to the defense of the case. Where the records reflect a review of documents, the hours are not excessive and are necessary because of the volume of pleadings and documents filed by the plaintiff and multiple defendants. The costs listed by the firms are minimal and necessary. Thompson received the file from Fulbright & Jaworski in December of 2002. Leggette, Pell and Morton of Fulbright & Jaworski were retained by the Joint Defense Team to research the original source doctrine and a joint defense. The tasks by Thompson for the first three months reflect his reviewing the prior documents received from Fulbright & Jaworski and educating himself regarding the defense of the case for Southwestern. Sixty-five hours and $12,307 are disallowed for the time necessary to become familiar with the pleadings, documents and the MDL case.

The Special Master has reduced the joint defense fees by 25% to $174,445.77.

Relator and Southwestern Energy Company stipulate that Southwestern appellate fees were $500.00 which is disallowed.

Relator and Southwestern stipulate, and I find the Southwestern Energy Company award is $435,602.89.

**GG. TRANSMONTAIGNE, INC. Case No. 99-MD-1669**

TransMontaigne retained the law firm of Clanahan Tanner Downing & Knowlton in 1999. Michael Wozniak was a shareholder in the firm. In March, 2002, Dorsey & Whitney LLP commenced representing TransMontaigne. Wozniak became a partner in that firm. In February, 2005, Beatty & Wozniak, P.C commenced representing TransMontaigne. It represented the company in Rule 11 matters, the 10th Circuit appeal by Grynberg, and attorney fees and costs from Grynberg. The records reflect that Clanahan Tanner represented the company in the Kansas class action litigation known as the Quinque plaintiffs as well as Wyoming case 99-MD-1669. The Clanahan tasks reflect professional services in both cases.

Beatty & Wozniak also represented or provided legal services for multiple defendants. The firm billed multiple defendants as follows: (1) Split Bills: common tasks were divided equally between the clients and given a specific account number; (2) Shared Bills: When El Paso elected to perform tasks in-house, the billings were split among the remaining defendants and given another account number; (3) Direct Bills: Tasks incurred specifically for a client were billed to that client and given another account number; (4) Rule 11: A Rule 11 claim was given another account number; and (5) Motion for Fees and Costs was given another account number.

The primary timekeepers for TransMontaigne are:

Clanahan Tanner Downing & Knowlton:

| | |
|---|---|
| D. Graham, Shareholder: | 2001 - $200 per hour |

Dorsey & Whitney LLP:

| | |
|---|---|
| S. Aldridge: | 2001 - $195 per hour; 2005 - $270 per hour |
| N. Smith: | 2002 - $315 per hour |
| M. Wozniak: | 2004 - $315 per hour |

Beatty & Wozniak:

| | |
|---|---|
| R. Noecker: | $450 per hour |
| G. Graham, Paralegal: | $140 per hour |

Request for attorneys fees and expenses:

| | |
|---|---|
| Shared Bills: | $45,779.50 fees and $1,003.26 costs |
| Direct Bills - *Qui Tam:* | $12,941.50 fees and $864.50 costs |
| Rule 11: | $449.70 fees |
| Motion for Fees and Costs: | $11,119.79 fees and $326.14 costs. |
| Dorsey & Whitney: | $53,815.36 fees and costs |
| Clanahan & Tanner: | $27,805.33 fees and costs |
| Joint Defense: | $114,476.36 fees and $16,931.74 costs |
| Application for Fees: | $7,077.94 fees and $81.19 costs |
| The total requested is | $292,672.51 |

Allocated to appellate fees and expenses: $41,199.18

The Special Master has reviewed the Application for Fees and Costs, affidavits of counsel and 414 pages of billing of records from the three law firms.

The lodestar evaluation has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A. *ex rel* Winn, 130 S. Ct. 1662, 1673 (2011).

The Special Master finds that the hourly attorney fees are within the presumptive hourly rate of attorneys practicing in the area of oil and gas law in Wyoming and Colorado.

Clanahan Tanner's hourly bills specifically identify the billings for the Quinque class action case in Kansas. There are 21.9 hours for $19,866 specifically designated as Quinque billings. $1,736 is designated as "Our share of Professional Services" without hourly records. Another billing designated for Grynberg indicates "Do not pay, information only" $1,594. Grynberg was not the Relator in the Kansas case and Judge Downes remanded it back to the Kansas court. Any attorneys fees for defense of that case must be addressed by the Kansas court. The Special Master disallows $27,805.33 in fees and costs for services unrelated to Case No. 99-MD-1669.

Aldridge of Dorsey & Whitney billed 153 hours for $37,891 of tasks that were "review only" without any following action. Aldridge does not report the review to any person or how it applies to defense of the case. As the supervising attorney, she would be required to review the status of the case and the legal work performed over the three-year period. N. Smith in January, 2002, reviewed pleadings, attended the deposition of Grynberg and reported to the company, but otherwise, she did not actively participate in the litigation. Wozniak's billings set forth the tasks related to the case.

The Special Master must determine whether attorney hours are reasonably expended on the defending the litigation. The party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case and work product actually necessary to the defense of the case. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The law requires the attorney exclude hours that are excessive, redundant or otherwise unnecessary. Carter v. Sedgwick County. Kan., 36 F.3d 952 956 (10th Cir. 1994). When the case was referred to Beatty & Wozniak in 2005, there was one entry of a meeting with Aldridge for less than an hour. The Special Master reduced the billings of Aldridge by 50% as not necessary or relevant to the case. This reduces the award of fees and costs for the legal services of Dorsey & Whitney to $34,869.86.

The Special Master has reviewed the billings of Beatty & Wozniak. The records set forth in detail the task performed and the necessity of the task to the defense of the case. The expenses are reasonable and necessary to the defense of the case with the following exception. Beatty & Wozniak defended eleven defendants-parties on the appeal including TransMontaigne, Inc. The Relator and Transmontaigne agree that the amount allocated for appellate fees and expenses is $41,199.18.The appeal fees and costs are disallowed.

The defendant is entitled to a reasonable compensation for the fee application. Mares v. Credit Bureau of Raton, 801 F. 2d 1197, 1206 (1986). The Special Master finds the request for establishing the fees and costs to be reasonable in the amount $7,159.13.

The defendant also seeks joint defense fees and expenses in the amount of $131,408.10. The Special Master has reduced the joint fees and expenses by 12% ($15,768.97). The request for joint defense fees and expenses are reduced to $115,639.12.

The total fees and expenses disallowed is $103,714.98.

The Special Master finds TransMontaigne, Inc. is entitled to attorney fees and expenses in the amount of $188,957.33.

**HH. TRANSWESTERN PIPELINE COMPANY, LLC (99-MD-1608)**

Transwestern Pipeline Company, LLC was a defendant in the False Claims Act filed by Grynberg in the United States District Court of the District of Columbia in 1995. Transwestern retained Charles D. Tetrault of Vinson & Elkins L.L.P. The case was dismissed in 1997. Grynberg then refiled a FCA claim against 10 defendants including Transwestern in the U.S. District Court for the District of Colorado. (Enron case). The case became 99-MD-1608 in the MDL case. Grynberg also filed another FCA claim in the U.S. District Court for the Eastern District of Louisiana against other Enron defendants. This case became 99-MD-1625. Tetrault represented all of the defendants in the Colorado and Louisiana litigation until the Enron bankruptcy in December, 2001. Tetrault continued to represent the defendants in case 1608 and the three remaining defendants in case 1625 in the MDL case.

While representing multiple defendants, Tetrault divided hours and billings from common tasks among the multiple defendants. Where the task was specific to Transwestern, it was billed for the task. As noted in the application by Equitable Resources, Inc, Tetrault was an unpaid member of a five-member Coordinating Counsel Committee of the Joint Defense Team. Transwestern benefitted by that position, and like the other multiple defendants, was billed a proportional fee. The Special Master has additional findings as to Tetrault's tasks in Equitable Resources Inc.

The primary timekeepers for Transwestern Pipeline Company are as follows:

| | |
|---|---|
| Charles Tetrault: | 2001 - $450 per hour; 2003 – 2011 - $245 per hour |
| Daniel Petalas: | 2002 - $285 per hour; 2003 - $305 per hour |
| Helen Hight: | 2003 - $285 per hour; 2004 - $305 per hour |
| Katherine Wiebler: | 2002 - $140 per hour; 2008 - $215 per hour |

Requested fees and expenses

Transwestern requests the following fees and expenses:

| | |
|---|---|
| Separate attorney fees: | $932,606.50 and expenses $13,612.63 |
| Joint defense: | $189,718.50 fees and $31,161.71 for expenses |
| Total: | $1,127,325.00 in fees and $44,774.34 for expenses |

Within the separate fees and expenses, Transwestern allocates the following:

| | |
|---|---|
| Appellate: | $125,955.50 attorney fees and $667.97 expenses |
| Liability for fees: | $53,245 attorney fees and $640.99 expenses |

The lodestar test has been used to determine the presumptive reasonable fees. Perdue v. Kenney A. *ex rel.* Winn, 130 S. Ct. 1662, 1663 (2011).

The attorney fees are within the presumptive prevailing market rate for attorneys practicing in the area of oil and gas in Wyoming and Colorado.

Transwestern waived submitting fees and expenses incurred between 1998 through 2001 for Case 99-MD-1608. The Special Master has reviewed 146 pages of pleading and billing records. The Special Master has compared the records with other defendants represented by Tetrault. The Special Master finds the billing records meet the requirements pursuant to Case v. United School Dist. No. 233, 157 F.3d 123, 1250 (10th Cir. 2011). The records established that hours and expenses were necessary and reasonable for the defense of the litigation.

Transwestern allocates $125,995.50 in fees and $667.97 in costs for the defense of the appeal. The fees and costs are disallowed.

The Special Master finds that Transwestern Pipeline Company is entitled to separately incurred attorneys fees of $806,651.50 and $12,944.64 expenses for a total of $819,595.64.

Transwestern Pipeline Company requests reimbursement of joint defense fees and expenses. The Special Master has determined that the joint fees and costs should be reduced by 25%. The Special Master finds that Transwestern Pipeline Company is entitled to joint defense fees and expenses of $165,660.15.

The Special Master finds that Transwestern Pipeline Company LLC is entitled to $985,255.79 in fees and expenses.

**II. VENICE ENERGY SERVICES COMPANY 99-MD-1631 –NDF**

John B. Hall of Locke Lord LLP was retained by Venice Energy Services Company (VESCO) in September, 2006. VESCO previously had been represented by Jerry Rothrock at Akin & Gump Strauss Hauer & Feld, LLP (Akin & Gump). Akin & Gump represented both VESCO and Dynergy, Inc. in case 99-MD-1631-NDF until December, 2006. The court order substituting John B. Hall as counsel for VESCO was entered in January, 2007. U.S. District Judge Downes in October, 2006, granted summary judgment for all of the defendants in 99-MD-1293-NDF. Hall's hourly fees were incurred during the period of the appeal and Judge Downes July 22, 2011, Order Granting Motion for Fees and Expenses.

The only timekeeper is John Hall who commenced billing in 2006 at $414 per hour and in 2009, at $549 per hour.

REQUESTED FEES AND EXPENSES

VESCO requests attorney fees and expenses as follows:

Defense of Appeal: Fees: $52,650 Expenses: $153.49

| | |
|---|---|
| Liability for fees: | Fees: $24,200 Expenses: $140.15 |
| Proof of fees: | Fees: $2,053.00 |
| Other: | Fees: $13,100.92 Expenses: $176.15 |
| Total: | Fees: $92,003.92 Expenses: $469.79 |

The Special Master has reviewed the affidavit, Amended Application, Reply Brief and 128 pages of billings.

The lodestar has been used to determine the presumptive reasonable fees and expenses. Perdue v. Kenney A, *ex rel.* Winn., 130 S.Ct. 1662, 1673 (2011).

The Special Master finds that the hourly rates up to 2010 ($514) are within the prevailing market rate for attorneys' practicing in the area of oil and gas in Colorado and Wyoming.

The Special Master must determine whether attorney hours are reasonably expended on defending the litigation. Case v. United School Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). The party seeking fees and expenses must by the billing records identify the specific task, the applicability to the case, and work product actually necessary to the defense of the case. *Id.* at 1252. The law requires that attorneys exclude hours that are excessive, redundant or otherwise unnecessary. Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

The hourly billings in 2006 by Hall are devoted to becoming educated on the case, reviewing documents, cases, conferences with prior counsel and pleadings to substitute counsel. Although not defined by the billings, I assume the $13,100.92 in "Other" fees and expenses relate to the transition in 2006. The fees were created by VESCO changing counsel and were not necessary for the defense of the claims by Grynberg. The fees and expenses are disallowed.

VESCO allocates $52,803.49 for defense of the appeal which is disallowed.

Hall commences his billing tasks with "Receipt and consideration of...." or are within the task. The billings do not reflect any original work product, research or pleadings. In 2007, he is in conference with J. Rothrock, prior lead counsel for Dynergy Inc. and VESCO concerning settlement documents and pleading filed by "co-defendants". In 2008 and 2009, he is in receipt and considering pleadings filed by "co-defendant", other defendants in the MDL case, and pleadings filed by the defense group. An example of Hall's involvement in the appeal is as follows: 9/11/08 "Receipt and consideration of defense liaison counsel's outline of argument for Tenth Circuit and list of possible questions which may be asked by judges; receipt and consideration of recent opinion of Tenth Circuit regarding public disclosure bar; participate in telephone conference with defense counsel regarding upcoming appellate argument: 3 hours." He did not attend any court hearings or any conferences. He had two brief contacts with Mr. Jatko, attorney for the Relator. He did not identify the tasks for fees on fees or proof of fees.

John Hall was the sole timekeeper. Other than "Receipt and consideration" of legal work of others and communicating with various attorneys, he produced no substantive legal tasks. The application for fees and affidavit do not explain why Akin Gump withdrew as attorneys and VESCO retained.

The Special Master cannot find any research or pleadings by Hall establishing liability for attorneys fees. He received and considered pleadings by other defendants and the co-defendant. The Special Master has reviewed the billings and cannot find any tasks involving the issue of liability of fees or proof of fees. He did have an informative brief telephone communication concerning attorneys fees with Rothrock.

Mr. Hall's "Receipt and consideration" of multiple documents and pleadings without any research, pleadings or legal services other than reporting the status to Venice were not necessary, nor is there any evidence it produced any legal work product in defense of the case. The 10th Circuit in Case at 1252 held that where a timekeeper's records do not "disclose any 'assistance, expert or otherwise, which was actually necessary to plaintiffs' case'" and the entries do not show any "generated original work product" the court can disallow all or a part of the claimed fees.

The Special Master finds that the claim for fees and expenses is disallowed as being unnecessary for defending the litigation and for seeking fees.

**JJ. WILLIAMS COMPANIES, INC. 99-MD-1614, 99-MD-1667**

The Williams Companies, Inc. (99-MD-1614) and the affiliate, Barrett Resources (99-MD-1667) relied upon the Joint Defense Team for the defense of the litigation. It seeks only reimbursement for the fees and expenses paid for the jointly-incurred defense.

Requested jointly-incurred fees and expenses:

99-MD-1614: $199,659.82 fees and $29,530.88 expenses for a total of $229,190.70.

99-MD-1667: $200,368.93 fees and $29,635.76 expenses for a total of $230,004.68

Total fees and expenses: $459,195.35.

The Special Master has reduced the jointly-incurred fees and expenses by 25%.

The Special Master finds that the Williams Companies, Inc. are entitled to $344,396.51.

**SUMMARY OF FINDING OF FEES AND EXPENSES**

| DEFENDANT/CASE | TOTAL FEES AND EXPENSES |
|---|---|
| Claims for Jointly-incurred Attorney's Fees and Expenses | $8,283,220.90 |

| | |
|---|---|
| A. Acadian Gas a/k/a Enterprise Group (1626) | $ 256,995.79 |
| B. Agave Energy Company (1635) | $ 215,007.48 |
| C. Apache Corporation (1684) | $ 115,421.01 |
| D. Atmos Energy Corporation (1607) | $ 363,449.19 |
| E. Blue Dolphin Pipeline Company (1650) | $1,265,290.85 |
| F. Burlington Resources Inc, (1656, 1657 | $ 791,220.84 |
| G. CenterPoint Defendants (1644) | $ 577,971.27 |
| H. CMS Gas Company (1638) | $ 584,834.39 |
| I. CNG Producing Company (1627) | $ 176,061.89 |
| J. Columbia Energy Services Corp. (1628) | $ 841,644.67 |
| K. ConocoPhillips Company (1666, 97-CV-237) | $ 334,636.54 |
| L. Coral Energy L.P. (1626) | $ 85,777.53 |
| M. Dynegy Inc. (1631) | $ 469,991.99 |
| N. Delhi Gas Pipeline Company. (1645) | $ 103,120.03 |
| O. El Paso Defendants (1605,1609,1625,1632) | $1,669,454.16 |
| P. Enogex and Oklahoma Gas & Electric Co. (1640,1641) | $ 985,243.64 |
| Q. Equitable Resources, Inc (1630, 1644) | $ 624,324.78 |
| R. Florida Gas Transmission Company LLC (1608,1625) | $ 36,636.07 |
| S. GPM Gas Corporation (1682) | $ 232,380.00 |
| T. Kinder Energy n/k/n Kinder Morgan, Inc (1603,1668,1626) | $1,753,781.80 |
| U. Marathon Oil Company (1645) | $ 356,293.29 |
| V. Northern Natural Gas (1608) | $ 285,278.24 |
| W. Pacific Gas & Electric Company (1602) | $ 120,996.95 |
| X. PanEnergy Corp n/k/a Spectra Energy Corp (1605,1610,1627,1682) | $ 838,849.04 |
| Y. PanHandle Eastern Pipeline Co./ Robin Pipeline Co. (1610,1625) | $ 206,402.73 |
| Z. Public Service Company of Colorado (1612) | $ 498,684.86 |
| AA. Questar Pipeline Company (1604) | $ 764,898.75 |
| BB. Rocky Mountain Natural Gas Company n/k/a Source Gas (1603) | $ 22,200.52 |
| CC. Shell Oil Company (1629) | $ 602,599.69 |
| DD. Snyder Oil Corporation k/n/a Devon Energy Corporation (1659) | $ 190,238.39 |
| EE. Southern Star Central Gas Pipeline, Inc. (1614) | $ 119,198.56 |
| FF. Southwestern Energy Company (1670) | $ 435,602.89 |
| GG. Transmontaigne, Inc. (1669) | $ 188,957.33 |
| HH. Transwestern Pipeline Company LLC (1608) | $ 985,255.79 |
| II. Venice Energy Services Company (1631) | $ 0 |
| JJ. Williams Companies, Inc. | $ 344,396.51 |
| | |
| **TOTAL:** | **$17,443,097.46** |

### RECOMMENDATION

Based upon the findings and conclusions of law of the separate motions for attorneys fees and expenses submitted by the individual defendants as set forth the above, it is RECOMMENDED that judgment be entered for attorneys fees and expenses to the individual Defendants as set forth in the Summary of Finding of Fees and Expenses.

Done this 8th day of November, 2013

Donald E. Abram
Special Master

### CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2013, a copy of the foregoing Second Amended Findings of Fact And Conclusions of Law of the Special Master was filed with the Court using the CM/ECF system which will send notification of the filing to all counsel of record who have registered to receive service under this system.

A courtesy copy has also been forwarded by e-mail and first class U.S. Mail, addressed to:

Donald I. Schultz, Esq.
Schultz & Schultz LLP
2901 Pioneer Avenue
Cheyenne, WY 82001-2730

Roger Jatko, Esq.
Grynberg Petroleum Company
3600 S. Yosemite, Suite 900
Denver, CO 80237-1890

Judy Olive

**UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA**

FILED

2014 MAR 24 P 12: 18

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**AFFIDAVIT OF SERVICE**

Case # 1:13 CV 1454

**Plaintiff**
DEVIL'S ADVOCATE, LLC

v.

**Defendants**
GRYNBERG PETROLEUM CO., JACK J. GRYNBERG

Received on 03/06/2014 at 06:45 PM.

I Steven D. Glenn, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above mentioned case. I am over the age of 18, and am not a party to or otherwise interested in this matter.

On 03/11/2014 at 11:51 AM, I executed service of a **SUMMONS IN A CIVIL ACTION and NOTICE and COMPLAINT and EXHIBITS A THRU F** on **JACK J. GRYNBERG** at 3600 S. Yosemite St., Suite 900, Denver, County of Denver, CO 80237.

**By Service By Refusal to: Roger Jatko, General Counsel**

Physical Description: Race: White Sex: Male Age: 70's Height: 6'3" Weight: 230 Hair: Graying Glasses: Yes

When attempting service, there was no one sitting at the reception desk. A female employee walked in and I told her I was there for Jack Grynberg. She offered to escort me into the secured area. The first office we went to, Mr. Grynberg was not there. The second office we went to, she told the man in this office what I was there for and he said Roger can take this. I was then escorted to the office of the General Counsel, Roger Jatko. I showed him what I was serving. He then told me "this is a secured area, you are Trespassing". I then advised him I was escorted to his office. He said he did not care and was calling the police. I offered him the papers and he stated he would not accept them, so I advised him I was serving him by refusal, the type of papers I was serving and I was leaving them on the bookshelf by the door, inside his office.

I declare under penalties of perjury that the information contained herein is correct to the best of my knowledge.

[signature]
Steven D. Glenn, Process Server

Subscribed and Sworn before me on this 12th day of March 2014

[signature]
Notary

County of Douglas, State of Colorado

My Commission Expires 12/24/2015

Client Reference: Devil's Advocate LLC v. Grynberg Petroleum Co.
Field Sheet ID: 11100

DEBRA D GLENN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034043145
MY COMMISSION EXPIRES DECEMBER 24, 2015

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

DEVIL'S ADVOCATE, LLC

*Plaintiff(s)*

v.

GRYNBERG PETROLEUM CO.
JACK J GRYNBERG

*Defendant(s)*

Civil Action No. 1:13cv1454

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* JACK J. GRYNBERG
3600 South Yosemite Street, Suite 900
Denver, CO 80237

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
JToothman@DevilsAdvocate.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: November 26, 2013

[signature]
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF VIRGINIA

FILED

2014 MAR 24 P 12: 18

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**Plaintiff**
DEVIL'S ADVOCATE, LLC

v.

**Defendants**
GRYNBERG PETROLEUM CO., JACK J. GRYNBERG

**AFFIDAVIT OF SERVICE**

Case# 1:13 CV 1454

Received on 03/06/2014 at 06:45 PM.

I Steven D. Glenn, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above mentioned case. I am over the age of 18, and am not a party to or otherwise interested in this matter.

On 03/11/2014 at 11:51 AM, I executed service of a **SUMMONS IN A CIVIL ACTION and NOTICE and COMPLAINT and EXHIBITS A THRU F** on **GRYNBERG PETROLEUM COMPANY** at 3600 S. Yosemite St., Suite 900, Denver, County of Denver, CO 80237.

**By Service By Refusal to: Roger Jatko, General Counsel**

Physical Description: Race: White Sex: Male Age: 70's Height: 6'3" Weight: 230 Hair: Graying Glasses: Yes

When attempting service, there was no one sitting at the reception desk. A female employee walked in and I told her I was there for Jack Grynberg. She offered to escort me into the secured area. The first office we went to, Mr. Grynberg was not there. The second office we went to, she told the man in this office what I was there for and he said Roger can take this. I was then escorted to the office of the General Counsel, Roger Jatko. I showed him what I was serving. He then told me "this is a secured area, you are Trespassing". I then advised him I was escorted to his office. He said he did not care and was calling the police. I offered him the papers and he stated he would not accept them, so I advised him I was serving him by refusal, the type of papers I was serving and I was leaving them on the bookshelf by the door, inside his office.

I declare under penalties of perjury that the information contained herein is correct to the best of my knowledge.

[signature]
Steven D. Glenn, Process Server

Subscribed and Sworn before me on this 12th day of March 2014

[signature]
Notary

County of Douglas, State of Colorado

My Commission Expires 12/24/2015

Client Reference: Devil's Advocate LLC v. Grynberg Petroleum Co.
Field Sheet ID: 11101

DEBRA D GLENN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034043145
MY COMMISSION EXPIRES DECEMBER 24, 2015

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

DEVIL'S ADVOCATE, LLC

*Plaintiff(s)*

v.

GRYNBERG PETROLEUM CO.
JACK J GRYNBERG

*Defendant(s)*

Civil Action No. 1:13cv1454

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* GRYNBERG PETROLEUM COMPANY
3600 South Yosemite Street, Suite 900
Denver, CO 80237

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
JToothman@DevilsAdvocate.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: November 26, 2013

*CLERK OF COURT*

[signature]

*Signature of Clerk or Deputy Clerk*

VIRGINIA

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

DEVIL'S ADVOCATE, LLC )
)
Plaintiff, )
)
v. ) Civil Case No. CL2013-7559
)
GRYNBERG PETROLEUM COMPANY, )
et al. )
)
Defendants. )

**ORDER**

THIS MATTER came before the Court on December 5, 2013 for hearing on the Plaintiff's Motion to Amend the Complaint. Upon consideration of the Motion and Response of the Defendants, and the argument of counsel, it is hereby

ORDERED that Plaintiff's Motion be and hereby is DENIED in part and GRANTED in part.

1. Plaintiff's Motion is denied as to Counts 2, 3 and 4, and those counts are dismissed with prejudice. The Motion is further denied as to Plaintiff's request to add a claim for additional percentage fee alleged in paragraph 8 of the amended complaint.

2. Plaintiff's Motion is granted in all other respects.

3. Plaintiff's request to nonsuit was granted after the Court ruled on dismissal of Counts 2, 3 and 4.

Entered this ____ day of ______________, 2013.

______________________
Judge, Fairfax County Circuit Court

SO ORDERED, THIS 5th DAY OF December, 2013.

[signature]

Circuit Court Judge

A COPY TESTE:
JOHN T. FREY, CLERK
BY: [signature]
Deputy Clerk
Date: 12-5-13
Original retained in the office of the Clerk of the Circuit Court of Fairfax County, Virginia

Seen & Objected to for reasons noted in DA's memorandum & at oral argument

[signature] 12/5/13

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
JToothman@DevilsAdvocate.com

Counsel for Plaintiff Devil's Advocate, LLC

citing Va Sup Ct Rule 1:8 & cases in opposition including, without limitation, objection to ruling as a matter of law, on denial of DA's motion to amend, leave to amend on percentage damages, & apparent ruling as a matter of law construing amendment to percentage as fixed [illegible] fee, and denying DA's motion to nonsuit before submission to the court and court's ruling on the merits & object to the extent Ct's ruling as to Counts II, III & IV is irrelevant because no obligation to plead additional facts to preserve appeal of Judge Thacher's demurrer Counts II, III & IV as matter of law & denial of DA's request to amend to add fraud claims for

Seen &

[signature]

Brian V. Ebert (VSB 30139)
Brian V. Ebert, P.C.
10555 Main Street, Suite 650
Fairfax, VA 22030
(703) 281-9000 / (703) 281-3083 (fax)
Brian@elawfirm.us

Counsel for Defendants

and DA objects to suggestion that Oct 3, 2013 motion for amend sought leave to amend Counts II, III & IV or to replead after later ruling of Judge Thacher. Object to alleged ruling to effect that nonsuit was [illegible] after court's ruling — nonsuit was effective upon request of DA before ruling & submission

the motion

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | 99 MDL Docket No. 1293-J; All Cases |
| Natural Gas Royalties | ) | |
| *Qui Tam* Litigation | ) | |

**ORDER ADOPTING RECOMMENDATIONS OF SPECIAL MASTER AND RESOLVING DEFENDANTS' MOTIONS TO REVERSE OR MODIFY THE SPECIAL MASTER'S FINDINGS AND RECOMMENDATIONS**

THIS MATTER comes before the Court on motions by Defendants (and a Joint Defense Group) to modify the Second Amended Findings of Fact and Conclusions of Law of the Special Master ("Findings"), issued by Special Master, Donald E. Abram, on November 8, 2013, in In Re: Natural Gas Royalties Qui Tam Litigation, No. 99-MD-1293-J (all cases). ECF No. 2326. The modifications sought are: (1) to reverse the Special Master's disallowance of appellate Attorney Fees incurred by Defendants in defending against the Realtor's appeal to the Tenth Circuit (and his Petition for a Writ of Certiorari to the United States Supreme Court); (2) to reinstate those amounts of non-appellate Attorney Fees disallowed by the Special Master; and (3) to award Defendants pre-judgment interest, and to set the rate of interest and time period during which prejudgment interest is recoverable.

The Court has carefully considered the motions by Defendants, the Relator's objections to the motions, the Special Master's Findings [ECF No. 2326], the arguments of counsel, and the applicable case law. The Court finds and holds that the request that it award pre-judgment interest, and set the rate of interest and the time period during which prejudgment interest is recoverable is MOOT, and therefore DENIES the portions of the motions that address prejudgment interest. The

DA Summ Jdgmt
Exhibit H

parties have filed a stipulation that that prejudgment interest shall be at a rate of 1.5 percent, compounded annually, commencing October 21, 2011 and running until the date of judgment. [ECF No. 2370]. The Court approved this stipulation on December 19, 2013. [ECF No. 2373]. Therefore, the award of prejudgment interest, its rate, and the time during which it is available has already been established.

The Court has also concluded that the Special Master's Findings should be adopted without modification, and FINDS and ORDERS as follows:

1.    On July 22, 2011, the United States District Judge for the District of Wyoming, William F. Downes ("Judge Downes"), entered an Order Granting Motion for Fees and Expenses Pursuant to 31 U.S.C. §3730 (d)(4) (the "Attorney Fees Order"). ECF No. 2165.

2.    Subsequently, Defendants filed motions to recover more than $22,000,000 in attorney fees, costs, and expenses (collectively "Attorney Fees"). The Attorney Fees sought by Defendants in their motions are as follows:

| | | |
|---|---|---|
| A. | Acadian Gas a/k/a Enterprise Group (1626) | $   256,995.79 |
| B. | Agave Energy Company (1635) | $   215,007.48 |
| C. | Apache Corporation (1684) | $   186,970.57 |
| D. | Atmos Energy Corporation (1607) | $   428,130.47 |
| E. | Blue Dolphin Pipeline Company (1650) | $ 1,373,527.25 |
| F. | Burlington Resources Inc. (1656, 1657) | $   870,511.05 |
| G. | CenterPoint Defendants (1644) | $   618,747.95 |
| H. | CMS Gas Company (1638) | $   626,422.07 |
| I. | CNG Producing Company (1627) | $   204,881.36 |
| J. | Columbia Energy Services Corp. (1628) | $   885,788.77 |
| K. | ConocoPhillips Company (1666, 97-CV-237) | $   404,299.30 |
| L. | Coral Energy L.P. (1626) | $    85,777.53 |
| M. | Dynegy Inc. (1631) | $   520,171.62 |
| N. | Delhi Gas Pipeline Company. (1645) | $   120,967.17 |
| O. | El Paso Defendants (1605,1609,1625,1632) | $ 1,784,258.34 |
| P. | Enogex and Oklahoma Gas & Electric Co. (1640,1641) | $ 1,210,830.30 |
| Q. | Equitable Resources, Inc. (1630, 1644) | $   687,611.78 |
| R. | Florida Gas Transmission Company LLC (1608,1625) | $    63,094.53 |

| | | |
|---|---|---|
| S. | GPM Gas Corporation (1682) | $ 253,763.96 |
| T. | Kinder Energy n/k/n Kinder Morgan, Inc. (1603,1668,1626) | $ 2,088,533.61 |
| U. | Marathon Oil Company (1645) | $ 412,522.02 |
| V. | Northern Natural Gas (1608) | $ 317,343.42 |
| W. | Pacific Gas & Electric Company (1602) | $ 128,625.65 |
| X. | PanEnergy Corp n/k/a Spectra Energy Corp. (1605,1610,1627,1682) | $ 885,488.30 |
| Y. | PanHandle Eastern Pipeline Co./Robin Pipeline Co. (1610,1625) | $ 247,179.41 |
| Z. | Public Service Company of Colorado (1612) | $ 588,573.77 |
| AA. | Questar Pipeline Company (1604) | $ 928,178.54 |
| BB. | Rocky Mountain Natural Gas Company n/k/a Source Gas (1603) | $ 82,709.16 |
| CC. | Shell Oil Company (1629) | $ 733,297.16 |
| DD. | Snyder Oil Corporation k/n/a Devon Energy Corporation (1659) | $ 221,526.10 |
| EE. | Southern Star Central Gas Pipeline, Inc. (1614) | $ 155,748.31 |
| FF. | Southwestern Energy Company (1670) | $ 435,602.89 |
| GG. | TransMontaigne, Inc. (1669) | $ 230,156.51 |
| HH. | Transwestern Pipeline Company LLC (1608) | $ 1,140,633.69 |
| II. | Venice Energy Services Company (1631) | $ 0 |
| JJ. | Williams Companies, Inc. (1614, 1667) | $ 404,091.91 |

3. On July 6, 2012, the United States District Judge for the District of Wyoming, Alan Bond Johnson, entered an Order of Appointment and Referral to Special Master, referring the claims for Attorney Fees to Donald E. Abram (the "Special Master"), a retired Magistrate Judge from the United States District Court for the District of Colorado. ECF No. 2299.

4. The Special Master was directed to recommend the specific amounts of Attorney Fees that should be awarded to Defendants.

5. On November 8, 2013, the Special Master issued his Second Amended Findings and Conclusions of Law ("Findings"). ECF No. 2326.

6. In his Findings, the Special Master recommended that Defendants be awarded $17,443,097.46 in Attorney Fees.

7.      The Special Master recommended that the following Defendants should be awarded

Attorney Fees in the following amounts:

| | | |
|---|---|---|
| A. | Acadian Gas a/k/a Enterprise Group (1626) | $ 256,995.79 |
| B. | Agave Energy Company (1635) | $ 215,007.48 |
| C. | Apache Corporation (1684) | $ 115,421.01 |
| D. | Atmos Energy Corporation (1607) | $ 363,449.48 |
| E. | Blue Dolphin Pipeline Company (1650) | $ 1,265,290.85 |
| F. | Burlington Resources Inc. (1656, 1657) | $ 791,220.84 |
| G. | CenterPoint Defendants (1644) | $ 577,971.27 |
| H. | CMS Gas Company (1638) | $ 584,834.39 |
| I. | CNG Producing Company (1627) | $ 176,061.89 |
| J. | Columbia Energy Services Corp. (1628) | $ 841,644.67 |
| K. | ConocoPhillips Company (1666, 97-CV-237) | $ 334,636.54 |
| L. | Coral   Energy L.P . (1626) | $     85.777.53 |
| M. | Dynegy Inc. (1631) | $ 469,991.99 |
| N. | Delhi Gas Pipeline Company. (1645) | $ 103,120.03 |
| O. | El Paso Defendants (1605,1609,1625,1632) | $ 1,669,545.16 |
| P. | Enogex and Oklahoma Gas & Electric Co. (1640,1641) | $ 985,243.64 |
| Q. | Equitable Resources, Inc. (1630, 1644) | $ 624,324.78 |
| R. | Florida Gas Transmission Company LLC (1608,1625) | $   36,636.07 |
| S. | GPM Gas Corporation (1682) | $ 232,380.00 |
| T. |  Kinder Energy n/k/n Kinder Morgan, Inc. (1603,1668,1626) | $ 1,753,781.80 |
| U. | Marathon Oil Company (1645) | $ 356,293.29 |
| V. | Northern Natural Gas (1608) | $ 285,278.24 |
| W. | Pacific Gas & Electric Company (1602) | $ 120,996.95 |
| X. | PanEnergy Corp n/k/a Spectra Energy Corp. (1605,1610,1627,1682) | $ 838,849.04 |
| Y. | PanHandle Eastern Pipeline Co./Robin Pipeline Co. (1610,1625) | $ 206,402.73 |
| Z. | Public Service Company of Colorado (1612) | $ 498,684.86 |
| AA. | Questar Pipeline Company (1604) | $ 764,898.75 |
| BB. | Rocky Mountain Natural Gas Company n/k/a Source Gas (1603) | $   22,200.52 |
| CC. | Shell Oil Company (1629) | $ 602,599.69 |
| DD. | Snyder Oil Corporation k/n/a Devon Energy Corporation (1659) | $ 190,238.39 |
| EE. | Southern Star Central Gas Pipeline, Inc. (1614) | $ 119,198.56 |
| FF. | Southwestern Energy Company (1670) | $ 435,602.89 |
| GG. | TransMontaigne, Inc. (1669) | $ 188,957.33 |
| HH. | Transwestern Pipeline Company LLC (1608) | $ 985,255.79 |
| II. | Venice Energy Services Company (1631) | $ 0 |

| JJ. | Williams Companies, Inc. | $ 344,396.51 |
|---|---|---|

8. Realtor has preserved his right to appeal the issue of whether attorney fees should have been awarded against him, but has not otherwise objected to the amounts of Attorney Fees awarded by the Special Master. ECF No. 2365.

9. Defendants have objected to the Special Master's Recommendations, arguing that (a) appellate Attorney Fees should have been awarded, and (b) the amount of non-appellate Attorney Fees sought by them should not have been reduced by any amount.

10. The Special Master disallowed Attorney Fees sought by Defendants for defending against the Realtor's appeal of the trial court's dismissal of the actions to the Tenth Circuit (and a Certiorari Petition to the United States Supreme Court).

11. The Special Master concluded:

> [I]t is the law of this circuit that "absent an explicit statutory provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court." . . . The defendants have not presented any evidence that they have sought an order granting appeal-related fees from the Tenth Circuit. The district court does not have jurisdiction to award appeal-related fees and costs.

Findings at 5 (quoting Crumpacker v. Kan. Dep't of Human Res., 474 F.3d 747, 755 (10th Cir. 2007), Hoyt v. Robson Cos., Inc., 11 F.3d 983, 985 (10th Cir. 1993), and Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1180 (10th Cir. 2010).

12. As the Special Master recognized, the law applicable to awarding appellate attorney fees was set out in Hoyt, where the Tenth Circuit stated:

> [A] "prevailing party" is not automatically entitled to an award of appeal-related attorneys' fees. Regardless of the award of trial-related attorneys' fees, we have exercised our discretion on whether to award appeal-related attorneys' fees. Absent

> an explicit provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court. Should we decide that it is appropriate to award such fees, we may then remand to the district court to determine an award of reasonable fees. Based on this court's long-standing tradition of considering appellate-level attorney's fees only following a proper application to this court in conjunction with the underlying appeal, we hold that the district court did not have jurisdiction to award appeal-related attorneys' fees in this case.

Hoyt, 11 F.3d at 985 (emphasis added).

13. Defendants argue in their motions that because the Tenth Circuit in Crumpacker created a narrow exception to the Hoyt rule, and allowed a district court to award appellate attorney fees under Title VII's prevailing party statute for an interlocutory appeal, this Court should make another exception and award Defendants appellate attorney fees for the appeal of the final judgment in this case. The exception Defendants seek, however, is contrary to Hoyt and Flitton, and this Court cannot ignore binding Tenth Circuit precedent. Under Hoyt and Flitton, this Court is without jurisdiction to make an award of appellate Attorney Fees for the fees incurred in the appeal of the final judgment in this case. Therefore, the Special Master's recommendation that appellate Attorney Fees be disallowed was based on a correct interpretation of the law. His recommendation that appellate Attorney Fees be disallowed is adopted.

14. In his Findings, the Special Master also applied a lodestar approach to determine the proper amount of non-appellate Attorney Fees that should be awarded.

15. The Special Master exhaustively reviewed individually the billing records presented by Defendants. Based on that exhaustive review, the Special Master determined that in some instances Defendants had not met their burden of showing that all of the Attorney Fees sought were reasonable.

16. This Court has examined the instances in which the Special Master determined that claims to Attorney Fees should be disallowed. The Court concludes that the Special Master's recommendations, and the amounts by which he reduced the claimed non-appellate Attorney Fees were factually appropriate and justified. Therefore, the Special Master's legal, factual, and procedural Findings and recommendations were correct, not clearly erroneous, and were an appropriate exercise of his discretion. See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig., 2013 WL 5441723, at *2 (N.D. Cal. Sept. 26, 2013) ("The Court reviews the Special Master's factual findings for clear error, his legal conclusions de novo, and his procedural decisions for abuse of discretion.").

Accordingly, the Court HEREBY ORDERS as follows:

1. This Court has reviewed de novo the Special Master's legal determination that the Court lacks jurisdiction to award Defendants appellate Attorneys' Fees. The Court has determined that the Special Master is legally correct. The Court therefore adopts the Special Master's legal determination, and Defendants' claims for appellate Attorney Fees are disallowed.

2. This Court has reviewed de novo the Special Master's decision to disallow a limited amount of non-appellate Attorney Fees based on his conclusion that such Attorney Fees were not proven, or were not proven to be reasonable. The Special Master's conclusion and decision were correct and appropriate, and those disallowances are also adopted.

3. This Court has reviewed de novo the Special Master's Finding that an award of Attorney Fees in the amount of $17,443,097.46 was reasonable. The Special Master's Finding is correct and appropriate, and is adopted.

4. The Court adopts as correct the Special Master's recommendation that Defendants should be awarded Attorney Fees in the following amounts:

| | | |
|---|---|---|
| A. | Acadian Gas a/k/a Enterprise Group (1626) | $ 256,995.79 |
| B. | Agave Energy Company (1635) | $ 215,007.48 |
| C. | Apache Corporation (1684) | $ 115,421.01 |
| D. | Atmos Energy Corporation (1607) | $ 363,449.48 |
| E. | Blue Dolphin Pipeline Company (1650) | $ 1,265,290.85 |
| F. | Burlington Resources Inc. (1656, 1657) | $ 791,220.84 |
| G. | CenterPoint Defendants (1644) | $ 577,971.27 |
| H. | CMS Gas Company (1638) | $ 584,834.39 |
| I. | CNG Producing Company (1627) | $ 176,061.89 |
| J. | Columbia Energy Services Corp. (1628) | $ 841,644.67 |
| K. | ConocoPhillips Company (1666, 97-CV-237) | $ 334,636.54 |
| L. | Coral Energy L.P . (1626) | $ 85.777.53 |
| M. | Dynegy Inc. (1631) | $ 469,991.99 |
| N. | Delhi Gas Pipeline Company. (1645) | $ 103,120.03 |
| O. | El Paso Defendants (1605,1609,1625,1632) | $ 1,669,545.16 |
| P. | Enogex and Oklahoma Gas & Electric Co. (1640,1641) | $ 985,243.64 |
| Q. | Equitable Resources, Inc. (1630, 1644) | $ 624,324.78 |
| R. | Florida Gas Transmission Company LLC (1608,1625) | $ 36,636.07 |
| S. | GPM Gas Corporation (1682) | $ 232,380.00 |
| T. | Kinder Energy n/k/n Kinder Morgan, Inc. (1603,1668,1626) | $ 1,753,781.80 |
| U. | Marathon Oil Company (1645) | $ 356,293.29 |
| V. | Northern Natural Gas (1608) | $ 285,278.24 |
| W. | Pacific Gas & Electric Company (1602) | $ 120,996.95 |
| X. | PanEnergy Corp n/k/a Spectra Energy Corp. (1605,1610,1627,1682) | $ 838,849.04 |
| Y. | PanHandle Eastern Pipeline Co./Robin Pipeline Co. (1610,1625) | $ 206,402.73 |
| Z. | Public Service Company of Colorado (1612) | $ 498,684.86 |
| AA. | Questar Pipeline Company (1604) | $ 764,898.75 |
| BB. | Rocky Mountain Natural Gas Company n/k/a Source Gas (1603) | $ 22,200.52 |
| CC. | Shell Oil Company (1629) | $ 602,599.69 |
| DD. | Snyder Oil Corporation k/n/a Devon Energy Corporation (1659) | $ 190,238.39 |
| EE. | Southern Star Central Gas Pipeline, Inc. (1614) | $ 119,198.56 |
| FF. | Southwestern Energy Company (1670) | $ 435,602.89 |
| GG. | TransMontaigne, Inc. (1669) | $ 188,957.33 |
| HH. | Transwestern Pipeline Company LLC (1608) | $ 985,255.79 |
| II. | Venice Energy Services Company (1631) | $ 0 |
| JJ. | Williams Companies, Inc. | $ 344,396.51 |

5. Defendants' motions for award of pre-judgment interest are DENIED as moot.

SO ORDERED this ___ day of January, 2014.

BY THE COURT

______________________________
Alan B. Johnson
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:13cv1454 CMH/IDD |
| | ) | |
| | ) | |
| GRYNBERG PETROLEUM COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF JOHN TOOTHMAN

I, John W. Toothman, declare as follows under oath:

1. I am an attorney licensed to practice law in the District of Columbia, Maryland, and Virginia, as well as various other courts, including this Court. I am the founder and member of Devil's Advocate, LLC ("DA"), the plaintiff in this action. This declaration is based on my personal knowledge and is limited to facts material to DA's pending motion for partial summary judgment.

2. Late in November 2011, an attorney representing Grynberg contacted DA, through me, to engage our expert services including potential testimony regarding the legal fees and expenses sought by dozens of defendants who had filed fee petitions against Grynberg several months earlier. In addition to communicating with several outside lawyers for Grynberg, our primary contacts with Grynberg were through its in-house general counsel, Roger Jatko, Esq., and another in-house attorney, Janice Orr, Esq. Both were counsel of record in the case for

which our services were sought. *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293, 99-MD-1293 (D. Wyo.).

3. DA prepared a proposal, including a fee quote, and provided Grynberg with other details about our expertise and terms for retention. Mr. Jatko negotiated a lower percentage fee for our initial or preliminary report to be filed with the Court, which is part of Exhibit A. Mr. Grynberg agreed to and signed our standard retention terms, Exhibit A at 2, on or about December 14, 2011.

4. DA provided substantial information and work product to Grynberg and for its benefit, including research and other support for various filings Grynberg made and communications it had with opposing counsel from late in 2011 (or early in 2012) until DA ceased work (pending payment) and beyond. DA's principal report was reviewed and approved by Grynberg and filed by its attorney-agents in the federal action on March 22, 2012. Under Exhibit A, filing of that report triggered Grynberg's liability for hourly fees for any subsequent work. DA's March 29, 2012, invoice contained a reminder to that effect. Exhibit B.

5. There was substantial work to be done after the filing of DA's report in March 2012. For example, over 70 documents in response to DA's March report were filed thereafter by Grynberg's opponents. In April 2012, as reflected in Exhibit C, Grynberg began requesting and DA began providing additional hourly services, which DA invoiced Grynberg for in Exhibits C, D, E, and F. This included work relating to Grynberg's requests for discovery and evidentiary hearings on its fee objections, exploring various fee and expense issues, and addressing the impact of the recusal of the original district judge (due to a conflict uncovered by DA's report)

and eventual appointment of the special master. *See, e.g.*, Exhibits G (special master report) & H (Court's recent adoption of special master report).

6. The principal amount of these invoices totals $110,696, which is the base amount Grynberg owes DA, not including the balance of any percentage fee, plus pre- and post-judgment interest, attorney fees and expenses, and indemnification for DA's other time and expenses, which continue to accrue. I made several demands for payment from Grynberg, to which Grynberg initially responded with requests for additional DA services coupled with fraudulent assurances of payment, to induce DA to continue providing additional services (Count II). Grynberg defaulted and has not paid DA to date. DA is also entitled to other relief pursuant to the agreement including and percentage fee balance plus pre- and post-judgment compound interest at 1.5% monthly (18% APR), legal fees and expenses, plus indemnification for DA's time and other expenses. Exhibit A.

7. The factual statements contained in DA's Memorandum in Support of Motion for Partial Summary Judgment, including the Statement of Undisputed Facts, are all true.

8. Exhibits A through H to DA's Memorandum in Support of Motion for Partial Summary Judgment are all accurate copies of relevant documents admissible in evidence.

a. Exhibit A includes DA's revised proposal to Grynberg, dated December 8, 2011, and the attachments thereto, which were accepted by Grynberg and thereby created a contract between the parties by Grynberg's faxed, signed copy of "Our Terms of Retention," page 2 of Exhibit A.

b. Exhibits B through F are DA business records made in the ordinary course of business and delivered to Grynberg, namely invoices, statements, and supporting

documentation accurately reflecting the hourly tasks DA performed for Grynberg and amounts due therefore pursuant to the parties agreement, for which DA has not been paid.

c. Exhibits G and H are accurate copies downloaded through PACER of two documents entered by the Special Master and the District Court presiding over *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293, 99-MD-1293 (D. Wyo.). These documents illustrate DA's participation in those proceedings as Grynberg's legal fees expert and consultant.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED BY ME ON APRIL 1, 2014.

______________________________
John W. Toothman, Esq.

* * * * *

Exhibits Incorporated: A through H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC<br><br>Plaintiff,<br><br>v.<br><br>GRYNBERG PETROLEUM COMPANY, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:13cv1454 CMH/IDD |

**DECLARATION OF ROGER JATKO**

I, Roger Jatko, declare under oath as follows:

1. I am an attorney licensed to practice law in Colorado, Texas, as well as various federal courts. I am the general counsel to Grynberg Petroleum Company and Jack J. Grynberg individually, and have been in that position since prior to 2011. This declaration is based on my personal knowledge and the knowledge of Grynberg Petroleum Company, and is being submitted in connection with the opposition of Defendants Grynberg Petroleum Company and Jack J. Grynberg to the Motion for Partial Summary Judgment submitted by plaintiff in this action.

2. During the period of December 2011 through August 2012, I was the primary point of contact between Defendants and Mr. Toothman who was acting on behalf of the plaintiff Devil's Advocate, LLC. I negotiated with Mr. Toothman the terms of the contract which is Exhibit A to the Complaint, and I have personal knowledge of the work product provided by plaintiff and Mr. Toothman under that contract. The plaintiff did not satisfactorily, substantially

or adequately perform the services agreed to in Exhibit A to the Complaint (hereinafter "Complaint Ex. A").

3. Specifically, the plaintiff did not comply with its own plan on page 2 of the memorandum that is part of Complaint Ex. A to distill "lots of data into a few strong points, illustrated with charts and graphs, is going to be crucial to convincing the judge that the usual cosmetic deductions won't work …". Plaintiff did not distill the data into a few strong points, but instead the Declaration of Mr. Toothman provided to Defendants contained unsubstantiated claims, took weak and incredible positions, and demonstrated that Mr. Toothman did not properly review the submissions of the claimants in the Wyoming litigation. Attached as Exhibit A hereto is a true and accurate copy of the Declaration of John W. Toothman, Esq. Regarding Defendants' Claims for Legal Fees & Expenses dated March 23, 2012 (hereinafter "Toothman Wyoming Declaration" or "Wyoming Declaration"), submitted in connection with the case *In re Natural Gas Royalties Qui Tam Litigation*, 99-MD-1293 (D. Wyo.) (the "Wyoming litigation").

4. The Toothman Wyoming Declaration contains unsubstantiated assertions. For instance:

A. On page 9 at paragraph 15 of the Wyoming Declaration, Mr. Toothman claims that a firm or firms "submitted bills for individual client claims, but expressed an overlapping claim to the joint defense fees and expenses", yet he provided no examples or references to support this assertion.

B. Again on page 9, paragraph 15, Mr. Toothman claims "Some of the firms have submitted bills in excess of the amounts claimed, without identifying the entries for which they make claims." No identification of those alleged firms was provided to substantiate the claims.

C. At paragraph 19 on page 12, Mr. Toothman claims many of the bills had problems including arithmetic and accounting errors and that the invoices did not reconcile with the data therein or summaries thereof. Again, not one example was provided.

D. In paragraph 24 on page 14, Mr. Toothman stated: "Part of the firms' burden is to segregate irrelevant time, time spent on unsuccessful projects, and the like. Defendants and their firms have not eliminated this time." No examples were provided.

5. Where Mr. Toothman attempted to provide detail, the attempts were feeble or misguided. At several points in the Wyoming Declaration, Mr. Toothman argued that the Wyoming litigation was not novel, difficult or complex. *See* Toothman Wyoming Declaration at ¶¶ 40, 44, and 47. No persuasive reasoning was attached to this argument, other than the fact that the scope of the case was allegedly limited to several substantive motions and some discovery disputes. The Special Master chided Mr. Toothman in summarily dismissing the point sought to be made: "Mr. Toothman only needed to confer with Jatko or read the 176 page Findings by Special Master Bruce Pringle, and he would have found the litigation both novel and difficult." Special Master Report attached as Exhibit G to the Motion for Partial Summary Judgment at pp. 9-10 (hereinafter "Special Master Report").

6. Another point that Mr. Toothman laid emphasis on that was brushed aside by the Special Master in the Wyoming litigation was the assertion that the frequency with which terms such as "review", "brief" and "conference" appeared in the billings shows unreasonable or padded billing. Wyoming Declaration, ¶ 9. Once again, the Special Master brushed this aside, stating "The Special Master has reviewed every entry in billings submitted by defense counsel including the above entries. As the Special Master has previously found, the complexity of the

litigation with 73 separate cases, 300 defendants and a joint defense team maintaining a central repository of documents including pleadings required review of communications by e-mail, mail, and telephone. Relator can hardly complain about the 'review' or 'telephone' entries." Special Master Report, p. 11.

7. Because the judge in the Wyoming litigation had refused to provide us with any extension of time to file the opposition to the motions for attorney's fees beyond March 23, 2012, we were forced to utilize the incomplete, incredible and unpersuasive declaration and exhibits that plaintiff through Mr. Toothman provided to us at that time. We had to go with what we had, as incomplete and poor as it was.

8. It is clear to us that part of the reason for the deficient work from Plaintiff under the contract was Mr. Toothman's decision to have elective surgery done during the time he and Plaintiff were supposed to be working on the report for Defendants. *See* Wyoming Declaration, p. 13, n. 7. We were told by Mr. Toothman that the surgery he underwent was elective gastric bypass surgery.

9. From the time of the submission of the Toothman Wyoming Declaration in March 2012 until plaintiff ceased doing work, the legal team working with Defendants for the Wyoming litigation was attempting to have Plaintiff and Mr. Toothman fill in the large gaps in the Wyoming Declaration so that we could adequately prepare for a scheduled hearing on the claims for fees and expenses in front of the Special Master in October 2012. From the Defendants' perspective, the work being done in that time period was part of the flat fee work that should have been completed by Plaintiff. It was not considered by Defendants to be hourly work under the contract.

10. Finally, in response to the assertion by Plaintiff that it is owed an 'additional'

1.1% of the amounts claimed in the Wyoming litigation in excess of $22.5 million, the actual amount of fees and costs sought in the Wyoming litigation was $22,076,725.00.

I declare under penalty of perjury that the foregoing is true and correct.

April 11, 2014
Date

[signature]
Roger Jatko

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:13cv1454 CMH/IDD |
| | ) | |
| GRYNBERG PETROLEUM COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF JOHN TOOTHMAN

I, John W. Toothman, declare as follows under oath:

1. I am an attorney licensed to practice law in the District of Columbia, Maryland, and Virginia, as well as various other courts, including this Court. I am the founder and member of Devil's Advocate, LLC ("DA"), the plaintiff in this action. This declaration is based on my personal knowledge and is limited to facts material to DA's pending oppositin to Defendants' Motion to Dismiss.

2. Roger Jatko, Esq., is the in-house general counsel for Grynberg, with whom I dealt, for example. He was also counsel of record for Grynberg *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293, 99-MD-1293 (D. Wyo.). He is an employee of Grynberg, whose business and usual workplace address is the same as that of Grynberg. He is a supervisor, administrative assistant, and managing agent for Grynberg Petroleum and Mr. Grynberg, as well as a licensed lawyer in Colorado.

3. A substantial part of the events giving rise to DA's claims occurred in Fairfax County, Virginia, within the venue and jurisdiction of this Court. Grynberg transacted business

in Fairfax County, Virginia, with DA and contracted with DA for services and work product prepared by DA. This included numerous electronic and telephonic communications initiated by Grynberg (including its attorneys, employees, and agents) into Fairfax County, Virginia. On numerous occasions, Grynberg communicated with DA and requested that DA perform substantial work and services on behalf of Grynberg in Fairfax County, Virginia. DA and its personnel engaged in substantial work, created, prepared, and executed substantial work product, and delivered that work product to Grynberg in and from Fairfax County, Virginia, on behalf of and for the benefit of Grynberg.

4. Grynberg, with the benefit of advice from its own independent legal counsel, executed and transmitted DA's Terms of Retention to DA in Fairfax County, Virginia. Exhibit A to the Complaint. An accurate portion of Exhibit A is Exhibit A to DA's Opposition.

5. The factual statements made by DA and contained in DA's Opposition to Grynberg's Motion to Dismiss are all true.

6. Exhibits A and B to DA's Opposition to Grynberg's Motion to Dismiss are accurate copies of relevant documents admissible in evidence.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED BY ME ON APRIL 15, 2014.

______________________________
John W. Toothman, Esq.

* * * * *

Exhibits Incorporated: A & B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GRYNBERG PETROLEUM COMPANY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:13cv1454 CMH/IDD |

SUPPLEMENTAL DECLARATION OF JOHN TOOTHMAN

I, John W. Toothman, declare as follows under oath:

1. I am an attorney licensed to practice law in the District of Columbia, Maryland, and Virginia, as well as various other courts, including this Court. I am the founder and member of Devil's Advocate, LLC ("DA"), the plaintiff in this action. This declaration is based on my personal knowledge and is limited to facts material to DA's pending motion for partial summary judgment.

2. The factual assertions in Grynberg's Response to Plaintiff's Motion for Partial Summary Judgment, including the Exhibits thereto and Declaration of Roger Jatko, are inaccurate for the reasons stated in DA's Rebuttal thereto. For example, Mr. Jatko's rendition of events surrounding DA's Declaration/Report is inaccurate and false, and Mr. Jatko and Grynberg have omitted the vast majority of DA's work product from their truncated Exhibit A. Jatko's Exhibit A is not an accurate copy of DA's Declaration/Report, nor was that the only work product DA provided to Grynberg. DA's Declaration/Report was submitted through Grynberg, with its approval, on March 22, 2012, to the Wyoming district court and represented many

hundreds of hours working with the materials in poor and incomplete condition as provided through Grynberg. Mr. Jatko and other Grynberg personnel expressed great satisfaction with DA's performance and work product. E.g., Exhibits I, J, K hereto. The Declaration/Report, however, was billed separately on a percentage fee arrangement agreed to by Grynberg, Exhibit A, and was not the basis for the hourly fees sought through Exhibits C through F.

3. Upon filing of DA's Declaration/Report, the three triggers for payment in full of DA's percentage fee in Exhibit A at 2 were all satisfied – although full payment was due upon occurrence of any one of them. Pursuant to the Terms of Retention, Exhibit A, all work after March 22, 2012, was billed by DA on an hourly basis. Exhibits B, C-F. These are the amounts DA seeks by this Motion. DA performed tasks as requested by Grynberg, billed Grynberg by the hour, and was assured several times – without exception or objection by Grynberg – that Grynberg would pay DA in full. But Grynberg breached that promise and never paid.

4. Grynberg's two paragraphs of allegedly disputed fact are inaccurate, for the reasons stated in the Rebuttal and here.

5. The factual statements contained in DA's Rebuttal Memorandum in Support of Motion for Partial Summary Judgment, including the Statement of Undisputed Facts, are all true.

6. Exhibits I, J, and K to DA's Rebuttal Memorandum in Support of Motion for Partial Summary Judgment are all accurate copies of relevant documents admissible in evidence. Each is a copy of email communications from Grynberg personnel or attorneys to DA.

Appeal: 14-1561 Doc: 14 Filed: 08/25/2014 Pg: 227 of 247

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED BY ME ON APRIL 25, 2014.

______________________________
John W. Toothman, Esq.

* * * * *

Exhibits Incorporated: I, J, K

*Supplemental Declaration of John Toothman in Support of DA's Motion - Page 3 of 3*

A 223

**Subject:** RE: Grynberg: DA invoice for balance of flat fee
**From:** "R. Jatko" <r.jatko@grynberg.com>
**Date:** 3/27/2012 10:26 AM
**To:** "JWT" <jtoothman@devilsadvocate.com>

John: Thanks again for your outstanding work so far. Please re-send me your wiring instructions, so I can expedite payment. I'll keep you posted re any reply by the defendants, etc. Roger

Roger Jatko
General Counsel, Grynberg Companies
3600 S. Yosemite, Suite 900
Denver, CO 80237-1890

Tel: 303-850-7490
Fax: 303-850-7498

**From:** JWT [mailto:jtoothman@devilsadvocate.com]
**Sent:** Tuesday, March 27, 2012 8:03 AM
**To:** R. Jatko
**Subject:** Grynberg: DA invoice for balance of flat fee

Roger:

Our invoice for the balance of our flat fee is attached. I kept the same amount even though we encountered a few unexpected complications.

Let me know if we should try to finish up the line by line analysis. At this point, I'm assuming the judge wouldn't let us supplement anyway and any further work should be concentrated on rebutting whatever the defendants come up with.

Best of luck and thanks.

John W. Toothman, Esq.
jtoothman@devilsadvocate.com
www.DevilsAdvocate.com
703-684-6996 / 202-499-7011 (fax)

Devil's Advocate, LLC
TLF Consulting
PO Box 8
Great Falls, VA 22066 USA

Confidential

DA Partial Summ Jdgmt -- Exhibit I

**Subject:** Re: Speak now or forever . . .
**From:** "Michael S. Porter" <porterlaw@comcast.net>
**Date:** 3/22/2012 11:41 AM
**To:** Janice Orr <j.orr@grynberg.com>
**CC:** "R. Jatko" <r.jatko@grynberg.com>, Richard Barkley <barkley@barmarlaw.com>, Edward Dauer <edauer@law.du.edu>, JWT <jtoothman@devilsadvocate.com>

No changes on this end. Roger, John, Ed and Richard great job. msp

4465 Kipling Street%0D%0AWheat Ridge%2C CO 80033%0D%0A303-940-8370
%0D%0Aporterlaw%40comcast.net

---

**From:** "Janice Orr" <j.orr@grynberg.com>
**To:** "Richard Barkley" <barkley@barmarlaw.com>, "Edward Dauer" <edauer@law.du.edu>, porterlaw@comcast.net, "JWT" <jtoothman@devilsadvocate.com>
**Cc:** "R. Jatko" <r.jatko@grynberg.com>
**Sent:** Thursday, March 22, 2012 9:37:28 AM
**Subject:** Speak now or forever . . .

At 10:15 I'm putting the brief in PDF form and getting the discs done. NO changes will be entertained after that time, so please govern yourselves accordingly!!!

Janice

DA Partial Summ Jdgmt -- Exhibit J

**Subject:** RE: Grynberg draft
**From:** "Janice Orr" <j.orr@grynberg.com>
**Date:** 3/19/2012 11:17 AM
**To:** "JWT" <jtoothman@devilsadvocate.com>, "R. Jatko" <r.jatko@grynberg.com>, "Dauer, Edward" <edauer@law.du.edu>, <porterlaw@comcast.net>

Are there any missing issues?  John, I see none at this time.  We need the final version by tomorrow or Wednesday.  Once again, just do the best you can.  I suppose the exhibits will have to be separately emailed anyway, so I suppose if we get them by Wednesday that should work.  We will need the report in the form of a declaration by you, and double spaced would be better.  Thanks for doing this in what I know is a tough time for you.

Roger

**From:** JWT [mailto:jtoothman@devilsadvocate.com]
**Sent:** Sunday, March 18, 2012 8:35 PM
**To:** R. Jatko; Dauer, Edward; porterlaw@comcast.net; Janice Orr
**Subject:** Grynberg draft

Attached is the current draft.  See the notes at the top.  We are having to use estimates that we extrapolate to cover the bills we just couldn't convert or get to.

The draft is changing all the time, so please make notes on a current copy and send me the whole piece for context:  Pages, paragraphs, lines, sentences, footnotes, will all change.

John W. Toothman, Esq.
jtoothman@devilsadvocate.com
www.DevilsAdvocate.com
703-684-6996 / 202-499-7011 (fax)

Devil's Advocate, LLC
TLF Consulting
PO Box 8
Great Falls, VA 22066 USA

Confidential

DA Partial Summ
Jdgmt -- Exhibit K

Case 1:13-cv-01454-CMH-IDD Document 23 Filed 06/15/14 Page 19 of 19 PageID# 421

| **DA LLC v. Grynberg et al: Indemnification and fee and expense shifting (estimated through 4th Cir appeal)** | | | |
|---|---|---|---|
| Filing fee Fairfax Cir Ct. | | **$** | **296.00** |
| Process service fee (7/13, Colorado) | | **$** | **85.00** |
| DA's indemn for fees, time (estimated through 4cir appeal, not including Va. Sup Ct. if petition granted) | $400/hr | **$** | **170,240.00** |
| ED Va. Filing fee 11/13 | | **$** | **400.00** |
| Va / Ffx Appeal notice filing fee 1/2/14 | | **$** | **32.00** |
| Va / Va. Sup. Ct. Filing fee 3/4/14 | | **$** | **50.00** |
| Va. S.Ct. filing postage (3/4/14) | | **$** | **15.80** |
| Process service fee (3/14, ED Va. Colo.) | | **$** | **85.00** |
| Mailing Mtn Partial Summ Judgment 3/31/14 | | **$** | **16.05** |
| ED Va. Notice appeal 5/31/14 | | **$** | **505.00** |
| | | $ | 171,724.85 |
| Note: Includes Fairfax Circuit, ED VA, 4th Cir., and Va. Sup. Ct. so far, with estimate of 130 hours for 4th Cir. Appeal plus likely expenses ($54,000) | | | |

DA v. Grynberg, 54d Motion
Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GRYNBERG PETROLEUM COMPANY, et al.,<br><br>Defendants. | ) | Civil No. 1:13cv1454 CMH/IDD |

DECLARATION OF JOHN TOOTHMAN

I, John W. Toothman, declare as follows under oath:

1. I am an attorney licensed to practice law in the District of Columbia (since 1981), Maryland, and Virginia, as well as various other courts, including this Court. I am the founder and member of Devil's Advocate, LLC ("DA"), the plaintiff in this action. This declaration is based on my personal knowledge and upon facts I find to be reliable, in my expert opinion. My expert opinions are expressed to a reasonable degree of professional certainty.

2. Defendants retained me to serve as an expert witness on legal fees and related issues, which services I performed for their benefit in the case captioned *In re Natural Gas Royalties Qui Tam Litigation*, MDL 1293, 99-MD-1293 (D. Wyo.).

3. Exhibit A to the Complaint includes DA's revised proposal to Grynberg, dated December 8, 2011, and the attachments thereto, which were accepted by Grynberg and thereby created a contract between the parties by Grynberg's faxed, signed copy of "Our Terms of Retention," page 2 of Exhibit A. The attachments include, *inter alia*, my resume demonstrating my expert qualifications regarding legal fee issues, hourly rates, and related issues. I regularly

publish articles and books on the subjects of legal fees and related issues, I speak regularly at bar and other functions on these subjects, and I have testified as an expert on these and related subjects over seventy times, including in this Court. I have also tried over sixty cases, including several in this Court. Based on my extensive training, education, experience, and numerous prior engagements as an expert on these subjects, including actions before this Court, I am qualified as an expert on the issues described herein and in the pending DA Motion.

4. DA's hourly rates were quoted to Grynberg at the billed rates, with Grynberg's express agreement. These rates are reasonable based on my knowledge of applicable rates for persons with similar experience, reputation, and skill in this locale and type of engagement.

5. I hereby verify the accuracy and reasonableness of the items contained in Exhibits 1 and 3 to DA's pending motion for time, fees, and expenses. I also verify the factual statements in DA's pending motion and reply. I also verify that the amount claimed by DA in the pending Motion, including estimated time and expenses, and totaling $171,724.85, plus pre- and post-judgment interest at 18% APR compounded monthly (1.5% per month) is accurate and reasonable under the circumstances.

6. This is Exhibit 2 to DA's Reply to Grynberg's Response to DA's Motion for Recovery of Time, Attorney Fees, and Expenses Pursuant to Federal Rule of Civil Procedure 54(d).

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED BY ME ON JULY 7, 2014.

______________________________

John W. Toothman, Esq.



* * * * *

Exhibits Incorporated: Exhibits 1 & 3, Exhibit A to the Complaint.

| | | | | | |
|---|---|---|---|---|---|
| DA Reply Exhibit 3 | | Redacted DA time and fees | | | |
| | | DA v. Grynberg | | | |
| | | | | | |
| Date | Tkpr | Description | Hours | Rate | Fees |
| 3/19/13 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 4/18/13 | JWT | REDACTED | 2.00 | $ 400.00 | $ 800.00 |
| 4/18/13 | JWT | REDACTED | 2.50 | $ 400.00 | $ 1,000.00 |
| 4/22/13 | JWT | REDACTED | 0.80 | $ 400.00 | $ 320.00 |
| 4/22/13 | JWT | REDACTED | 0.90 | $ 400.00 | $ 360.00 |
| 4/24/13 | JWT | REDACTED | 0.60 | $ 400.00 | $ 240.00 |
| 4/24/13 | JWT | REDACTED | 1.00 | $ 400.00 | $ 400.00 |
| 4/25/13 | JWT | REDACTED | 0.40 | $ 400.00 | $ 160.00 |
| 6/5/13 | JWT | REDACTED | 0.90 | $ 400.00 | $ 360.00 |
| 6/18/13 | JWT | REDACTED | 0.10 | $ 400.00 | $ 40.00 |
| 6/21/13 | JWT | REDACTED | 1.00 | $ 400.00 | $ 400.00 |
| 6/22/13 | JWT | REDACTED | 0.60 | $ 400.00 | $ 240.00 |
| 6/28/13 | JWT | REDACTED | 2.00 | $ 400.00 | $ 800.00 |
| 7/1/13 | JWT | REDACTED | 1.50 | $ 400.00 | $ 600.00 |
| 7/7/13 | JWT | REDACTED | 1.90 | $ 400.00 | $ 760.00 |
| 7/9/13 | JWT | REDACTED | 1.40 | $ 400.00 | $ 560.00 |
| 7/11/13 | JWT | REDACTED | 2.20 | $ 400.00 | $ 880.00 |
| 7/17/13 | JWT | REDACTED | 0.10 | $ 400.00 | $ 40.00 |
| 7/18/13 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |
| 7/30/13 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 7/31/13 | JWT | REDACTED | 1.50 | $ 400.00 | $ 600.00 |
| 8/8/13 | JWT | REDACTED | 1.80 | $ 400.00 | $ 720.00 |
| 8/9/13 | JWT | REDACTED | 0.70 | $ 400.00 | $ 280.00 |
| 8/14/13 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |
| 8/15/13 | JWT | REDACTED | 2.00 | $ 400.00 | $ 800.00 |
| 8/16/13 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 8/19/13 | JWT | REDACTED | 5.20 | $ 400.00 | $ 2,080.00 |
| 8/20/13 | JWT | REDACTED | 3.40 | $ 400.00 | $ 1,360.00 |
| 8/27/13 | JWT | REDACTED | 4.90 | $ 400.00 | $ 1,960.00 |
| 8/29/13 | JWT | REDACTED | 1.80 | $ 400.00 | $ 720.00 |
| 9/2/13 | JWT | REDACTED | 5.70 | $ 400.00 | $ 2,280.00 |
| 9/3/13 | JWT | REDACTED | 4.00 | $ 400.00 | $ 1,600.00 |
| 9/4/13 | JWT | REDACTED | 3.90 | $ 400.00 | $ 1,560.00 |
| 9/5/13 | JWT | REDACTED | 2.80 | $ 400.00 | $ 1,120.00 |
| 9/6/13 | JWT | REDACTED | 7.00 | $ 400.00 | $ 2,800.00 |
| 9/7/13 | JWT | REDACTED | 2.80 | $ 400.00 | $ 1,120.00 |
| 9/9/13 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |
| 9/11/13 | JWT | REDACTED | 2.30 | $ 400.00 | $ 920.00 |
| 9/12/13 | JWT | REDACTED | 5.40 | $ 400.00 | $ 2,160.00 |
| 9/13/13 | JWT | REDACTED | 3.00 | $ 400.00 | $ 1,200.00 |
| 9/14/13 | JWT | REDACTED | 3.00 | $ 400.00 | $ 1,200.00 |
| 9/16/13 | JWT | REDACTED | 1.10 | $ 400.00 | $ 440.00 |

| Date | Tkpr | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|
| 9/17/13 | JWT | REDACTED | 1.00 | $ 400.00 | $ 400.00 |
| 9/18/13 | JWT | REDACTED | 2.20 | $ 400.00 | $ 880.00 |
| 9/25/13 | JWT | REDACTED | 4.00 | $ 400.00 | $ 1,600.00 |
| 9/26/13 | JWT | REDACTED | 7.00 | $ 400.00 | $ 2,800.00 |
| 9/27/13 | JWT | REDACTED | 3.20 | $ 400.00 | $ 1,280.00 |
| 9/28/13 | JWT | REDACTED | 8.00 | $ 400.00 | $ 3,200.00 |
| 9/30/13 | JWT | REDACTED | 1.30 | $ 400.00 | $ 520.00 |
| 10/1/13 | JWT | REDACTED | 0.00 | $ 400.00 | $ - |
| 10/2/13 | JWT | REDACTED | 4.90 | $ 400.00 | $ 1,960.00 |
| 10/3/13 | JWT | REDACTED | 6.60 | $ 400.00 | $ 2,640.00 |
| 10/4/13 | JWT | REDACTED | 5.80 | $ 400.00 | $ 2,320.00 |
| 10/8/13 | JWT | REDACTED | | $ 400.00 | $ - |
| 10/7/13 | JWT | REDACTED | 1.30 | $ 400.00 | $ 520.00 |
| 10/9/13 | JWT | REDACTED | 1.00 | $ 400.00 | $ 400.00 |
| 10/10/13 | JWT | REDACTED | 3.20 | $ 400.00 | $ 1,280.00 |
| 10/16/13 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 10/17/13 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 10/18/13 | JWT | REDACTED | 2.30 | $ 400.00 | $ 920.00 |
| 10/21/13 | JWT | REDACTED | 3.80 | $ 400.00 | $ 1,520.00 |
| 10/22/13 | JWT | REDACTED | 4.00 | $ 400.00 | $ 1,600.00 |
| 10/23/13 | JWT | REDACTED | 4.20 | $ 400.00 | $ 1,680.00 |
| 10/24/13 | JWT | REDACTED | 5.30 | $ 400.00 | $ 2,120.00 |
| 10/25/13 | JWT | REDACTED | 4.90 | $ 400.00 | $ 1,960.00 |
| 10/26/13 | JWT | REDACTED | 2.20 | $ 400.00 | $ 880.00 |
| 10/28/13 | JWT | REDACTED | 1.00 | $ 400.00 | $ 400.00 |
| 10/30/13 | JWT | REDACTED | 1.70 | $ 400.00 | $ 680.00 |
| 10/31/13 | JWT | REDACTED | 4.10 | $ 400.00 | $ 1,640.00 |
| 11/1/13 | JWT | REDACTED | 3.40 | $ 400.00 | $ 1,360.00 |
| 11/3/13 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |
| 11/6/13 | JWT | REDACTED | 0.60 | $ 400.00 | $ 240.00 |
| 11/7/13 | JWT | REDACTED | 1.10 | $ 400.00 | $ 440.00 |
| 11/8/13 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 11/10/13 | JWT | REDACTED | 1.40 | $ 400.00 | $ 560.00 |
| 11/14/13 | JWT | REDACTED | 3.20 | $ 400.00 | $ 1,280.00 |
| 11/15/13 | JWT | REDACTED | 3.60 | $ 400.00 | $ 1,440.00 |
| 11/20/13 | JWT | REDACTED | 1.50 | $ 400.00 | $ 600.00 |
| 11/22/13 | JWT | REDACTED | 3.90 | $ 400.00 | $ 1,560.00 |
| 11/24/13 | JWT | REDACTED | 7.20 | $ 400.00 | $ 2,880.00 |
| 11/25/13 | JWT | REDACTED | 1.40 | $ 400.00 | $ 560.00 |
| 11/26/13 | JWT | REDACTED | 1.90 | $ 400.00 | $ 760.00 |
| 12/3/13 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 12/5/13 | JWT | REDACTED | 2.60 | $ 400.00 | $ 1,040.00 |
| 12/6/13 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 12/13/13 | JWT | REDACTED | 2.30 | $ 400.00 | $ 920.00 |
| 1/2/14 | JWT | REDACTED | 0.40 | $ 400.00 | $ 160.00 |
| 1/16/14 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |

| Date | Tkpr | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|
| 1/18/14 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 3/1/14 | JWT | REDACTED | 3.90 | $ 400.00 | $ 1,560.00 |
| 3/2/14 | JWT | REDACTED | 6.80 | $ 400.00 | $ 2,720.00 |
| 3/3/14 | JWT | REDACTED | 7.70 | $ 400.00 | $ 3,080.00 |
| 3/4/14 | JWT | REDACTED | 8.40 | $ 400.00 | $ 3,360.00 |
| 3/7/14 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 3/11/14 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 3/24/14 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 3/25/14 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 3/27/14 | JWT | REDACTED | 1.30 | $ 400.00 | $ 520.00 |
| 3/28/38 | JWT | REDACTED | 3.90 | $ 400.00 | $ 1,560.00 |
| 3/29/14 | JWT | REDACTED | 6.80 | $ 400.00 | $ 2,720.00 |
| 3/30/14 | JWT | REDACTED | 5.80 | $ 400.00 | $ 2,320.00 |
| 3/31/14 | JWT | REDACTED | 4.60 | $ 400.00 | $ 1,840.00 |
| 4/12/14 | JWT | REDACTED | 5.80 | $ 400.00 | $ 2,320.00 |
| 4/13/14 | JWT | REDACTED | 6.80 | $ 400.00 | $ 2,720.00 |
| 4/14/14 | JWT | REDACTED | 8.10 | $ 400.00 | $ 3,240.00 |
| 4/15/14 | JWT | REDACTED | 6.50 | $ 400.00 | $ 2,600.00 |
| 4/20/14 | JWT | REDACTED | 1.80 | $ 400.00 | $ 720.00 |
| 4/21/14 | JWT | REDACTED | 5.40 | $ 400.00 | $ 2,160.00 |
| 4/23/14 | JWT | REDACTED | 0.10 | $ 400.00 | $ 40.00 |
| 4/24/14 | JWT | REDACTED | 0.10 | $ 400.00 | $ 40.00 |
| 5/5/14 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 5/8/14 | JWT | REDACTED | 0.10 | $ 400.00 | $ 40.00 |
| 5/12/14 | JWT | REDACTED | 0.40 | $ 400.00 | $ 160.00 |
| 5/14/14 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 5/15/14 | JWT | REDACTED | 10.40 | $ 400.00 | $ 4,160.00 |
| 5/16/14 | JWT | REDACTED | 9.00 | $ 400.00 | $ 3,600.00 |
| 5/20/14 | JWT | REDACTED | 1.60 | $ 400.00 | $ 640.00 |
| 5/28/14 | JWT | REDACTED | 0.20 | $ 400.00 | $ 80.00 |
| 5/31/14 | JWT | REDACTED | 0.40 | $ 400.00 | $ 160.00 |
| 6/3/14 | JWT | REDACTED | 0.30 | $ 400.00 | $ 120.00 |
| 6/5/14 | JWT | REDACTED | 0.50 | $ 400.00 | $ 200.00 |
| 6/15/14 | JWT | REDACTED | 3.40 | $ 400.00 | $ 1,360.00 |
| | | | 188.80 | | $ 126,760.00 |
| | | Estimated fees & expenses for balance of ED Va time, 4th Circuit Appeal | | | $ 43,480.00 |
| | | | | | $ 170,240.00 |
| | | Does not include Va. Sup. Ct. or other collection time or interest | | | |
| | | | | | |



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| DEVIL'S ADVOCATE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GRYNBERG PETROLEUM COMPANY, et al.,<br><br>Defendants. | Civil Action No. 1:13-cv-1454 |

**ORDER**

This matter comes before the Court on Plaintiff Devil's Advocate, LLC's ("Plaintiff's") Motion for Partial Summary Judgment and Defendants Grynberg Petroleum Company and Jack J. Grynberg's ("Defendants'") Motion to Dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), improper venue under Federal Rule of Civil Procedure 12(b)(3), and further, or in the alternative, under federal court Colorado River abstention.

A motion to dismiss based on a forum-selection clause is properly treated as a motion to dismiss based on improper venue under Federal Rule of Civil Procedure 12(b)(3). Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). "A general maxim in interpreting forum-selection clauses is that 'an agreement *conferring* jurisdiction

in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'" Intracomm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 22 F.3d 51, 53 (2d Cir. 1994) (emphasis in original) (internal quotations omitted)).

In December 2011, Plaintiff and Defendants entered into a contract for Plaintiff to provide expert witness and consulting services. The terms of the contract state that "[t]his Agreement is governed by Virginia law and all disputes shall be resolved in a Fairfax County, Virginia court." This forum selection clause in the contract mandates that any dispute be resolved in the courts of Fairfax County, and not in the United States District Court. Therefore, this Court is an improper venue, and this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3). For these reasons, it is hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED as moot, and Defendant's Motion to Dismiss is GRANTED, and this case is dismissed without prejudice.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
May 2, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

DEVIL'S ADVOCATE, LLC,

Plaintiff,

v. Civil Action No. 1:13-cv-1454

GRYNBERG PETROLEUM COMPANY, et al.,

Defendants.

**ORDER**

This matter comes before the Court on Plaintiff Devil's Advocate, LLC's ("Plaintiff's") Motion for Entry of Separate Judgment pursuant to Federal Rule of Civil Procedure 58. It appearing to the Court that Plaintiff is entitled to have judgment set out in a separate document under Federal Rule of Civil Procedure 58, is hereby

ORDERED that Plaintiff's Motion is GRANTED, and the clerk shall enter Judgment dismissing this case without prejudice.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
June 9, 2014

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| Devil's Advocate, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13cv1454 |
| | ) | |
| | ) | |
| Grynberg Petroleum Company, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**JUDGMENT**

Pursuant to the order of this Court entered on 5/2/2014 and in accordance with Federal Rules of Civil Procedure 58, JUDGMENT is hereby entered dismissing this case without prejudice.

FERNANDO GALINDO, CLERK OF COURT

By:_______________/s/_______________
Richard Banke
Deputy Clerk

Dated: 6/9/2014
Alexandria, Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:13-cv-1454 |
| GRYNBERG PETROLEUM COMPANY, et al., | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on Plaintiff Devil's Advocate, LLC's ("Plaintiff's") Motion for Recovery of Time, Attorney's Fees, and Expenses pursuant to Federal Rule of Civil Procedure 54(d). It appearing to the Court that Plaintiff has shown no authority either under contract or by statute that would entitle it to recover time, fees, or expenses, it is hereby

ORDERED that Plaintiff's Motion is DENIED.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 11, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIL'S ADVOCATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:13cv1454 CMH/IDD |
| | ) | |
| | ) | |
| GRYNBERG PETROLEUM COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff Devil's Advocate, LLC, ("DA") hereby appeals to the US Court of Appeal for the Fourth Circuit all orders and decisions of this Court in this matter, including, without limitation, the Order dated May 2, 2014, and any subsequent ruling adverse to Plaintiff. Fed. R. App. 3 & 4.

By:

__/s/____________________

Dated: May 31, 2014

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
JToothman@DevilsAdvocate.com

Counsel for Plaintiff Devil's Advocate, LLC

Certificate of Service

I certify that on May 31, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will electronically serve counsel for the defendants by email addressed to:

Brian V. Ebert, Esq. (VSB 30139)
10555 Main Street, Suite 650
Fairfax, Virginia 22030
(703) 281-9000 / (703) 281-3083 (fax)
brian@elawfirm.us

__/s/________________________________
John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
Jtoothman@DevilsAdvocate.com
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEVIL'S ADVOCATE, LLC, )
)
Plaintiff, )
)
v. ) Civil No. 1:13cv1454 CMH/IDD
)
)
GRYNBERG PETROLEUM COMPANY, et al., )
)
Defendants. )

PLAINTIFF'S AMENDED NOTICE OF APPEAL

Notice is hereby given that Plaintiff Devil's Advocate, LLC, ("DA") hereby appeals to the US Court of Appeal for the Fourth Circuit all adverse orders and decisions of this Court in this matter, including, without limitation, the Order dated May 2, 2014, and the Order dated July 11, 2014, and any other ruling adverse to Plaintiff. Fed. R. App. Proc. 3 & 4.

This amended notice of appeal is submitted pursuant to Fed. R. App. Proc. 4(a)(4)(B)(I) upon resolution of the last of DA's Rule 58 and Rule 54 motions.

By:

__/s/___________________

John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
JToothman@DevilsAdvocate.com

Dated: July 11, 2014

Counsel for Plaintiff Devil's Advocate, LLC

Certificate of Service

I certify that on July 11, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will electronically serve counsel for the defendants by email addressed to:

Brian V. Ebert, Esq. (VSB 30139)
10555 Main Street, Suite 650
Fairfax, Virginia 22030
(703) 281-9000 / (703) 281-3083 (fax)
brian@elawfirm.us

__/s/________________________________
John W. Toothman, Esq. (VSB 27374)
Devil's Advocate, LLC
PO Box 8
Great Falls, VA 22066
(703) 739-2660 / (202) 499-7011 (fax)
Jtoothman@DevilsAdvocate.com
Counsel for Plaintiff

Certificate of Service

I certify that on August 25, 2014, the foregoing Joint Appendix was served on counsel for Defendants-Appellees through the CM/ECF system, with a courtesy hardcopy by first-class mail, postage prepaid, to:

Brian V. Ebert, Esq.
10555 Main Street, Suite 650
Fairfax, Virginia 22030
(703) 281-9000
Counsel for Defendants-Appellees

__/s/ John W. Toothman _____
John W. Toothman, Esq.
Counsel for Appellant